**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| **In Re: Santa Fe Natural Tobacco Company Marketing & Sales Practices Litigation and Products Liability Litigation** | Lead Case No. 1:16-md-02695-JB-LF |
| *This Document Relates To All Actions* | Consolidated Class Action Complaint |

**CONSOLIDATED AMENDED COMPLAINT**

Plaintiffs Jacques-Rene Hebert, Sara Benson, Justin Sproule, Rudolph Miller, Ceyhan Haksal, Carol Murphy, Robert Litwin, Francisco Chavez, Joshua Horne, Albert Lopez, Charlene Blevins and Abigail Emmons, as and for their class action complaint, allege, with personal knowledge as to their own actions, and upon information and belief as to those of others, as follows:

**NATURE OF THE CASE**

1.      This action seeks to redress Defendants Santa Fe Natural Tobacco Company, Inc. ("SFNT"), Reynolds American Inc. ("Reynolds") and R.J. Reynolds Tobacco Company's ("RJR," collectively, "Defendants") deceptive marketing of their "Natural American Spirit" brand cigarettes as "Natural" and "Additive-Free."

2.      The history of tobacco marketing is replete with deception. First, tobacco companies, including Reynolds' predecessors, told the American people that smoking actually improved health. When that claim became untenable, tobacco companies told the American people that adding filters would make smoking safe. When that claim became untenable,

{00280100 }

tobacco companies told the American people that smoking low tar or light cigarettes were safer, until they were prohibited from doing so.

3.     The growing popularity and sales of Natural American Spirit, the brand owned and controlled by Reynolds, represents the latest chapter in tobacco companies' attempt to deceive American consumers into thinking that there are ways to reduce the dangers of smoking if only the smoker smokes a certain brand of cigarette.

4.     By uniformly using the terms "Natural" and "Additive-Free" on each and every label, Defendants intentionally and successfully convey to reasonable consumers that Natural American Spirit cigarettes are safer and healthier to smoke than other competing cigarettes.  But smoking any cigarette is dangerous and hazardous to health, and there is no safe cigarette commercially available within the United States.

5.     Defendants reinforce these misleading labeling claims by prominently using the terms "Natural" and "Additive-Free" through a pervasive nationwide marketing and advertising campaign.  This campaign perpetuates the false impression that Natural American Spirit is a safer, healthier cigarette.

6.     This misleading message is further reinforced through the use of the term "Organic" on many of the labels and advertisements.  In addition, extensive use of Native American imagery in advertisements and on all labels of Natural American Spirit cigarettes reinforces the naturalness impressions of the labels.

7.     This misleading message is also reinforced by the numerous environmental claims made by Defendants' packaging and advertising.  The backs of all Natural American Spirit packages prominently state "RESPECT FOR THE EARTH™" next to an image of three feathers

or leaves that closely resemble the well-known triple-arrow symbol for recycling. Certain packages make additional recycling and environmental claims including "Pack Recycling," "Earth-Friendly Tobacco," "Supporting Farmers," "U.S. Grown Tobacco," and "Reducing Butt Litter."

8.     Natural American Spirit cigarettes are not healthier or safer than other cigarettes.

9.     Compared to other major brands, Natural American Spirit cigarettes have substantially higher levels of certain known carcinogens and heavy metals. Natural American Spirit cigarettes also release exceedingly high levels of "free-base" nicotine, which makes them at least as addictive as other cigarettes.

10.     The claim that the tobacco used in Natural American Spirit cigarettes is "Additive-Free" is also false, because Defendants use the filter as a means of adding menthol to the purportedly additive-free tobacco. Because menthol is highly volatile, it migrates from the filter to the tobacco.

11.     This suit is brought pursuant to the consumer protection statutes of California, Colorado, Florida, Illinois, Massachusetts, Michigan, North Carolina, New Jersey, New Mexico, New York, Ohio and Washington and the common law on behalf of classes of consumers who purchased Natural American Spirit cigarettes. This suit seeks, *inter alia*, actual damages and refunds, statutory and punitive damages, injunctive relief, restitution, attorneys' fees, and the costs of this suit.

## PARTIES

12.     Plaintiff Jacques-Rene Hebert is a citizen of the State of Illinois residing in Cook County. During the proposed class period, Mr. Hebert viewed Defendants' labels and packaging

for Natural American Spirit cigarettes, representing those cigarettes as "Natural" and "Additive-Free."  Mr. Hebert regularly purchased varieties of Natural American Spirit cigarettes, including purchases in California, Florida, Illinois, Massachusetts, Michigan, New York and Ohio.  The Natural American Spirit cigarettes Mr. Hebert purchased were all uniformly labeled as "Natural" and "Additive-Free," and he made those purchases at a price premium compared to other cigarettes because he believed that they were in fact made with additive-free tobacco and were safer and healthier because Natural American Spirit cigarettes were represented to be "Natural" and "Additive-Free."

13.     Plaintiff Sara Benson is a citizen of the State of Colorado residing in Jefferson County.  During the proposed class period, Ms. Benson viewed Defendants' labels and packaging for Natural American Spirit cigarettes, representing those cigarettes as "Natural" and "Additive-Free."  Ms. Benson regularly purchased varieties of Natural American Spirit cigarettes including purchases in Colorado.  The Natural American Spirit cigarettes Ms. Benson purchased were all uniformly labeled as "Natural" and "Additive-Free," and she made those purchases at a price premium compared to other cigarettes because she believed that they were in fact made with additive-free tobacco and were safer and healthier because Natural American Spirit cigarettes were represented to be "Natural" and "Additive-Free."

14.     Plaintiff Justin Sproule is a citizen of the State of Florida residing in Palm Beach County.  During the proposed class period, Mr. Sproule viewed Defendants' labels and packaging for Natural American Spirit cigarettes, representing those cigarettes as "Natural" and "Additive-Free."   Mr. Sproule regularly purchased varieties of Natural American Spirit cigarettes, including purchases in Florida.  The Natural American Spirit cigarettes Mr. Sproule

purchased were all uniformly labeled as "Natural" and "Additive-Free," and he made those purchases at a price premium compared to other cigarettes because he believed that they were in fact made with additive-free tobacco and were safer and healthier because Natural American Spirit cigarettes were represented to be "Natural" and "Additive-Free."

15.     Plaintiff Abigail Emmons is a citizen of the State of New Mexico residing in Bernalillo County.  During the proposed class period, Ms. Emmons viewed Defendants' labels and packaging for Natural American Spirit cigarettes, representing those cigarettes as "Natural" and "Additive-Free."  Ms. Emmons regularly purchased varieties of Natural American Spirit cigarettes including purchases in New Jersey, New Mexico, and New York.  The Natural American Spirit cigarettes Ms. Emmons purchased were all uniformly labeled as "Natural" and "Additive-Free," and she made those purchases at a price premium compared to other cigarettes because she believed that they were in fact made with additive-free tobacco and were safer and healthier because Natural American Spirit cigarettes were represented to be "Natural" and "Additive-Free."

16.     Plaintiff Rudolph Miller is a citizen of the State of North Carolina residing in Currituck County.  During the proposed class period, Mr. Miller viewed Defendants' labels and packaging for Natural American Spirit cigarettes, representing those cigarettes as "Natural" and "Additive-Free."  Mr. Miller regularly purchased varieties of Natural American Spirit cigarettes, including purchases in North Carolina.  The Natural American Spirit cigarettes Mr. Miller purchased were all uniformly labeled as "Natural" and "Additive-Free," and he made those purchases at a price premium compared to other cigarettes because he believed that they were in

fact made with additive-free tobacco and were safer and healthier because Natural American Spirit cigarettes were represented to be "Natural" and "Additive-Free."

17.     Plaintiff Ceyhan Haksal is a citizen of the State of New Mexico residing in Santa Fe County.   During the proposed class period, Mr. Haksal viewed Defendants' labels and packaging for Natural American Spirit cigarettes, representing those cigarettes as "Natural" and "Additive-Free."  Mr. Haksal regularly purchased varieties of Natural American Spirit cigarettes including purchases in New Mexico.   The Natural American Spirit cigarettes Mr. Haksal purchased were all uniformly labeled as "Natural" and "Additive-Free," and he made those purchases at a price premium compared to other cigarettes because he believed that they were in fact made with additive-free tobacco and were safer and healthier because Natural American Spirit cigarettes were represented to be "Natural" and "Additive-Free."

18.     Plaintiff Carol Murphy is a citizen of the State of Idaho with residence in Canyon County.   During the proposed class period, Ms. Murphy viewed Defendants' labels and packaging for Natural American Spirit cigarettes, representing those cigarettes as "Natural" and "Additive-Free."   Ms. Murphy regularly purchased varieties of Natural American Spirit cigarettes including purchases in the state of Washington.   The Natural American Spirit cigarettes Ms. Murphy purchased were all uniformly labeled as "Natural" and "Additive-Free," and she made those purchases at a price premium compared to other cigarettes because she believed that they were in fact made with additive-free tobacco and were safer and healthier because Natural American Spirit cigarettes were represented to be "Natural" and "Additive-Free."

19.     Plaintiff Robert Litwin is a citizen of the State of Maryland residing in Carroll County.  During the proposed class period, Mr. Litwin viewed Defendants' labels and packaging for Natural American Spirit menthol cigarettes, representing those cigarettes as "Natural" and "Additive-Free."  Mr. Litwin regularly purchased varieties of Natural American Spirit menthol cigarettes, including purchases in California, New Jersey and New York.  The Natural American Spirit menthol cigarettes Mr. Litwin purchased were all uniformly labeled as "Natural" and "Additive-Free," and Mr. Litwin made those purchases at a price premium compared to other menthol cigarettes because he believed that they were in fact made with additive-free tobacco and were safer and healthier because Natural American Spirit cigarettes were represented to be "Natural" and "Additive-Free."

20.     Plaintiff Francisco Chavez is a citizen of the State of California residing in Los Angeles County.  During the proposed class period, Mr. Chavez viewed Defendants' labels and packaging for Natural American Spirit menthol cigarettes, representing those cigarettes as "Natural" and "Additive-Free."  Mr. Chavez regularly purchased varieties of Natural American Spirit menthol cigarettes, including purchases in California.  The Natural American Spirit menthol cigarettes Mr. Chavez purchased were all uniformly labeled as "Natural" and "Additive-Free," and Mr. Chavez made those purchases at a price premium compared to other menthol cigarettes because he believed that they were in fact made with additive-free tobacco and were safer and healthier because Natural American Spirit cigarettes were represented to be "Natural" and "Additive-Free."

21.     Plaintiff Joshua Horne is a citizen of the State of Florida residing in Polk County. During the proposed class period, Mr. Horne viewed Defendants' labels and packaging for

Natural American Spirit menthol cigarettes, representing those cigarettes as "Natural" and "Additive-Free."  Mr. Horne regularly purchased varieties of Natural American Spirit menthol cigarettes, including purchases in Colorado, Florida, Illinois and New Mexico.  The Natural American Spirit menthol cigarettes Mr. Horne purchased were all uniformly labeled as "Natural" and "Additive-Free," and Mr. Horne made those purchases at a price premium compared to other menthol cigarettes because he believed that they were in fact made with additive-free tobacco and were safer and healthier because Natural American Spirit cigarettes were represented to be "Natural" and "Additive-Free."

22.     Plaintiff Albert Lopez is a citizen of the State of Illinois residing in Cook County. During the proposed class period, Mr. Lopez viewed Defendants' labels and packaging for Natural American Spirit menthol cigarettes, representing those cigarettes as "Natural" and "Additive-Free."  Mr. Lopez regularly purchased varieties of Natural American Spirit menthol cigarettes, including purchases in Illinois.  The Natural American Spirit menthol cigarettes Mr. Lopez purchased were all uniformly labeled as "Natural" and "Additive-Free," and Mr. Lopez made those purchases at a price premium compared to other menthol cigarettes because he believed that they were in fact made with additive-free tobacco and were safer and healthier because Natural American Spirit cigarettes were represented to be "Natural" and "Additive-Free."

23.     Plaintiff Charlene Blevins is a citizen of the State of North Carolina residing in McDowell County.  During the proposed class period, Ms. Blevins viewed Defendants' labels and packaging for Natural American Spirit menthol cigarettes, representing those cigarettes as "Natural" and "Additive-Free."  Ms. Blevins regularly purchased varieties of Natural American

Spirit menthol cigarettes, including purchases in North Carolina.  The Natural American Spirit menthol cigarettes Ms. Blevins purchased were all uniformly labeled as "Natural" and "Additive-Free," and she made those purchases at a price premium compared to other menthol cigarettes because she believed that they were in fact made with additive-free tobacco and were safer and healthier because Natural American Spirit cigarettes were represented to be "Natural" and "Additive-Free."

24.    Defendant Santa Fe Natural Tobacco Company, Inc. is a New Mexico corporation whose principal place of business is in Santa Fe, New Mexico.

25.    Defendant Reynolds American Inc. is a North Carolina corporation whose principal place of business is in Winston-Salem, North Carolina.  SFNT is an operating subsidiary of Reynolds.

26.    Defendant R.J. Reynolds Tobacco Company is a North Carolina corporation whose principal place of business is in Winston-Salem, North Carolina.  Like SFNT, RJR is an operating subsidiary of Reynolds.

27.    Reynolds and RJR are intimately involved in the marketing, advertising, and overall business development of Natural American Spirit cigarettes.

28.    Reynolds not only approves all decisions made by SFNT with respect to the marketing, design, and composition of Natural American Spirit cigarettes, but it plays a central role in developing Natural American Spirit's advertising.  For example, in addressing the recent Natural American Spirit advertising blitz, Reynolds issued a statement to Convenience Store News: "Reynolds has said the company believes the new cigarette and snus ads 'are in full compliance' with the Master Settlement Agreement.  'We review readership data and analyze the

editorial content of the publications over time to be sure the topics covered have a predominant adult appeal and focus, and only advertise in magazines that have adult readership of 85 percent or higher,' RAI said in a statement to the news outlet."[1]

29.     RJR has service agreements with SFNT and other Reynolds subsidiaries, which according to Reynolds, enables an "integrated" system where the executives from Reynolds and RJR "collaborate to develop, coordinate, and execute programs to achieve company-wide goals and targets, and guidelines through which initiatives are reviewed and approved."[2]

30.     In effect since at least 2010, the RJR-SFNT service agreement provides for various functions that RJR performs for SFNT.  These include consulting on market research and planning, consumer engagement, and research and development.

31.     RJR employees consult with SFNT on, among other things, brand equity research studies, consumer perception studies, consumer concept studies, and direct mail advertising.

32.     SFNT uses RJR's Standard Operating Procedures – an 800-page document – on consumer engagement.  RJR employees consult with SFNT on that as well.

33.     RJR employees also assist SFNT in managing SFNT's smoker database.

34.     Reynolds' financial strength depends, in part, on SFNT's financial strength and Reynolds exercises control over SFNT's corporate decision-making.

---

[1] *National Ad Campaign Promotes RAI's Natural American Spirit*, CONVENIENCE STORE NEWS (July 14, 2015), http://www.csnews.com/product-categories/tobacco/national-ad-campaign-promotes-rais-natural-american-spirit (last visited Aug. 4, 2016).

[2] Supplier Guide: Reynolds American Inc. and its subsidiaries, *available at* http://sustainability.reynoldsamerican.com/documents/Supplier_Guide.pdf (last visited Sept. 14, 2016).

35.     Reynolds considers SFNT an operating segment: SFNT's assets are Reynolds' assets.   Reynolds essentially controls the financial operations of SFNT, including SFNT's business initiatives and capital expenditures.   SFNT employees are considered Reynolds' employees; board members between SFNT and Reynolds overlap; Reynolds controls pricing for its subsidiaries; Reynolds owns its operating subsidiaries' executive offices and manufacturing facilities; Reynolds reports SFNT's financial statements in its SEC filings; and Reynolds requires SFNT to make capital investments to support other Reynolds' brands such as VUSE.

