**UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO**

| | |
|---|---|
| **In Re: Santa Fe Natural Tobacco Company Marketing & Sales Practices Litigation** | Lead Case No. 1:16-md-02695-JB-LF |
| *This Document Relates to All Actions* | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND
INCORPORATED MEMORANDUM OF LAW**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION .................................................................................................................1

ARGUMENT .....................................................................................................................4

     A.     The Rule 12(b)(6) Standard ...........................................................................4

     B.     Whether Defendants' Use of the Terms "Natural," "Organic," or "Additive-Free" Is Capable of Misleading a "Reasonable Consumer" Is a Question of Fact Not Appropriate for Determination on a Motion to Dismiss ..........................4

     C.     Defendants' Reliance on Their Disclaimer Is Misplaced .....................................10

     D.     Plaintiffs Have Adequate Alleged That Defendants' Processing of the Cigarettes Exceeds What a Reasonable Consumer Would Expect from the Term "Natural" ................................................................................................13

     E.     The Pleading Standard in Securities Class Action Litigation Is Different ............15

CONCLUSION....................................................................................................................15

## **TABLE OF AUTHORITIES**

<span style="font-variant: small-caps;">**Cases**</span>

*Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG),
    2010 WL 2925955 (E.D.N.Y. July 21, 2010).........................................................12

*Aguiar v. Merisant Co.*, No. 14-00670-RGKAGRX,
    2014 WL 6492220 (C.D. Cal. Mar. 24, 2014)......................................................13

*Barron v. Snyder's-Lance, Inc.*, No. 13-62496-CIV,
    2015 WL 11182066 (S.D. Fla. Mar. 20, 2015).....................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................4

*Burton v. Hodgson Mill, Inc.*, No. 16-CV-1081-MJR-RJD,
    2017 WL 1282882 (S.D. Ill. Apr. 6, 2017)..........................................................12

*Disc. Tobacco & Lottery, Inc. v. United States*,
    674 F.3d 509 (6th Cir. 2012) ................................................................................6

*Firewood v. Martinez*,
    121 F. Supp. 3d 1186 (D.N.M. 2015) ..................................................................4

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000)..............................................................................................11

*Ford v. West*,
    222 F.3d 767 (10th Cir. 2000) ..............................................................................4

*Genesee Cty. Employees' Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3*,
    825 F. Supp. 2d 1082 (D.N.M. 2011) ................................................................15

*Ham v. Hain Celestial Group, Inc.*,
    70 F. Supp. 3d 1188 (N.D. Cal. 2014) ..........................................................12, 13

*Hunter v. Philip Morris USA Inc.*,
    364 P.3d 439 (Alaska 2015)..................................................................................6

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM,
    2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)......................................................1

*In re Kekauoha-Alisa*,
    674 F.3d 1083 (9th Cir. 2012) ..........................................................................1, 5

*Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC,
    2013 WL 6491158 (N.D. Cal. Dec. 10, 2013)......................................................... 15

*Martin v. Tradewinds Beverage Co.*, No. CV16-9249 PSG (MRWX),
    2017 WL 1712533 (C.D. Cal. Apr. 27, 2017) .......................................................... 7

*Penrod Ricard USA, LLC v. Bacardi U.S.A, Inc.*,
    653 F.3d 241 (4th Cir. 2011) .................................................................................. 11

*Randolph v. J.M. Smucker Co.*, No. 13-80581-CIV,
    2014 WL 1018007 (S.D. Fla. Mar. 14, 2014)......................................................... 13

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) .................................................................................. 12

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) .................................................................................... 1

*Swepi, LP v. Mora County*,
    81 F. Supp. 3d 1075 (D.N.M. 2015) ......................................................................... 5

*U.S. v. Ninety-Five Barrels More or Less of Alleged Apple Cider Vinegar*,
    265 U.S. 438 (1924)................................................................................................... 3

*United States v. Philip Morris USA, Inc.*,
    447 F. Supp. 2d 191 (D.D.C. 2007)........................................................................... 6

*United States v. Phillip Morris USA, Inc.*,
    449 F. Supp. 2d 1 (D.D.C. 2006)...................................................................... 6, 9, 14

*Walker v. THI of N.M. at Hobbs Ctr.*,
    803 F. Supp. 2d 1287 (D.N.M. 2011) ....................................................................... 4

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ............................................................................ passim

## STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 78u-4 .......................................................................................................... 15

Centers for Disease Control and Prevention, *Low Yield Cigarettes and Cigarette-Like
    Products* (2009) ...................................................................................................... 10

Cummings, K.M., et al., *Are smokers adequately informed about the health risks of
    smoking and medicinal nicotine?*, NICOTINE & TOBACCO RESEARCH 6(3) (2004) ......... 9

Federal Rule of Civil Procedure 9 ................................................................................ 15

Federal Rule of Civil Procedure 12 ..................................................................... passim

Jennifer Pearson et al., *Misperceptions of harm among Natural American Spirit smokers:
results from wave 1 of the Population Assessment of Tobacco and Health (PATH)
study (2013-2014)*, TOBACCO CONTROL (Dec. 6, 2016) ..................................................... 2

