**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| In re:  Santa Fe Natural Tobacco Company Marketing, Sales Practices, and Products Liability Litigation | No. 1:16-md-2695-JB-LF<br><br>*This Submission Relates To All Actions, And Is Brought By All Defendants.* |

**DEFENDANTS' RESPONSE TO
PLAINTIFFS' SUPPLEMENTAL BRIEF**

Plaintiffs asked for the opportunity to submit supplemental briefing to address whether the Court has the authority to determine the legal sufficiency of their consumer-fraud allegations.  Their Supplemental Brief contends that the Court is powerless to independently assess the legal sufficiency of their consumer-fraud allegations.  That is not the law.  The Court has both the authority and the duty to determine, as a matter of law, whether a reasonable consumer would plausibly adopt the misconceptions underlying Plaintiffs' theories of deception.  Plaintiffs are similarly incorrect in arguing that the Court must simply accept their interpretation of various sources supposedly supporting their claim that a reasonable consumer could be deceived.  The Court is in no way bound by Plaintiffs' preferred sources, none of which purports to—or could—resolve the question presently before the Court.

The reason for Plaintiffs' contortions is clear:  the theories of deception that they advance are fundamentally unreasonable and thus legally invalid.  For this very reason, the Court indicated its skepticism of at least the two theories that Plaintiffs' Supplemental Brief addresses:  their "safer cigarette" theory that consumers are misled into believing NAS cigarettes are safer than alternatives and their "un-processed cigarette" theory that consumers believe "natural" cigarettes are not subject to manufacturing processes.  The Court's skepticism was well-founded.  And Plaintiffs' Supplemental Brief fails to salvage either theory.  Both should be rejected.

I. **The Court Has The Authority—And, In Fact, The Duty—To Determine Whether It Is Plausible That Santa Fe's Representations Would Mislead A Reasonable Consumer.**[1]

Plaintiffs insist that the Court's authority is too limited to reach the question whether they have plausibly alleged that Santa Fe's representations are capable of misleading the reasonable consumer. That is incorrect.  In reality, not only can the Court assess the plausibility of Plaintiffs' theories of deception—it is uniquely the Court's duty to do so.

1.  The Court is the gatekeeper of legal sufficiency.  Plaintiffs recognize this bedrock rule, noting that it is "[t]he Court's function … to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  Pls.' Supp. Br. at 4 (quoting *Walker v. THI of N.M. at Hobbs Ctr.*, 803 F. Supp. 2d 1287, 1330 (D.N.M. 2011)).  And the question of legal sufficiency turns on plausibility:  a plaintiff who does not "state a claim to relief that is plausible on its face" is not entitled to proceed on that claim.  *J.H. ex rel. J.P. v. Nation*, 61 F. Supp. 3d 1176, 1189 (D.N.M.), *aff'd sub nom. J.H. ex rel. J.P. v. Bernalillo Cty.*, 806 F.3d 1255 (10th Cir. 2015) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To avoid this obvious result, Plaintiffs ask the Court to make an exception for allegations of consumer deception, and to simply accept their insistence that reasonable consumers would be misled.  But they fail to explain what would justify carving an exception into the established pleading standard, let alone identify a single decision purporting to recognize any such exception.  That is because there is no exception:  the Supreme Court's "decision in *Twombly* expounded the pleading standard for '*all* civil actions.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Twombly*, 550 U.S. at 555–56 & n.3) (emphasis added).

2.  Given this well-established judicial role, it is unsurprising that courts routinely assess the question whether plaintiffs "could *plausibly* prove that a reasonable consumer would be deceived by"

---

[1] Because Defendants did not seek any supplemental briefing, Defendants limit this submission to responding to points made in Plaintiffs' Supplemental Brief.

particular representations.  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 940 (9th Cir. 2008) (emphasis

added).  It is, after all, "well settled that a court may determine as a matter of law that an allegedly

deceptive advertisement would not have misled a reasonable consumer."  *Fink v. Time Warner Cable*,

714 F.3d 739, 741 (2d Cir. 2013) (per curiam).

Plaintiffs claim that the Ninth Circuit's decision in *Williams*, which they hold up as "the leading

case on this issue," changed this tenet and established a rule against dismissing claims for failure to

satisfy the reasonable-consumer standard.  Pls.' Supp. Br. at 4–5.  *Williams* did no such thing.  In

fact, "a number of courts have dismissed [consumer-fraud] claims as a matter of law post-*Williams*."