36.     Reynolds' involvement and control over SFNT's advertising is exhibited in Reynolds response to the Food and Drug Administration's (the "FDA") August 27, 2015 Warning Letter concerning the advertising of Natural American Spirit cigarettes.   Mitchell A Neuhauser, Vice President and Assistant General Counsel for Reynolds, responded to the FDA on September 18, 2015 on SFNT's behalf.   Mr. Neuhauser also requested an in-person meeting with the FDA for mid-November.   Mr. Neuhauser designated various Reynolds and Reynolds' affiliated representatives to address the issues raised in the Warning Letter.   None of the designated representatives were from SFNT.   All proposed attendees were instead from Reynolds or RJR.   Accordingly, the November 2015 meeting, and upon information and belief, all subsequent FDA interaction regarding Natural American Spirit labeling and advertising, only included Reynolds and RJR representatives.

**JURISDICTION AND VENUE**

37.     This court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because the aggregate claims of the Class (as defined below) exceed the sum or value of $5,000,000.00, and there is minimal diversity of citizenship between Plaintiffs and proposed class members, and Defendants.

38.     This Court has personal jurisdiction over Defendants because they intentionally avail themselves of the rights and privileges of conducting business in New Mexico and the other Districts in which the actions that comprise this multi-district litigation originated and in which members of the Classes reside, and they have continuous and systematic contacts with New Mexico and those other states, owing to Defendants' advertising and sales targeting citizens in all fifty states, the District of Columbia, and U.S territories.

39.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because substantial acts in furtherance of the alleged improper conduct giving rise to the claims herein, including the dissemination of false and misleading information regarding Natural American Spirit cigarettes, occurred within this District, and because SFNT is headquartered in this District.

## FACTUAL ALLEGATIONS

**A.     Defendants Prominently Label Natural American Spirit Cigarettes With "Natural" And "Additive-Free" Representations.**

40.     Defendants sell Natural American Spirit cigarettes in differently-colored packs, all of which Defendants uniformly and prominently label and advertise with representations that the cigarettes are "Natural" and "100% Additive-Free."





41.     The primary differentiators of Natural American Spirit cigarettes from other cigarettes are Defendants' claims that they are "Natural" and "Additive-Free."

**B.      Defendants Reinforce The "Natural" and "Additive-Free"
          Label Claims With A Uniform And Pervasive Marketing Campaign.**

42.     Defendants' advertising for Natural American Spirit cigarettes has been replete with the uniform representations that cigarettes are "Natural" and "100% Additive-Free."

43.     A collection of Defendants' print advertisements for Natural American Spirit cigarettes shows Defendants' prominent and uniform use of the central message of the claims that the cigarettes are "Natural" and "Additive-Free":

## 2015



## 2015



## 2013



## 2013





44.     "Natural" and "Additive-Free" advertising claims have been used by SFNT throughout the history of the company.  In 2015, for example, Defendants launched a nationwide ad campaign targeting such popular magazines as Sports Illustrated, Time, Field and Stream, Southern Living, Architectural Digest, Vanity Fair and US Weekly.  As Seth Moskowitz, a spokesman for SFNT, explained: "The aim is to drive brand awareness, highlight Natural

American Spirit's 100-percent additive-free natural tobacco proposition, and generate trial among adult smokers."

45.     This marketing approach has been wildly successful for Defendants.

a.      Sales of Natural American Spirit cigarettes increased by 86% from 2009 to 2014, compared to an overall 17% decline in cigarette sales in the United States over the same time period.

b.      Natural American Spirit's share of market more than doubled between 2010 and 2015.

c.      Natural American Spirit saw a 21.4% increase in sales volume from 2014 to 2015, selling 900 million more cigarettes in 2015 than in 2014 for a total of 4.8 billion cigarettes sold.  It had grown 10% between 2013 and 2014, i.e., its most recent annual growth more than doubles its previous year's growth.

d.      Reynolds recently sold the international rights to the Natural American Spirit brand name and trademarks for $5 billion.

46.     The advertising and marketing campaign for the Natural American Spirit cigarettes is systematic and pervasive such that Defendants ensured that all consumers purchasing the cigarettes were exposed to the "Natural" and "Additive-Free" representations.

**C.      Defendants' Mislead Reasonable Consumers Into Believing That
         Natural American Spirit Cigarettes Are Less Harmful Than Other Cigarettes.**

47.     Tobacco companies, led by Reynolds, have long sought to sell cigarettes by promising safer and healthier smoking options.  First tobacco companies touted the use of filters as a safer and healthier alternative, and then it was "low tar" or "light" cigarettes.  Indeed, the

holy grail of tobacco companies is the creation and marketing of a cigarette that the public believes is safer and healthier.

48.     Capitalizing on the growing desire of American consumers to use products that are natural and not filled with additives, Reynolds and SFNT have deliberately and misleadingly built their brand around their "Natural" and "Additive-Free" claims in order to deceive consumers into thinking that their cigarettes are safer or healthier than other cigarettes.

49.     The claims "Natural" and "Additive-free" connote safer and healthier cigarettes because consumers associate smoking cigarettes with non-natural additives as being dangerous and unhealthy.  Indeed, research demonstrates that consumers believe that Natural American Spirit cigarettes are safer, healthier and less harmful to smoke because they purport to be "Natural" and "Additive-Free."

50.     As one study conducted by researchers at the University of California found, "[t]he idea that cigarettes are natural may also help smokers down-play the risks of smoking, as 'natural' risks inspire less concern that unnatural ones . . . smokers  . . . frequently concluded that 'natural' cigarettes must be healthier or safer than cigarettes containing chemicals . . ."[3]

51.     The study's authors concluded that "[t]he tobacco industry is adept at easing smokers' health concerns through such product modifications as filters and (seemingly) reduced

---

[3] McDaniel, Patricia A. & Ruth E. Malone, *"I Always Thought They Were All Pure Tobacco":* *American Smokers' Perceptions of "Natural" Cigarettes and Tobacco Industry Advertising* *Strategies*, 16 Tobacco Control e7 (2007), available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2807204/ (last visited Nov. 2, 2015).

tar. American tobacco companies have understood, for decades, that 'natural' is similarly misleading and implies unwarranted health claims."[4]

52.     Other studies confirm that consumers believe that additive-free cigarettes are safer and healthier than other cigarettes. For example, in a survey of more than 1000 smokers in the United States, 60% thought that removing additives made a cigarette less dangerous to smoke, and 73% believe that cigarettes with additives were more harmful than those that did not have the additives.[5]

53.     Reynolds has long known and understood that marketing any cigarette as "Additive-free" would "reduce the perceived primary health concern" involved in smoking.[6] In fact, in the 1990s, Reynolds regarded a natural version of Winston as appealing to "concerned smokers" worried about "ingredients, yield, risk factors."[7]

54.     Expecting that regulators would express concern over marketing an additive-free cigarette (because it implies untruthful health claims), Reynolds conducted marketing studies to show that people do not think that "Additive-Free" means safer or healthier (so it could deflect regulators' attention). But the result was not what Reynolds expected; to the contrary, the research showed that even when answering leading and biased questions designed to elicit

---

[4] *Id.*

[5] Cummings, K.M., et al., "Are smokers adequately informed about the health risks of smoking and medicinal nicotine?" *Nicotine & Tobacco Research* 6(3): S333-340, 2004.

[6] Memorandum from T.C. Hayes & W.J. Moore (July 22, 1983), *available at* http://legacy.library.ucsf.edu/tid/siz55f00 (last visited Aug. 24, 2016).

[7] RJ Reynolds Segmentation/Positioning Memorandum (Apr. 21, 1995), *available at* http://legacy.library.ucsf.edu/tid/hjw66d00 (last visited Aug. 24, 2016).

responses showing consumers do not think additive free is safer or healthier, consumers believed that additive-free cigarettes were safer or healthier.[8]

55.     The deceptive nature of Defendants' claims is further confirmed by a 2006 ruling by United States District Court Judge for the District of Columbia Judge Gladys Kessler.  *See United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006).  The Department of Justice brought a RICO action against numerous tobacco companies, including predecessor companies and subsidiaries of Defendant Reynolds, relating to the use of deceptive brand descriptors, such as "natural," "light" and "mild."  Following a bench trial, Judge Kessler issued a 1,652 page decision which found, among other things, that the defendants' use of the brand descriptor "natural" misleadingly conveyed to consumers that the cigarettes were less hazardous to health.  Judge Kessler specifically found that defendant Brown & Williamson, which Reynolds' predecessor R.J. Reynolds Tobacco Holdings, Inc. acquired in 2005, developed "natural" branded cigarettes with knowledge that "market research show[s] that consumers incorrectly interpret the word 'natural' to mean that the cigarettes are safer and healthier than conventional cigarettes . . ."  *Id.* at 924.  As a result of these findings, Judge Kessler enjoined the defendants from using the brand descriptor "natural."  Judge Kessler's ruling was affirmed by the United States Court of Appeals, District of Columbia Circuit.  *United States v. Philip Morris USA Inc.*, 556 F.3d 1095, 1150 (D.C. Cir. 2009).

56.     The FDA agrees that labeling Natural American Spirit cigarettes as "Natural" and "Additive-Free" conveys to reasonable consumers that Defendants' cigarettes are safer and healthier than the alternative.  On August 27, 2015, the FDA sent a Warning Letter to SFNT

---

[8] Cummings at 6.

declaring that several of its cigarette products are "adulterated" under section 902(8) of the FD&C Act, 21 U.S.C. § 387b(8), and unapproved "modified risk tobacco products" under section 911(g) of the FD&C Act, 21 U.S.C. § 387k(g).  The FDA concluded that:

> Your product labeling for Natural American Spirit cigarettes, which uses the descriptors "Natural" and "Additive Free," represents explicitly and/or implicitly that the products or their smoke do not contain or are free of a substance and/or that the products present a lower risk of tobacco-related disease or are less harmful than one or more other commercially marketed tobacco products.

**D.  Natural American Spirit Cigarettes Are Not Safer Or Less Harmful Than Other Cigarettes.**

57.     Natural American Spirit cigarettes are not safer or healthier than other cigarettes, a truth that Defendants do not deny.  Nor can they.

58.     There is no scientific support for the claim that Natural American Spirit cigarettes are safer or healthier.[9]

59.     In fact, research suggests that Natural American Spirit cigarettes contain more harmful ingredients or substances than other cigarettes.  In one 2015 study, scientists from the Center for Tobacco Products and the Tobacco and Volatiles Branch of the Centers for Disease Control and Prevention examined polycyclic aromatic hydrocarbons (PAHs), a class of known carcinogenic compounds in cigarette smoke.  PAHs do not occur naturally in the tobacco plant; rather, they are formed during the smoking process.  Of the 50 mainstream U.S. cigarettes tested, the Natural American Spirit cigarettes from the blue box had the highest total PAH yields.  These

---

[9] FDA Warning Letter to Santa Fe Natural Tobacco Company, Inc. (Aug. 27, 2015), *available at* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2015/ucm459778.htm (last visited Nov. 2, 2015).

cigarettes delivered from 60% to 170% higher PAH yields that the average PAH yields of all cigarettes analyzed.[10]

60.     Natural American Spirit cigarettes also contain more heavy metals than other cigarettes.  Researchers from the Centers for Disease Control and Prevention recently tested 50 varieties of cigarettes available in the United States.  They concluded that Natural American Spirit cigarettes "had the highest mean concentrations for cadmium and mercury."[11]  Cadmium is not only a known carcinogen; it is also associated with chronic obstructive pulmonary disease and nephrotoxicity.[12]  Mercury causes a wide array of well-known deleterious health effects.

61.     The danger and health effects of any cigarette are also determined by the extent to which it is addictive.  The more people smoke, the greater the risk of health harms like cancer and emphysema.  Defendants intentionally engineered Natural American Spirit cigarettes to be at least as addictive as other cigarettes by creating "free-base" nicotine.

62.     Nicotine occurs naturally in tobacco plants as either an acid or a base.  The acidic form is more stable, and therefore more concentrated. The basic form, known as "free-base" nicotine, is volatile, especially when smoked.  As a result, it is absorbed quickly and efficiently into the lungs when a person smokes, where it quickly reaches the brain. Acidic nicotine, conversely, clings to the particles of smoke as they settle into the lungs, and is slowly absorbed

---

[10] An T. Vu et al., "Polycyclic Aromatic Hydrocarbons in the Mainstream Smoke of Popular U.S. Cigarettes," National Center for Biotechnological Information (July 30, 2015) *available at* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC4540633/ (last visited Aug. 30, 2016).

[11] Mark R. Fresquez, R. Steven Pappas, and Clifford H. Watson, "Establishment of Toxic Metal Reference Range in Tobacco from U.S. Cigarettes,"  J. Anal Toxicol. 2013 Jun; 37(5): 298–304.

[12] *Id.*

before it is transported to the brain.  The difference between free-base and naturally occurring nicotine is analogous to the difference between powder and crack cocaine.

63.    Defendants manipulate the design and manufacture of the cigarettes to maximize the amount of free-base nicotine.

64.    James Pankow of Oregon Health and Science University in Portland compared the levels of free-base nicotine found in the most common brands of American cigarettes. Natural American Spirit cigarettes contained the most free-base form of nicotine: 36 percent free-base nicotine, compared with 9.6 percent in a Marlboro, 2.7 percent in a Camel, and 6.2 percent in a Winston.[13]  These high levels of free-base nicotine do not occur naturally; instead, Defendants engineer their so-called natural cigarette to boost free-base nicotine.

E.    **Natural American Spirit Menthol Cigarettes Contain Additives.**

65.    Contrary to the explicit claim on every label that Natural American Spirit cigarettes contain "additive-free natural tobacco," Defendants add additives to Natural American Spirit menthol cigarettes.

66.    Defendants place menthol in the cigarette filters.  Because menthol is highly volatile, it migrates into the tobacco and throughout the cigarette, providing the menthol flavor. As the FDA has noted, "menthol diffuses throughout the cigarette irrespective of where it was

---

[13] Pankow, J., Barsanti, K., & Peyton, D. "Fraction of Free-Base Nicotine in Fresh Smoke Particulate Matter from the Eclipse Cigarette by 1H NMR Spectroscopy." *Chem. Res. in Toxicology* 16(1): 23-27 (2003).

applied."[14]  Thus, by adding menthol to the filter, Defendants add menthol (an additive) to the tobacco, making their "Additive-Free" claims literally false.

67.     As shown in an early Liggett experiment ("10 by 10", a brand intended to have 10 menthol and 10 non-menthol cigarettes in the pack), menthol contaminates everything in a pack: "[I]t didn't work out.  Needless to say, the menthol moved or equilibrated making all cigarettes taste the same.  But Liggett learned from this brand.  Today no menthol is applied to their filler.  Instead they apply menthol to their brands at the packer.  Menthol is applied to the paper side of the foil and allowed to equilibrate in the pack."[15]

## F.      Defendants Use Of The Term "Natural" Is Deceptive.

68.     Defendants proclaim on every package of Natural American Spirit cigarettes that they are "Natural."  Defendants reinforce this concept through advertisements like "Tobacco + Water," tobacco leafs covered in drops of dew or rain and Native American imagery, i.e. the Natural American Spirit smoker is smoking what Native Americans are thought to have smoked hundreds of years ago.

69.     The Natural American Spirit cigarette is anything but "Natural."  Defendants subject the tobacco in Natural American Spirit cigarettes to various complex, highly technical and unnatural engineering processes, rendering this representation false and misleading.