McDaniel, Patricia A et al., *"I Always Thought They Were All Pure Tobacco": American
Smokers' Perceptions of "Natural" Cigarettes and Tobacco Industry Advertising
Strategies*, 16 TOBACCO CONTROL e7 (2007) ..................................................... 8

Pearson, Jennifer L., et al., *American Spirit Pack Descriptors and Perceptions of Harm:
A Crowdsourced Comparison of Modified Packs*, NICOTINE &TOBACCO
RESEARCH 18(8) (2016) ........................................................... 9

Restatement (Second) of Torts (1965)............................................................. 4

W. Prosser, *Handbook of the Law of Torts* (4th ed.) ..................................................... 4

## INTRODUCTION

At the June 9, 2017 hearing, the Court asked whether, on a 12(b)(6) motion, it could rule as a matter of law that a "reasonable consumer" would **not** be misled by Defendants' "natural" and "additive free" claims. Tr. at 9, 114–16, 133. As explained herein, the question of whether a reasonable consumer would be misled "will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008). This is particularly true when a plaintiff has presented evidence of consumer deception, such as consumer surveys. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 762 (7th Cir. 2014) (finding plaintiffs' evidence, including survey evidence showing consumers were misled and plaintiffs' testimony that they were misled, precluded ruling as a matter of law that packaging was not likely to mislead a reasonable consumer).

Ultimately, dismissal under the reasonable consumer standard is appropriate only in the "rare situation"[1] when "**no** reasonable consumer" could be misled by the claims. *In re Kekauoha-Alisa*, 674 F.3d 1083, 1092 (9th Cir. 2012) (emphasis added); *see also In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (stating that "this Court cannot conclude, as a matter of law, that the added context to the 'All Natural' label meets the heavy burden of 'extinguish[ing] the possibility' that a reasonable consumer could be misled" and that two cases that were dismissed as a matter of law were cases that "border on fantasy"). That is patently not the case here, where Plaintiffs' Consolidated Amended Class Action Complaint ("CAC") includes extensive allegations and evidence, including consumer surveys, establishing that reasonable consumers are misled by Defendants'

---

[1] *Williams*, 552 F.3d at 939.

1

representations, and that they do believe, by virtue of those representations, that their Natural American Spirit cigarettes are healthier or safer than other brands. Specifically, the CAC includes allegations that: (1) each Plaintiff believed Defendants' cigarettes "were safer and healthier because [the] cigarettes were represented to be 'Natural' and 'Additive-Free'" (CAC ¶¶ 12-23); (2) the administrative agencies tasked with regulating cigarettes (the Food and Drug Administration, Federal Trade Commission, and Centers for Disease Control and Prevention) have found Defendants' use of those terms to be misleading; (3) peer-reviewed studies confirm that consumers—including 63.9% of Natural American Spirit smokers—are misled by Defendants' use of these terms;[2] (4) Defendants' own documents show that consumers are misled by these terms; and (5) the major U.S. tobacco companies, including subsidiaries of Defendants herein, have been enjoined from using the term "natural" specifically because it misleads consumers.

In considering Defendants' motion, it is also important to remember they never argued in their supporting briefs that the terms "natural," "organic," or "additive-free" are not misleading. Instead, Defendants limited their argument to the contention that "the reasonable consumer would not interpret the terms 'natural' and 'additive-free' to mean that [Defendants'] cigarettes are safer than other cigarettes, **_given the disclosure expressly renouncing this interpretation_**."[3] Def. Mot. to Dismiss (ECF No. 90) at 42 (emphasis added). The reason for the limitation is twofold: (1) if those terms were not misleading, there would be no need for a disclaimer; and (2) the tobacco industry knows, and counts on the fact, that consumers are misled by the use of these terms. Indeed,

---

[2] CAC ¶ 52 (quoting Jennifer Pearson et al., _Misperceptions of harm among Natural American Spirit smokers: results from wave 1 of the Population Assessment of Tobacco and Health (PATH) study (2013-2014)_, TOBACCO CONTROL (Dec. 6, 2016)).
[3] For a thorough discussion of the inadequacy of Defendants' disclaimer, Plaintiffs refer the Court to their Opposition to Defendants' Motion to Dismiss (ECF No. 98) at pages 42-52.

a review of industry internal documents reveals that:

- Santa Fe sent literature to customers stating, "For centuries the North American Indians have smoked tobacco without developing cancer, and have utilized the plant for many medicinal purposes."[4]
- "American Spirits are sold in smoke shops, newsstands, natural food stores and trendy cafes . . . [T]hey appeal to smokers turned on by a new-agey, alternative consciousness and who are concerned about their health, even if resigned to their addiction."[5]
- NAS cigarettes are distributed "in specialty stores like natural food stores, health food stores," and "[t]he NAS marketing strategy creates both intellectual and emotional consumer benefits. For instance, most apparent is the perceived health benefit."[6]
- "The growing popularity of American Spirit," according to Robin Sommers, Santa Fe President, "and brands like it play off a variety of factors, ranging from the popularity of the all-natural cigar to increasing demand for healthier products, especially in light of recent revelations that tobacco companies add several unsavory chemicals to their cigarettes."[7]

Convincing consumers of NAS's purported health benefits was Defendants' express objective when it plastered its advertising and packaging with the terms "natural," "organic," and "additive free,"[8] and that is exactly the result they achieved when Plaintiffs compared brands, considered Defendants' marketing materials and labels, and chose to purchase NAS cigarettes.