*Red v. Kraft Foods, Inc.*, No. 10-cv-1028, 2012 WL 5504011, *3–*4 (C.D. Cal. Oct. 25, 2012) (holding,

after engaging in a "a close reading of *Williams* and its progeny," that "no factfinder could find that

the challenged packaging is likely to deceive a reasonable consumer").[2]  Indeed, even after *Williams*,

the Ninth Circuit repeatedly has affirmed the dismissal of consumer-fraud claims where the district

court determined that the plaintiff had not alleged a statement that plausibly could mislead

reasonable consumers.[3]  The upshot is that, even after *Williams*, "there is no hard-and-fast rule

---

[2] *See also, e.g., Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032, 1036–37 (N.D. Cal. 2015) (dismissing
consumer-fraud claim, and explaining that *Williams* did not preclude the court from doing so where
the alleged representations "were simply not likely to mislead a reasonable consumer"); *Ang v.
Whitewave Foods Co.*, No. 13-cv-1953, 2013 WL 6492353, *4 (N.D. Cal. Dec. 10, 2013) (explaining
that "in certain situations a court may assess, as a matter of law, the plausibility of alleged violations
of" consumer-protection laws, and holding that *Williams* did not preclude the court from
dismissing a false-labeling claim that "stretches the bounds of credulity"); *Sugawara v. Pepsico, Inc.*,
No. 08-cv-1335, 2009 WL 1439115, *3–4 (E.D. Cal. May 21, 2009) (dismissing consumer-fraud
claim, and distinguishing *Williams* based on the implausibility of the alleged misinterpretations at
issue); *infra* n.7.

[3] *See, e.g., Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1161–62 (9th Cir. 2012) (affirming
dismissal of consumer-fraud claim where the challenged "advertising was not likely to deceive a
reasonable consumer"); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012)
("[W]e conclude that Carrea's state law claims fail to satisfy the 'reasonable consumer' standard in
*Williams* …. Dismissal of these claims with prejudice was therefore proper."); *Stuart v. Cadbury*

against making this [reasonable-consumer] determination on a motion to dismiss." *Larin v. Bank of Am., N.A.*, No. 09-cv-1062, 2012 WL 12863114, *3 (S.D. Cal. Nov. 27, 2012), *aff'd*, 617 F. App'x 651 (9th Cir. 2015).  This line of authority explains why Plaintiffs are unable to cite a single decision supporting their insistence that the Court is barred from assessing the plausibility of their consumer-fraud allegations at this stage of the litigation.

**3.**   At the hearing, the Court compared Plaintiffs' claims to claims of securities fraud.  Tr. 114:17–116:18.  The comparison is an apt one.  Plaintiffs seek to avoid this analogy by noting that some securities cases are subject to additional procedural rules that require fraud to be pled with particularity.  Pls.' Supp. Br. at 15.  This meaningless distinction does nothing to detract from the Court's correct observation that securities-fraud claims are subject to a materiality standard, under which "a fact is material if 'a reasonable person would consider it important in determining whether to buy or sell' securities." *SEC v. Goldstone*, 952 F. Supp. 2d 1060, 1226 (D.N.M. 2013).  That standard, of course, closely tracks the reasonable-consumer standard that applies here.  And there is no disputing that, in securities-fraud cases, materiality is a legal question fit for resolution by the Court on a motion to dismiss.  *Goldstone* proves the point:  there, the Court dismissed several of the SEC's claims of deception after determining that the representations and omissions at issue were not materially misleading.  *Id.* at 1224–27.[4]  The Court holds the same power here.