---

[14] Draft Paper: Chapter III: The Physiological Effects of Menthol Cigarettes, FDA.gov, *available at*  http://www.fda.gov/downloads/AdvisoryCommittees/ CommitteesMeetingMaterials/TobaccoProductsScientificAdvisoryCommittee/UCM244975.pdf (last visited Sept. 14, 2016).

[15] "Menthol Loss from Application to Customer" Memorandum from R.M. Gohmann  (Dec. 7, 1978), *available at* https://www.industrydocumentslibrary.ucsf.edu/tobacco/docs/fnln0130 (last visited Sept. 14, 2016).

70.     For example, the tobacco in Natural American Spirit cigarettes is flue-cured.  This is a technical process where the tobacco is heated to unnaturally seal in sugars and thereby artificially lower the pH of the cigarette smoke.  In its natural state, tobacco has a high pH content, which makes inhalation too harsh.  By lowering the pH, the cigarette becomes inhalable.[16]

71.     The tobacco in Natural American Spirit cigarettes is also artificially blended.

72.     The flue-curing, blending and other engineering processes are no different than that of other cigarettes, yet Defendant's use of the word "Natural" deceives Natural American Spirit smokers into thinking that they are different.

73.     Reasonable consumers, including Plaintiffs and the class members, value natural products for important reasons, including the belief that they are safer and healthier than alternative cigarettes that are not represented as being natural.

74.     Whether Defendants' labeling of the cigarettes as "Natural" is deceptive is judged by whether it would deceive or mislead a reasonable person.

75.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

---

[16] "Tobacco smoke was rarely inhaled prior to the nineteenth century; it was too harsh, too alkaline.  Smoke first became inhalable with the invention of *flue curing*, a technique by which the tobacco leaf is heated during fermentation, preserving the sugars naturally present in the unprocessed leaf.  Sugars when they burn produce acids, which lower the pH of the resulting smoke, making it less harsh, more inhalable.  There is a certain irony here, since these 'milder' cigarettes were actually far more deadly, allowing smoke to be drawn deep into the lungs." Robert N. Proctor, "Why ban the sale of cigarettes? The case for abolition," Tobacco Control (Jan. 17, 2013), *available at* http://tobaccocontrol.bmj.com/content/22/suppl_1/i27.full (last visited Sept. 8, 2016) (emphasis in original).

76. Defendants failed to disclose that the cigarettes are not, in fact, natural, and have thus violated the law as described below.

77. The marketing of the Natural American Spirit as "Natural" in a prominent location on the labels of Natural American Spirit evidences Defendants' awareness that "Natural" claims are material to consumers.

78. Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

79. Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the class members.

80. In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for Products labeled "Natural" over comparable products not so labeled.

81. As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiffs and the class members in that they:

      a. Paid a sum of money for Natural American Spirit cigarettes that were not "Natural" and "Additive-Free" as Defendants represented;

      b. Paid a premium price for Natural American Spirit cigarettes that were not "Natural" and "Additive-Free" as Defendants represented;

      c. Were deprived of the benefit of the bargain because the Natural American Spirit cigarettes they purchased were different from

what Defendants warranted;

d.  Were deprived of the benefit of the bargain because the Natural American Spirit cigarettes they purchased had less value than what Defendants represented;

e.  Ingested a substance that was of a different quality than what Defendants promised; and

f.  Were denied the benefit of the beneficial properties of the natural cigarettes Defendants promised.

82.  Had Defendants not made these false, misleading, and deceptive representations and omissions, Plaintiffs and the class members would not have been willing to pay the same amount for the Natural American Spirit cigarettes they purchased.

83.  Plaintiffs and the class members paid for Natural American Spirit cigarettes that were "Natural" and "Additive-Free" but received Natural American Spirit cigarettes that were not natural or, in the case of menthols, free of additives.  The Natural American Spirit cigarettes Plaintiff and the class members received were worth less than the Natural American Spirit cigarettes for which they paid.

84.  Based on Defendants' misleading and deceptive representations, Defendants were able to, and did, charge a premium price for the Natural American Spirit cigarettes over the cost of competitive products not bearing a "Natural" label.

85.  Plaintiffs and the class members all paid money for the Natural American Spirit cigarettes.  However, Plaintiffs and the class members did not obtain the full value of the advertised Natural American Spirit cigarettes due to Defendants' misrepresentations and omissions.  Plaintiffs and the class members purchased, purchased more of, and/or paid more for, Natural American Spirit cigarettes than they would have had they known the truth.

Consequently, Plaintiffs and the class members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

**G.    Defendants Are Able To And Do Charge A Price Premium For Natural American Spirit Cigarettes Because Consumers Believe That They Are Less Harmful Than Other Cigarettes.**

86.    Defendants can and do charge a price premium for Natural American Spirit cigarettes because consumers believe that they are healthier and safer.  As a result, Natural American Spirit is the most expensive of the major brands.

87.    As Reynolds proudly informs its shareholders:

Santa Fe competes in the U.S. cigarette market with its NATURAL AMERICAN SPIRIT brand, which is the fastest growing super-premium cigarette brand and is a top 10 best-selling cigarette brand. It is priced higher than most other competitive brands, and is differentiated from key competitors through its use of all natural, additive-free tobacco, including styles made with organic tobacco.[17]

88.    Defendants' deceptive marketing of Natural American Spirit cigarettes has helped the brand increase sales by 86 percent from 2009 to 2014, even as overall cigarette sales in the United States fell by 17 percent during the same period.[18]

---

[17] Reynolds American, Inc. Form 10-Q United States Securities and Exchange Commission Filing for the Quarterly Period Ended March 31, 2016 (Apr. 26, 2016) *available at* http://s2.q4cdn.com/129460998/files/doc_financials/2016/RAI-Q116-10-Q.pdf (last visited Aug. 26, 2016).

[18] Matthew L. Meyers, "FDA Warning About Deceptive Marketing of Natural American Spirit Cigarettes, Other Brands Is Critically Important to Protect Consumers," PRNewswire-USNewswire (Aug. 27, 2015), *available at* http://www.prnewswire.com/news-releases/fda-warning-about-deceptive-marketing-of-natural-american-spirit-cigarettes-other-brands-is-critically-important-to-protect-consumers-300134309.html (last visited Nov. 2, 2015).

**H.**     **Defendants' Deceptive Claims Are Intentional And Willful.**

89.     Based on decades of market research and experience, Defendants know full well that consumers understand and believe from the prominent and central use of the terms "Natural" and "Additive-Free" that Natural American Spirit cigarettes are safer and healthier than other cigarettes.  Indeed, Defendants intentionally capitalize on consumers' hope for a healthy life by selling "Natural" and additive-free cigarettes and charging a handsome premium accordingly.

90.     Defendants also know full well that their cigarettes are no safer or healthier than any other cigarette.  In fact, Defendants intentionally engineer Natural American Spirit cigarettes to be at least as addictive as other cigarettes so that they can ensure a captive and profitable market for their cigarettes, notwithstanding that they know consumers will die as a result.

91.     Defendants' use of an unfair and deceptive scheme to prioritize their profits at the expense of consumers demonstrates that they acted with intentional and willful intent to the disregard of the health and safety of others.

92.     Defendants' violations present a continuing risk to Plaintiffs, the Classes, as well as to the general public, not only because consumers are overpaying for goods as a direct result of Defendants' deceptive and unfair acts and omissions, but because Defendants' acts and omission have a direct and deleterious effect on public health.  Defendants' unlawful acts and practices complained of herein affect the public interest.

93.     Plaintiffs and the Classes seek punitive damages against Defendants because Defendants' conduct was malicious, willful, reckless, wanton, and in bad faith.  Defendants willfully misrepresented the ingredients and nature of Natural American Spirit cigarettes, deceived class members on matters involving a substantial risk of adverse health effects, and

concealed material facts that only they knew, all to reap profits by portraying Natural American Spirit cigarettes as a healthy or less harmful cigarette and also by making the literally false claims that the cigarettes are "Natural" and "Additive-Free."  Defendants' malicious, willful, reckless, wanton, and bad faith conduct warrants punitive damages.

## TOLLING

**I.      Plaintiffs Are Entitled To Equitable Tolling Under The Discovery Rule.**

94.     Class members had no way of knowing about the deceptive practices complained of herein.

95.     At not time could Plaintiffs and the other class members have discovered through the exercise of reasonable diligence that Defendants were concealing and misrepresenting the true quality and nature of Natural American Spirit cigarettes.

96.     Plaintiffs and the other class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Defendants' Natural American Spirit cigarettes are not safer or healthier than other cigarettes.

97.      Plaintiffs and other class members also did not discover, and did not know facts that would have caused a reasonable person to suspect, that Defendants' Natural American Spirit cigarettes did contain additives and were manufactured using non-natural ingredients or processes.

98.     All applicable statutes of limitation have been tolled by operation of the discovery rule.

**J.   Plaintiffs Are Entitled To Equitable Tolling
Because Of Defendants' Fraudulent Concealment.**

99.    All applicable statutes of limitation have also been tolled by Defendants' knowing

and active fraudulent concealment and denial of the facts alleged herein throughout the time

period relevant to this action.

100.    Instead of adequately disclosing that Natural American Spirit cigarettes are no

safer or healthier than other cigarettes, Defendants falsely represented that their cigarettes were,

among other things, "Natural," and "Additive-Free."

**K.   Defendants Are Estopped From Relying On Any Statutes Of Limitations Defense.**

101.    Defendants are, and at all relevant times have been, under a continuous duty to

disclose to Plaintiffs and the other class members the true character, quality, and nature of

Natural American Spirit cigarettes.

102.    Defendants knowingly, affirmatively, and actively concealed the true nature,

quality, and character of Natural American Spirit cigarettes from consumers.

103.    Based on the foregoing, Defendants are estopped from relying on any statutes of

limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

104.    Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure,

Plaintiff Jacques-Rene Hebert (the "California Plaintiff") brings this class action on behalf of

himself and the following Class of similarly-situated individuals:

> All persons who purchased Natural American Spirit cigarettes in
> California (the "California Class").

105.     Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Sara Benson (the "Colorado Plaintiff") brings this class action on behalf of herself and the following Class of similarly-situated individuals:

>   All persons who purchased Natural American Spirit cigarettes in Colorado.  (the "Colorado Class").

106.     Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Justin Sproule (the "Florida Plaintiff") brings this class action on behalf of himself and the following Class of similarly-situated individuals:

>   All persons who purchased Natural American Spirit cigarettes in Florida (the "Florida Class")

107.     Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Jacques-Rene Hebert (the "Illinois Plaintiff") brings this class action on behalf of himself and the following Class of similarly-situated individuals:

>   All persons who purchased Natural American Spirit cigarettes in Illinois (the "Illinois Class").

108.     Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Jacques-Rene Hebert (the "Massachusetts Plaintiff") brings this class action on behalf of himself and the following Class of similarly-situated individuals:

>   All persons who purchased Natural American Spirit cigarettes in Massachusetts (the "Massachusetts Class").

109.     Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Jacques-Rene Hebert (the "Michigan Plaintiff") brings this class action on behalf of himself and the following Class of similarly-situated individuals:

>   All persons who purchased Natural American Spirit cigarettes in Michigan (the "Michigan Class").

110.     Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Abigail Emmons (the "New Jersey Plaintiff") brings this class action on behalf of herself and the following Class of similarly-situated individuals:

> All persons who purchased Natural American Spirit cigarettes in New Jersey (the "New Jersey Class").

111.     Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Ceyhan Haksal (the "New Mexico Plaintiff") brings this class action on behalf of herself and the following Class of similarly-situated individuals:

> All persons who purchased Natural American Spirit cigarettes in New Mexico (the "New Mexico Class).

112.     Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Jacques-Rene Hebert (the "New York Plaintiff") brings this class action on behalf of himself and the following Class of similarly-situated individuals:

> All persons who purchased Natural American Spirit cigarettes in New York (the "New York Class").

113.     Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Rudolph Miller (the "North Carolina Plaintiff") brings this class action on behalf of himself and the following Class of similarly-situated individuals:

> All persons who purchased Natural American Spirit cigarettes in North Carolina (the "North Carolina Class").

114.     Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Jacques-Rene Hebert (the "Ohio Plaintiff") brings this class action on behalf of himself and the following Class of similarly-situated individuals:

> All persons who purchased Natural American Spirit cigarettes in Ohio (the "Ohio Class").

115.     Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Carol Murphy (the "Washington Plaintiff") brings this class action on behalf of herself and the following Class of similarly-situated individuals:

> All persons who purchased Natural American Spirit cigarettes in Washington (the "Washington Class").

116.     Plaintiff Francisco Chavez (the "California Menthol Plaintiff") also seeks to represent a subclass defined as:

> All persons who purchased Natural American Spirit menthol cigarettes in California (the "California Menthol Subclass").

117.     Plaintiff Joshua Horne (the "Colorado Menthol Plaintiff") also seeks to represent a subclass defined as:

> All persons who purchased Natural American Spirit menthol cigarettes in Colorado (the "Colorado Menthol Subclass").

118.     Plaintiff Joshua Horne (the "Florida Menthol Plaintiff") also seeks to represent a subclass defined as:

> All persons who purchased Natural American Spirit menthol cigarettes in Florida (the "Florida Menthol Subclass").

119.     Plaintiff Albert Lopez (the "Illinois Menthol Plaintiff") also seeks to represent a subclass defined as:

> All persons who purchased Natural American Spirit menthol cigarettes in Illinois (the "Illinois Menthol Subclass").

120.     Plaintiff Robert Litwin (the "New Jersey Menthol Plaintiff") also seeks to represent a subclass defined as:

> All persons who purchased Natural American Spirit menthol cigarettes in New Jersey (the "New Jersey Menthol Subclass").

121.   Plaintiff Joshua Horne (the "New Mexico Menthol Plaintiff") also seeks to represent a subclass defined as:

> All persons who purchased Natural American Spirit menthol cigarettes in New Mexico (the "New Mexico Menthol Subclass").

122.   Plaintiff Robert Litwin (the "New York Menthol Plaintiff") also seeks to represent a subclass defined as:

> All persons who purchased Natural American Spirit menthol cigarettes in New York (the "New York Menthol Subclass").

123.   Plaintiff Charlene Blevins (the "North Carolina Menthol Plaintiff") also seeks to represent a subclass defined as:

> All persons who purchased Natural American Spirit menthol cigarettes in North Carolina (the "North Carolina Menthol Subclass").

124.   Plaintiffs Francisco Chavez, Joshua Horne, Albert Lopez, Robert Litwin, and Charlene Blevins (collectively, the "Nationwide Menthol Plaintiffs") also seek to represent a subclass defined as:

> All persons who purchased Natural American Spirit menthol cigarettes in the United States (the "Nationwide Menthol Class").

125.   Excluded from the above "Classes" and "Subclasses" are Defendants, any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants, and Defendants' legal representatives, assignees, and successors.  Also excluded are the Judge to whom this case is assigned and any member of the Judge's immediate family.

126.   <u>Numerosity</u>.  The Classes each consist of many thousands of persons and are therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.

127.   <u>Commonality.</u>   There are questions of law or fact common to the Classes that predominate over any questions affecting only individual members, including:

       i.        whether Defendants violated state consumer protection laws*;*

       ii.        whether Defendants engaged in deceptive or misleading acts or practices by labeling Natural American Spirit cigarettes as "Natural" and "Additive-Free";

       iii.        whether Plaintiffs and members of the Classes paid a price premium for Natural American Spirit cigarettes because they are labeled as "Natural" and "Additive-Free";

       iv.        whether Natural American Spirit cigarettes are in fact "Additive-Free";

       v.        whether Defendants are being unjustly enriched by their deceptive or misleading acts or practices;

       vi.        whether Plaintiffs and the Classes have sustained damages and, if so, the proper measure thereof;

       vii.        whether Plaintiffs and the Classes are entitled to restitution, and if so, the proper measure thereof; and

       viii.        whether Defendants should be enjoined from continuing to sell Natural American Spirit cigarettes as currently labeled;

128.   <u>Typicality</u>.   Plaintiffs' claims are typical of the claims of the Classes.  Plaintiffs suffered the same injury as members of the Classes -- i.e., Plaintiffs purchased Natural American Spirit cigarettes after seeing Defendants' misleading representations about the quality and nature

of those products and paid more money than they otherwise would have as a direct result of Defendants' deceptive labeling.