Based on the foregoing factual allegations, all of which must all be accepted as true and construed in Plaintiffs' favor at this stage of the litigation, a jury could easily find that Defendants'

---

[4] Reese Decl., Ex. 1, R.J. Reynolds, Notes/Excerpts From Santa Fe Newsclips at 1.

[5] *Id.*

[6] Ex. 2, Philip Morris Inter-Office Correspondence, Subject: All Natural Review (11/6/95) at 2-3.

[7] Ex. 3, R.J. Reynolds Tobacco Co. document, Subject: American Spirit, at 3.

[8] These terms become even more misleading when viewed, as they must be, within the visual environment Defendants have intentionally created, which is meant to encourage a "reasonable consumer" to associate the terms "natural" and "additive-free" with materials unsullied by the hand of man (e.g., eagles, leaves, the sun, rain falling from a cloud, a drop of water hanging from a tobacco leaf, a tobacco leaf emerging from a water faucet), and with the benign innocence of an earlier uncorrupted age (e.g., a placid pipe-smoking Native American, the rustic font in which the brand name "Natural American Spirit" is printed). The Court should not discount the intent behind Defendants' studied contrivances or underestimate their effectiveness. *U.S. v. Ninety-Five Barrels More or Less of Alleged Apple Cider Vinegar*, 265 U.S. 438, 443 (1924) ("It is not difficult to choose statements, designs, and devices which will not deceive.").

"natural" and "additive free" claims are likely to mislead a reasonable consumer. Accordingly, Plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To rule otherwise would constitute legal error.

## ARGUMENT

### A.    The Rule 12(b)(6) Standard.

At the hearing, the Court asked whether it "isn't ultimately for the Court to decide" what a reasonable consumer would or would not believe. Tr. at 115. The answer, respectfully, is no. "The Court's function is not to weigh potential evidence that the parties might present at trial," but rather is simply "to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Walker v. THI of N.M. at Hobbs Ctr.*, 803 F. Supp. 2d 1287, 1330 (D.N.M. 2011) (quoting *Ford v. West*, 222 F.3d 767, 772 (10th Cir. 2000)). Ultimately, "[t]he issue is not whether the plaintiff will ultimately prevail," but rather is simply "whether the plaintiff is entitled to offer evidence to support his claim." *Firewood v. Martinez*, 121 F. Supp. 3d 1186, 1190 (D.N.M. 2015).

### B.    Whether Defendants' Use of the Terms "Natural," "Organic," or "Additive-Free" Is Capable of Misleading a "Reasonable Consumer"[9] Is a Question of Fact Not Appropriate for Determination on a Motion to Dismiss.

In *Williams v. Gerber Products Co.*, which has been cited in dozens of consumer class

---

[9] As Plaintiffs' counsel explained at the hearing, the Court's analysis must be conducted in the context of a "reasonable, but already addicted, nicotine addicted consumer," who, by reason of that addiction, is virtually impervious to health warnings or disclaimers. *See* Tr. at 99-100, 111-13; CAC ¶¶ 3, 45, 89. When considering the standard of care in cases that implicate the analogous "reasonable person" standard, the law regards personal characteristics as highly relevant, and "the courts have thus 'made allowances for many of the characteristics of the actor himself, and have applied, in many respects, a more or less subjective standard.'" W. Prosser, *Handbook of the Law of Torts* (4th ed.) at 150-51; *see also* Restatement (Second) of Torts, § 283C, Comment a. (1965) ("[T]he standard of conduct for a blind man becomes that of a reasonable man who is blind.").

4

actions, which both parties cited in their briefs, and which is perhaps the leading case on this issue, the Ninth Circuit confirmed the principle recognized by courts in virtually all of the jurisdictions from whence the claims have emanated; i.e., that the question of "whether a business practice is deceptive **will usually be a question of fact** not appropriate for decision on [a motion to dismiss]." *Williams*, 552 F.3d at 939 (emphasis added). At the hearing, however, the Court asked whether it could make an "independent determination" of what a reasonable consumer would believe. Tr. at 114-16. Again, the answer, respectfully, is no.