---

*(continued…)*

*Adams USA, LLC*, 458 F. App'x 689, 690–91 (9th Cir. 2011) (applying *Williams* and affirming district court's dismissal of consumer-fraud claims that "defy common sense").

[4] Similarly, in a variety of other contexts, the Court has not hesitated to jettison implausible allegations at the 12(b)(6) stage. *See, e.g.*, *Saenz v. Lovington Mun. Sch. Dist.*, 105 F. Supp. 3d 1271, 1313 (D.N.M. 2015) (dismissing plaintiff's tort claims because, among other things, "Defendant's conduct is not sufficiently outrageous to shock the conscience"); *Einess v. Tresco, Inc.*, 44 F. Supp. 3d 1082, 1095–96 (D.N.M. 2014) (holding that plaintiff failed to plausibly allege that she was "subjected to working conditions so intolerable … that a reasonable person would be compelled to resign" to state a constructive-discharge claim, where plaintiff "alleges only modest hardships" and

*     *     *     *     *

In short, the Court's power is not nearly as limited as Plaintiffs insist.  The Court's gatekeeping duty requires it to hold Plaintiffs' claims to the plausibility standard and to dismiss all claims grounded in theories of misrepresentation that do not satisfy the reasonable-consumer standard.

## II.  Plaintiffs' Latest Efforts At Overcoming The Reasonable-Consumer Standard Fall Short.

Nor can Plaintiffs overcome the reasonable-consumer standard.  In seeking to rehabilitate their "safer cigarette" and "un-processed cigarette" theories, Plaintiffs offer a number of arguments—a few of which are new, but most of which simply rehash points covered in the extensive briefing and oral argument that the Court has already received.  All of these arguments, both new and old, fail.

**1.**   In defending their "safer cigarette" theory, Plaintiffs shift from downplaying the Court's authority to attempting to outsource it.  They claim that the Court *must* accept their theory in light of "administrative findings, peer reviewed studies, Defendants' own internal documents, and numerous court decisions."  Pls.' Supp. Br. at 10.  And they further insist that Defendants "have made no effort to rebut" this supposed "extensive evidence."  *Id.* at 10, 11.  Plaintiffs are doubly wrong.

*First*, Defendants are not required to rebut anything.  On a motion to dismiss, "the court only looks to whether plaintiff's complaint states a claim under [Rule] 12(b)(6), not whether defendant has evidence at this time to rebut plaintiff's claim."  *Chastain v. Hodgdon*, 202 F. Supp. 3d 1216, 1222 n.3 (D. Kan. 2016); *see also Wolf v. Bank of Am., N.A.*, No. 13-cv-212, 2014 WL 12633677, *7 (E.D. Tex. Sept. 30, 2014) ("Contrary to Plaintiffs' argument that Defendants have failed to offer proof to support their position, there is no evidentiary burden placed on Defendants at the Rule 12(b)(6)

---

*(continued…)*

a "burden [that] constitutes only a minor annoyance"); *Heyward v. Credit Union Times*, 913 F. Supp. 2d 1165, 1196 (D.N.M. 2012) (dismissing defamation claim after concluding that "[a]ny implication that may derive from the [challenged] assertion …, while maybe unflattering, does not rise to the level of rendering [plaintiff] contemptible or ridiculous in public estimation, expose him to contempt or hatred, or hinder virtuous people from associating with him").

phase.  Instead, the burden is *on Plaintiffs* to state a claim upon which relief can be granted.").
Plaintiffs cannot keep their flawed allegations alive by shifting the burden of rebuttal to Defendants.

*Second*, the sources that Plaintiffs invoke do not carry Plaintiffs' burden of setting forth a legally
valid claim.  None of those sources resolved—or could have resolved—the legal question of
whether the challenged representations could plausibly mislead a reasonable consumer into believing
that NAS cigarettes are safer than alternatives.

*Administrative Findings.*  Plaintiffs invoke three agencies:  the FTC, the FDA, and the CDC.
None of these agencies has determined that the representations at issue here, in context, are capable
of misleading a reasonable consumer.