129.   Adequacy.  Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs have retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so.  Neither Plaintiffs nor their counsel have interests that are contrary to or that conflict with those of the proposed Classes.

130.   Predominance.  Defendants have engaged in a common course of conduct toward Plaintiffs and members of the Classes.  The common issues arising from this conduct that affect Plaintiffs and class members predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

131.   Superiority.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

        i.      Absent a class action, class members as a practical matter will be unable to obtain redress, Defendants' violations of their legal obligations will continue without remedy, additional consumers and purchasers will be harmed, and Defendants will continue to retain their ill-gotten gains;

        ii.      It would be a substantial hardship for most individual members of the Classes if they were forced to prosecute individual actions;

        iii.      Once the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Classes;

iv.     A   class   action   will   permit   an   orderly   and   expeditious administration of the Classes' claims, foster economies of time, effort, and expense, and ensure uniformity of decisions;

v.     The   lawsuit   presents   no   difficulties   that   would   impede   its management by the Court as a class action; and

vi.     Defendants   have   acted   on   grounds   generally   applicable   to members of the Classes, making class-wide relief appropriate.

132.     <u>Injunctive and Declaratory Relief Appropriate</u>.  A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to members of the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to all members of the Classes.

## **<u>CAUSES OF ACTION</u>**

### **<u>CALIFORNIA COUNT I</u>**
**(Violation Of The Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.***
**On Behalf Of The California Class And The California Menthol Subclass)**

133.     Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

134.     The California Plaintiff and The California Menthol Plaintiff and each member of the California Class and California Menthol Subclass are "Consumer[s]" as that term is defined by Cal. Civ. Code §1761(d).

135.     Natural American Spirit cigarettes are each a "Good" as that term is defined by Cal. Civ. Code §1761(a).

136.     Defendants are "Person[s]" as defined by Cal. Civ. Code §1761(c).

137.     The transaction(s) involved here are "Transaction(s)" as defined by Cal. Civ. Code §1761(e).

138.     The California Plaintiff, California Menthol Plaintiff, California Class Members and California Menthol Subclass Members are consumers who purchased the Products for personal use within the applicable statute of limitations period.

139.     The California Plaintiff and California Menthol Plaintiff have standing to pursue this cause of action because they have suffered injury-in-fact and have lost money or property as a result of Defendants' action as set forth herein.

140.     Defendants have engaged in and continue to engage in business practices in violation of the Consumers Legal Remedies Act in at least the following ways:

     a.     Defendants have used deceptive representations with respect to Natural American Spirit cigarettes in violation of Cal. Civ. Code §1770(a)(4);

     b.     Defendants have misrepresented the sponsorship, approval, characteristics, or ingredients of Natural American Spirit cigarettes in violation of Cal. Civ. Code §1770(a)(5);

     c.     Defendants have misrepresented the standard, quality, or grade of Natural American Spirit cigarettes in violation of Cal. Civ. Code §1770(a)(7).

141.     Defendants knew or should have known that their representations of fact concerning Natural American Spirit cigarettes were material and likely to mislead consumers.

142.     Defendants' practices, acts, and course of conduct in marketing and selling Natural American Spirit cigarettes were, and are, likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.  The California Plaintiff, California

Menthol Plaintiff, California Class Members and California Menthol Subclass Members would not have purchased Natural American Spirit cigarettes, or they would not have paid as much for the cigarettes as they did, had they know they were not safer or healthier than other cigarettes or that they contained additives.

143.     The California Plaintiff, California Menthol Plaintiff, California Class Members and California Menthol Subclass Members have been directly and proximately damaged by Defendants' actions.

144.     Pursuant to California Civil Code § 1780(a) and (e), the California Plaintiff, California Menthol Plaintiff, California Class Members and California Menthol Subclass Members seek: (1) an order enjoining Defendants' unlawful business practices as alleged herein; (2) actual damages; (3) restitution; (4) ancillary relief; and (5) attorneys' fees and costs to the full extent allowed by law.

145.     There is no other adequate remedy at law, and the California Plaintiff, California Menthol Plaintiff, California Class Members and California Menthol Subclass Members will suffer irreparable harm unless Defendants' conduct is enjoined.

146.     Defendants were provided with written notice that their conduct is in violation of the Consumers Legal Remedies Act at least thirty days prior to the filing of this Complaint. Thus, pursuant to Cal. Civ. Code § 1782, Plaintiffs may maintain this action for damages.

147.     Defendants have engaged in, and continue to engage in, business practices in violation of the Consumers Legal Remedies Act by continuing to make false and deceptive representations concerning the ingredients contained in Natural American Spirit cigarettes. These business practices are misleading and/or likely to mislead consumers and should be

enjoined.

## CALIFORNIA COUNT II

**(Violation Of False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*
On Behalf Of The California Class And The California Menthol Subclass)**

148.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

149.    The California Plaintiff, California Menthol Plaintiff, California Class Members and California Menthol Subclass Members have standing to pursue a cause of action for false advertising under the False Advertising Law, because they have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

150.    Defendants labeled, marketed, and otherwise disseminated information to the public through advertising mediums statements to the effect that Natural American Spirit cigarettes are natural and additive-free and less harmful, safer and healthier than other cigarettes.

151.    Defendants' statements were and are deceptive and misleading.

152.    Defendants know and knew that these statements are deceptive and misleading, or could have discovered their deceptiveness and misleading effect with the exercise of reasonable care.

153.    Defendants' deceptive and misleading statements were part of a scheme or plan to sell Natural American Spirit cigarettes to the public at a premium without disclosing that they are not safer or healthier than other cigarettes or that they contain additives.

154.    Defendants' actions violate the False Advertising Law.

155.    As a direct and proximate result of Defendants' actions, as set forth herein, Defendants have received ill-gotten gains and/or profits, including but not limited to money from

California Plaintiff, California Menthol Plaintiff, California Class Members and California

Menthol Subclass Members who paid a premium for Natural American Spirit cigarettes.

Therefore, Defendants have been unjustly enriched.

156.    The California Plaintiff, California Menthol Plaintiff, California Class Members

and California Menthol Subclass Members seek injunctive relief, restitution, and restitutionary

disgorgement of Defendants' ill-gotten gains as provided for by Cal. Bus. & Prof. Code § 17535.

157.    The California Plaintiff, California Menthol Plaintiff, California Class Members

and California Menthol Subclass Members seek injunctive relief to compel Defendant to stop

advertising Natural American Spirit cigarettes as natural and additive free to prevent Defendants

from engaging in these wrongful practices in the future.  No other adequate remedy at law exists.

If an injunction is not ordered, the California Plaintiff, California Menthol Plaintiff, California

Class Members and California Menthol Subclass Members will suffer irreparable harm and/or

injury.

## CALIFORNIA COUNT III
### (Violation Of The Unfair Competition Act, Cal. Bus. & Prof. Code § 17200, *et seq.* On Behalf Of The California Class And The California Menthol Subclass)

158.    Plaintiffs reallege and incorporate by reference each preceding paragraph as

though fully set forth herein.

159.    Defendants' actions as described herein constitute unfair competition within the

meaning of the Unfair Competition Act, insofar as the Unfair Competition Act prohibits "any

unlawful, unfair or fraudulent business act or practice" or "unfair, deceptive, untrue or

misleading advertising."

160.     Defendants' misrepresentations and omissions of material fact as alleged herein constitute unlawful, unfair, and fraudulent business practices in that they have the capacity to deceive the California Plaintiff, California Menthol Plaintiff, California Class Members and California Menthol Subclass Members into believing that Natural American Spirit cigarettes were healthier and safer than other cigarettes and that they contained no additives.

161.     Defendants' conduct constitutes an "unlawful" business practice within the meaning of the Unfair Competition Act because it violates the Consumer Legal Remedies Act, the Fair Advertising Law, and California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875, *et seq*.

162.     Defendants' conduct constitutes an "unfair" business practice within the meaning of the Unfair Competition Act because it is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.  Reasonable consumers purchased Natural American Spirit cigarettes believing they were healthier and safer than other cigarettes and that they contained no additives.  They were not aware and could not have reasonably been aware that Natural American Spirit cigarettes were not safer or healthier or that they contained additives. Defendants' conduct in falsely labeling and packaging Natural American Spirit cigarettes and selling them as such has no utility or countervailing benefit and consumers could not have reasonably avoided their injury.

163.     Defendants' conduct constitutes a "fraudulent" business practice within the meaning of the Unfair Competition Act insofar as Defendants' misrepresentations and omissions regarding the health, characteristics, composition, and quality of Natural American Spirit cigarettes were and are likely to deceive members of the public.

164.     As a direct and proximate result of Defendants' wrongful business practices in violation of the Unfair Competition Act, the California Plaintiff, California Menthol Plaintiff, California Class Members and California Menthol Subclass Members have suffered injury in fact and lost money or property as a result of Natural American Spirit cigarettes.  The California Plaintiffs and California Class Members would not have purchased or paid as much for Natural American Spirit cigarettes had they known that they are not safer or healthier than other cigarettes or that they contained additives.

165.     Defendants' wrongful business practices constitute a continuing course of conduct of unfair competition since Defendants are labeling, marketing, and selling Natural American Spirit cigarettes in a manner likely to deceive the public.

166.     Pursuant to Cal. Bus. & Prof. Code § 17203, the California Plaintiff, California Menthol Plaintiff, California Class Members and California Menthol Subclass Members seek an order of this Court enjoining Defendants from continuing to engage in unlawful, unfair, and deceptive business practices and any other act prohibited by law, including those set forth in this Complaint.  The California Plaintiff, California Menthol Plaintiff, California Class Members and California Menthol Subclass Members also seek an order requiring Defendants to make full restitution of all moneys it wrongfully obtained from the California Plaintiff, California Menthol Plaintiff, California Class Members and California Menthol Subclass Members.

167.     Pursuant to Cal. Bus. & Prof. Code § 17203, the California Plaintiff, California Menthol Plaintiff, California Class Members and California Menthol Subclass Members seek an injunction enjoining Defendant from continuing to market, advertise, and sell Natural American

Spirit cigarettes and to prevent Defendants from continuing to engage in unfair competition or any other act prohibited by law.

## CALIFORNIA COUNT IV
**(Unjust Enrichment On Behalf Of The California Class**
**And The California Menthol Subclass)**

168.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

169.    Because of their wrongful acts and omissions, Defendants charged a higher price for Natural American Spirit cigarettes than their true value and Defendants obtained monies that rightfully belong to California Plaintiff, California Menthol Plaintiff, California Class Members and California Menthol Subclass Members.

170.    The California Plaintiff, California Menthol Plaintiff, California Class Members and California Menthol Subclass Members conferred a benefit on Defendants by purchasing Defendants' Natural American Spirit cigarettes.

171.    Defendants enjoyed the benefit of increased financial gains, to the detriment of the California Plaintiff, California Menthol Plaintiff, California Class Members and California Menthol Subclass Members.  It would be inequitable and unjust for Defendants to retain these wrongfully obtained profits.

172.    The California Plaintiff and California Menthol Plaintiff therefore, seek an order requiring Defendants to make restitution to them and the California Class Members and California Menthol Subclass Members.

## COLORADO COUNT I

**(Violation Of Colorado Consumer Protection Act, Col. Rev. Stat. § 6–1–101, *et seq*.
On Behalf Of The Colorado Class And The Colorado Menthol Subclass)**

173.     Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

174.     The Colorado Plaintiff, the Colorado Menthol Plaintiff and each Member of the Colorado Class and Colorado Menthol Subclass are "Person[s]" as that term is defined by Col. Rev. Stat. § 6–1–102(6).

175.     Defendants are "Person[s]" as that term is defined by Col. Rev. Stat. § § 6–1–102 (6).

176.     In the course of their business in Colorado, Defendants have engaged and continue to engage in unfair and deceptive trade practices in violation of the Colorado Consumer Protection Act in at least the following ways:

   a.     Defendants have knowingly made false misrepresentations as to the characteristics, ingredients, uses, benefits, and alterations of the Natural American Spirit cigarettes in violation of Col. Rev. Stat. § 6–1–105(e);

   b.     Defendants have represented the Natural American Spirit cigarettes as being of a particular standard, quality, or grade when they knew or should have known that the Natural American Spirit cigarettes are of another in violation of Col. Rev. Stat. § 6–1–105(g);

   c.     Defendants have advertised Natural American Spirit cigarettes with the intent not to sell them as advertised in violation of Col. Rev. Stat. § § 6–1–105(i); and

d.     Defendants have failed to disclose material information concerning the ingredients of the Natural American Spirit cigarettes known to them at the time they advertised and sold the Natural American Spirit cigarettes, with the intent to induce consumers to enter into transactions based on their failure to disclose in violation of Col. Rev. Stat. § § 6–1–105(u).

177.     Defendants knew their representations regarding the ingredients in Natural American Spirit cigarettes were false.

178.     Defendants' unfair and deceptive trade practices significantly impacted the public and actual consumers of Defendants' goods, including the Colorado Plaintiff, Colorado Menthol Plaintiff and other Colorado Class and Colorado Menthol Subclass Members.  Thousands of Colorado consumers, including the Colorado Plaintiff and Colorado Menthol Plaintiff, have purchased Natural American Spirit cigarettes based on Defendants' misrepresentations and other unfair and deceptive practices identified herein and have thus been directly affected by Defendants' conduct identified herein.  These consumers and other  potential consumers will continue to be directly affected and impacted in the future should Defendants' acts continue.

179.     The Colorado Plaintiff and Colorado Menthol Plaintiff were actual consumers and purchasers of Defendants' Natural American Spirit cigarettes during the time that Defendants utilized the above unfair and deceptive trade practices.  Members of the Colorado Class and Colorado Menthol Subclass were actual consumers and purchasers or are potential consumers and purchasers of Defendants' Natural American Spirit cigarettes during the time that Defendants utilized the above unfair and deceptive trade practices.

180.    The Colorado Plaintiff, Colorado Menthol Plaintiff and all other Colorado Class Members and Colorado Menthol Subclass Members suffered injury in fact to a legally protected interest.

181.    Defendants' unfair and deceptive trade practices caused actual damages and losses to the Colorado Plaintiff, Colorado Menthol Plaintiff and all other Colorado Class Members and Colorado Menthol Subclass Members.

182.    Plaintiffs suffered damages and losses as described above as a result of Defendants' deceptive trade practices.

183.    Defendants have engaged in, and continue to engage in, unfair and deceptive trade practices in violation of the Colorado Consumer Protection Act by continuing to make false and deceptive representations concerning the ingredients contained in Natural American Spirit cigarettes.

## COLORADO COUNT II
### (Unjust Enrichment
### On Behalf Of The Colorado Class And The Colorado Menthol Subclass)

184.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

185.    At the expense of the Colorado Plaintiff, Colorado Menthol Plaintiff, Colorado Class Members, and Colorado Subclass Members, Defendants received a benefit under circumstances that make it unjust for Defendants to retain the benefit without paying the Colorado Plaintiff, Colorado Menthol Plaintiff, Colorado Class Members, and Colorado Subclass Members.

186.   The Colorado Plaintiff, Colorado Menthol Plaintiff, Colorado Class Members and Colorado Menthol Subclass Members conferred a benefit on Defendants by purchasing Defendants' Natural American Spirit cigarettes.

187.   Defendants enjoyed the benefit of increased financial gains, to the detriment of Colorado Plaintiff, Colorado Menthol Plaintiff, Colorado Class Members and Colorado Menthol Subclass Members.