The relevant inquiry here is this: after the Court "accept[s] as true all well-pleaded factual allegations in the complaint, view[s] those allegations in the light most favorable to the non-moving party, and draw[s] all reasonable inferences in the plaintiff's favor,"[10] have Defendants proved that "no reasonable person" could be misled by their use of the terms "natural," "organic," or "additive-free"? *Kekauoha-Alisa*, 674 F.3d at 1092. Defendants have not made, and cannot make, that showing here, as graphically illustrated by their failure to cite any case in which any court has: (a) found a cigarette company's use of these terms to be anything other than deceptive and misleading; or (b) granted a 12(b)(6) motion brought by a cigarette company (or any defendant for that matter) in a consumer case with facts similar to those presented here; *i.e.*, where the complaint is replete with citation to federal agency findings, peer-reviewed studies, and industry documents, all of which confirm Plaintiffs' position, and where the unanimous weight of case law authority holds that use of the terms "natural, "organic," or "additive-free" do mislead consumers into believing that cigarettes so labeled are safer or healthier than those that are not. *See, e.g., Disc.*

Accordingly, the question of who is a "reasonable consumer," like the question of whether Defendants' conduct is capable of misleading him, is one of fact.

[10] *Swepi, LP v. Mora County,* 81 F. Supp. 3d 1075, 1122 (D.N.M. 2015).

*Tobacco & Lottery, Inc. v. United States*, 674 F.3d 509, 536 (6th Cir. 2012) (noting that "naturalists and those who subscribe to organic products do not engage in unmotivated or arbitrary behavior – common sense dictates the conclusion that they prefer such products ***precisely because they believe that natural and organic products confer health advantages over conventional products***" (emphasis added)); *United States v. Phillip Morris USA, Inc.*, 449 F. Supp. 2d 1, 27 (D.D.C. 2006) (enjoining defendants "from further use of ***deceptive brand descriptors which implicitly convey to the smoker and potential smoker that they are less hazardous to health than full flavor cigarettes, including popular descriptors*** 'low tar,' 'light,' 'ultra light,' 'mild,' and '***natural***'" (emphasis added)); *United States v. Philip Morris USA, Inc.*, 447 F. Supp. 2d 191, 197-98 (D.D.C. 2007) (noting that in addition to their nefarious domestic activities, Defendants took actions abroad "to mislead and deceive American Smokers and potential smokers about the lower health risks of 'low tar,' 'lite,' 'ultra lite,' 'mild,' and 'natural' cigarettes"); *Hunter v. Philip Morris USA Inc.*, 364 P.3d 439 (Alaska 2015) (discussing the tobacco companies being enjoined "from engaging in a wide variety of practices, including 'conveying any express or implied health message or health descriptor for any cigarette brand" by using terms such as "'low tar,' 'light,' 'ultra light,' 'mild,' [or] 'natural'").

Further confirming the viability of Plaintiffs' claims is the fact that the substantive allegations set forth in their Complaint go far beyond those other courts have found sufficient to pass muster under Rule 12(b)(6). Particularly illustrative is *Williams v. Gerber Products Co.*, a case in which the Ninth Circuit reversed a district court's 12(b)(6) dismissal and rejected Gerber's argument that its packaging was "not likely to mislead a reasonable consumer, particularly given that the ingredient list"—like Defendants' disclaimer—"was printed on the side of the box."

6

*Williams*, 552 F.3d at 937, 939–40. The substantive allegations in the *Williams* complaint were far less specific and substantive than those set forth in the CAC (detailed below). Specifically, the *Williams* complaint alleged that:

- "When displayed on market shelves, the Graduates packages show only the side of the box with the colorful pictures of fruit; the label listing the actual contents lies unseen on the *side* of the box" (Williams Second Am. Compl. ¶ 1.)[11]
- "A reasonable consumer, trusting in the Gerber name, would readily believe that they were buying a fruit snack for their child rather than one in which the two ingredients are corn syrup and sugar." (*Id.*)
- Plaintiff Williams "trusted Gerber and did not double check the ingredients listed on the label on the side"; she "bought the Gerber brand because she was seeking healthy snacks for her children"; and "she relied on the representations on the Graduates packaging rather than inspecting the specific ingredients." (*Id.* at ¶ 10.)
- Plaintiff Williams "learned through friends of the ingredients in Graduates" and "was shocked to discover that Graduates was virtually nothing more than candy with a touch of vitamin C." (*Id.*)

Also instructive is *Martin v. Tradewinds Beverage Co.*, No. CV16-9249 PSG (MRWX), 2017 WL 1712533 (C.D. Cal. Apr. 27, 2017), where the plaintiffs alleged they were misled by the defendant advertising its beverages as "all-natural," despite the presence of an artificial color additive. *Martin*, 2017 WL 1712533, at *1. Tradewinds sought dismissal, arguing that no reasonable consumer could be deceived because the ingredient list on the back of the packaging identified the color additive. *Id.* at *9. The court disagreed and denied the motion. Once again, the allegations set forth in the *Martin* complaint pale in comparison to those set forth in Plaintiffs' CAC. The *Martin* plaintiffs alleged only that:

- "A December 2015 nationally representative Consumer Reports survey of 1,005 adults found that more than half of consumers usually seek out products with a 'natural' food label. Moreover, consumers equate 'natural' claims with healthier foods, and are generally willing to pay more for healthier foods. For instance, '88% of those polled are willing to pay more for healthier foods.'" (*Martin* Compl. ¶14.)[12]

---

[11] A copy of the *Williams* Complaint is attached as Exhibit 4 to the Declaration of Michael Reese.
[12] A copy of the *Martin* Complaint is attached as Exhibit 5 to the Declaration of Michael Reese.