- o   Plaintiffs claim that the FTC "concluded" that Santa Fe's representations are misleading
  (Pls.' Supp. Br. at 9 n.13), but they rely on the administrative complaint that the FTC filed
  against Santa Fe in 2000, while ignoring the Consent Order that resolved that complaint and
  expressly authorized Santa Fe to continue using the challenged representations.  That Order
  puts to rest any idea that the FTC has decided that the challenged representations, when
  accompanied by the specified disclosure (as they always are), would mislead a reasonable
  consumer.  In fact, the Consent Order reflects precisely the opposite conclusion.  As the
  FTC stated at the time, the disclosure "should make it clear that … cigarettes without
  additives are not safe."  Ex. 4 to Defs.' First Mot. for Judicial Notice (ECF 71-1 at 21).

- o   Plaintiffs repeat their error when it comes to the FDA, relying on a Warning Letter that, as
  Defendants have explained, does not "represent a decision determining rights or obligations,
  or one from which legal consequences flow." *Holistic Candlers & Consumers Ass'n v. FDA*, 664
  F.3d 940, 944 (D.C. Cir. 2012); *see also* Defs.' MTD at 17–18.  This "informal and advisory"
  statement of the FDA's tentative position (FDA Reg. Proc. Manual, *Advisory Actions*, § 4-1-1
  (2012))—which was ultimately superseded by the Memorandum of Agreement between the
  FDA and Santa Fe—does not represent a final determination that Santa Fe's representations
  are capable of misleading a reasonable consumer.

- o   Finally, Plaintiffs belatedly argue that the CDC supports their position.  Pls.' Supp. Br. at 10
  n.13.  But the sole document they cite is a Fact Sheet about "Low-Yield Cigarettes" that says
  precisely nothing about Santa Fe or NAS cigarettes.  CDC, *Fast Facts and Fact Sheets:  Low-
  Yield Cigarettes*, https://goo.gl/5EKjqZ.  This Fact Sheet is of no use here.

*Studies.*  Plaintiffs seem to believe the Court *must* defer to the findings of the consumer surveys
and studies they cite.  But those materials are not capable of resolving the legal question whether

Santa Fe's representations could plausibly mislead a reasonable consumer.  As an initial matter, in *none* of the cited studies were smokers shown the disclosure on NAS packages or advertisements when they were asked about their perceptions.  The studies accordingly reveal nothing about the plausibility of Plaintiffs' claim that smokers are misled by the use of the challenged descriptors when accompanied by the disclosure that makes Plaintiffs' claim implausible.  In addition to that glaring omission, the studies frequently do not even stand for the propositions for which they are cited.[5]

Moreover, even if these studies were on point and accurately cited, this Court's gatekeeping function cannot simply be farmed out to Plaintiffs' preferred "clinical researchers."  Pls.' Supp. Br. at 10.  This conclusion is driven home by one of the decisions on which Plaintiffs rely.  In *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, the district court concluded, "as a matter of law, that no reasonable consumer could be misled by the challenged advertising" regarding the geographic origin of certain rum, and on that basis disregarded survey evidence purportedly showing that consumers *were* misled.  653 F.3d 241, 247 (3d Cir. 2011) (cited at Pls.' Supp. Br. at 11).  The Third Circuit affirmed, concluding that the advertising, "taken as a whole, could not mislead any reasonable