188.   Retention by Defendants of the increased financial gains is unjust and inequitable because Defendants misrepresented the facts concerning the natural quality, health, characteristics, and composition of Natural American Spirit cigarettes to the Colorado Plaintiff, Colorado Menthol Plaintiff, Colorado Class Members and Colorado Menthol Subclass Members and caused the Colorado Plaintiff, Colorado Menthol Plaintiff, Colorado Class Members and Colorado Menthol Subclass Members to lose money as a result thereof.

189.   The Colorado Plaintiff and Colorado Menthol Plaintiff therefore seek an order requiring Defendants to make restitution to them and the Colorado Class Members and Colorado Menthol Subclass Members in an amount to be proven at trial.

## FLORIDA COUNT I
**(Violation Of Florida's Unfair & Deceptive Trade Practices Act, Fla. Stat. § 501.201, *et seq*. On Behalf Of The Florida Class And The Florida Menthol Subclass)**

190.   Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

191.   The Florida Plaintiff and Florida Menthol Plaintiff and each member of the Florida Class and Florida Menthol Subclass are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.203(7).

192.     Defendants are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

193.     The Florida Unfair and Deceptive Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . ."  Fla. Stat. § 501.204(1).

194.     Defendants have violated the Florida Unfair and Deceptive Trade Practices Act by engaging in the unfair and deceptive practices described herein, which are unconscionable and which offend public policy and which are substantially injurious to consumers.

195.     Defendants' misrepresentations and false, deceptive, and misleading statements with respect to Natural American Spirit cigarettes, as described above, constitute deceptive acts or practices.

196.     Defendants thus employ deception, deceptive acts or practices, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Natural American Spirit cigarettes.

197.     Defendants' actions described above and herein are also "unconscionable trade practices" in violation of the Florida Unfair and Deceptive Trade Practices Act because Defendants took advantage of the lack of knowledge, ability, experience or capacity of the Florida Plaintiff, Florida Menthol Plaintiff, Florida Class Members and Florida Menthol Subclass Members to a grossly unfair degree, and those actions resulted in a gross disparity between the value received by the Florida Plaintiff, Florida Menthol Plaintiff, Florida Class

Members and Florida Menthol Subclass Members and the price paid for Natural American Spirit cigarettes.

198.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Florida Plaintiffs and Florida Class Members, into believing that Natural American Spirit cigarettes were safer, healthier or less harmful than other cigarettes and contained no additives and failed to adequately inform the Florida Plaintiff, Florida Menthol Plaintiff, Florida Class Members and Florida Menthol Subclass Members that these cigarettes contain additives, provide no benefits and are just as dangerous and unhealthy as other cigarettes.

199.     Defendants unfair or deceptive trade practices were concealed and likely to, and did, deceive reasonable consumers, including the Florida Plaintiff, Florida Menthol Plaintiff, Florida Class Members and Florida Menthol Subclass Members, into believing that Natural American Spirit cigarettes were a safer, healthier or less harmful alternative to regular cigarettes and that they contained no additives. Defendants intentionally and knowingly misrepresented and/or omitted material facts regarding its Natural American Spirit cigarettes with the intent of deceiving the Florida Plaintiff, Florida Menthol Plaintiff, Florida Class Members and Florida Menthol Subclass Members.

200.     The Florida Plaintiff, Florida Menthol Plaintiff, Florida Class Members and Florida Menthol Subclass Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information.  The Florida Plaintiff, Florida Menthol Plaintiff, Florida Class Members and Florida Menthol Subclass Members who purchased Natural American Spirit

cigarettes would not have purchased those cigarettes, or alternatively, would have paid less for them.

201.    The Florida Plaintiff, Florida Menthol Plaintiff, Florida Class Members and Florida Menthol Subclass Members risk irreparable injury as a result of Defendants' acts and omissions in violation of the Florida Unfair and Deceptive Trade Practices Act, and these violations present a continuing risk to the Florida Plaintiff, Florida Menthol Plaintiff, Florida Class Members and Florida Menthol Subclass Members as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

202.    As a direct and proximate result of Defendants' violations of the Florida Unfair and Deceptive Trade Practices Act, the Florida Plaintiff, Florida Menthol Plaintiff, Florida Class Members and Florida Menthol Subclass Members have suffered injury-in-fact and/or actual damage.

203.    The Florida Plaintiff, Florida Menthol Plaintiff, Florida Class Members and Florida Menthol Subclass Members are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

204.    The Florida Plaintiff and Florida Menthol Plaintiff also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Florida Unfair and Deceptive Trade Practices Act.

**FLORIDA COUNT II**
**(Unjust Enrichment**
**On Behalf Of The Florida Class And The Florida Menthol Subclass)**

205.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

206.    Defendants have been unjustly enriched in retaining the revenues derived from the Florida Plaintiff, Florida Menthol Plaintiff, Florida Class Members and Florida Menthol Subclass Members' purchases of Natural American Spirit cigarettes.  Such retention is unjust and inequitable because Defendants misrepresented the facts concerning the natural quality, health, characteristics, and composition of Natural American Spirit cigarettes to the Florida Plaintiff, Florida Menthol Plaintiff, Florida Class Members and Florida Menthol Subclass Members, and caused the Florida Plaintiff, Florida Menthol Plaintiff, Florida Class Members and Florida Menthol Subclass Members to lose money as a result thereof.

207.    The Florida Plaintiff, Florida Menthol Plaintiff, Florida Class Members and Florida Menthol Subclass Members have been injured as a direct and proximate result of Defendants' wrongful conduct and unjust enrichment.  The Florida Plaintiff, Florida Menthol Plaintiff, Florida Class Members and Florida Menthol Subclass Members would not have purchased, or paid as much for, Natural American Spirit cigarettes if they had known the true facts regarding their natural quality, health, characteristics, and composition.

208.    Defendants have received and retained unjust benefits from the Florida Plaintiff, Florida Menthol Plaintiff, Florida Class Members and Florida Menthol Subclass Members, and inequity has resulted.

209.    It is inequitable and unconscionable for Defendants to retain these benefits. Defendants knowingly accepted the unjust benefits of their fraudulent conduct.

210.    As a result of Defendants' misconduct, the amount of its unjust enrichment should be disgorged and returned to the Florida Plaintiff, Florida Menthol Plaintiff, Florida Class Members and Florida Menthol Subclass Members, in an amount to be proven at trial.

### ILLINOIS COUNT I
**(Violation Of Illinois Consumer Fraud And Deceptive Business Practices Act, 815 ILCS 505/1, *Et Seq.* On Behalf Of The Illinois Class And The Illinois Menthol Subclass)**

211.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

212.    The Illinois Plaintiff, Illinois Menthol Plaintiff and each member of the Illinois Class and Illinois Menthol Subclass are "person[s]" as that term is defined in 815 ILCS 505/1(c).

213.    The Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members are "consumers" as that term is defined in 815 ILCS 505/1(e).

214.    The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of any material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."  815 ILCS 505/2.

215.    In the course of their business, Defendants misrepresented, concealed and suppressed material facts concerning Natural American Spirit cigarettes.

216.    Defendants' misrepresentations and false, deceptive, and misleading statements with respect to Natural American Spirit cigarettes, as described above, constitute deceptive acts or practices.

217.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members, into believing that Natural American Spirit cigarettes were somehow safer, healthier or less harmful than other cigarettes and that they contained no additives and failed to adequately inform the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members that these cigarettes contained additives, provide no benefits and are just as dangerous as other cigarettes.

218.    Defendants' unfair or deceptive trade practices were fraudulently concealed and likely to, and did, deceive reasonable consumers, including the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members, into believing that Natural American Spirit cigarettes were a safer, healthier or less harmful alternative to other cigarettes and that they contained no additives.   Defendants intentionally and knowingly misrepresented and/or omitted material facts regarding its Natural American Spirit cigarettes with the intent of deceiving the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members.

219.    The Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information.   The Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class

Members and Illinois Menthol Subclass Members who purchased Natural American Spirit cigarettes would not have purchased those cigarettes, or alternatively, would have paid less for them.

220.    Defendants intentionally and knowingly misrepresented material facts regarding Natural American Spirit cigarettes with intent to mislead the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members.

221.    Defendants knew or should have known that its conduct violated the Consumer Fraud and Deceptive Business Practices Act.

222.    Defendants' misrepresentation of the "natural" and "additive-free" quality of its Natural American Spirit cigarettes was material to the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members.

223.    Defendants' violations present a continuing risk to the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

224.    As a direct and proximate result of Defendants' violations of the Consumer Fraud and Deceptive Business Practices Act, the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members have suffered injury-in-fact and/or actual damage.

225.    Pursuant to 815 ILCS 505/10a(a), the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members seek monetary relief against

Defendants in the amount of actual damages, as well as punitive damages because Defendants acted with fraud and/or malice and/or were grossly negligent.

226.    The Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 *et seq.*

### ILLINOIS COUNT II
### (Violation Of The Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *Et Seq.* On Behalf Of The Illinois Class And The Illinois Menthol Subclass)

227.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

228.    Illinois's Uniform Deceptive Trade Practices Act ("Illinois UDTPA"), 815 ILCS 510/2(a), prohibits deceptive trade practices, including among others, "(2) caus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (5) represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have …; (7) represent[ing] that goods or services are of a particular standard, quality, or grade … if they are of another; … (9) advertis[ing] goods or services with intent not to sell them as advertised; … [and] (12) engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

229.    Defendants are "persons" as defined in 815 ILCS 510/1(5).

230.    In the course of their business, Defendants misrepresented, concealed and suppressed material facts concerning Natural American Spirit cigarettes.

231.     Defendants' misrepresentations and false, deceptive, and misleading statements with respect to Natural American Spirit cigarettes, as described above, constitute deceptive acts or practices.

232.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members, into believing that Natural American Spirit cigarettes were somehow safer, healthier or less harmful than other cigarettes and that they contained no additives and failed to adequately inform the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members that these cigarettes contained additives, provide no benefits and are just as dangerous as other cigarettes.

233.     Defendants' unfair or deceptive trade practices were fraudulently concealed and likely to, and did, deceive reasonable consumers, including the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members, into believing that Natural American Spirit cigarettes were a safer, healthier or less harmful alternative to other cigarettes and that they contained no additives.   Defendants intentionally and knowingly misrepresented and/or omitted material facts regarding its Natural American Spirit cigarettes with the intent of deceiving the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members.

234.     Defendants' violations present a continuing risk to the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members as well as to the general public.   Defendants' unlawful acts and practices complained of herein affect the public interest.

235.     As a direct and proximate result of Defendants' violations of the Consumer Fraud and Deceptive Business Practices Act, the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members have suffered injury-in-fact and/or actual damage.

236.     The Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 510 *et seq*a

### ILLINOIS COUNT III
**(Unjust Enrichment**
**On Behalf Of The Illinois Class And The Illinois Menthol Subclass)**

237.     Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

238.     Defendants have been unjustly enriched in retaining the revenues derived from the Illinois Plaintiff's, Illinois Menthol Plaintiff's, Illinois Class Members' and Illinois Menthol Subclass Members' purchases of Natural American Spirit cigarettes.  Such retention is unjust and inequitable because Defendants misrepresented the facts concerning the natural quality, health, characteristics, and composition of Natural American Spirit cigarettes to the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members, and caused the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members to lose money as a result thereof.

239.     The Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members have been injured as a direct and proximate result of

Defendants' wrongful conduct and unjust enrichment.  The Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members would not have purchased, or paid as much for, Natural American Spirit cigarettes if they had known the true facts regarding their natural quality, health, characteristics, and composition.

240.    Defendants have received and retained unjust benefits from the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members, and inequity has resulted.

241.    It is inequitable and unconscionable for Defendants to retain these benefits. Defendants knowingly accepted the unjust benefits of its fraudulent conduct.

242.    As a result of Defendants' misconduct, the amount of its unjust enrichment should be disgorged and returned to the Illinois Plaintiff, Illinois Menthol Plaintiff, Illinois Class Members and Illinois Menthol Subclass Members, in an amount to be proven at trial.

**MASSACHUSETTS COUNT I**
**(Unfair And Deceptive Business Practices**
**Mass. Gen. Laws c. 93A, §§ 2 And 9 On Behalf Of The Massachusetts Class)**

243.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein

244.    The Massachusetts Plaintiff brings this claim on behalf of the Massachusetts Class.

245.    At all relevant times, Defendants were engaged in commerce for purposes of Mass. Gen. Laws c. 93A.

246.    Mass. Gen. Laws c. 93A, § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared

unlawful."  G. L. c. 93A, § 9 permits any consumer injured by a violation of c. 93A, § 2 to bring a civil action, including a class action, for damages and injunctive relief.

247.    Defendants' misrepresentations and false, deceptive, and misleading statements with respect to Natural American Spirit cigarettes, as described above, constitute unfair and deceptive acts or practices.

248.    The Massachusetts Plaintiff and Massachusetts Class Members were injured by Defendants' conduct as alleged herein.

249.    The Massachusetts Plaintiff and Massachusetts Class Members suffered damages, including the purchase price of the Natural American Spirit cigarettes they purchased or an amount equal to the price premium Defendants can and do charge as a result of their unfair and deceptive misrepresentations and omissions.

250.    Defendants' unfair and deceptive acts or practices, as alleged herein, were and are willful and knowing violations of c. 93A, § 2, within the meaning of c. 93A, § 9(3).

251.    On September 6, 2016, the Massachusetts Plaintiff made a demand for relief, in writing, to Defendants, as required by G. L. c. 93A, § 9(3).  The demand letter explained in detail the nature of the unfair and deceptive acts or practices, the injuries suffered by the Massachusetts Plaintiff and Massachusetts Class Members, as well as demanding compensation for those injuries and other relief.  Defendants failed to tender a reasonable offer of relief in response to Plaintiff's written demand.

252.    Based on the foregoing, the Massachusetts Plaintiff and Massachusetts Class Members are entitled to all remedies available pursuant to c. 93A, §9, including, but not limited to actual damages, statutory damages in the amount of $25 per purchase (to the extent that they

are greater than actual damages), double or treble damages, disgorgement of Defendants' profits derived from its unlawful activities, injunctive relief, attorneys' fees and other reasonable costs.

## MASSACHUSETTS COUNT II
### (Unjust Enrichment On Behalf Of The Massachusetts Class)

253.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

254.    Defendants have been unjustly enriched in retaining the revenues derived from the Massachusetts Plaintiff's and Massachusetts Class Members' purchases of Natural American Spirit cigarettes.  Such retention is unjust and inequitable because Defendants misrepresented the facts concerning the natural quality, health, characteristics, and composition of Natural American Spirit cigarettes to the Massachusetts Plaintiff and Massachusetts Class Members, and caused the Massachusetts Plaintiff and Massachusetts Class Members to lose money as a result thereof.

255.    The Massachusetts Plaintiff and Massachusetts Class Members have been injured as a direct and proximate result of Defendants' wrongful conduct and unjust enrichment.  The Massachusetts Plaintiff and Massachusetts Class Members would not have purchased, or paid as much for, Natural American Spirit cigarettes if they had known the true facts regarding their natural quality, health, characteristics, and composition.

256.    Defendants have received and retained unjust benefits from the Massachusetts Plaintiff and Massachusetts Class Members, and inequity has resulted.

257.    It is inequitable and unconscionable for Defendants to retain these benefits. Defendants knowingly accepted the unjust benefits of their fraudulent conduct.

258.     As a result of Defendants' misconduct, the amount of its unjust enrichment should be disgorged and returned to the Massachusetts Plaintiff and Massachusetts Class Members, in an amount to be proven at trial.