- "Tradewinds is aware of consumer preference for healthier, 'natural' products, and therefore employs and has employed a strategic marketing campaign intended to convince consumers that its Iced Tea Products are all natural, even though they contain artificial caramel color." (*Id.* at ¶ 15.)

Plaintiffs here have gone much further and, although not required at the pleadings stage, have provided unrebutted evidentiary support for their allegations, a representative sample of which includes the following:

- "By uniformly using the terms 'Natural' and 'Additive-Free' on each and every label, Defendants intentionally and successfully convey to reasonable consumers that Natural American Spirit Cigarettes are safer and healthier to smoke than other competing cigarettes." (CAC ¶ 4.)
- Each plaintiff specifically alleged that he/she purchased NAS cigarettes "at a price premium compared to other cigarettes because [he/she] believed that they were in fact made with additive-free tobacco and were safer and healthier because Natural American Spirits cigarettes were represented to be 'Natural' and 'Additive-Free.'" (CAC ¶¶ 12-23.)
- Researchers at the University of California confirmed that smokers "frequently concluded that 'natural' cigarettes must be healthier or safer than cigarettes containing chemicals," and that "American tobacco companies have understood for decades that 'natural' is similarly misleading and implies unwarranted health claims." (CAC ¶¶ 50-51 (quoting McDaniel, Patricia A et al., *"I Always Thought They Were All Pure Tobacco": American Smokers' Perceptions of "Natural" Cigarettes and Tobacco Industry Advertising Strategies*, 16 TOBACCO CONTROL e7 (2007)).)
- A study published in December 2016 by researchers at the Schroeder Institute for Tobacco Research and Policy Studies confirmed that consumers believe cigarettes marketed as "natural," "organic," and "additive-free" "are significantly more appealing, healthier or less harmful than packages without these descriptors." (CAC ¶ 52 (quoting Pearson et al., *supra* n.2).)
- The foregoing study also revealed that: (1) "63.9% of NAS smokers believed their brand was less harmful than other brands"; (2) "the strongest correlate of NAS brand preference" (before and after adjustment for relevant variables) "was the perception that their usual brand was less harmful than other cigarette brands"; (3) "NAS smokers are 22 times more likely than other smokers to believe that their brand is less harmful than other cigarette brands"; (4) "NAS smokers may choose the NAS brand because they perceive it as a less harmful cigarette product as a result of NAS branding and/or the descriptors 'organic', 'natural' and 'additive free' on product packaging and advertising"; and (5) "***the disclaimer statements on NAS packs and advertisements . . . are not an effective means to correct consumers' inappropriate harm perceptions***." (CAC ¶ 52 (quoting Pearson et al., *supra* n.2 (emphasis added)).)

- "[I]n a survey of more than 1000 smokers in the United States, 60% thought that removing additives made a cigarette less dangerous to smoke, and 73% believe that cigarettes with additives were more harmful than those that did not have the additives." (CAC ¶ 53 (citing Cummings, K.M., et al., *Are smokers adequately informed about the health risks of smoking and medicinal nicotine?*, NICOTINE & TOBACCO RESEARCH 6(3): S333-340 (2004)).)

- A study conducted by researchers at the Schroeder Institute for Tobacco Research and Policy Studies, the Johns Hopkins Bloomberg School of Public Health, and Global Public Health, New York University determined that "'youth and adults rate cigarette packages with 'organic,' 'natural,' or 'additive-free' descriptors as significantly more appealing, healthier, or less harmful than packages without these descriptors.'" (CAC ¶ 54 (quoting Pearson, Jennifer L., et al., *American Spirit Pack Descriptors and Perceptions of Harm: A Crowdsourced Comparison of Modified Packs*, NICOTINE &TOBACCO RESEARCH 18(8): 1749-1756, 1750 (2016)).)

- "Reynolds has long known and understood that marketing any cigarette as 'Additive-free' would 'reduce the perceived primary health concern' involved in smoking." (CAC ¶ 55 (quoting Memorandum from T.C. Hayes & W.J. Moore (July 22, 1983)).)

- "Reynolds conducted marketing studies to show that people do not think that 'Additive-Free' means safer or healthier (so it could deflect regulators' attention). ***But the result was not what Reynolds expected; to the contrary, the research showed that even when answering leading and biased questions designed to elicit responses showing consumers do not think additive free is safer or healthier, consumers believed that additive-free cigarettes were safer or healthier***." (CAC ¶ 56 (citing Cummings et al., *supra* p. 9 (emphasis added)).)