---

[5] For example, Plaintiffs repeatedly cite one study (authored by one of their retained experts) for the proposition that "63.9% of NAS smokers believed their brand was less harmful," obscuring the fact that the question actually posed was:  "Do you think the brand of cigarettes you usually smoke *might* be less harmful, no different, or more harmful compared to other cigarette brands?"  Jennifer Pearson, et al., *Misperceptions of Harm Among Natural American Spirit Smokers:  Results from Wave 1 of the Population Assessment of Tobacco and Health (PATH) Study (2013-2014)*, 26 TOBACCO CONTROL e61, e62 (2016) (emphasis added) (cited at Pls.' Supp. Br. at 2, 8, 11).  Plaintiffs also omit the study's express statement that "we *cannot* determine a causal sequence between lowered harm perceptions and NAS use."  *Id.* at e65 (emphasis added).  Likewise, Plaintiffs divine, from another study's survey of internal industry marketing documents, the proposition that some American tobacco companies "have understood for decades that 'natural' is … misleading."  Pls.' Supp. Br. at 8 (citing Patricia A. McDaniel, et al., *"I Always Thought They Were All Pure Tobacco":  American Smokers' Perceptions of 'Natural' Cigarettes and Tobacco Industry Advertising Strategies*, 16 TOBACCO CONTROL e7 (2007)).  But what that study actually concluded is that tobacco companies' focus-group research showed that smokers "initially had difficulty interpreting the term 'natural' in relation to cigarettes" and, even in the absence of a disclaimer, inferred a health claim only after they were educated, including with "scare tactics," about ingredients in other cigarettes.  McDaniel, *supra*, at 1, 5, 7.

consumer about where Bacardi's rum is made, which means that survey evidence has no helpful part to play on the question of what the label communicates regarding geographic origin." *Id.* at 250. As the court explained, "a district court can properly disregard survey evidence as immaterial" where "reasonable people would have to acknowledge" that the language at issue "is not false or misleading." *Id.* at 253. Just as in *Pernod Ricard*, Plaintiffs' consumer surveys cannot dispossess this Court of its authority to decide, as a matter of law, that a label's content is not misleading.

*Internal Documents.* Plaintiffs fare no better in deploying "industry internal documents" supposedly showing that "the tobacco industry knows … that consumers are misled by" the challenged terms. Pls.' Supp. Br. at 2–3. None of the documents attached to their brief purports to explain how consumers understand the challenged representations when accompanied by the FTC-mandated disclosure. In fact, two of the three documents (Exhibits 2 and 3) predate the disclosure, as does the only passage that Plaintiffs rely on in the third document (Exhibit 1, excerpts from Santa Fe news coverage).[6] Moreover, even if these documents *could have* accounted for the disclosures, they still could not usurp the Court's role in assessing the plausibility of Plaintiffs' allegations.

*Other Courts' Decisions.* Finally, Plaintiffs find no aid in other judicial decisions involving cigarette marketing representations. Plaintiffs cannot point to a single case involving the question of *these* representations, describing *these* cigarettes, accompanied by *this* disclosure. In fact, none of their cited decisions involved any sort of disclosure. These decisions simply have no bearing here.

2. Plaintiffs next renew their attacks on the disclosure included on every NAS advertisement and package. In so doing, they claim that Defendants have somehow given up ground by placing weight on the disclosure, as if this were some sort of concession that the challenged terms would be

---

[6] Plaintiffs have not even attempted to satisfy the standards for judicial notice with respect to any of the documents they attach, and so Defendants respectfully submit that the Court should not place any weight on the documents. *See* Fed. R. Evid. 201.

legally actionable were it not for the disclosure.  Pls.' Supp Br. at 2–3.  In fact, Defendants' argument is simply that the challenged representations, when viewed in the full context, cannot mislead a reasonable consumer.[7]  It is hard to see why Plaintiffs take issue with this, given their agreement that one must view Santa Fe's representations "in the context of the packaging or advertising as a whole."  Pls.' Supp. Br. at 11.  That context includes the disclosures.  In fact, Plaintiffs are the ones who ignore the full context, as they once again focus their arguments exclusively on the packaging disclosures and do not dispute that the identically phrased disclosure that appears on every NAS advertisement fully complies with the FTC's Consent Order.  This omission substantially undermines Plaintiffs' position, as they never attempt to explain why it is reasonable to assume that a consumer who sees the unchallenged disclosure on an NAS advertisement would somehow forget that information when viewing an NAS package (which, in fact, repeats that information).  And yet Plaintiffs ask the Court to make precisely that assumption.  The Court should not do so.[8]

---

[7] *Bobo v. Optimum Nutrition, Inc.*, No. 14-cv-2408, 2015 WL 13102417, *4 (S.D. Cal. Sept. 11, 2015) (discussing *Williams* in the course of dismissing a false-labeling case, and restating the general rule that "[a] plaintiff cannot pursue a claim based on a statement that can only be misleading when the information surrounding it is ignored").