## MICHIGAN COUNT I
### (Violation Of Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901, *et seq.* On Behalf Of The Michigan Class)

259.     Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

260.     The Michigan Plaintiff brings this claim for Violations of the Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901, et seq. ("Mich. CPA"), on behalf of each member of the Michigan Class.

261.     The Michigan Plaintiff and Michigan Class Members are "persons" within the meaning of Mich. Comp. Law § 445.902(c).

262.     Natural American Spirit cigarettes are "goods" and "property" that were sold, distributed, designed, packaged, and marketed by Defendants to the Michigan Plaintiff and Michigan Class Members primarily for personal, family, or household purposes within the meaning of Mich. Comp. Law § 445.902(d).

263.     The Michigan Plaintiff and Michigan Class Members have suffered a loss because of Defendants' violations of the Mich. CPA.

264.     Defendants, by selling, distributing, designing, packaging and marketing the Natural American Spirit cigarettes, as set forth above, engaged in the following unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce,

including but not limited to the following unconscionable, or deceptive methods, acts, or practices in violation of the following subsections of Mich. Comp. Law § 445.903:

(a) Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services by representing that the Natural American Spirit cigarettes and the tobacco within the cigarettes are derived from a natural source when they are not;

(c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have by representing that the Natural American Spirit cigarettes have "Natural," "100% Natural," and/or "Additive-Free" tobacco and other ingredients that they do not have.

(c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have by representing that the Natural American Spirit cigarettes have characteristics, uses, benefits, and qualities that make them less harmful than other brands of cigarettes when they are not.

(e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another by representing that Natural American Spirit cigarettes are "Natural," "100% Natural," and/or "Additive-Free" when they are not.

(g) Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented by advertising and representing that Natural American Spirit cigarettes are "Natural," "100% Natural," and/or "Additive-Free" when they are not.

(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer by failing to reveal material facts about the ingredients in the Natural American Spirit cigarettes in that they contain ingredients that are not "Natural," not "100% Natural," and/or not "Additive-Free."

(z) Charging the consumer a price that is grossly in excess of the price at which similar property or services are sold by charging a "super premium-price" for the Natural American Spirit cigarettes as a result of representations that Natural American Spirit cigarettes are "Natural," "100% Natural," and/or "Additive-Free" when they are not.

265.    The Michigan Plaintiff and Michigan Class Members are bringing a class action to obtain a declaratory judgment that each method, act, or practice described above is unlawful pursuant Mich. Comp. Law § 445.911(1)(a).

266.    The Michigan Plaintiff and Michigan Class Members are bringing a class action to enjoin each unlawful method, act, or practice described above pursuant to Mich. Comp. Law § 445.911(1)(b).

267.    The Michigan Plaintiff and Michigan Class Members are bringing a class action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees pursuant to Mich. Comp. Law § 445.911(2).

268.     The Michigan Plaintiff and Michigan Class Members are bringing a class action to recover their actual damages pursuant to Mich. Comp. Law § 445.911(3)(a).

269.     The Michigan Plaintiff and Michigan Class Members intend to petition the court to require the defendants to bear the cost of notice pursuant to Mich. Comp. Law § 445.911(5).

270.     Based on the foregoing, the Michigan Plaintiff and Michigan Class Members are entitled to all remedies available pursuant to the Michigan Consumer Protection Act, including, but not limited to actual damages, statutory damages, disgorgement of Defendants' profits derived from its unlawful activities, declaratory relief, injunctive relief, attorneys' fees and other reasonable costs, including the costs of class notice.

## MICHIGAN COUNT II
### (Unjust Enrichment On Behalf Of The Michigan Class)

271.     Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

272.     The Michigan Plaintiff brings this claim for unjust enrichment on behalf of each member of the Michigan Class.

273.     The elements of a claim for unjust enrichment are (1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit.

274.      The Michigan Plaintiff and Michigan Class Members purchased the Natural American Spirit cigarettes and thereby conferred a benefit on Defendants.

275.     Defendants received a benefit from the Michigan Plaintiff and Michigan Class Members.

276.     An inequity would result to the Michigan Plaintiff and Michigan Class Members from Defendants' retention of the benefit.

277.      Such retention is inequitable because Defendant misrepresented the facts concerning the natural quality, health, characteristics, and composition of Natural American Spirit cigarettes to the Michigan Plaintiff and Michigan Class Members causing them to lose money as a result thereof.

278.     The Michigan Plaintiff and Michigan Class Members have been injured as a direct and proximate result of Defendants' wrongful conduct and unjust enrichment.  The Michigan Plaintiff and Michigan Class Members would not have purchased, or paid as much for, Natural American Spirit cigarettes if they had known the true facts regarding their natural quality, health, characteristics, and composition.

279.     Defendants have received and retained unjust benefits from the Michigan Plaintiff and Michigan Class Members, and inequity has resulted.

280.     It is inequitable for Defendants to retain these benefits.

281.     Defendants knowingly accepted the unjust benefits of their fraudulent conduct.

282.     As a result of Defendants' misconduct, the amount of its unjust enrichment should be disgorged and returned to the Michigan Plaintiff and Michigan Class Members in an amount to be proven at trial.

### NEW JERSEY COUNT I
**(Violation Of The New Jersey Consumer Fraud Act , N.J.S.A. § 56:8-1, *et seq.*
On Behalf Of The New Jersey Class And The New Jersey Menthol Subclass)**

283.     Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

284.     New Jersey Plaintiff and New Jersey Menthol Plaintiff bring this claim on behalf of each member of New Jersey Class and New Jersey Menthol Subclass.

285.     Defendants, by selling, distributing, designing, packaging and marketing the Natural American Spirit cigarettes, as set forth above, engaged in deceptive practices and acts in violation of the New Jersey Consumer Fraud Act.

286.     Defendants used unconscionable commercial practices, deception, false pretense, false promises, misrepresentations, or the knowing, concealment, suppression, or omission of material facts with intent that others, including the New Jersey Plaintiff, New Jersey Menthol Plaintiff, New Jersey Class Members and New Jersey Menthol Subclass Members, would rely upon such concealment, suppression or omission, in connection with the sale and advertisement of the Natural American Spirit cigarettes, which are "merchandise" under the New Jersey Consumer Fraud Act.

287.     Defendants' misrepresentations and false, deceptive, and misleading statements with respect to Natural American Spirit cigarettes, as described above, constitute deceptive acts or practices

288.     Defendants engaged in an unconscionable commercial practice because Defendants knew the contents and ingredients in the Natural American Spirit cigarettes, and therefore Defendants' sale and labeling of the Natural American Spirit cigarettes demonstrates a lack of good faith, and disregard for honesty and fair dealing.

289.     Defendants engaged in acts of omission, including, but not limited to knowing concealment, suppression and omission of material facts, including the true composition of and ingredients in Natural American Spirit cigarettes. Defendant knew the contents and ingredients

in each of the Natural American Spirit cigarettes and knew the Natural American Spirit

cigarettes were manufactured with unnatural additives.  Nonetheless, Defendant knowingly

concealed, suppressed, and/or omitted the true contents of the Natural American Spirit

cigarettes, given consumers' desire for additive-free, safer, healthier or less harmful cigarettes.

Defendants intended that consumers rely upon its incomplete, misleading representations in

purchasing the products.

290.    The New Jersey Plaintiff, New Jersey Menthol Plaintiff, New Jersey Class

Members and New Jersey Menthol Subclass Members suffered an ascertainable loss caused by

Defendants' misrepresentations, unconscionable commercial practices, and knowing omissions

because (a) they would not have purchased Natural American Spirit cigarettes on the same

terms if the true facts concerning their actual composition had been known; and (b) they paid a

price premium due to the misrepresentation of the Natural American Spirit cigarettes.

291.    Based on the foregoing, the New Jersey Plaintiff, New Jersey Menthol Plaintiff,

New Jersey Class Members and New Jersey Menthol Subclass Members are entitled to all

remedies available pursuant to the New Jersey Consumer Fraud Act, including, but not limited to

actual damages, treble damages, disgorgement of Defendants' profits derived from its unlawful

activities, injunctive relief, attorneys' fees and other reasonable costs.

### NEW JERSEY COUNT II
**(Violations Of The New Jersey Truth-In-Consumer Contract,  Warranty
And Notice Act "TCCWNA," New Jersey Stat. §§ 56:12-14 To 56:12-18
On Behalf Of The New Jersey Class And The New Jersey Menthol Subclass)**

292.    Plaintiffs reallege and incorporate by reference each preceding paragraph as

though fully set forth herein.

293.    New Jersey Stat. §§ 56:12-15 (the "TCCWNA") provides:

> No seller . . . shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

294.    The labels and marketing materials for the Natural American Spirit cigarettes are written consumer warranties, notices, and/or signs that are offered, given, and/or displayed to consumers and prospective consumers subject to the TCCWNA.

295.    The New Jersey Plaintiff, New Jersey Menthol Plaintiff, New Jersey Class Members and New Jersey Menthol Subclass Members are "consumer[s] or prospective consumer[s]" within the meaning of N.J.S.A. § 56:12-15.

296.    Defendants are "sellers" within the meaning of N.J.S.A. § 56:12-15.

297.    The right of consumers to truthful and accurate statements on the labels and marketing materials for Natural American Spirit cigarettes, as well as the right to avoid deception caused by false and misleading statements on such labels and marketing materials, are "clearly established legal rights" under N.J.S.A. § 56:8-2.

298.    The responsibility of a seller to refrain from the employment of any unconscionable commercial practice, deception, fraud, false pretense, and/or misrepresentation, and to refrain from the knowing concealment, suppression, and/or omission of any material fact with intent that others rely upon such concealment, suppression, and/or omission in connection with the sale of merchandise, and to refrain from selling products with labels that make false statements about the products, is clearly established under N.J.S.A. § 56:8-2.

299.    Defendants violated the TCCWNA by implying that Natural American Spirit

cigarettes are safer, healthier or less harmful than other cigarettes and that they contain no additives.

300.    Pursuant to N.J.S.A. § 56:12-17, Defendants are liable to the New Jersey Plaintiff, New Jersey Menthol Plaintiff, New Jersey Class Members and New Jersey Menthol Subclass Members for civil penalties or for actual damages, or both, at the election of the consumer.  In addition, the New Jersey Plaintiff and New Jersey Menthol Plaintiff are entitled to reimbursement for all reasonable attorneys' fees and court costs incurred as a result of bringing this action.

### NEW JERSEY COUNT III
**(Unjust Enrichment**
**On Behalf Of The New Jersey Class And The New Jersey Menthol Subclass)**

301.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

302.    Defendants have been unjustly enriched in retaining the revenues derived from the New Jersey Plaintiff's, New Jersey Menthol Plaintiff's, New Jersey Class Members' and New Jersey Menthol Subclass Members' purchases of Natural American Spirit cigarettes.  Such retention is unjust and inequitable because Defendant misrepresented the facts concerning the natural quality, health, characteristics, and composition of Natural American Spirit cigarettes to the New Jersey Plaintiff, New Jersey Menthol Plaintiff, New Jersey Class Members and New Jersey Menthol Subclass Members, and caused the New Jersey Plaintiff, New Jersey Menthol Plaintiff, New Jersey Class Members and New Jersey Menthol Subclass Members to lose money as a result thereof.

303.    The New Jersey Plaintiff, New Jersey Menthol Plaintiff, New Jersey Class

Members and New Jersey Menthol Subclass Members have been injured as a direct and proximate result of Defendants' wrongful conduct and unjust enrichment.  The New Jersey Plaintiff, New Jersey Menthol Plaintiff, New Jersey Class Members and New Jersey Menthol Subclass Members would not have purchased, or paid as much for, Natural American Spirit cigarettes if they had known the true facts regarding their natural quality, health, characteristics, and composition.

304.    Defendants have received and retained unjust benefits from the New Jersey Plaintiff, New Jersey Menthol Plaintiff, New Jersey Class Members and New Jersey Menthol Subclass Members, and inequity has resulted.

305.    It is inequitable and unconscionable for Defendants to retain these benefits.

306.    Defendants knowingly accepted the unjust benefits of their fraudulent conduct.

307.    As a result of Defendants' misconduct, the amount of its unjust enrichment should be disgorged and returned to the New Jersey Plaintiff, New Jersey Menthol Plaintiff, New Jersey Class Members and New Jersey Menthol Subclass Members, in an amount to be proven at trial.

### NEW MEXICO COUNT I
**(Violations Of The New Mexico Unfair Practices
Act, N.M. Stat. Ann. §§ 57-12-1, *et seq*. On Behalf Of
The New Mexico Class And The New Mexico Menthol Subclass)**

308.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

309.     The New Mexico Plaintiff and New Mexico Menthol Plaintiff bring this claim on behalf of each member of the New Mexico Class and New Mexico Menthol Subclass.

310.     Defendants, the New Mexico Plaintiff, New Mexico Menthol Plaintiff, New Mexico Class Members and New Mexico Menthol Subclass Members are or were "person[s]" under the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-2.

311.     Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. Stat. Ann. § 57-12-2.

312.     The Unfair Practices Act makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to "failing to state a material fact if doing so deceives or tends to deceive." N.M. Stat. Ann. § 57-12-2(D).  Defendants' acts and omissions described herein constitute unfair or deceptive acts or practices under N.M. Stat. Ann. § 57-12-2(D).

313.     Defendants' misrepresentations and false, deceptive, and misleading statements with respect to Natural American Spirit cigarettes, as described above, constitute deceptive acts or practices.

314.     Defendants also engaged in unlawful trade practices by willfully and knowingly employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, and/or omission of material facts with intent that others rely upon such concealment, suppression, and/or omission, in connection with the sale of Natural American Spirit cigarettes.

315.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable New Mexico consumers, including the New Mexico Plaintiff, New Mexico

Menthol Plaintiff, New Mexico Class Members and New Mexico Menthol Subclass Members, about the true nature of Natural American Spirit cigarettes.

316.    Defendants knew or should have known that its conduct violated the Unfair Practices Act.

317.    As a consequence of Defendants' wrongful actions, the New Mexico Plaintiff, New Mexico Menthol Plaintiff, New Mexico Class Members and New Mexico Menthol Subclass Members suffered an ascertainable loss of monies based on either the purchase price of Natural American Spirit cigarettes or the price premium Defendants are able to charge, and that the New Mexico Plaintiff, New Mexico Menthol Plaintiff, New Mexico Class Members and New Mexico Menthol Subclass Members pay, as a direct result of Defendants' deceptive marketing scheme.

318.    Defendants' violations present a continuing risk to the New Mexico Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

319.    New Mexico Plaintiff, New Mexico Menthol Plaintiff, New Mexico Class Members and New Mexico Menthol Subclass Members seek punitive damages against Defendants because Defendants' conduct was malicious, willful, reckless, wanton, fraudulent, and in bad faith.  Defendants fraudulently and willfully misrepresented the ingredients and nature of Natural American Spirit cigarettes, deceived the New Mexico Plaintiff, New Mexico Menthol Plaintiff, New Mexico Class Members and New Mexico Menthol Subclass Members on matters involving a substantial risk of adverse health effects, and concealed material facts that only they knew, all to reap profits from portraying Natural American Spirit cigarettes as a healthy or less

harmful cigarette and as additive-free.  Defendants' malicious, willful, reckless, wanton, fraudulent, and bad faith conduct warrants punitive damages.

320.    Because Defendants' unconscionable, willful conduct caused actual harm to the New Mexico Plaintiff, New Mexico Menthol Plaintiff, New Mexico Class Members and New Mexico Menthol Subclass Members, Plaintiffs seek recovery of actual damages or $100 per purchase, whichever is greater, discretionary treble damages, punitive damages, and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. Stat. Ann. § 57- 12-10.