- In *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006), Judge Gladys Kessler "found, among other things, that the defendants' use of the brand descriptor 'natural' misleadingly conveyed to consumers that the cigarettes were less hazardous to health. Judge Kessler specifically found that defendant Brown & Williamson, which Reynolds' predecessor R.J. Reynolds Tobacco Holdings, Inc. acquired in 2005, developed 'natural' branded cigarettes with knowledge that 'market research show[s] that consumers incorrectly interpret the word 'natural' to mean that the cigarettes are safer and healthier than conventional cigarettes[.]'" *Philip Morris USA, Inc.*, 449 F. Supp. 2d at 924. Judge Kessler enjoined the defendants from using the brand descriptor "natural." Judge Kessler's ruling was affirmed by the D.C. Circuit Court of Appeals. (CAC ¶ 57.)

- The FDA has concluded that Defendants' "labeling for Natural American Spirit cigarettes, which uses the descriptors 'Natural' and 'Additive Free,' represents explicitly and/or implicitly that the products or their smoke do not contain or are free of a substance and/or that the products present a lower risk of tobacco-related disease or are less harmful than one or more other commercially marketed tobacco products."[13]

---

[13] The FTC agrees, having concluded that Defendants "represented, expressly or by implication, that smoking Natural American Spirit tobacco cigarettes, because they contain no additives or

(CAC ¶ 58.)

- "Natural American Spirits cigarettes are not safer or healthier than other cigarettes," and "[i]n fact, research suggests that Natural American Spirits cigarettes contain more harmful ingredients or substances than other cigarettes," and that they "also contain more heavy metals than other cigarettes." (CAC ¶¶ 59, 61-62.)

In short, Plaintiffs have cited administrative findings, peer reviewed studies, Defendants' own internal documents, and numerous court decisions, all of which confirm that a tobacco company's use of the terms "natural," "organic," or "additive-free" to describe its cigarettes misleads reasonable consumers to believe that those cigarettes are safer or healthier than other brands, thereby satisfying any iteration of the 12(b)(6) standard. Defendants, in turn, have made no effort to rebut the administrative findings, have failed to challenge the peer-reviewed studies, and have not cited any contrary authority. Thus, in order to grant their motion, the Court would have to find, as a matter of law, that the FDA, the FTC, the CDC, clinical researchers, 63.9% of those surveyed who smoke NAS cigarettes, and every other judge who has considered the use of health descriptors—including the term "natural"—to be per se unreasonable. Such a ruling would be legally untenable and Defendants' motion should therefore be denied.

## C.   Defendants' Reliance on Their Disclaimer Is Misplaced.[14]

As noted above, Defendants' sole argument is that a reasonable consumer could not be misled because of the small disclaimer that appears on the side of their cigarette packages and in

---

chemicals, is less hazardous to a smoker's health than smoking otherwise comparable cigarettes that contain additives or chemicals." *See* Complaint in *In re: Santa Fe Natural Tobacco Co., Inc.*, dated June 12, 2000. The CDC concurs, noting that "[m]any smokers consider smoking . . . additive-free cigarettes to be safer than smoking regular cigarettes, even though no strong scientific evidence exists to substantiate these beliefs." Centers for Disease Control and Prevention, *Low Yield Cigarettes and Cigarette-Like Products* (2009).

[14] As noted above, for a thorough discussion of the inadequacy of Defendants' disclaimer, Plaintiffs refer the Court to their Opposition to Defendants' Motion (ECF No. 98) at pages 42-52.

their advertisements. *See* Defs. Mot to Dismiss (ECF No. 90) at 42-43. This argument is both incorrect and premature.[15] First, it is incorrect because, as set forth above, Plaintiffs have provided extensive evidence, which the Court must accept as true, that consumers are misled notwithstanding the presence of the disclaimer. *See*, *e.g.*, CAC ¶ 52 (explaining that "the disclaimer statements on NAS packs and advertisements . . . are not an effective means to correct consumers' inappropriate harm perceptions" (quoting Pearson, *et al.*, *supra* n.2)).

Second, a fundamental principle of false advertising law is that the representations must be viewed in the context of the packaging or advertising as a whole. *See*, *e.g.*, *Penrod Ricard USA, LLC v. Bacardi U.S.A, Inc.*, 653 F.3d 241, 250 (4th Cir. 2011) (explaining that "[c]hallenged statements are not to be read in isolation, but must be perused as the average reader would against the whole apparent scope and intent of the writing"). Plaintiffs' Complaint asserts that the misleading healthier and safer message conveyed by Defendants' "Natural" and "Additive-Free" claims is reinforced by use of the term "organic," the use of Native American imagery, and numerous environmental claims. CAC ¶¶ 6-7. The question of how consumers view these claims in light of the packaging and advertising as a whole, and whether they even see or understand the disclaimers, are questions of fact not appropriate for resolution at this stage.