[8] Plaintiffs argue that the Federal Cigarette Labeling and Advertising Act (FCLAA) "specifically prohibited the FTC from requiring any disclosures relating to health and safety on cigarette packaging."  Pls.' Supp. Br. at 11 n.15 (emphases omitted).  But as the First Circuit explained in the *Good v. Altria Group, Inc.* decision on which Plaintiffs have placed substantial weight, it is "at least arguable that the restriction on additional health-related statements in the FCLAA does not apply to the FTC" when it comes to requiring statements on packaging.  501 F.3d 29, 57 (1st Cir. 2007); *see also* 15 U.S.C. § 1336 ("Nothing in this chapter … shall be construed to limit, restrict, expand, or otherwise affect the authority of the Federal Trade Commission ….").  Importantly, the FTC itself apparently agrees, having imposed requirements on cigarette labeling—notwithstanding the FCLAA—in the 1995 Consent Decree quoted in Plaintiffs' initial opposition brief.  Pls.' Opp. to MTD at 33 (quoting *In re Am. Tobacco Co.*, 119 F.T.C. 3, 10–11 (1995)).  If the FTC had concluded that action were needed with respect to NAS packaging, the FCLAA would not have prevented it from likewise attempting to include such a provision in the 2000 Consent Decree relevant here.

In any event, Plaintiffs' five-pronged attack on the packaging disclosure fails on the merits. Defendants have explained above why Plaintiffs' first point (that the Court is required to accept Plaintiffs' supposedly "extensive evidence … that consumers are misled," Pls.' Supp. Br. at 11) fails, and why their second point (that the challenged terms must be viewed in context, *id.*) actually undermines their position. Plaintiffs' third point (that the disclosures are not prominent enough, *id.* at 12) adds nothing to what has already been said; Defendants have explained that the packaging disclosure provides more detailed information that confirms the "natural" and "additive-free" representations, rather than contradicting those representations like in the cases that Plaintiffs invoke. Defs.' MTD Reply at 21–22.

Plaintiffs' final two points, although new, are no more viable than the others. In their fourth point, Plaintiffs claim that the disclosure is inadequate because it "does not mention the word 'natural.'" Pls.' Supp. Br. at 12. But the disclosure plainly disclaims any notion that NAS cigarettes are safer than alternatives: "No additives in our tobacco does **NOT** mean a safer cigarette." As the FTC—whose views Plaintiffs agree are relevant—evidently concluded when it mandated the text of the disclosure, only an *un*reasonable consumer could read that disclosure and come away believing that NAS cigarettes actually are safer than others because the disclosure does not specifically include the word "natural."

Plaintiffs' fifth point is that the disclosure is insufficient because "the reasonable consumer in this case is impervious to health warnings and disclaimers." Pls.' Supp. Br. at 13. This is a variation on Plaintiffs' novel request—aired for the first time at the hearing—that the Court create and apply a "nicotine addicted consumer" standard, rather than applying the reasonable-consumer standard. *Id.* at 4 n.9. It is difficult to see this request for a singular standard applicable solely in this litigation as anything but a concession that Plaintiffs cannot satisfy the reasonable-consumer standard. In any

event, it is well-established that "[t]he 'reasonable consumer' standard is an objective one"; it does

not turn on the particular characteristics of some population. *Allen v. Similasan Corp.*, 306 F.R.D.

635, 647 (S.D. Cal. 2015); *see also, e.g.*, *Ackerman v. Coca-Cola Co.*, No. 09-cv-395, 2010 WL 2925955,

*22 (E.D.N.Y. July 21, 2010) ("The standard for whether an act or practice is misleading is an

objective one requiring a showing that a reasonable consumer would have been misled by the

defendant's conduct.") (cited at Pls.' Supp. Br. at 12).  Plaintiffs have not identified a single decision

supporting their attempt to turn the standard into a subjective one—let alone a subjective standard

based on nothing more than Plaintiffs' *ipse dixit* as to the chemical effect of cigarette-smoking (an *ipse

dixit* that flies in the face of reality).  For all of these reasons, Plaintiffs cannot sidestep the

disclosures that expressly disclaim the idea on which their "safer cigarette" theory depends.