### NEW MEXICO COUNT II
**(Violations Of The New Mexico False Advertising Law, N.M. Stat. Ann. §§ 57-15-1, *et seq.* On Behalf Of The New Mexico Class And The New Mexico Menthol Subclass)**

321.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

322.    Defendants have violated N.M. Stat. Ann. §§ 57-15-1 *et seq.* by falsely advertising Natural American Spirit cigarettes in the conduct of a business, trade, or commerce within the state of New Mexico.

323.    The advertising, including labeling, of Natural American Spirit cigarettes was and is misleading in material respects.

324.    The advertising of Natural American Spirit cigarettes failed to reveal facts material in the light of such representations with respect to the commodity to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

325.   The New Mexico Plaintiff and New Mexico Menthol Plaintiff are bringing this claim as private citizens on behalf of all others similarly situated to restrain and prevent violations of this act. N.M. Stat. Ann. § 57-15-5.

326.   This is an exceptional case in which the defendant has willfully engaged in false advertising, thus making an award of costs or attorneys' fees an appropriate remedy. N.M. Stat. Ann. § 57-15-5.

**NEW MEXICO COUNT III**
**(Unjust Enrichment**
**On Behalf Of The New Mexico Class And The New Mexico Menthol Subclass)**

327.   Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

328.   Defendants have been unjustly enriched in retaining the revenues derived from New Mexico Plaintiff's, New Mexico Menthol Plaintiff's, New Mexico Class Members' and New Mexico Menthol Subclass Members' purchases of Natural American Spirit cigarettes.  Such retention is unjust and inequitable because Defendants misrepresented the facts concerning the natural quality, health, characteristics, and composition of Natural American Spirit cigarettes to the New Mexico Plaintiff, New Mexico Menthol Plaintiff, New Mexico Class Members and New Mexico Menthol Subclass Members, and caused the New Mexico Plaintiff, New Mexico Menthol Plaintiff, New Mexico Class Members and New Mexico Menthol Subclass Members to lose money as a result thereof.

329.   The New Mexico Plaintiff, New Mexico Menthol Plaintiff, New Mexico Class Members and New Mexico Menthol Subclass Members have been injured as a direct and proximate result of Defendants' wrongful conduct and unjust enrichment.  The New Mexico

Plaintiff, New Mexico Menthol Plaintiff, New Mexico Class Members and New Mexico Menthol Subclass Members would not have purchased, or paid as much for, Natural American Spirit cigarettes if they had known the true facts regarding their natural quality, health, characteristics, and composition.

330.    Defendants have received and retained unjust benefits from the New Mexico Plaintiff, New Mexico Menthol Plaintiff, New Mexico Class Members and New Mexico Menthol Subclass Members, and inequity has resulted.

331.    It is inequitable and unconscionable for Defendants to retain these benefits.

332.    Defendants knowingly accepted the unjust benefits of their fraudulent conduct.

333.    As a result of Defendants' misconduct, the amount of its unjust enrichment should be disgorged and returned to the New Mexico Plaintiff, New Mexico Menthol Plaintiff, New Mexico Class Members and New Mexico Menthol Subclass Members, in an amount to be proven at trial.

### <u>NEW YORK COUNT I</u>
**(Violation Of N.Y. G.B.L. § 349**
**On Behalf Of The New York Class And The New York Menthol Subclass)**

334.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

335.     The New York Plaintiff and New York Menthol Plaintiff bring this claim on behalf of each member of the New York Class and New York Menthol Subclass.

336.    N.Y. G.B.L. § 349 provides, *inter alia*:

> Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

337.     The New York Plaintiff, New York Menthol Plaintiff, New York Class Members and New York Menthol Subclass Members are consumers who purchased Natural American Spirit cigarettes in New York.

338.     As sellers of goods to the consuming public whose conduct affects similarly situated consumers and has a broad impact on consumers at large, Defendants are engaged in consumer-oriented conduct within the intended ambit of G.B.L. § 349.

339.     Defendants' misrepresentations and false, deceptive, and misleading statements with respect to Natural American Spirit cigarettes, as described above, constitute deceptive acts or practices in the conduct of business, trade, or commerce in violation of the New York General Business Law.

340.     Defendants' deceptive acts were knowing and intentional.

341.     Defendants' actions have caused direct, foreseeable, and proximate damages to the New York Plaintiff, New York Menthol Plaintiff, New York Class Members and New York Menthol Subclass Members.

342.     As a consequence of Defendants' wrongful actions, the New York Plaintiff, New York Menthol Plaintiff, New York Class Members and New York Menthol Subclass Members suffered ascertainable loss of monies based on either the purchase price of Natural American Spirit cigarettes or the price premium Defendants are able to charge, and that the New York Plaintiff, New York Menthol Plaintiff, New York Class Members and New York Menthol Subclass Members pay, as a direct result of Defendants' deceptive marketing scheme.

343.     By reason of the foregoing, Defendants are liable to the New York Plaintiff, New York Menthol Plaintiff, New York Class Members and New York Menthol Subclass Members

for actual damages or fifty dollars ($50) for each sale of Natural American Spirit cigarettes (whichever is greater), injunctive relief, attorneys' fees, and the costs of this suit.

344.     The New York Plaintiff, New York Menthol Plaintiff, New York Class Members and New York Menthol Subclass Members further seek to enjoin the unlawful and deceptive acts and practices described above.

345.     Absent injunctive relief, Defendants will continue to deceptively market their cigarettes.

**NEW YORK COUNT II**
**(Violation Of N.Y. G.B.L. § 350**
**On Behalf Of The New York Class And The New York Menthol Subclass)**

346.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

347.     The N.Y. G.B.L. § 350 provides, *inter alia*:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

348.     N.Y. G.B.L. § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

349.     The New York Plaintiff, New York Menthol Plaintiff, New York Class Members and New York Menthol Subclass Members are consumers who purchased Natural American Spirit cigarettes in New York.

350.     As sellers of goods to the consuming public, Defendants are engaged in the conduct of business, trade or commerce within the intended ambit of N.Y. G.B.L. § 350.

351.     Defendants' representations made by statement, word, design, device, sound, or any combination thereof, and also the extent to which the Defendants' advertising fails to reveal

material facts with respect to Natural American Spirit cigarettes, as described above, constitute

false advertising in violation of the New York General Business Law.

352.    Defendants' false advertising was knowing and intentional.

353.    Defendants' actions have caused direct, foreseeable, and proximate injury to the

New York Plaintiff, New York Menthol Plaintiff, New York Class Members and New York

Menthol Subclass Members.

354.    As a consequence of Defendants' wrongful actions, the New York Plaintiff, New

York Menthol Plaintiff, New York Class Members and New York Menthol Subclass Members

suffered an ascertainable loss of monies based on either the purchase price of Natural American

Spirit cigarettes or the price premium Defendants are able to charge, and that the New York

Plaintiff, New York Menthol Plaintiff, New York Class Members and New York Menthol

Subclass Members pay, as a direct result of Defendants' deceptive marketing scheme.

355.    By reason of the foregoing, Defendants are liable to the New York Plaintiff, New

York Menthol Plaintiff, New York Class Members and New York Menthol Subclass Members

for actual damages or five hundred dollars ($500) for each sale of Natural American Spirit

cigarettes (whichever is greater), injunctive relief, attorneys' fees, and the costs of this suit.

356.    The New York Plaintiff, New York Menthol Plaintiff, New York Class Members

and New York Menthol Subclass Members further seek to enjoin the false advertising described

above.

357.    Absent injunctive relief, Defendants will continue to deceptively market Natural

American Spirit cigarettes.

<u>**NEW YORK COUNT III**</u>
**(Unjust Enrichment**
**On Behalf Of The New York Class And The New York Menthol Subclass)**

358.     Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

359.     Defendants have been unjustly enriched in retaining the revenues derived from the New York Plaintiff's, New York Menthol Plaintiff's, New York Class Members' and New York Menthol Subclass Members' purchases of Natural American Spirit cigarettes.  Such retention is unjust and inequitable because Defendant misrepresented the facts concerning the natural quality, health, characteristics, and composition of Natural American Spirit cigarettes to the New York Plaintiff, New York Menthol Plaintiff, New York Class Members and New York Menthol Subclass Members, and caused the New York Plaintiff, New York Menthol Plaintiff, New York Class Members and New York Menthol Subclass Members to lose money as a result thereof.

360.     The New York Plaintiff, New York Menthol Plaintiff, New York Class Members and New York Menthol Subclass Members have been injured as a direct and proximate result of Defendants' wrongful conduct and unjust enrichment.  The New York Plaintiff, New York Menthol Plaintiff, New York Class Members and New York Menthol Subclass Members would not have purchased, or paid as much for, Natural American Spirit cigarettes if they had known the true facts regarding their natural quality, health, characteristics, and composition.

361.     Defendants have received and retained unjust benefits from the New York Plaintiff, New York Menthol Plaintiff, New York Class Members and New York Menthol Subclass Members, and inequity has resulted.

362.     It is inequitable and unconscionable for Defendants to retain these benefits.

363.     Defendants knowingly accepted the unjust benefits of their fraudulent conduct.

364.     As a result of Defendants' misconduct, the amount of its unjust enrichment should be disgorged and returned to the New York Plaintiff, New York Menthol Plaintiff, New York Class Members and New York Menthol Subclass Members, in an amount to be proven at trial.

<u>NORTH CAROLINA COUNT I</u>
**(Violation Of N.C. Gen. Stat. § 75-1.1(a).**
**On Behalf Of The North Carolina Class And The North Carolina Menthol Subclass)**

365.     Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

366.      The North Carolina Plaintiff and North Carolina Menthol Plaintiff bring this claim on behalf of each member of the North Carolina Class and North Carolina Menthol Subclass.

367.     The North Carolina Unfair and Deceptive Trade Practices Act provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce are declared unlawful." N.C. Gen. Stat. § 75-1.1(a).

368.     Defendants' misrepresentations and false, deceptive, and misleading statements with respect to Natural American Spirit cigarettes, as described above, constitute deceptive acts or practices affecting commerce.

369.     Defendants knew or should have known that the Natural American Spirit cigarettes do not conform to Defendants' representations and promises.

370.     By making these false and misleading misrepresentations and omissions, and by concealing the true facts from the North Carolina Plaintiff, North Carolina Menthol Plaintiff,

North Carolina Class Members and North Carolina Menthol Subclass Members, Defendants intended that the North Carolina Plaintiff, North Carolina Menthol Plaintiff, North Carolina Class Members and North Carolina Menthol Subclass Members would rely on its false statements and material omissions, and intended to induce the North Carolina Plaintiff, North Carolina Menthol Plaintiff, North Carolina Class Members and North Carolina Menthol Subclass Members to purchase the Natural American Spirit cigarettes.

371.    Defendants' unfair and deceptive conduct, as herein alleged, occurred in the course of the sale of a consumer good, to wit, the Natural American Spirit cigarettes, and thus are "in or affecting commerce," for the purpose of establishing liability under Chapter 75 of the North Carolina General Statutes.

372.    As a consequence of Defendants' wrongful actions, the North Carolina Plaintiff, North Carolina Menthol Plaintiff, North Carolina Class Members and North Carolina Menthol Subclass Members suffered an ascertainable loss of monies based on either the purchase price of Natural American Spirit cigarettes or the price premium Defendants are able to charge, and that the North Carolina Plaintiff, North Carolina Menthol Plaintiff, North Carolina Class Members and North Carolina Menthol Subclass Members pay, as a direct result of Defendants' deceptive marketing scheme.

373.    Defendants' misrepresentations, material omissions, and/or business practices, as alleged in this Complaint, constitute unfair and/or deceptive acts or practices in violation of the provisions of Chapter 75 of the North Carolina General Statutes.

374.    Defendants' misrepresentations, concealments, and/or unfair and deceptive acts or practices proximately caused actual injury/damage to the North Carolina Plaintiff, North

Carolina Menthol Plaintiff, North Carolina Class Members and North Carolina Menthol Subclass Members.

375.    The North Carolina Plaintiff, North Carolina Menthol Plaintiff, North Carolina Class Members and North Carolina Menthol Subclass Members are entitled to receive compensation for these damages, in an amount to be determined at trial.

376.    The North Carolina Plaintiff, North Carolina Menthol Plaintiff, North Carolina Class Members and North Carolina Menthol Subclass Members further seek to enjoin the unlawful and deceptive acts and practices described above.

377.    As a direct and proximate result of Defendants' unfair and/or deceptive acts and practices, in or affecting commerce, the North Carolina Plaintiff, North Carolina Menthol Plaintiff, North Carolina Class Members and North Carolina Menthol Subclass Members are entitled to recover treble damages from Defendant, pursuant to N.C. Gen. Stat. § 75-16, and to recover their reasonable attorneys' fees as provided for in N.C. Gen. Stat. § 75-16.1.

## NORTH CAROLINA COUNT II
### (Unjust Enrichment
### On Behalf Of The North Carolina Class And The North Carolina Menthol Subclass)

378.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

379.    Defendants have been unjustly enriched in retaining the revenues derived from the North Carolina Plaintiff's, North Carolina Menthol Plaintiff's, North Carolina Class Members' and North Carolina Menthol Subclass Members' purchases of Natural American Spirit cigarettes.  Such retention is unjust and inequitable because Defendant misrepresented the facts concerning the natural quality, health, characteristics, and composition of Natural American

Spirit cigarettes to the North Carolina Plaintiff, North Carolina Menthol Plaintiff, North Carolina

Class Members and North Carolina Menthol Subclass Members, and caused the North Carolina

Plaintiff, North Carolina Menthol Plaintiff, North Carolina Class Members and North Carolina

Menthol Subclass Members to lose money as a result thereof.

380.    The North Carolina Plaintiff, North Carolina Menthol Plaintiff, North Carolina

Class Members and North Carolina Menthol Subclass Members have been injured as a direct and

proximate result of Defendants' wrongful conduct and unjust enrichment.  The North Carolina

Plaintiff, North Carolina Menthol Plaintiff, North Carolina Class Members and North Carolina

Menthol Subclass Members would not have purchased, or paid as much for, Natural American

Spirit cigarettes if they had known the true facts regarding their natural quality, health,

characteristics, and composition.

381.    Defendants have received and retained unjust benefits from the North Carolina

Plaintiff, North Carolina Menthol Plaintiff, North Carolina Class Members and North Carolina

Menthol Subclass Members, and inequity has resulted.

382.    It is inequitable and unconscionable for Defendants to retain these benefits.

383.    Defendants knowingly accepted the unjust benefits of their fraudulent conduct.

384.    As a result of Defendants' misconduct, the amount of its unjust enrichment should

be disgorged and returned to the North Carolina Plaintiff, North Carolina Menthol Plaintiff,

North Carolina Class Members and North Carolina Menthol Subclass Members, in an amount to

be proven at trial.

## OHIO COUNT I
### (Ohio Consumers Sales Practice Act,
### Ohio Revised Code Chapter 1345 On Behalf Of The Ohio Class)

385.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

386.    The Ohio Plaintiff brings this claim on behalf of each member of the Ohio Class.

387.    This cause of action is brought pursuant to Ohio's Consumers Sales Practice Act, Ohio Revised Code § 1345, *et seq.*

388.    The Ohio Plaintiff and Ohio Class Members are consumers as defined by Ohio Revised Code § 1345.01(D).

389.    Defendants are suppliers as defined by Ohio Revised Code §1345.01(C).

390.    Defendants' conduct described herein involves consumer transactions as defined in Ohio Revised Code §1345.01(A).

391.    Defendants' misrepresentations and false, deceptive, and misleading statements with respect to Natural American Spirit cigarettes, as described above, constitute deceptive acts or practices.