---

[15] Plaintiffs note that the disclosure that appears on Defendants' advertising was required by the FTC's 2000 Consent Order, which ***did not*** address the ***packaging*** for Defendants' cigarettes. Pl. Opp'n (ECF No. 98) at 26. Defendants contend that this shows the FTC found the packaging not to be misleading. *See* Defs. Reply (ECF No. 107) at 10. This is false. The Federal Cigarette Labelling and Advertising Act specifically prohibited the FTC from requiring ***any*** disclosures relating to health and safety on cigarette ***packaging***, and it preserved the FTC's authority to regulate deceptive acts or practices only for ***advertising*** of cigarettes. *See* 15 U.S.C. §§ 1334(a), 1336; *see also Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 148 (2000) (the Act prohibits "regulation of *cigarette labeling* with respect to smoking and health" (emphasis added)). Thus, the FTC did not require disclosures on the packaging because it was statutorily prohibited from doing so, not because it found the packaging not to be misleading.

Third, as Plaintiffs explained in their opening brief, Defendants have relegated their disclaimer to the distant edge of a side panel on their cigarette packages, where it is presented in miniscule typeface and concealed by the proliferation of more prominently displayed text and symbols, making it invisible when the products are displayed on a shelf. This renders the disclaimer entirely ineffective. *See Williams*, 552 F.3d at 939 ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."); *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015); *Burton v. Hodgson Mill, Inc.*, No. 16-CV-1081-MJR-RJD, 2017 WL 1282882, at *6 (S.D. Ill. Apr. 6, 2017) (citing cases finding that ingredient labels cannot defeat claims that "natural" claims are misleading).

Fourth, as the Court appropriately noted at the hearing (Tr. at 89-90), the disclaimer on the packaging and advertisements does not mention the word "natural," and thus cannot eliminate the healthier or safer message that consumers take away from that claim. Accordingly, this Court, like its brethren, should reject Defendant's arguments that the mere presence of a disclaimer proves, as a matter of law, that reasonable consumers would not be misled. Indeed, it is well-settled that "a product label can be misleading even if the alleged misrepresentation is corrected on the ingredient list" (or via a similarly inconspicuous disclaimer). *Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188, 1194 (N.D. Cal. 2014); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010) ("Reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from . . . small print on the side of the box . . . . [T]he presence of a [disclaimer] . . . does not as a matter of law extinguish the possibility that reasonable consumers could be misled[.]").

Fifth, as noted above, the reasonable consumer in this case is impervious to health warnings and disclaimers. NAS smokers had certainly seen and ignored health disclaimers on the packs of the other brands they smoked (as well as a vast amount of public information on the dangers of smoking) before switching to NAS. Thus, one answer to the Court's question at the hearing— "What is wrong with Defendants' additive-free disclaimer" (Tr. 107)—is Defendants knew, and the extraordinary growth in NAS sales confirmed (CAC ¶¶ 3, 45, 89), their disclaimers would have no deterrent effect on addicted adult smokers. Thus, the Court should give little, if any, weight to the content and number of Defendants' disclaimers and warnings in deciding the pending motion.

**D.      Plaintiffs Have Adequately Alleged That Defendants' Processing of the Cigarettes Exceeds What a Reasonable Consumer Would Expect from the Term "Natural."**

Plaintiffs have also alleged that use of the term "natural" is deceptive because Defendants' processing exceeds what reasonable consumers would expect for a "natural" cigarette. CAC ¶¶ 70-81. Plaintiffs *are not*, as Defendants contend, claiming that use of the term "natural" is misleading simply because manufacturing steps must be taken to put their tobacco in cigarette form. Rather, Plaintiffs assert that Defendants' manufacturing processes "do[] not conform to reasonable consumers' understanding of the term 'natural.'" *Aguiar v. Merisant Co.*, No. 14-00670-RGK, 2014 WL 6492220, at *5, *7 (C.D. Cal. Mar. 24, 2014); *Randolph v. J.M. Smucker Co.*, No. 13-80581-CIV, 2014 WL 1018007, at *5 (S.D. Fla. Mar. 14, 2014) ("Plaintiff . . . has adequately alleged that Defendant's processing rendered the final products chemically derived, man-made, and non-natural[.]"); *Ham*, 70 F. Supp. 3d at 1194 (denying motion to dismiss, holding: "it is plausible that a reasonable consumer would expect that an 'All Natural' product contains only natural ingredients, not that the product itself comes from nature").

13

In their Complaint, Plaintiffs explain that Defendants' use of the term "natural," combined with the image of the Native American peace pipe, conveys that "the Natural American Spirit Smoker is smoking what Native Americans are thought to have smoked hundreds of years ago." CAC ¶ 70. Plaintiffs assert that this message is misleading because NAS cigarettes undergo extensive processing, including flue-curing (to lower the pH of the cigarette smoke and allow inhalation), artificial blending, and engineering to boost the free-base nicotine much higher than other brands. CAC ¶¶ 63-66, 72-73. More specifically, Plaintiffs allege that:

- "Defendants intentionally engineered Natural American Spirit cigarettes to be at least as addictive as other cigarettes by creating 'free-base' nicotine." (CAC ¶ 63.)
- "The basic form, known as 'free base' nicotine, is volatile, especially when smoked. As a result, it is absorbed quickly and efficiently into the lungs when a person smokes, where it quickly reaches the brain[.]" (CAC ¶ 64.)
- "Defendants manipulate the design and manufacture of the cigarettes to maximize the amount of free-base nicotine." (CAC ¶ 65.)
- Compared to other common brands of American cigarettes, NAS cigarettes "contained the most free-base form of nicotine," which "*do[es] not occur naturally*; instead, *Defendants engineer their so-called natural cigarette to boost free-base nicotine*. (CAC ¶ 66 (emphasis added).)