   **3.**   Plaintiffs also make a passing attempt at saving their "un-processed cigarette" theory.  Pls.'

Supp. Br. at 13–15.  This discussion is most notable for confirming that Plaintiffs still cannot make

up their mind as to what, exactly, their theory is.  On the one hand, they continue distancing

themselves from the theory alleged in their CAC (that using "the term 'natural' to describe the

tobacco in Natural American Spirit cigarettes suggests that the cigarettes are not subject to

engineering processes," Tr. 130:3–7), and instead argue that a reasonable consumer would not have

expected the *particular* engineering processes that they allege Santa Fe uses.  Pls.' Supp. Br. at 13.  But

that theory fails for reasons Defendants have already explained at length.  Defs.' MTD at 25–27, 47–

49; Defs.' MTD Reply at 23–24.[9]  On the other hand, Plaintiffs at times relapse into an absolutist

version of their theory, under which the use of *any* engineering processes renders the term "natural"

---

[9] The only novelty is Plaintiffs' attempt to incorporate the CAC's allegations regarding freebase nicotine.  But the CAC addressed freebase nicotine only in connection with Plaintiffs' "safer cigarette" theory (CAC ¶¶ 9, 63–66), and even now, Plaintiffs tie these allegations to the notion that consumers expected cigarettes that are "less deleterious"—i.e., safer.  It is thus unclear what this has to do with Plaintiffs' "un-processed cigarette" theory.

misleading because that term implies that NAS cigarettes are "unsullied by the hand of man," and bear "the benign innocence of an earlier uncorrupted age."  Pls.' Supp. Br. at 3 n.8.  Plaintiffs' vacillation simply underscores that their "un-processed cigarette" theory lacks a foundation.

## CONCLUSION

Plaintiffs' attempts at resuscitating their "safer cigarette" and "un-processed cigarette" theories fail.  The Court should dismiss Plaintiffs' claims insofar as they rely on each theory.

Dated:  July 14, 2017

Respectfully submitted,


/s/ David M. Monde


Andrew G. Schultz
   aschultz@rodey.com
RODEY, DICKASON, SLOAN,
AKIN & ROBB, P.A.
201 3rd Street N.W., Suite 2200
Albuquerque, NM 87102
T: 505.765.5900
F: 505.768.7395

David M. Monde (*pro hac vice*)
   dmmonde@jonesday.com
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA 30309
T: 404.521.3939
F: 404.581.8330

Peter J. Biersteker (*pro hac vice*)
   pbiersteker@jonesday.com
William D. Coglianese (*pro hac vice*)
   wcoglianese@jonesday.com
Jordan Von Bokern (*pro hac vice*)
   jvonbokern@jonesday.com
Jon G. Heintz (*pro hac vice*)
   jheintz@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
T: 202.879.3939
F: 202.626.1700

Sharyl Reisman (*pro hac vice*)
   sareisman@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281
T: 212.326.3939
F: 212.755.7306


*Counsel for Defendants*
*Santa Fe Natural Tobacco Company, Inc.,*
*Reynolds American Inc., and*
*R.J. Reynolds Tobacco Company*

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2017, I electronically filed the foregoing with the Clerk of the

Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel or

parties of record.


Dated:  July 14, 2017                                    Respectfully submitted,


                                                        /s/ David M. Monde

                                                        David M. Monde (*pro hac vice*)
                                                           dmmonde@jonesday.com
                                                        JONES DAY
                                                        1420 Peachtree Street, N.E.
                                                        Suite 800
                                                        Atlanta, GA 30309
                                                        T: 404.521.3939
                                                        F: 404.581.8330

                                                        *Counsel for Defendants*
                                                        *Santa Fe Natural Tobacco Company, Inc.,*
                                                        *Reynolds American Inc., and*
                                                        *R.J. Reynolds Tobacco Company*