392.    Defendants violated and continue to violate the Consumers Sales Practice Act by engaging in the following practices prohibited by Ohio Revised Code §1345.02 in consumer transactions with the Ohio Plaintiff and Ohio Class Members, which were intended to result in, and did result in, the sale of the Natural American Spirit cigarettes to the Ohio Plaintiff and Ohio Class Members by committing and unfair or deceptive act or practice in connection with a consumer transaction; representing that Natural American Spirit cigarettes have performance characteristics uses, or benefits that they do not have; representing that Natural American Spirit

cigarettes are of a particular standard, quality, grade, style, prescription when they are not; and representing that Natural American Spirit cigarettes are being supplied in accordance with a previous representation, when they are not.

393.    As a direct and proximate result of Defendants' violation of Ohio Revised Code § 1345.02, the Ohio Plaintiff and Ohio Class Members have suffered actual damages, the full amount of which will be proven at trial.

394.    Defendants further violated and continues to violate the Consumers Sales Practice Act by engaging in the following practices proscribed by Ohio Revised Code §1345.03 in consumer transactions with the Ohio Plaintiff and Ohio Class Members, which were intended to result in, and did result in, the sale of the Natural American Spirit cigarettes to the Ohio Plaintiff and Ohio Class Members by engaging in an unconscionable act or practice in connection with a consumer transaction; knowing at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction; and knowingly [making] a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment.

395.    Defendants violated the Consumers Sales Practice Act and Ohio Administrative Code by representing through its advertisements the Natural American Spirit cigarettes as described above when Defendants knew, or should have known, that the representations and advertisements were false and misleading.

396.    As a direct and proximate result of Defendants' violation of Ohio Revised code §1345.03, the Ohio Plaintiff and Ohio Class Members have suffered actual damages, the full extent of which will be proven at trial.

397.     Pursuant to Ohio Revised Code §1345.09(A) and Fed. R. Civ. P. 23, the Ohio

Plaintiff and Ohio Class Members are entitled to rescind the consumer transactions or recover

actual damages, plus an amount not exceeding $5,000 in non-economic damages.

398.     Pursuant to Ohio Revised Code §1345.09(D), the Ohio Plaintiff and Ohio Class

Members seek an order enjoining the above-described wrongful acts and practices of the

Defendants and for restitution and disgorgement.

399.     Pursuant to Ohio Revised Code §1345.09(F), the Ohio Plaintiff seeks attorneys

fees and costs.

400.     Pursuant to Section 1345.09(D), this Complaint will be served upon the Ohio

Attorney General.

401.     The Ohio Plaintiff and Ohio Class Members reserve the right to allege further

violations of Ohio's Consumers Sales Practice Act as Defendants' conduct is ongoing.

### OHIO COUNT II
**(Ohio's Deceptive Trade Practices Act,**
**Ohio Revised Code Section 4165, *et seq.* On Behalf Of The Ohio Class)**

402.     Plaintiffs reallege and incorporate by reference each preceding paragraph as

though fully set forth herein.

403.     Defendants are persons as defined in Ohio Revised Code §4165.01(D).

404.     Defendants' misrepresentations and false, deceptive, and misleading statements

with respect to Natural American Spirit cigarettes, as described above, constitute deceptive acts

or practices.

405.     Defendants are engaged in unfair, deceptive, untrue and misleading advertising in

violation of Ohio's Deceptive Trade Practices Act §4165.02 because Defendants are using, and

in the past have used, deceptive representations in connection with goods;  represent that goods

have sponsorship, approval, characteristics, ingredients, uses, benefits that they do not have;

represent that goods are of a particular standard, quality, or grade when they are of another; and

advertise goods with intent not to sell them as advertised.

406.    Defendants' violations of Ohio's Deceptive Trade Practices Act have caused the

Ohio Plaintiffs and Ohio Class Members actual damages.

407.    The Ohio Plaintiff seeks actual damages and/or equitable relief, attorneys' fees

and costs, and to enjoin Defendants on the terms that the Court considers reasonable.

### OHIO COUNT III
**(Unjust Enrichment On Behalf Of The Ohio Class)**

408.    Plaintiffs reallege and incorporate by reference each preceding paragraph as

though fully set forth herein.

409.    The Ohio Plaintiff brings this Count on behalf of himself and the Ohio Class

against all Defendants.

410.    Defendants have been unjustly enriched in retaining the revenues derived from

the Ohio Plaintiff's and Ohio Class Members' purchases of Natural American Spirit cigarettes.

Such retention is unjust and inequitable because Defendant misrepresented the facts concerning

the natural quality, health, characteristics, and/or composition of Natural American Spirit

cigarettes to the Ohio Plaintiff and Ohio Class Members, and caused the Ohio Plaintiff and

Ohio Class Members to lose money as a result thereof.

411.    The Ohio Plaintiff and Ohio Class Members have been injured as a direct and

proximate result of Defendants' wrongful conduct and unjust enrichment.  The Ohio Plaintiff

and Ohio Class Members would not have purchased, or paid as much for, Natural American

Spirit cigarettes if they had known the true facts regarding their natural quality, health, characteristics, and composition.

412.     Defendants have received and retained unjust benefits from the Ohio Plaintiff and Ohio Class Members, and inequity has resulted.

413.     It is inequitable and unconscionable for Defendants to retain these benefits.

414.     Defendants knowingly accepted the unjust benefits of their fraudulent conduct.

415.     As a result of Defendants' misconduct, the amount of its unjust enrichment should be disgorged and returned to the Ohio Plaintiff and Ohio Class Members, in an amount to be proven at trial.

### WASHINGTON COUNT I
**(Violation Of The Washington Consumer Protection Act,**
**Wash. Rev. Code Ann. §§ 19.86.010, e***t seq.* **On Behalf Of The Washington Class)**

416.     Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

417.     The Washington Plaintiff brings this action on behalf of themselves and the Washington Class against all Defendants.

418.     The Washington Consumer Protection Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. § 19.86.020.

419.     The Washington Plaintiff and Washington Class Members are "persons" within the meaning of Wash. Rev. Code Ann. § 19.86.010(1).   The Washington Plaintiff and Washington Class Members each purchased one or more packs of Natural American Spirit cigarettes.

420.     Defendants are also "persons" within the meaning of Wash. Rev. Code Ann. § 19.86.010(1).

421.     Defendants have violated the Consumer Protection Act by knowingly and intentionally engaging in the untrue, deceptive, and misleading practices described herein, which are unconscionable and which offend public policy and which are immoral, unethical, unscrupulous and substantially injurious to consumers.

422.     Defendants' misrepresentations and false, deceptive, and misleading statements with respect to Natural American Spirit cigarettes, as described above, constitute deceptive acts or practices.

423.     Defendants intentionally and knowingly misrepresented material facts regarding Natural American Spirit cigarettes with intent to mislead the Washington Plaintiff and Washington Class Members.

424.     Defendants knew or should have known that their conduct violated the Consumer Protection Act.

425.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Washington Plaintiff and Washington Class Members, into believing that Natural American Spirit cigarettes were somehow safer, healthier or less harmful than other cigarettes and that they contained no additives and failed to adequately inform the Washington Plaintiff and Washington Class Members that these cigarettes contain additives, provide no benefits and are just as dangerous as regular cigarettes.

426.     Defendants unfair or deceptive trade practices were fraudulently concealed and likely to, and did, deceive reasonable consumers, including the Washington Plaintiff and

Washington Class Members, into believing that Natural American Spirit cigarettes were a safer, healthier or less harmful alternative to other cigarettes and that they contained no additives. Defendants intentionally and knowingly misrepresented and/or omitted material facts regarding its Natural American Spirit cigarettes with the intent of deceiving the Washington Plaintiff and Washington Class Members.

427.    Defendants' violations present a continuing risk to the Washington Plaintiff and Washington Class Members, as well as to the general public who risk irreparable injury as a result of Defendants' acts and omissions in violation of the Consumer Protection Act. Defendants' unlawful acts and practices complained of herein affect the public interest.

428.    The Washington Plaintiff and Washington Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information.  The Washington Plaintiff and Washington Class Members who purchased Natural American Spirit cigarettes would not have purchased those cigarettes, or alternatively, would have paid less for them.

429.    As a direct and proximate result of Defendants' violations of the Consumer Protection Act, the Washington Plaintiff and Washington Class Members have suffered injury-in-fact and/or actual damage.

430.    The Washington Plaintiff and Washington Class Members are entitled to recover three times actual damages, attorneys' fees, costs and other relief under Wash. Rev. Code Ann. § 19.86.090.

431.    The Washington Plaintiff and Washington Class Members also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, and any other just and proper relief available under the Consumer Protection Act.

## WASHINGTON COUNT II
### (Unjust Enrichment On Behalf Of The Washington Class)

432.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

433.    Defendants have been unjustly enriched in retaining the revenues derived from the Washington Plaintiff and Washington Class Members' purchases of Natural American Spirit cigarettes.  Such retention is unjust and inequitable because Defendant misrepresented the facts concerning the natural quality, health, characteristics, and composition of Natural American Spirit cigarettes to the Washington Plaintiff and Washington Class Members, and caused the Washington Plaintiff and Washington Class Members to lose money as a result thereof.

434.    The Washington Plaintiff and Washington Class Members have been injured as a direct and proximate result of Defendants' wrongful conduct and unjust enrichment.  The Washington Plaintiff and Washington Class Members would not have purchased, or paid as much for, Natural American Spirit cigarettes if they had known the true facts regarding their natural quality, health, characteristics, and composition.

435.    Defendants have received and retained unjust benefits from the Washington Plaintiffs and Washington Class Members, and inequity has resulted.

436.    It is inequitable and unconscionable for Defendants to retain these benefits.

437.    Defendants knowingly accepted the unjust benefits of their fraudulent conduct. As a result of Defendants' misconduct, the amount of its unjust enrichment should be disgorged and

returned to the Washington Plaintiff and Washington Class Members, in an amount to be proven at trial.

## NATIONWIDE COUNT I
### (Express Warranty On Behalf Of The Nationwide Menthol Subclass)

438.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

439.    The Nationwide Menthol Plaintiffs bring this claim individually and on behalf of the Nationwide Menthol Subclass against Defendants.

440.    Through their labeling of Natural American Spirit menthol cigarettes, Defendants provided the Nationwide Menthol Plaintiffs and Nationwide Menthol Subclass Members with written express warranties including, but not limited to, warranties that the cigarettes contain "100% Additive Free" tobacco.

441.    These representations became part of the basis of the bargain between the Nationwide Menthol Plaintiffs and Nationwide Menthol Subclass Members, on one hand, and Defendants, on the other.

442.    Defendants breached that warranty because the Natural American Spirit menthol cigarettes do not contain "100% Additive Free" tobacco.  Instead, Defendants add menthol to the filters as a means of adding menthol to the tobacco used in Natural American Spirit cigarettes.

443.    Defendants made the above-described representations to induce the Nationwide Menthol Plaintiffs and Nationwide Menthol Subclass Members to purchase the Natural American Spirit cigarettes, and Nationwide Menthol Plaintiffs and Nationwide Menthol Subclass Members did so because they believed that the tobacco in these cigarettes did not contain any additives.

444.    All conditions precedent to Defendants' liability have been performed by the Nationwide Menthol Plaintiffs and Nationwide Menthol Subclass Members, who paid the premium price charged by Defendants to purchase their cigarettes.

445.    The Nationwide Menthol Plaintiffs and Nationwide Menthol Subclass Members were harmed by Defendants' breach of this express warranty because they were deprived of the benefit of their bargain.  The Nationwide Menthol Plaintiffs and Nationwide Menthol Subclass Members did not receive the goods as warranted and suffered ascertainable loss of monies based on either the purchase price of Natural American Spirit cigarettes or the price premium Defendants are able to charge, and that the Nationwide Menthol Plaintiffs and Nationwide Menthol Subclass Members pay, as a direct result of Defendants' warranty.  Alternatively, Nationwide Menthol Plaintiffs and Nationwide Menthol Subclass Members would not have purchased the cigarettes had they known that the tobacco contained additives.

446.    The Nationwide Menthol Plaintiffs therefore seek an order requiring Defendants to make restitution to them and the Nationwide Menthol Subclass Members.

THEREFORE, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter judgment against Defendants as follows:

A.    Certifying this action as a class action, with Classes and Subclasses as defined above;

B.    Requiring that Defendants pay for notifying the Class members of the pendency of this suit;

C.      Awarding Plaintiffs and the Classes injunctive relief;

D.      Awarding Plaintiffs and the Classes monetary damages in an amount to be determined at trial, together with prejudgment interest;

E.      Awarding Plaintiffs and the Classes statutory damages in the maximum amount provided by law;

F.      Awarding Plaintiffs and the Classes restitution of Defendants' ill-gotten gains;

G.      Awarding Plaintiffs and the other Classes members the reasonable costs and expenses of suit, including their attorneys' fees; and

H.      For any further relief that the Court may deem appropriate.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims in this action.

Dated: September 19, 2016                    Respectfully submitted,

                                             **MCGINN, CARPENTER, MONTOYA
                                             and LOVE, P.A.**

                                             ***/s/ Randi McGinn***
                                             Randi McGinn
                                             Kathy Love
                                             201 Broadway Blvd., SE
                                             Albuquerque, NM  87102
                                             Telephone: (505) 843-6161
                                             Facsimile: (505) 242-8227
                                             randi@mcginnlaw.com
                                             kathy@mcginnlaw.com

                                             ***Liaison Counsel***

**SCHLESINGER LAW OFFICES, P.A.**
Scott P. Schlesinger
Jonathan R. Gdanski
Jeffrey L. Haberman
1212 SE 3rd Avenue
Fort Lauderdale, FL 33316
Telephone: (954) 467-8800
Facsimile: (954) 320-9509
scott@schlesingerlaw.com
jgdanski@schlesingerlaw.com
jhaberman@schlesingerlaw.com

**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
John A. Yanchunis
Scott W. Weinstein
Marisa K. Glassman
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
jyanchunis@forthepeople.com
sweinstein@forthepeople.com
mglassman@forthepeople.com

**HALUNEN LAW**
Melissa Wolchansky
Amy E. Boyle
1650 IDS Center 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
wolchansky@halunenlaw.com
boyle@halunenlaw.com

**ZIMMERMAN REED, LLP**
Caleb Marker
2381 Rosecrans Avenue, Suite 328
Manhattan Beach, CA 90254
Telephone: (877) 500-8780
caleb.marker@zimmreed.com
Hart L. Robinovitch
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254
Telephone: (800) 493-2827
hart.robinovitch@zimmreed.com

**CUNEO GILBERT & LADUCA, LLP**
Charles J. LaDuca
8120 Woodmont Avenue - Suite 810
Bethesda, MD 20814
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
D. Greg Blankinship
445 Hamilton Avenue - Suite 605
White Plains, NY 10605
Telephone: (914) 298-3281
Facsimile: (914) 824-1561
gblankinship@fbfglaw.com
jfrei-pearson@fbfglaw.com
tgarber@fbfglaw.com

**PEARSON, SIMON & WARSHAW, LLP**
Daniel L. Warshaw
Alexander R. Safyan
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
dwarshaw@pswlaw.com
asafyan@pswlaw.com

**SEARCY, DENNEY, SCAROLA,**
**BARNHART & SHIPLEY, P.A.**
James W. Gustafson
517 N. Calhoun St.
Tallahassee, FL 32301
Tel: (850) 224-7600
Facsimile: (561) 383-9454
jwg@searcylaw.com

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY  10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
mreese@reesellp.com

**LEVIN, PAPANTONIO, THOMAS,**
**MITCHELL, RAFFERTY &**
**PROCTOR, P.A.**
Matthew D. Schultz
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7140
Facsimile: (850) 436-7141
mschultz@levinlaw.com

**LAW OFFICES OF**
**RONALD A. MARRON**
Ronald A. Marron
651 Arroyo Drive
San Diego, CA  92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
ron@consumersadvocates.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was filed using this Court's CM/ECF service, which

will send notification of such filing to all counsel of record on September 19, 2016.

<u>*/s/ Randi McGinn*</u>
Randi McGinn