Given the foregoing, it is entirely plausible that the adult smokers Defendants targeted were deceived by the terms "natural" and "additive-free" into thinking that NAS cigarettes were less chemically enhanced, less nicotine-laced, less addictive, and thus less deleterious than brands that do not employ those marketing terms. *Philip Morris*, 449 F. Supp. 2d at 216 (noting that "[m]any smoker and potential smokers are unaware of or do not fully appreciate . . . the extent to which nicotine delivery and dosage are highly controlled and engineered"). Accordingly, Plaintiffs have stated a plausible claim for deception, and dismissal at this stage would be premature. *See Barron v. Snyder's-Lance, Inc.*, No. 13-62496-CIV, 2015 WL 11182066, at *13 (S.D. Fla. Mar. 20, 2015) ("Plaintiffs' allegation that a reasonable consumer would be misled by Defendant's Products'

'natural' label is (1) plausible and (2) a question not ripe for resolution at this stage of the proceedings."); *Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *7 (N.D. Cal. Dec. 10, 2013).

### E.   The Pleading Standard in Securities Class Action Litigation Is Different.

At the hearing the Court asked, "Why should I do anything different here than what I do in a securities case? I mean, for example, you line up the complaints, and I say: That one is not misleading, this one is misleading, let's go the [sic] trial on the misleading ones." Tr. at 116. The answer is that the pleading standard for alleging a misleading statement in securities class actions is more stringent than that which applies here. Specifically, the Private Securities Litigation Reform Act mandates that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed" along with the particular facts "giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4. Additionally, "[u]nder certain circumstances, the heightened-pleading requirements of rule 9(b) of the Federal Rules of Civil Procedure might apply to allegations of material misstatements in a Securities Act claim." *Genesee Cty. Employees' Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3*, 825 F. Supp. 2d 1082, 1123 (D.N.M. 2011). Here, in contrast, there is no heightened pleading requirement. The standard is that dismissal is only appropriate where no reasonable person could be misled by the claims at issue. As explained at length above, Plaintiffs have met this standard.

### CONCLUSION

For the reasons above, Defendants' Motion to Dismiss should be denied in its entirety.

Dated:  June 30, 2017                                    Respectfully Submitted,

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
mreese@reesellp.com

*Head Executive Committee Member*


**MORGAN & MORGAN COMPLEX**            **HALUNEN LAW**
**LITIGATION GROUP**
*/s/ John A. Yanchunis*                                   */s/ Melissa W. Wolchansky*
John A. Yanchunis                                         Melissa W. Wolchansky
201 N. Franklin Street, 7th Floor                         1650 IDS Center 80 South 8th Street
Tampa, Florida 33602                                      Minneapolis, Minnesota 55402
Telephone: (813) 223-5505                                 Telephone: (612) 605-4098

**SCHLESINGER LAW OFFICES, P.A.**
*/s/ Scott P. Schlesinger*
Scott P. Schlesinger
1212 SE 3rd Avenue
Fort Lauderdale, Florida 33316
Telephone: (954) 467-8800                                 *Plaintiffs' Co-Lead Class Counsel*

**MCGINN, CARPENTER, MONTOYA and LOVE, P.A.**
Randi McGinn
201 Broadway Boulevard SE
Albuquerque, New Mexico 87102
Telephone: (505) 843-6161
randi@mcginnlaw.com

*Liaison Counsel*

**ZIMMERMAN REED, LLP**
Caleb Marker
2381 Rosecrans Avenue, Suite 328
Manhattan Beach, CA 90254
Telephone: (877) 500-8780
caleb.marker@zimmreed.com
Hart L. Robinovitch
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254
Telephone: (800) 493-2827
hart.robinovitch@zimmreed.com

**CUNEO GILBERT & LADUCA, LLP**
Charles J. LaDuca
8120 Woodmont Avenue - Suite 810
Bethesda, Maryland 20814
Telephone: (202) 789-3960
charles@cuneolaw.com

**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
D. Greg Blankinship
445 Hamilton Avenue - Suite 605
White Plains, New York 10605
Telephone: (914) 298-3281
gblankinship@fbfglaw.com

**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.**
Matthew D. Schultz
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7140
Facsimile: (850) 436-7141
mschultz@levinlaw.com

**SEARCY, DENNEY, SCAROLA,**
**BARNHART & SHIPLEY, P.A.**
James W. Gustafson
517 N. Calhoun St.
Tallahassee, FL 32301
Tel: (850) 224-7600
Facsimile: (561) 383-9454
jwg@searcylaw.com

**LAW OFFICES OF**
**RONALD A. MARRON**
Ronald A. Marron
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
ron@consumersadvocates.com

*Plaintiffs' Executive Committee*