1         IN THE UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF NEW MEXICO

3

4  IN RE: SANTA FE NATURAL
    TOBACCO COMPANY MARKETING
5  AND SALES PRACTICES LITIGATION,

6
                 NO. 16-MD-2695 JB/LF
7

8

9

10               VOLUME 2

11
      Transcript of Motion Proceedings before
12  The Honorable James O. Browning, United States
    District Judge, Albuquerque, Bernalillo County,
13  New Mexico, commencing on July 20, 2017.

14
    For the Plaintiffs:  Ms. Melissa Wolchansky; Ms.
15  Randi McGinn; Ms. Kathy Love; Mr. Michael Reese; Mr.
    Scott Schlesinger; Mr. John Bienvenu; Mr. Reed
16  Bienvenu; Ms. Erika Anderson; Mr. John Yanchunis; Mr.
    Nicholas Koluncich
17
    For the Plaintiffs (Via telephone):  Mr. Jeffrey
18  Haberman; Mr. Jonathan Gdanski

19
    For the Defendants:  Mr. Andrew Schultz; Mr. Peter
20  Biersteker; Mr. David Monte; Mr. Jordan Von Bokern

21
        Jennifer Bean, FAPR, RDR, RMR, CCR
22         United States Court Reporter
         Certified Realtime Reporter
23          333 Lomas, Northwest
         Albuquerque, NM  87102
24        Phone:  (505) 348-2283
          Fax:  (505) 843-9492
25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Good morning everyone.  I
 2   appreciate everyone making themselves available to me
 3   this morning.
 4              All right.  The Court will call In Re:
 5   Santa Fe Natural Tobacco Company Marketing and Sales
 6   Practices and Products Liability Litigation, Civil
 7   Matter No. 16-MD-2695 JB/LF.
 8              If counsel will enter their appearances.
 9   Let's start with the plaintiffs.
10              MS. McGINN:  Your Honor, Randi McGinn and
11   Kathy Love, liaison counsel.
12              THE COURT:  All right.  Ms. McGinn,
13   Ms. Love, good morning to you.
14              MS. WOLCHANSKY:  Good morning, Your Honor.
15   Melissa Wolchansky, co-lead counsel.
16              THE COURT:  All right.  Ms. Wolchansky,
17   good morning to you.
18              And Mr. Reese?
19              MR. REESE:  Good morning, Your Honor.
20   Michael Reese.
21              THE COURT:  All right.  Mr. Reese, good
22   morning to you.
23              And then in the Haksal case, the Bienvenus?
24              MR. BIENVENU:  Good morning, Your Honor.
25   John Bienvenu on behalf of plaintiffs in the Haksal
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   matter.
 2              THE COURT:  All right.  Mr. Bienvenu.
 3              MR. REED BIENVENU:  Good morning, Your
 4   Honor.  Reed Bienvenu on behalf of plaintiffs.
 5              THE COURT:  All right.  Mr. Bienvenu, good
 6   morning to you.
 7              And in the White matter?  Ms. Anderson?
 8              MS. ANDERSON:  Erika Anderson, Your Honor.
 9              THE COURT:  All right.  Ms. Anderson, good
10   morning to you.
11              And then in the Okstad matter?
12   Mr. Schlesinger?
13              MS. SCHLESINGER:  Good morning, Judge.
14              THE COURT:  How are you doing today?
15              MS. SCHLESINGER:  Good.  Good to see you
16   again, Your Honor.
17              THE COURT:  Good morning to you.
18              And then appearing telephonically in that
19   matter?
20              MR. HABERMAN:  Good morning, Judge.
21   Jeffrey Haberman, Schlesinger Law Firm.
22              THE COURT:  All right.  Mr. Haberman.
23              And Mr. Gdanski, are you there?
24              MR. GDANSKI:  Good morning, Judge.
25   Jonathan Gdanski, also with Schlesinger Law Firm.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Mr. Haberman, Mr.
 2     Gdanski, good morning to you.
 3              And in the Waldo matter?
 4              MR. YANCHUNIS:  Good morning, Your Honor.
 5     John Yanchunis.  I will not be speaking today other
 6     than my introduction this morning.  And I would
 7     ask -- I mentioned to opposing counsel -- I've got a
 8     matter before a U.S. District Judge in New Jersey at
 9     9:30 that I could not move.  And I apologize for
10     that.  And I need to handle that hearing
11     telephonically, so I'll step out in about a half hour
12     or less.  I apologize for that.
13              THE COURT:  All right.  Don't worry about
14     it.  Mr. Yanchunis, good morning to you.
15              And Mr. Koluncich, are you going to enter
16     an appearance or just sit back there?
17              MR. KOLUNCICH:  Good morning, Your Honor.
18     I may as well.  Nicholas Koluncich on behalf of
19     plaintiffs.
20              THE COURT:  All right.  Good to see you,
21     Mr. Koluncich.
22              Anyone else need to enter an appearance?
23     Telephone?  Here?
24              All right.  Let me -- since we've been
25     together, I've been working on our opinion.  And I'd
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   say I have about 40 pages done.  Some work on the

 2   facts, some on the procedural, and then some work on

 3   a couple of issues that we worked on last time.  Let

 4   me talk to you a little bit about a couple of them.

 5   I don't think my views have changed on two of them

 6   that I've worked on, but give you a little bit more

 7   thought as I put this together.

 8            Let me start with the first issue in the

 9   motion to dismiss, which is the preemptive scope of

10   the FTC's consent order authorizing Santa Fe

11   Tobacco's use of the terms "natural" and

12   "additive-free."  The question being whether the

13   FTC's consent order authorizing Santa Fe Tobacco's

14   use of "additive-free" and other substantially

15   similar terms, "natural," impliedly preempts the

16   plaintiffs' claims to the extent they rely upon a

17   safer cigarette theory; i.e., that they were misled

18   into believing that the NAS cigarettes are safer than

19   alternatives.

20            What I understand the defendants to be

21   arguing is that this theory, if it's successful,

22   would pose a direct obstacle to the purposes and

23   objectives of federal policy, as manifested by the

24   order, and primarily relying on page 11 of their

25   motion to dismiss, and their reliance specifically on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    the Tenth Circuit's decision in United States Airways

 2    versus O'Donnell, a 2010 decision.

 3              As I indicated when we were here together

 4    on June 9, I continue to disagree that the consent

 5    order preempts the plaintiffs' safer cigarette

 6    theory, and am still inclined to deny the motion to

 7    dismiss as to that theory.

 8              Preemption analysis begins with the

 9    assumption that the historic police powers of the

10    states are not to be superseded by federal law unless

11    that was the clear and manifest purpose of Congress.

12    And that's Medtronic.  And then in the Cipollone

13    versus Liggett Group cases, again, they applied a,

14    quote, "presumption against the preemption of state

15    police power regulations."  As the Supreme Court has

16    repeatedly stated, Congress' -- or in this case a

17    federal agency's -- intent, in preemption analysis,

18    intent is the "ultimate touchstone."  And Wyeth

19    versus Levine says that.

20              Here, customer protection law, including

21    cigarette advertising regulations, is a field that's

22    traditionally reserved for the state's historic

23    police powers.  Some of these cases get a little old,

24    but talk about that.  But in Packer Corp. versus

25    State of Utah the Supreme Court said, "The state may

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    under the police power regulate the business of

2    selling tobacco products and advertising connected

3    therewith."  So to prevail on their motion to

4    dismiss, the defendants must overcome a strong

5    presumption against preemption.  That's what

6    Cipollone says.

7           Preemption may be express or implied.  The

8    Gade case makes that clear.  As relevant here,

9    implied conflict preemption occurs where, quote,

10   "compliance with both federal and state regulation is

11   a physical impossibility," Florida Lime and Avocado

12   Growers, which is an older case says that.  Or even

13   an older case, Hines versus Davidowitz, where state

14   law "stands" -- I'm quoting again -- "as an obstacle

15   to the accomplishment and execution of the full

16   purposes and objectives of Congress."  Justice

17   Thomas, in his concurring opinion in Pharmacy

18   Research and Manufacturers said, "Obstacle preemption

19   turns on whether the goals of a federal statute are

20   frustrated by the effect of the state law."  And

21   whether an obstacle is sufficient for preemption

22   purposes "is a matter of judgment, to be informed by

23   examining the federal law as a whole and identifying

24   its purpose and intended effects."  The Tenth Circuit

25   said that in the Barber case.  As with all forms of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   preemption, the Supreme Court has emphasized the need

2   for clear intent when applying obstacle preemption.

3   And the Supreme Court said that as recently as 2012,

4   in Arizona versus United States.

5          The defendants rely on a handful of cases

6   which they contend establish the consent order, such

7   as the one at issue here, have preemptive effect.

8   And they rely, among others, on the Feikema versus

9   Texaco case from the Fourth Circuit, and GMC case

10  from the Second Circuit.  Again, those are 1990

11  cases.  The defendants, for example, quote the Fourth

12  Circuit statement in Feikema that when an agency --

13  and I'm quoting -- "acting with invalid statutory

14  authority enters a consent order, that order will

15  also preempt conflicting state regulation, including

16  a federal court order based on state common law."

17  That's a quote from Feikema that's right in the

18  motion to dismiss.  The defendants also quote the

19  Second Circuit's case in GMC that an FTC, quote,

20  "consent order reflecting a reasonable policy choice

21  of a federal agency and issued pursuant to

22  congressional grant of authority may preempt state

23  legislation."

24          Other courts have -- rightly in my view --

25  criticized these cases' suggestion that consent

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    decrees may foreclose the rights of nonparties.  In

2    Wabash Valley Power Association, from the Seventh

3    Circuit, Judge Easterbrook said that, quote, "because

4    neither the state nor the consumers were parties to

5    the FTC's case in GMC versus Abrams, it is hard to

6    understand how the decree could blot out their claims

7    based on state law."  Judge Easterbrook reasoned

8    that, rather, I'm quoting, "whether the decree has

9    such an effect should depend on whether it was

10   adopted by the agency as its own policy following the

11   procedures the APA requires; then the preemption

12   would come from substantive rules rather than the

13   parties' assent."  Easterbrook cited an older case,

14   United States v. AT&T, saying that an antitrust

15   consent decree may preempt state law when the states

16   have had an opportunity to intervene and their

17   contentions have been resolved on the merits.  Here,

18   the consent decree was issued without full notice or

19   opportunity for comment, or pursuant to informal

20   procedures described by the APA.  It was thus not

21   adopted by the FTC as, quote, using Easterbrook's

22   words, "as its own policy following the procedures

23   the APA requires."

24         Also illustrative are the Fourth Circuit's

25   own subsequent statements limiting the scope of its

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    analysis in Feikema versus Texaco.  Specifically

2    Cavallo versus Star Enterprise.  Again, these are a

3    little bit older cases, but in 1996, in the Cavallo

4    case, the Fourth Circuit stated that an entity,

5    quote, "cannot be held liable for activities in

6    conformity" -- and that word is emphasized in the

7    Fourth Circuit's own language -- "with the EPA

8    orders," but held "that does not end the inquiry"

9    whether a consent order preempts a third-party action

10   based on state law.  The Fourth Circuit stated that,

11   quote, "damages claims conflict with a consent

12   decree, and are thus preempted, only if the allegedly

13   tortious activities (1) were required, directed, or

14   supervised by the agency, and (2) were performed

15   properly."  The Fourth Circuit added that, with

16   respect to the plaintiffs' claims in that case,

17   "incidents of improper operation, supervision,

18   management, design, installation, repair, and

19   updating of the waste site or its equipment may be

20   actionable if not compelled by the EPA orders."

21   Here, the defendants are not "required, directed, or

22   supervised by" the FTC with respect to their use of

23   the terms "additive-free" or "natural."  The FTC's

24   consent order did not compel Santa Fe Tobacco to use

25   those terms in their advertising or cigarette

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    packaging; rather, it simply authorized the use of

2    those terms if they were accompanied by a subsequent

3    disclosure.  Judge Vazquez, in her Altria case,

4    Mulford, said, "The FTC found the use of such

5    descriptors permissible if they were accompanied by

6    disclosure."  And I think that's what's going on

7    here.  Thus, even relying on the defendants' cases,

8    the consent order is not preemptive of the

9    plaintiffs' safer cigarette theory.

10           The Second Circuit has also clarified that

11   consent decrees, although binding on the parties, do

12   not preempt third-party claims.  In 1999, in United

13   States v. City of New York, the Second Circuit rather

14   plainly stated that, quote, "those who are not

15   parties to a consent decree are free to challenge the

16   decree and actions taken under it."  In reaching this

17   conclusion, the Second Circuit relied upon

18   well-settled Supreme Court precedent and a -- and I'm

19   quoting here from Martin versus Wilks, that "a

20   judgment or decree among parties to a lawsuit

21   resolves issues as among them, but it does not

22   conclude the rights of strangers to those

23   proceedings."  I realize Martin has been somewhat

24   superseded by some civil rights litigation, but I

25   think on that point it was only superseded as some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    employment-related claims.

2          In going back to Wabash, Easterbrook said,

3    "Martin v. Wilks holds that a consent decree may not

4    foreclose the rights of nonparties."  And the Supreme

5    Court again reaffirmed this principle in 2008, in the

6    Altria Group versus Good case.  "A consent order is

7    in any event only binding on the parties to the

8    agreement."  The defendants respond that this

9    analysis is inapposite, because Santa Fe Tobacco was

10   a party to the consent decree.  That consent decree

11   binds Santa Fe Tobacco, however, but that doesn't

12   mean it binds third parties who had no opportunity to

13   intervene or state their positions as to the subject

14   matter.

15         Further, as Second Circuit stated in GMC

16   versus Abrams, quote, "the mere fact that the instant

17   order has been entered, however, is insufficient to

18   preclude supplemental state regulation."  Rather, and

19   again quoting, "as with any preemption analysis, the

20   lodestar of our inquiry is the intent of the FTC in

21   entering into the consent order."  And there, the

22   Second Circuit cited California Federal Savings from

23   the Supreme Court.  It's difficult to see how the

24   consent order is designed to preempt any third-party

25   state law claims.  According to the defendants, the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   FTC intended in the consent order to conclusively

2   establish that certain terms are not misleading, thus

3   preempting any state law actions alleging the

4   contrary.  But I don't read the consent order to

5   evince such intent.  The consent order simply states

6   that the FTC, quote, "shall not prohibit" close

7   quote, Santa Fe Tobacco from using "additive-free"

8   and similar terms.  And to me, such language does not

9   evince an intent to foreclose state law actions

10  alleging misleading advertising practices.

11          Let me give a few comments also on the

12  second issue in the motion to dismiss, and that is

13  the issue on the First Amendment protection.  Under

14  the Central Hudson framework for commercial speech,

15  the question as I understand it is:  Do the

16  plaintiffs plausibly allege that the defendants'

17  representations that their Natural American Tobacco

18  cigarettes are "natural," "organic," and

19  "additive-free," are not protected commercial speech

20  under the First Amendment?  And I said I thought that

21  was the case on June 9.  And my research continues to

22  make me believe that's the right inclination here.

23          As we know from Ashcroft and Twombly, the

24  claim is facially plausible, quote, "when the pleaded

25  factual content allows the court to draw the



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   reasonable inference that the defendant is liable for
2   the misconduct alleged."  Accepting the facts alleged
3   in the plaintiffs' complaint as true, and taken in
4   the light most favorable to the plaintiffs, the
5   plaintiffs' complaint plausibly alleges that the
6   defendants' representations are not protected
7   commercial speech.  It is plausible that the terms
8   "natural," "organic," and "additive-free" are
9   inherently misleading and not merely potentially
10  misleading or truthful.  It's also plausible that the
11  defendants' advertising scheme, as a whole, is
12  inherently misleading.  The plaintiffs' complaint, I
13  think, bypasses the full Central Hudson balancing
14  test.  So accepting the facts alleged in the
15  plaintiffs' complaint as true, and taken in the light
16  most favorable to the plaintiffs, the plaintiffs'
17  complaint plausibly alleges sufficient facts to meet
18  the three prongs of the Central Hudson balancing
19  test.  Accordingly, the Court is still inclined to
20  deny the motion to dismiss that claim.
21          Commercial speech is defined as "speech
22  that does no more than propose a commercial
23  transaction."  We learned that from Virginia State
24  Board of Pharmacy, and also from Central Hudson, in
25  1980.  In Central Hudson, "The Commission's order

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    restricts only commercial speech; that is, expression

2    related solely to the economic interests of the

3    speaker and its audience."  The following

4    characteristics indicate that the speech is

5    commercial speech:  If the speech is contained in an

6    advertisement; two, if it is made with an economic

7    motive; or three, if it refers to a specific product.

8    The Tenth Circuit said that in Procter & Gamble

9    versus Haugen.  A representation, however, is not

10   automatically commercial speech because it contains

11   one or more of the preceding characteristics.  Again,

12   the Tenth Circuit emphasized that in Procter &

13   Gamble.

14          Central Hudson provides an analytical

15   framework to determine what kind of commercial speech

16   is entitled to First Amendment protection.  The

17   Constitution, quote, "accords a lesser protection to

18   commercial speech than to other constitutionally

19   guaranteed expression."  The government has less

20   power to regulate lawful and nonmisleading commercial

21   speech.  Therefore, the Court must perform a

22   threshold inquiry, before proceeding to the Central

23   Hudson balancing test, to determine whether the

24   speech is protected commercial speech, nonmisleading

25   speech that concerns lawful activity.  And the Tenth

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Circuit said that in the Revo case in 1997.

2          The plaintiffs plausibly allege that the

3    defendants' representations are inherently

4    misleading.  Supreme Court jurisdiction has drawn

5    distinctions between misleading commercial speech,

6    potentially misleading commercial speech, and

7    nonmisleading commercial speech.  The Supreme Court

8    drew those distinctions in the RMJ case.  The

9    citation that I drew that from indicates that the

10   statement of the law is included in a summary of

11   commercial speech, quote, "in the context of

12   advertising for professional services."  Circuit

13   courts, however, generally do not seem to find this a

14   notable distinction and have applied the case to

15   other areas of commercial speech.

16          I couldn't find a Tenth Circuit case that

17   had done that, but that are number of other circuit

18   cases, including the Sixth Circuit in a tobacco case.

19   So that is one area I'll have to explore to make sure

20   I'm comfortable with it, but I did notice that we

21   didn't have a Tenth on that.

22          Misleading commercial speech may be

23   prohibited entirely, according to RMJ.  The Central

24   Hudson balancing test applies when the speech is

25   potentially misleading or when it is truthful.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   States may impose restrictions when "the particular

2   content or method of the advertising suggests that it

3   is inherently misleading" or when it is truthful.

4   Both RMJ and Revo say that.  States may impose

5   restrictions when "the particular content or method

6   of advertising suggests that it is inherently

7   misleading or when experience has proved that in fact

8   such advertising is subject to abuse."  Again, that's

9   from the RMJ case.  And this is what the Supreme

10   Court states in RMJ:  "The particular content or

11   method of the advertising suggests that it is

12   inherently misleading," and then I emphasize this

13   language, "or when experience has proved that in fact

14   such advertising is subject to abuse."  The Fourth

15   Circuit -- the Ninth Circuit has stated in American

16   Academy of Pain Management that when "advertising is

17   inherently likely to deceive" -- and again, I

18   emphasize this language -- "or where the record

19   indicates that a particular form or method of

20   advertising has in fact been deceptive," the

21   advertising enjoys no First Amendment protection.

22   These statements almost seem to indicate that the

23   defendants' arguments are not ripe at the motion to

24   dismiss stage, when the Court must assume the

25   complaint's assertions to be true.  The Tenth Circuit

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

18

1    states that it's a particular mode of communication

2    is inherently misleading when it is "capable of being

3    presented in a way that is not deceptive."  That was

4    from Revo.

5            Speech that is not inherently misleading

6    can be potentially misleading.  Peel from the Supreme

7    Court has said that.  Commercial speech devoid of

8    intrinsic meaning can still be inherently misleading,

9    especially if such speech has historically been used

10   to mislead the public.  Factually true statements may

11   be misleading if they invite inferences that lead to

12   a conclusion lacking support or rigorous review.  The

13   Supreme Court said in Peel, "We must assume that some

14   consumers will infer from petitioner's statement that

15   his qualifications in the area of civil trial

16   advocacy exceed the general qualifications for

17   admission to a state bar.  Thus, if the certification

18   had been issued by an organization that had made no

19   inquiry into petitioner's fitness, or by one that

20   issues certificates indiscriminately for a price, the

21   statement, even if true, could be misleading."  D.C.

22   Circuit in Pearson has said disclaimers alone do not

23   necessarily cure misleading advertising, suggesting

24   the possibility that some advertising is so

25   misleading that it is incurable by disclaimer.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              So going back to Central Hudson, the
 2     plaintiffs plausibly allege that the defendants'
 3     representations are, quote, "inherently misleading."
 4     For example, the plaintiffs have noted that, despite
 5     the defendants' disclaimers, the FTC has still sent
 6     warning letters to the defendants that indicate that
 7     the advertising is misleading.  Defendants contend in
 8     their motions and memoranda that it's impossible for
 9     the term "natural" and "organic" to be "inherently
10     misleading" when there is no discernable standard for
11     "natural."  Terms that lack "intrinsic meaning" can
12     be -- again, going back to Peel -- inherently
13     misleading, however, especially if such speech has
14     historically been used to mislead the public.  The
15     complaint contains conclusory allegations regarding
16     the history of deception in tobacco advertising, but
17     the complaint also cites a number of studies
18     demonstrating deception over a period of time.  The
19     defendants claim that their disclaimers; i.e., "no
20     additives in our tobacco does not mean a safer
21     cigarette," makes it impossible to mislead customers
22     into thinking that the cigarette is safe.  But
23     Pearson indicates that disclaimers by themselves,
24     however, do not always cure misleading advertising.
25              As for the term "additive-free," defendants
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   contend that it's impossible to mislead consumers

2   with "additive-free" on menthol cigarettes when they

3   are clearly advertised and labeled as menthol

4   cigarettes.  But the thrust of the complaint is that

5   the advertising as a whole gives rise to a misleading

6   perception of safer or healthier cigarettes.  It is

7   possible to mislead with true statements, especially

8   if the inferences lead to a dubious conclusion that

9   is unsupported or lacking in rigorous review.  Again,

10  that's what the Supreme Court said in Peel.

11          So taking the allegations in the complaint

12  as true, the plaintiffs plausibly allege that the

13  advertising as a whole is inherently misleading.  The

14  Tenth Circuit standard that the information must be

15  "incapable of being presented in a way that is not

16  deceptive," the Revo standard is stringent.  Here,

17  given the history of FTC warnings, it is plausible

18  that the defendants' representations mislead

19  consumers and cannot be presented in a nonmisleading

20  way.  The defendants' entire advertising campaign

21  relies upon associations of naturalness, ties to the

22  earth, and conscious decisions to stay natural.  As

23  the plaintiffs' complaint alleges, those themes are

24  often associated with better health choices.  It is

25  plausible that cigarettes and those associations

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                        1-800-669-9492
                                                              e-mail: info@litsupport.com



1    cannot be paired together without being misleading.

2              Turning to the Central Hudson balancing

3    test, the analysis for the Central Hudson balancing

4    test has the following elements:  One, whether the

5    government interests in regulation is substantial;

6    two, to whether the regulation directly advances the

7    government interest; and three, whether the

8    regulation is no more burdensome than necessary to

9    serve the interest.  That's Revo and Central Hudson.

10   Courts must evaluate the precise interest offered by

11   the party in favor of the regulation.  Revo indicates

12   that a regulation will not be supported if it

13   provides ineffective or remote support for the

14   proffered purpose.  Revo also indicates that the

15   purported harm must be real and the regulation must

16   alleviate it to a material degree.

17             Assuming that the defendants'

18   representations are protected commercial speech, the

19   Central Hudson balancing testing applies.  The

20   plaintiffs then must plausibly allege the following:

21   One, that there is a substantial interest in

22   regulating deceptive advertising practices through

23   the judiciary and state consumer protection statutes;

24   two, that the regulation directly advances the

25   proffered interest; and three, that the regulation is



1    no more burdensome than necessary to achieve that

2    interest.  Construing the complaint's allegations in

3    the light most favorable to the plaintiffs, the Court

4    concludes that the plaintiffs plausibly allege

5    sufficient facts to meet each of the three prongs of

6    the Central Hudson balancing test.

7              Plaintiffs assert that the substantial

8    interest in regulation is to discourage deceptive

9    business practices.  First, the plaintiffs plausibly

10   allege in the complaint that a significant number of

11   people are affected by the defendants' allegedly

12   deceptive advertising practices.  The plaintiffs

13   provide legal support to their assertions by citing

14   cases to support the contention that general consumer

15   protection efforts serve a substantial public

16   interest.  The plaintiffs contend that they plausibly

17   allege that the remedies they seek, but do not commit

18   to, would be an adequate fit to advance protection

19   against deceptive advertising, injunctive relief to

20   limit the deception and monetary relief to deter the

21   deception.  Plaintiffs note that they do not commit

22   to any particular remedies at this time, contending

23   that the Court may shape relief that it determines is

24   proper.  Because the Court can shape proper relief

25   later in the case, at the motion to dismiss stage it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

23

 1    seems premature to determine that the plaintiffs'

 2    complaint fails the third prong of Central Hudson;

 3    i.e., "that the regulation is no more burdensome than

 4    necessary to achieve that interest."  The judicial

 5    regulation has not been determined yet.  The

 6    plaintiffs therefore plausibly allege that the

 7    regulation will directly advance the government's

 8    interest in discouraging deceptive business

 9    practices.  It is also plausible that the Court can

10    craft appropriate relief that is "no more burdensome

11    than necessary" to achieve the government interests.

12            Accordingly, even assuming the Central

13    Hudson balancing test applies, the complaint "allows

14    the court to draw the reasonable inferences that the

15    defendant is liable for the misconduct alleged."  The

16    complaint plausibly alleges that; one, there is a

17    substantial government interest in regulation; two,

18    the regulation directly advances the proffered

19    interest; and three, that the regulation is no more

20    burdensome than necessary to achieve that interest.

21            So the Court is still inclined to conclude

22    that even assuming the Central Hudson balancing test

23    applies, the complaint plausibly alleges sufficient

24    facts to meet the test.  And so, again, the Court is

25    continuing to think it will deny the motion to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    dismiss that claim.

 2              All right.  Did somebody come on the phone

 3    while I was indicating some -- where I was in the

 4    work from our last hearing?  Did somebody new come on

 5    the phone?  We may have lost somebody.

 6              All right.  I think I failed to get entries

 7    of appearance by the defendants.  So let me do that

 8    at this time.  I apologize for that.

 9              MR. SCHULTZ:  Not a problem, Your Honor.

10    Andrew Schultz for the defendants.

11              THE COURT:  Mr. Schultz, good morning to

12    you.

13              MR. BIERSTEKER:  Good morning.  Peter

14    Biersteker for the defendants.

15              THE COURT:  Mr. Biersteker, good morning to

16    you.

17              MR. MONTE:  Good morning, Judge.  David

18    Monte.

19              THE COURT:  Mr. Monte, good to see you

20    again.

21              MR. VON BOKERN:  Good morning, Judge.

22    Jordan Von Bokern for the defendants.

23              THE COURT:  Mr. Von Bokern, good morning to

24    you.

25              All right.  So I have read the supplemental

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   briefing that has come in.  I don't know if the
 2   defendants want to have -- make any comments here at
 3   the beginning, or if you want to pick up where we
 4   left off last time.  But it's your motion.  I'll let
 5   y'all kind of direct how we're going to proceed this
 6   morning.
 7              MR. BIERSTEKER:  Thank you, Your Honor.
 8              THE COURT:  Mr. Biersteker.
 9              MR. BIERSTEKER:  Yes.  As you may recall --
10   and I spoke briefly to Ms. Wolchansky last night
11   about this -- when we were here last, I was in the
12   middle of the argument on unjust enrichment.  So the
13   first thing I'd like to do today is to complete that
14   argument.
15              THE COURT:  All right.
16              MR. BIERSTEKER:  At the end of which, I
17   understand Your Honor's custom is to allow plaintiffs
18   to respond; we'll go back and forth on that.
19              THE COURT:  Is that all right with you?
20   Does that work for you?
21              MR. BIERSTEKER:  Yes, Your Honor.
22              And just to lay out what defendants had in
23   mind for the remainder of our argument on the motion
24   today, we thought we would then next take up on the
25   express warranty issue, followed by injunctive relief
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    and the mootness.

 2            Defendants' intention would be to submit on

 3    the papers on two issues, Your Honor, the state

 4    statutory claims, including the safe harbors, and the

 5    RAI, Reynolds American, Inc., personal jurisdiction

 6    motion.

 7            As far as the defense is concerned, we're

 8    finished with three issues.  The first would be

 9    preemption.  Your Honor has again reiterated your

10    views on that issue, likewise with the First

11    Amendment.

12            And finally, as Your Honor noted, there was

13    supplemental briefing on the reasonable consumer

14    issue.  But the defendants don't perceive a need to

15    pursue that orally before Your Honor today.  That

16    said, as to any issue that the defendants propose

17    Your Honor resolve on the papers, or that we believe

18    we have already adequately addressed, we would be

19    happy to respond to any questions that Your Honor

20    might have, or to provide argument, if Your Honor

21    wishes.

22            With that, do you want me to proceed, Your

23    Honor?

24            THE COURT:  Yeah, why don't you go ahead.

25    You're going to pick up the unjust enrichment again?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BIERSTEKER:  Yes, sir.
 2              To briefly recap, nine of the 12 unjust
 3     enrichment claims are barred by the existence of an
 4     adequate remedy at law.  I generally addressed that
 5     point last time.  I had started down the road with
 6     the state-specific law, having completed four of the
 7     nine different states.  I was up to New Jersey when
 8     Your Honor ended the hearing last time.
 9              So let me start with New Jersey.  New
10     Jersey law is clear.  Even the cases that were relied
11     upon by the plaintiffs recognize that the existence
12     of an adequate remedy at law bars an unjust
13     enrichment claim.  Plaintiffs' only response is to
14     argue that it is premature to address this issue on a
15     motion to dismiss.  That's one of their general
16     points that Your Honor may recall I touched on
17     generally last time.
18              In these nine states, the existence of an
19     adequate remedy at law bars an unjust enrichment
20     claim.  There is, however, an exception.  And the
21     exception is where the very existence of the adequate
22     remedy at law is in doubt, as, for example, may occur
23     when there is an action at law on a contract and
24     there is doubt about the existence of the contract or
25     whether the contract addresses the conduct at issue.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                 1-800-669-9492

PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.

1          Here, there is no question about the very
2     existence of the adequate remedy at law.  The
3     statutes do exist.  They do cover the conduct that is
4     allegedly wrongful.  And so I don't think the
5     exception applies.
6          As to New Jersey, plaintiffs provide no New
7     Jersey authority suggesting that an adequate
8     remedy -- the Adequate Remedy Rule should not be
9     applied at the motion to dismiss stage.
10          So let's turn to New York.  The highest
11     court in New York, the court of appeals, has been
12     unequivocal on two points that I think are
13     dispositive here, in a 2008 decision cited in our
14     brief, Samiento, S-A-M-I-E-N-T-O, versus World Yacht,
15     Inc.  It's in our opening brief 58 and our reply at
16     30.  First, the New York Court of Appeals confirmed
17     the general rule that unjust enrichment does not lie,
18     as plaintiffs have an adequate remedy at law.  And
19     second, in a firm dismissal, plaintiffs' unjust
20     enrichment claim, before any discovery because a
21     statutory claim was available, just as here.
22          North Carolina.  The North Carolina Supreme
23     Court in a 1992 decision, Embry Construction Group,
24     Inc., cited in our opening brief at 59, and our reply
25     at 31, made clear that the Court's equitable

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   intervention is obviated when an adequate remedy at
 2   law is available to the plaintiff.  In the teeth of
 3   that precedent the plaintiffs here argue otherwise,
 4   based on a recitation of the elements of a prima
 5   facie case for unjust enrichment.  I would submit,
 6   Your Honor, that the elements of an unjust enrichment
 7   case presuppose the existence of the claim and teach
 8   nothing about the Adequate Remedy at Law Rule.
 9             Plaintiffs once again argue prematurity.
10   That argument fails for the reasons explained last
11   time, and I briefly touched upon earlier here today.
12   Plaintiffs do note that in Embry, the North Carolina
13   Supreme Court declined to dismiss the unjust
14   enrichment claim there.  That's true.  But the Court
15   did so specifically because the only relevant statute
16   did not supply a remedy for the alleged harm.  Here,
17   North Carolina law does supply a statutory remedy.
18   And it is beside the point that plaintiffs may or may
19   not be entitled to that remedy at the end of the day.
20             Plaintiffs also note in New York, Tompkins
21   versus Key Health Medical Solutions, there, the Court
22   stated that it would be premature to foreclose the
23   plaintiff's unjust enrichment claim.  But the Court
24   explained that this was because of questions as to
25   the exact nature of the transactions between the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  parties, which seemed to preclude the court from

2  confirming that legal remedies were available for the

3  wrongdoing alleged.  In no way did the court in that

4  decision suggest that it was casting doubt at all on

5  the North Carolina Supreme Court's decision in Embry.

6           Ohio.  There is no disagreement that an

7  adequate remedy at law bars an unjust enrichment

8  claim in Ohio.  That's been the law of Ohio since at

9  least 1944, when its Supreme Court ruled the case of

10  State, ex rel versus House, cited in our opening

11  brief at page 59.

12          Plaintiffs rely on their alternative

13  pleading theory.  But the very decision they cite,

14  Paikai versus General Motors, states that alternative

15  pleading is allowed under Ohio law, quote, "only in

16  the face of uncertainty as to the existence of a

17  contract, or perhaps uncertainty as to the contract's

18  application to the dispute."

19          In another decision that plaintiffs cite,

20  Nessell (phonetic) versus Whirlpool, a Northern

21  District of Ohio case, from 2008, the court nowhere

22  addressed the Adequate Remedy Rule at all.  But

23  merely said that a plaintiff could plead a contract

24  claim and an unjust enrichment claim in the

25  alternative, even though the existence of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   contract, if ultimately established, would bar

2   recovery under unjust enrichment.

3            Washington.   The Washington Supreme Court

4   affirmed dismissal of an unjust enrichment claim

5   explaining that.  And I quote, "to the extent that

6   plaintiffs have a remedy at law, they are not

7   entitled to pursue a remedy in equity."  That's the

8   Seattle Professional Engineering Employees

9   Association versus Boeing case cited in our opening

10  brief at, I think, page 40.  I can't read my own

11  handwriting.

12           Plaintiffs' sole response here is to argue

13  prematurity, for which they rely on U.S. ex rel

14  Kester, a Southern District of New York case from

15  2014.  Kester relied on cases decided under the False

16  Claims Act, in which unjust enrichment actions are

17  governed by federal common law.  As such, Kester does

18  not involve Washington state law, nor does it call

19  into question the established limitations that the

20  State of Washington has applied to its law.

21           That ends the first part of the argument,

22  the adequate remedy at law component of the unjust

23  enrichment argument.  I'm happy to stop here if Your

24  Honor would like to hear from plaintiffs as to that

25  issue.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          There are two other issues:  The direct

2     benefit issue, and then in addition to that, there

3     are some one-off issues with respect to New Jersey

4     and New York, remuneration and duplication.  I can be

5     very brief on those remaining issues.  But if Your

6     Honor prefers that I allow plaintiffs to respond now

7     on the adequate remedy at law issue, I'll sit down.

8          THE COURT:  Why don't we take up the

9     adequate remedy.  Let me hear the plaintiffs'

10    response on that.  Thank you, Mr. Biersteker.

11          MR. BIERSTEKER:  Thank you, Your Honor.

12          THE COURT:  Ms. Wolchansky, are you going

13    to --

14          MS. WOLCHANSKY:  Judge, I'll make this

15    pretty simple.  I presented -- I have a PowerPoint

16    that I handed to the court reporter that addresses

17    this briefly.  It is fully briefed on adequate remedy

18    at law.  And we are prepared to rest on the papers

19    with respect to that argument.

20          THE COURT:  Let me see if I have it.

21          MS. WOLCHANSKY:  I can file this as well,

22    as I did last time.

23          THE COURT:  Okay.  So this was what was

24    labeled last time, right?  And this is what it's

25    labeled today?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. WOLCHANSKY:  It's updated.  The first
 2    one addressed the reasonable consumer standard, and
 3    this one addresses unjust enrichment, and later
 4    express warranty.
 5              THE COURT:  All right.  Anything further on
 6    that?
 7              MS. WOLCHANSKY:  I have nothing further on
 8    adequate remedy at law.
 9              THE COURT:  All right.  Mr. Biersteker, if
10    you want to take up the other issues.
11              MR. BIERSTEKER:  Thank you, Your Honor.
12              For four of the 12 states, Michigan, New
13    Jersey, North Carolina, and Ohio, a plaintiff must
14    confer a direct benefit on the defendant to support
15    their unjust enrichment claim.  In our briefs we
16    cited state and federal cases applying each of the
17    four states' laws, affirming -- or affirming the
18    dismissal of claims by plaintiffs who did not confer
19    the requisite direct benefit on the defendant.  And
20    in a number of those cases, the lack of a direct
21    benefit stems from the fact that the plaintiffs in
22    the case had purchased the item in question from a
23    retailer, rather than the manufacturer who they had
24    sued.
25              For three of those four states, Michigan,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   North Carolina, and Ohio, plaintiffs' opposition

 2   relies only on unpublished federal court decisions

 3   that impose a less stringent rule than the states'

 4   own courts have applied.

 5            In New Jersey, plaintiffs rely on a single

 6   federal decision, Stewart versus Beam Global Spirits

 7   & Wine -- a case that's  also in their PowerPoint, I

 8   noted -- that disagreed with the rule applied by,

 9   quote, "the vast majority of courts in the district,"

10   as the court itself acknowledged, and that other

11   courts have subsequently refused to follow, including

12   in the Fishman case decided in our reply brief at

13   page 32.

14            THE COURT:  What was the date of that

15   district court case?

16            MR. BIERSTEKER:  The original district

17   court case relied upon by plaintiffs is 877 F.Supp.

18   2d, 192.  It's a 2012 case.

19            THE COURT:  And who is the judge?

20            MR. BIERSTEKER:  Gosh, Your Honor, I'll

21   have to look.  I cannot recall.  I'll advise Your

22   Honor on that momentarily.

23            THE COURT:  All right.

24            MR. BIERSTEKER:  The subsequent case that

25   we discuss in our brief, the Fishman case, was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    decided in April of 2013, so a year later.

2            We'll have to get back to Your Honor.  I

3    did not bring the case with me, so I cannot tell you

4    who the judge was.  I apologize.

5            THE COURT:  That's all right.

6            MR. BIERSTEKER:  At the end of the day,

7    plaintiffs urge this Court really to find that

8    indirect benefits are somehow direct.  And there is

9    no reason to do that contrary to the law of the four

10   states.

11           Again, unjust enrichment is a gap filler.

12   These four states have chosen to draw that doctrine

13   narrowly, likely because numerous legal remedies

14   already exist for consumers who have suffered as a

15   result of deceptive advertising.  And I urge Your

16   Honor to follow the case law from the states

17   themselves.

18           I think it would make sense, Your Honor,

19   for me to address the two sort of minor points with

20   respect to New Jersey and New York before I sit down.

21           THE COURT:  Okay.

22           MR. BIERSTEKER:  Plaintiffs' unjust

23   enrichment claims in New Jersey and New York are also

24   foreclosed for an independent reason.  In New Jersey,

25   the New Jersey Supreme Court has held that for unjust

SANTA FE OFFICE                                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                   Albuquerque, NM 87102
(505) 989-4949                                                                                       (505) 843-9494
FAX (505) 843-9492                                                                     FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1   enrichment a plaintiff is required to show, and I

 2   quote, "that it expected remuneration from the

 3   defendant at the time it performed or conferred a

 4   benefit on the defendant, and that the failure of

 5   remuneration enriched defendant beyond its

 6   contractual rights."  That's the VRG Corp. versus

 7   JKN Reality Corp., cited in our reply brief at pages

 8   32 and 33.

 9           Here, plaintiffs make no such allegation in

10   their complaint that there was an expectation of

11   remuneration from the defendant.

12           As to New York, in New York, an unjust

13   enrichment claim will not lie where it simply

14   duplicates a conventional claim at law.  And the way

15   the New York courts have construed what is

16   duplicative is where the action for unjust

17   enrichment, quote, "stems from the same underlying

18   allegation as the legal claim."  The doctrine is

19   broader than an Adequate Remedy Rule, because it does

20   not require that the claim being duplicated satisfy

21   any other criteria, such as providing an adequate

22   remedy.  The duplication makes it more clear that

23   plaintiffs' claim under New York law must be

24   dismissed.

25           Unless Your Honor has questions, those

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    cover the subsidiary points.

 2            THE COURT:  All right.  Thank you, Mr.

 3    Biersteker.

 4            MR. BIERSTEKER:  Thank you.

 5            THE COURT:  Ms. Wolchansky, do you have

 6    something on these two issues?

 7            MS. WOLCHANSKY:  I will respond just very

 8    briefly, Your Honor, on the direct purchase.  If we

 9    could put that up on the screen.

10            With respect to Michigan, Your Honor,

11    defendants' contention that Michigan requires a

12    direct benefit has been rejected in the In Re:  Auto

13    Parts Antitrust Litigation.  The U.S. District Court

14    for the Eastern District Michigan held that "Michigan

15    law does not require a direct benefit to be conferred

16    directly by plaintiff to a defendant."  And the cite

17    for that case is 29 F.Supp. 3d 982, at 1021.  That's

18    a 2014 case.

19            THE COURT:  Do you know who the judge is on

20    that case?

21            MS. WOLCHANSKY:  I don't, Your Honor.  I'm

22    sure somebody can look it up.  I don't.  It's Eastern

23    District of Michigan 2014.

24            It's also significant to note that the In

25    Re: Auto Parts court distinguished the lone case that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the defendants cite in their brief, A&M Supply

2    Company versus Microsoft, which is 2008 Westlaw

3    540833.  Specifically in In Re: Auto Parts, the court

4    noted that in A&M Supply, the state appellate court

5    dismissed the case for failure to prosecute.  And,

6    therefore, its discussion of the merits of the

7    indirect purchaser plaintiffs' claims for unjust

8    enrichment, under Michigan law, based upon lack of

9    direct contact with the defendant and lack of direct

10   payment is in dicta.  And that's at 1021.

11           With respect to New Jersey, there is a

12   decision, Stewart versus Beam Global Spirits, finding

13   sufficiently direct relationship for an unjust

14   enrichment claim where there are false claims or

15   misrepresentations directed for the purpose of

16   generating retail sales, and where those retail sales

17   could have the effect of increasing the amount of

18   wholesale sales to the manufacturer.

19           And did we find the judge --

20           MR. REESE:  That's Judge Noel Hillman,

21   H-I-L-L-M-A-N.

22           THE COURT:  Thank you.

23           MS. WOLCHANSKY:  It would be inequitable

24   under New Jersey law to allow the defendants to

25   insulate themselves from liability by simply

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  asserting that retail sales cut off any relationship

2  between the consumer and the manufacturer.  And,

3  Judge, the Miller case is Judge George Steeh,

4  S-T-E-E-H.

5         With respect to North Carolina, we would

6  submit the relevant case is Metric Constructors case.

7  Under North Carolina law it is sufficient for a

8  plaintiff to prove that it has conferred some benefit

9  on the defendant without regard to the directness of

10  the transaction.  That's a Fourth Circuit case that

11  we believe is controlling here.

12         And finally --

13         THE COURT:  Do you know who the panel is on

14  that Fourth Circuit case?

15         MS. WOLCHANSKY:  I don't.

16         THE COURT:  That's unpublished.

17         MS. WOLCHANSKY:  I don't know who it is.

18  Reed is busy back there on his iPhone.  But I don't,

19  Your Honor.

20         And in Ohio, the relevant direct purchase

21  case is, we would submit, the Paikai case, which is

22  2009 U.S. District Lexis 8538.

23         I think they were looking for the panel.

24         That's all I have on the direct purchase,

25  Your Honor.  And we briefed the other arguments and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    are prepared to rest on the briefs.

 2             THE COURT:  All right.  Anything else you

 3    want to say on that, Mr. Biersteker?

 4             MR. BIERSTEKER:  No, Your Honor.  I think I

 5    addressed most of those cases in my opening remarks.

 6             THE COURT:  All right.  Did you want to go

 7    to the express warranty issue, or is that the one you

 8    wanted to submit?

 9             MR. BIERSTEKER:  Yes, Your Honor.  The

10    special warranty would be next on the agenda.

11             THE COURT:  All right.  Okay.

12             MR. BIERSTEKER:  Go ahead.

13             MS. WOLCHANSKY:  The panel, Your Honor, in

14    the Fourth -- I think it was the Fourth Circuit -- is

15    Judge Williams, Michael, and Shedd, with two D's.

16             THE COURT:  All right.  Thank you.

17             Mr. Biersteker.

18             MR. BIERSTEKER:  Yes, Your Honor.

19             Express warranty.  Plaintiffs' express

20    warranty claims are defeated in some of the states

21    because of the failure to give pre-suit notice or

22    lack of privity.  The pre-suit notice issue arises in

23    six of the states:  California, Florida, Illinois,

24    New Mexico, New York, and North Carolina.  It's

25    indisputable that plaintiffs neither gave the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    requisite pre-suit notice, nor specifically allege

2    that they have done so.

3           Plaintiffs' complaint, to be sure,

4    generally alleges, at paragraph 456, that plaintiffs

5    performed, quote, "all conditions precedent to

6    defendants' liability," close quote.  But to the

7    extent that that global ambiguous allegation was met

8    to subsume the providing of the requisite pre-suit

9    notification in these states is indisputably false.

10   Plaintiffs never gave such pre-suit notice of their

11   claim for alleged breach of express warranty.  And

12   they neither assert nor specifically allege

13   otherwise.  In any event, I submit that their global

14   allegation is legally insufficient.

15          One of plaintiffs' principal cases, the

16   Rust-Oleum case, for example, teaches -- and I quote,

17   "to sustain a breach of warranty claim, the law still

18   mandates that a complaint provide factual allegations

19   sufficient to establish pre-suit notice."  Neither

20   plaintiffs' global pleading, which does not even

21   mention notice, nor their actual failure to provide

22   the pre-suit notice fulfills a recognized principal

23   purpose of the pre-suit notice requirement.

24   Especially in cases like this one that are not for

25   personal injury damages; namely, defendants were

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                                (505) 843-9494
FAX (505) 843-9492                                                     FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    deprived of the opportunities to prior to suit to

2    cure the alleged breach, to minimize their exposure,

3    or to prepare for litigation.  Nor is it somehow

4    premature, as plaintiffs claim, for this Court to

5    decide now whether the lone global ambiguous

6    allegation in paragraph 456 of the complaint legally

7    fulfills their pre-suit notice requirement,

8    especially when there has been no allegation and can

9    be no allegation that, in fact, the pre-suit notice

10   was provided.

11           Unlike Rust-Oleum, again one of the cases

12   upon which plaintiffs principally rely, deciding that

13   legal issue here on a motion to dismiss is

14   appropriate.  It would not be unreasonably

15   burdensome.  In Rust-Oleum, the issue arose under the

16   UCC, where you have to give a reasonable notice, and

17   promptly after discovering the facts relating to it.

18   Some of the plaintiffs had done, some of them had

19   not, and so it was a complicated issue that the court

20   deferred until later.  That's not the situation here.

21           Plaintiffs do not otherwise contest that

22   the failure to give pre-suit notice defeats their

23   claims under Florida and New Mexico law.  They do,

24   however, make three scattershot arguments about four

25   remaining states.  In Illinois, plaintiffs assert

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that the defendant's alleged actual knowledge of the

2    misconduct suffices.  But it does not, as the

3    Illinois Supreme Court held in the Connick case cited

4    in our brief on page 35 -- our reply brief on page

5    35, and our opening brief at 66.  In Connick, the

6    Illinois Supreme Court said it is not enough that a

7    manufacturer is aware of problems with a particular

8    product, which frankly a manufacturer likely knows

9    better than consumers anyway, but instead, the

10   defendants must be made aware of the buyer's claim.

11          Plaintiffs next maintain that in three of

12   the states, Illinois, North Carolina, and New York,

13   the filing of the complaint itself somehow

14   constitutes pre-suit notice.  It does not, except in

15   personal injury cases, as those courts in those three

16   states have all recognized, with the authority cited

17   on pages 35 to 36 in our reply, and in particular in

18   Note 24.  For example, as the North Carolina Supreme

19   Court reasoned in a 1981 decision, in a suit for

20   personal injuries notice provides no opportunity to

21   cure the alleged breach, because the injury has

22   already occurred.  And accordingly, compliance with

23   the notice requirement is excused.

24          In California, plaintiffs argue that the

25   pre-suit notice requirement does not apply to suits

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    brought by an indirect purchaser.  And they cite a

 2    case, Zapata Fonseca versus Goya Foods, Inc., a

 3    Northern District of California case, from 2016, that

 4    had relied upon a 1963 decision from the California

 5    Supreme Court for an exception.  But as a district

 6    court explained in an MDL proceeding, in which a

 7    similar argument was raised, that 1963 decision

 8    limits the exception to the pre-suit notice

 9    requirement to strict products liability cases in

10    tort.  That's the Metro Corp. case out of the Middle

11    District of Georgia, in 2015, in our brief.

12             Here, plaintiffs are proceeding on a

13    contract theory, not strict liability in torts.  It's

14    not a personal injury case.  And, therefore, the

15    Court here, in applying California law, should do as

16    the court in Mentor did, which is to hold that the

17    failure to provide the requisite pre-suit notice is

18    not excused.

19             There is one additional issue with respect

20    to the warranty claims, Your Honor, that I think it

21    might make sense for me to address, since I can do it

22    in fairly short order.  But it deals with privity and

23    it deals with three states.  If you would rather hear

24    the response from --

25             THE COURT:  No, go ahead.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BIERSTEKER:  Fine.
 2              In three of the states, Florida, Illinois,
 3    and New York, plaintiffs' express warranty claims are
 4    barred because of the lack of privity.  Plaintiffs do
 5    not allege that they are in privity with any
 6    defendant.  Nor do plaintiffs dispute that privity is
 7    generally required under the three states' law for
 8    express warranty claims.  So the issue before Your
 9    Honor is whether this case falls within an exception
10    to the general rule requiring privity for express
11    warranty claims in those three states.  The
12    plaintiffs' claim that all three states recognize an
13    exception for misrepresentations on product packaging
14    or labels.  And while the three cases cited by
15    plaintiffs do say that, the courts in all three
16    states routinely dismiss express warranty claims
17    based on product packaging and labels, in cases that
18    involve economic loss.  Courts applying all three
19    states' law have also specifically considered
20    requests for an exception to the privity requirement,
21    but declined to do so after reviewing the relevant
22    state law.
23              In Keith versus Ferring Pharmaceuticals,
24    Inc. -- that's a Northern District of Illinois case
25    from 2016, in our reply brief at 36 to 37 -- the
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                          1-800-669-9492
                                              e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Court considered an argument just like the one

2    plaintiff is advancing here, but concluded, after

3    reviewing Illinois law, that the Illinois Supreme

4    Court -- and I'm quoting, "The Supreme Court in

5    Illinois has yet to extend express warranties to

6    nonprivity plaintiffs."  This Court should not go

7    further than the Illinois Supreme Court in creating

8    an exception to that state's privity requirement.

9              In Hill versus Hoover -- this is a Florida

10   case -- the court reviewed the cases supposedly

11   supporting the exception that plaintiffs invoke here,

12   and found them unpersuasive as a matter of Florida

13   law.  That was a Northern District of Florida case in

14   2012.

15             Finally, Ebin is a case in New York,

16   E-B-I-N, from 2013.  And there, the court found that

17   the argument for a privity exception relied on cases

18   that predated key changes to New York law.  They all

19   arose prior to the time New York adopted the UCC,

20   which imposed the notice requirement.  And prior to

21   that New York common law did not require it.  I

22   submit that the cases relied upon by the defendants

23   with respect to this issue are more reasoned

24   applications of the relevant states' laws, and the

25   Court should follow their lead in rejecting the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    exception that plaintiffs propose.
 2            If Your Honor has no questions, I'll sit
 3    down.
 4            THE COURT:  All right.  Thank you, Mr.
 5    Biersteker.
 6            MR. BIERSTEKER:  Thank you.
 7            THE COURT:  Ms. Wolchansky, are you going
 8    to respond on this?
 9            MS. WOLCHANSKY:  I am.  Thank you, Your
10    Honor.
11            THE COURT:  Ms. Wolchansky.
12            MS. WOLCHANSKY:  I'd first like to
13    highlight -- I'll go briefly through a lot of this,
14    since most of it is addressed very directly in the
15    briefing, and I won't regurgitate that here.
16            I will point out that several of the
17    defendants' cases actually support plaintiffs'
18    arguments.  In the In Re: Clorox Consumer Litigation
19    case 894 F.Supp. 2d, 1224, which is a Northern
20    District of California case, the court found that
21    there was a breach of warranty claim, and an
22    exception to the privity requirement when the
23    plaintiff relies on written labels or ads of the
24    manufacturer.  That's case that the defendants cited.
25    I believe it might have been in the unjust
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    enrichment, but it actually supports our contention

2    here that a breach of warranty can stand.  Likewise,

3    the Williams versus Beechnut Nutrition Corp. 229 Cal.

4    Reporter 605, an express warranty claim survived

5    because defendants utilized advertising media to urge

6    use and application of product, and warranted it was

7    effective, proper, and safe for intended use.

8            On the pre-litigation notice topic, there

9    is so much knowledge of the breach here.  I mean,

10   Your Honor heard extensive argument the last time we

11   were before you on the consumer issues, but it's

12   plentiful.  It's in the complaint.  The FDA, the FTC,

13   there have been warning letters on these very issues.

14   So to suggest, just kind of in the abstract, what is

15   the purpose of this actual knowledge requirement

16   under the UCC to make sure that the defendant can go

17   ahead and cure the conduct, well, there is no

18   question that they've had knowledge of these claims.

19   The FDA has made them quite aware in the warning

20   letter, and they've been in negotiation to cure the

21   very misleading representations that are at issue in

22   this case.  So, as a preliminary matter, to suggest

23   there is no knowledge seems a little bit absurd in

24   our opinion.

25           We would direct the Court, of course, to

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    the Rust-Oleum case, which is Judge St. Eve, 155
 2    F.Supp. 3d 772, cited in our brief.  And also the
 3    Caterpillar case, which is 2015 Westlaw 4591236; the
 4    Hydroxycut case, 801 F.Supp. 2d 993.  All of these
 5    cases are on point.  It is not required to have
 6    notice, and also premature, at the pleading stage,
 7    without more evidence to make a determination as to
 8    whether there was knowledge.
 9              Again, as Mr. Biersteker pointed out, there
10    are in fact exceptions to this notice requirement,
11    which we, of course, would state have -- have
12    happened here.  Here, we have New York.  I talked
13    about the Hydroxycut case.
14              In California, it doesn't apply when a
15    breach of warranty -- breach of express warranty
16    claim, if they haven't dealt with that manufacturer.
17    That's Fonseca versus Goya Foods case.  North
18    Carolina is the Maybank case.  If there is a filing
19    of a complaint, that can be notice.  In Illinois, no
20    notice is required where the seller's direct
21    knowledge of the defect is alleged.  And again, we've
22    alleged that here.
23              So we would direct the Court to these
24    cases, which we believe establish we don't need
25    actual knowledge.  Although we assert that there is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   unquestionably knowledge here.

 2           Briefly, on the privity issue, the Florida

 3   federal courts have recently denied motions to

 4   dismiss claims for breach of express warranty in

 5   cases with facts very similar to ours.  And most of

 6   these cases postdate the single case that defendants

 7   have cited in their brief, which Mr. Biersteker again

 8   here today relied upon, which is the Hill versus

 9   Hoover case, 899 F.Supp. 2d 1259.  Smith versus WM

10   Wrigley, Jr. Company, 663 F.Supp. 2d 1336 is on

11   point.  That case, the plaintiff filed a class action

12   against Wrigley, taking issue with its claim that

13   Eclipse gum is scientifically proven to help kill

14   germs, as a result of a natural ingredient.  Various

15   causes of action in that case, including breach of

16   express warranty.  Wrigley filed a motion to dismiss

17   arguing, as the defendants do here, that express

18   warranty is not viable absent privity, and concluding

19   that because Smith didn't directly buy from Wrigley,

20   he could not establish the existence of that element.

21   The court denied the motion, noting first that while

22   Florida law is clear requiring privity to recover for

23   the breach of an implied warranty, not an express

24   warranty, the Florida Supreme Court has not provided

25   similar clarification for express warranty claims.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

 1    So distinguished an implied warranty from an express.

 2    And while the court declined to resolve the issue of

 3    whether privity is ever required for express warranty

 4    claims, it did find in that case, given the

 5    particular facts, the analysis is straightforward.

 6    And importantly, one, it defies common sense to argue

 7    that purchasers of the gum presumed that the cashier

 8    at the local convenience store is familiar with the

 9    scientific properties of the MBE, which is the

10    ingredient there.  Two, it is significant that the

11    express warranty the manufacturer allegedly breached

12    is contained on the package, as it is here in this

13    case.  And three, the complaint alleged there that

14    plaintiff relied on the warranty when purchasing the

15    gum.  So, in that case, the court concluded that the

16    plaintiffs stated express warranty despite the lack

17    of privity.

18         We would also point Your Honor to the Kahru

19    case, K-A-H-R-U, which is a Southern District of

20    Florida decision, 2013 U.S. District Lexis 112613,

21    explaining that express warranties were contained on

22    the package and in the advertisements, both clearly

23    directed to the end purchaser, and holding that

24    privity was not required for a breach of express

25    warranty case.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492
                                                                        1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                               e-mail: info@litsupport.com

1           The Garcia versus Kashi case, 43 F.Supp. 3d

2    1359, a Southern District of Florida case from 2014;

3    again an express warranty claim survived despite the

4    lack of privity.

5           And finally, again in a more recent case

6    than the Hill versus Hoover case that the defendants

7    are relying upon, is the Bohlke, B-O-H-L-K-E, versus

8    Shearer's Foods, S-H-E-A-R-E-R'S, Foods, 2015 U.S.

9    District Lexis 6054.

10          In Illinois there are several cases on

11   point.  Again, on this lack of privity issue we would

12   direct the Court to the Mednick versus Precore case,

13   2014 U.S. District Lexis 159687, conferring that a

14   manufacturer's documents given directly to the buyer

15   prior to the purchase may give rise to an express

16   warranty because they become the basis of the

17   bargain.

18          There is an exception if the manufacturer

19   expressly warrants its goods to the ultimate

20   consumer.  The Baldwin versus Star Scientific, Inc.,

21   78 F.Supp. 3d 724.  This case was actually cited by

22   the defendants.

23          Again, in that Mednick case, the Court

24   found that brochures, documents, and advertisements

25   may constitute a sufficient basis for an express

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   warranty.

2            The cases cited here, Your Honor, all

3   provide for express warranty despite a lack of

4   privity, which is what we believe should be the

5   determination in this court as well.

6            Finally, in New York, there is recent

7   authority supporting the notion that the New York

8   Court of Appeals has dispensed -- which is of course

9   the highest court in New York, which is always very

10  confusing if you don't practice there -- has

11  dispensed with the requirement of privity in cases

12  involving breach express warranty where only economic

13  damages are alleged.  That's the Mahoney versus

14  Endohealth Solutions case, 2016 U.S. District Lexis

15  94732.  And there, importantly, the court concluded

16  that privity is not required, and allowed express

17  warranty claims to proceed.  What's important about

18  this case, Judge, is the Mahoney case postdates the

19  Ebin case, which is the case that the defendants rely

20  upon.  More recent authority does not require privity

21  between a consumer and a manufacturer, where the

22  plaintiff alleges breach of warranty and seeks

23  economic damages.

24            That is all I have, Your Honor, on express

25  warranty.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  All right.  Thank you, Ms.
2    Wolchansky.

3          MS. WOLCHANSKY:  Thank you.

4          THE COURT:  Mr. Biersteker, anything
5    further on express warranty?

6          MR. BIERSTEKER:  Just very briefly, Judge.

7          First, there is no dispute that the
8    pre-suit notice was not given.

9          Second, as to the exception that plaintiffs
10   would perceive, I think it's narrower than that which
11   they argue for.  Again, I'm not saying that there
12   aren't cases that use language that either side could
13   seize upon to support their position.  But I think,
14   if you look at the reasoning in those cases, the
15   cases relied upon by the defendants are superior.

16          I must say, the Mahoney case in New York is
17   not one that was cited, I don't think, in anybody's
18   brief.  It's not one that I've read, and I'm
19   unfortunately not in a position to specifically
20   address that case out of New York.

21          THE COURT:  All right.

22          MR. BIERSTEKER:  Thank you.

23          THE COURT:  What do you want to go to next?
24   You wanted to skip the injunctive relief?

25          MR. BIERSTEKER:  No, I wanted to do the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    injunctive relief.

2            THE COURT:  You wanted to do the injunctive

3    relief, okay.

4            MR. BIERSTEKER:  As Your Honor may recall

5    from our last outing in June, as to the menthol

6    theory, Your Honor specifically asked why didn't

7    Santa Fe drop the additive-free tobacco claim, at

8    least with respect to its menthol cigarettes.  And

9    while the Santa Fe Natural Tobacco Company has

10   executed a memorandum of agreement with the FDA,

11   under which it will do precisely that before the end

12   of this year, in fact it will do more.  Pursuant to

13   the memorandum of understanding, Santa Fe Natural

14   Tobacco Company -- which I'll shorthand as "Santa

15   Fe" -- will cease using the terms "additive-free" and

16   "natural" to describe the tobacco in the Natural

17   American Spirit cigarettes, in both ads and on the

18   packs.

19           And pursuant to the FTC's subsequent letter

20   guidance, Santa Fe Natural Tobacco Company will

21   modify the disclaimer.  Let me explain.  Since Santa

22   Fe will no longer be claiming that the tobacco in

23   Natural American Spirit cigarettes is additive-free,

24   the current disclaimer, "No additives in our tobacco

25   does not mean a safer cigarette," will be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    generalized.  And the generalized disclaimer will

 2    say, "Natural American cigarettes are not safer than

 3    any other cigarettes."  That moots plaintiffs'

 4    request to enjoin Santa Fe from continuing to use the

 5    phrases "additive-free" and "natural" to describe the

 6    tobacco in Natural American Spirit cigarettes.

 7              I would point out that Santa Fe will

 8    continue to be permitted to use the word "natural" in

 9    the brand name.  The brand will still be Natural

10    American Spirit.  I would note that the complaint,

11    which is the operative document here on a motion to

12    dismiss, seeks to enjoin Santa Fe's false and

13    deceptive practices.  But it discusses and focuses on

14    the use of "additive-free" and "natural" to describe

15    the tobacco in Natural American Spirit cigarettes.

16    There is no allegation in the complaint that

17    "natural," specifically as used in the brand name or

18    the trademark is false or misleading, and no requests

19    specifically to enjoin Santa Fe to change the brand

20    name to omit the word "natural" in it.  To the extent

21    that plaintiffs do seek to enjoin the use of the word

22    "natural" in the brand name or the trademark,

23    defendants do not assert that it is moot at this

24    point.

25              Defendants do believe, however, that in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    event there is such a claim, although, again, it is

2    not apparent on the face of the complaint, it should

3    be dismissed for other reasons, including plaintiffs'

4    inability to allege plausibly that "natural" in the

5    brand name alone misleads consumers.

6            Indeed, as to the menthol theory, Your

7    Honor indicated on June 9 anyway, that you were

8    focused more on "additive-free, the descriptor

9    "additive-free," as applied to the tobacco, as

10   opposed to "natural."  And, in any event, I would

11   submit it is implausible that consumers would be led

12   by the brand name alone, Natural American Spirits,

13   that cigarettes that are labeled as menthol, that are

14   bought because they are menthol, that they somehow

15   will be led to believe that they do not contain

16   menthol.

17           I might also add that in his exposition on

18   the question "what is menthol" at the June 9 hearing,

19   Mr. Schlesinger noted that menthol can be either

20   synthetic or natural.  The menthol in the Natural

21   American Spirit cigarettes is natural.  In fact, it's

22   organic.

23           So with that, I don't have anything

24   further, unless Your Honor has questions regarding

25   the injunction issue.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  Well, I may.  Let me hear from

2     Ms. Wolchansky.  And then I may have some questions.

3     Thank you, Mr. Biersteker.

4          Ms. Wolchansky.

5          MS. WOLCHANSKY:  Judge, I'll start, just

6     briefly, with the suggestion that our complaint,

7     which is the operative complaint before Your Honor,

8     somehow doesn't touch on the brand name as using

9     "natural" as part of the deception here.  I mean, I

10    only just read the first two pages of the complaint,

11    but I am happy to share just a couple of the

12    paragraphs that make it quite clear that the use of

13    "natural," be it in the brand name, or otherwise, is

14    absolutely at the heart of this case.  The very first

15    paragraph under "nature of the case," paragraph 1

16    states, "This action seeks to redress defendants'

17    Santa Fe Natural Tobacco Company, Inc., Reynolds,

18    RJR, deceptive marketing of their, quote, 'Natural

19    American Spirit' brand cigarettes as 'natural' and

20    'additive-free.'"

21          Paragraph 4, "By uniformly using the terms,

22    quote, 'natural' and 'additive-free' on each and

23    every label, defendants intentionally and

24    successfully convey to reasonable consumers that

25    Natural American Spirit cigarettes are safer and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    healthier to smoke than other competing cigarettes."

2            "They use the terms natural and

3    additive-free through a pervasive nationwide

4    marketing and advertising campaign."  That was

5    paragraph 5.

6            I think, Judge, it's in every second or

7    third paragraph in the entire complaint.  So to

8    suggest that this case isn't about the brand name or

9    the use of "natural," wherever it may occur on the

10   packaging, is just not true.  So the brand name alone

11   absolutely can mislead and confuse consumers.  That's

12   the entire case.  And as Your Honor has stated

13   earlier today, the complaint more than plausibly

14   alleges that reasonable consumers could be misled by

15   the use of those terms.

16           Regarding the agreement to change the

17   labeling and the disclaimer, a couple of very

18   important points that absolutely do not moot these

19   claims; moot the use of it in the brand, or

20   otherwise.  One, the memorandum of agreement between

21   the defendants and the FDA is not a final document.

22   This is an agreement that they have.  Even the

23   defendants in their briefing, and I believe at the

24   last argument stated that is not final.  They have,

25   as they've represented to the Court, agreed to make

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    some changes to their labeling.  But this is not a
2    final document.
3              Importantly, there was a lawsuit filed on
4    June 6, against the FDA, regarding Santa Fe's
5    continued use of the word "natural," alleging that
6    the authorization, without following congressionally
7    mandated process for public input and FDA approval,
8    constitutes agency action that is arbitrary,
9    capricious, and an abuse of discretion, and otherwise
10   not in accordance with the Administrative Procedure
11   Act, 5 USC 7062.  So that litigation is ongoing.
12   There is discussion about whether it may or may not
13   be transferred to this Court.  So there is --
14             THE COURT:  But that's litigation that the
15   defendants filed against the FDA?
16             MS. WOLCHANSKY:  It's not.  It's litigation
17   that was filed actually by Mr. Schlesinger against
18   the FDA for the continued use of "natural" without
19   the FDA going through the correct procedures to seek
20   comment.
21             THE COURT:  So it's a suit to say that this
22   memoranda process is defective because it's not an
23   APA procedure?
24             MS. WOLCHANSKY:  They failed to go through
25   the correct procedure in coming up with this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    memorandum of agreement, which includes certain
 2    things like seeking comment and input.
 3            So there is by no means finality with
 4    respect to the FDA's memorandum of agreement.  And
 5    that is in defendants' own briefing.  To suggest that
 6    that memorandum now somehow moots these claims in
 7    this case, it's just not true.  And, in fact, I
 8    understand there may never be a final order.  The
 9    agreement between the defendants and the FDA might be
10    all there is.  They might go ahead and make some
11    changes to the label, which, by the way, they could
12    change back anytime.  So it's not moot here.
13            Oh, and they admitted that the changes are
14    not complete on page 37 of their reply brief.
15            THE COURT:  When you say "not complete,"
16    what does that mean?  Does that mean that the
17    negotiations are not complete?  Is that what you mean
18    by that, or --
19            MS. WOLCHANSKY:  Although Santa Fe has not
20    yet finalized the changes to the label, they are well
21    underway.  But nothing is final.  So we're taking
22    representations from defense counsel that they are
23    planning to make these changes; that, you know, there
24    is a memorandum of agreement that's not final.  But
25    nothing is in a position here for the Court to find
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that those claims are moot.

2           The injunctive relief is incredibly

3    important in this case, Your Honor.  This is a public

4    health claim that we allege is causing mass

5    deception.  And to, at this stage in the litigation,

6    dismiss those claims because of changes that are

7    supposedly going to happen based on an agreement with

8    the FDA that isn't final, is simply premature.

9           And again, as Your Honor noted, the FTC

10   consent orders on tobacco do not preempt consumer

11   fraud claims.  The same here.  So, even if the FDA

12   agreement were final, there is still a right of

13   action in this case for injunctive relief.

14          That's all I have, Your Honor, on

15   injunctive relief.

16          THE COURT:  All right.  Thank you, Ms.

17   Wolchansky.

18          Mr. Biersteker.

19          MR. BIERSTEKER:  I think I can be pretty

20   brief, Judge.

21          Let's talk about the case challenging the

22   memorandum of agreement.  And let me just point out

23   that the agreement itself is final; its

24   implementation is ongoing.  It allows for a

25   seven-month window from the time that the FTC weighed

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   in on the appropriate disclaimer to use.  In light of
 2   the fact that the specific claim "additive-free"
 3   would no longer be used, it didn't make much sense to
 4   have a disclaimer that was specific to additive-free
 5   in the tobacco.  So when that occurred, which it did,
 6   there is a seven-month window with the company to
 7   revise its advertising, revise its packaging, to
 8   submit that to the FDA for its approval, and then to
 9   implement it, which takes some time.  It can't be
10   turned around overnight.  It's a rather involved
11   process, more than one might think.
12           So it is wrong to say that the memorandum
13   of agreement is not final.  And, indeed, the action
14   to which plaintiffs refer was brought by one of the
15   named class representatives here, Sproul.  It was
16   filed on June 6 in the Southern District of Florida.
17   The newly filed complaint is against the FDA.  It
18   seems a declaration that the memorandum of agreement
19   is unlawful under the APA, the Administrative
20   Procedure Act, and to set it aside and to enjoin the
21   FDA from entering into or reissuing the memorandum of
22   agreement in any form.
23           Apart from the apparent inconsistency in
24   Mr. Sproul's position --
25           THE COURT:  So if the plaintiff got the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   relief they wanted, it would -- what would it do?

2   Vacate the memorandum?

3           MR. BIERSTEKER:  I guess it would vacate

4   the memorandum.  I'm not sure it would vacate the

5   planned activity, number one.  I mean, you have to

6   step back a moment.  The whole issue with the FDA was

7   really largely a housekeeping issue.  And I don't

8   mean that in any pejorative sense.  But let me

9   explain.  The FDA obtained jurisdiction over tobacco

10  in 2008, I want to say, was when the statute was

11  passed, giving the FDA regulatory authority over

12  tobacco.  As part of that, if you're going to be

13  making anything that might be construed as a reduced

14  risk claim, you have to obtain the prior approval of

15  the FDA before you can market it.

16          With respect to Natural American Spirit

17  cigarettes, and the use of the descriptors "natural"

18  and "additive-free" to describe the tobacco being

19  used in those cigarettes, they were already on the

20  market.  And so, when the statute was passed, there

21  was a situation where they were already on the

22  market, and so preapproval could not be sought.  And

23  the warning letter really was a way of bringing the

24  issue to a head and resolving the need to obtain FDA

25  approval for a reduced risk claim, if you will, of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

65

```
1    additive-free tobacco or natural tobacco.  And that's

2    what prompted the warning letter, and that's what

3    prompted the resolution in the memorandum of

4    understanding -- or memorandum of agreement, excuse

5    me.

6              And so, I think that if you view it in that

7    context, even if the memorandum of agreement itself

8    were somehow superseded, there would still need to be

9    something that occurred.  And there is no reason to

10   believe, at this juncture, that the FDA would do

11   anything differently than it's already done.

12             And I would point out, the reason I started

13   to discuss the Sproul case, was plaintiffs' argument

14   that somehow or another the memorandum of agreement

15   is not final, the Sproul complaint itself says that

16   the memorandum of agreement constitutes final agency

17   action under 5 USC Section 704, dispelling any

18   suggestion, I think, that the parties to the

19   memorandum of agreement will somehow abandon it or

20   not abide by it.

21             And that leads me, I guess, to my last

22   point on this issue, which is that there was some

23   suggestion that Reynolds could change -- not

24   Reynolds -- Santa Fe could change the packaging and

25   the advertising at any point.  And, again, the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    advertising is being submitted for FDA approval.  I
 2    think the FDA may already have the proposed
 3    advertising.  The packaging is coming over later.
 4    Maybe I've got it switched.  But they've got one or
 5    the other under review.
 6              And in any event, the notion that Santa Fe
 7    will not adhere to the memorandum of agreement that
 8    it signed with the FDA and risk alienating the FDA
 9    and the FTC, both of whom have significant regulatory
10    authority over the company's business, makes no sense
11    to me.  It's just not realistic to assume that Santa
12    Fe, having negotiated and having agreed to certain
13    requirements with both the FTC and the FDA is going
14    to somehow walk away from them or change its conduct.
15              Does Your Honor have any questions?
16              THE COURT:  I don't believe so.  Thank you,
17    Mr. Biersteker.
18              MR. BIERSTEKER:  Thank you.
19              THE COURT:  All right.  Where do you want
20    to go next?
21              MR. BIERSTEKER:  I think we're finished,
22    Judge, as far as defense is concerned, unless Your
23    Honor has any questions about the supplemental
24    briefing, the 12(b)(6) issue, the other issues that
25    we've agreed to submit on the papers.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  I don't believe so.

 2                The plaintiffs certainly hit hard the

 3      Court's tentative conclusions about two of the

 4      statements, whether I had the ability, given what

 5      they had alleged, to, as a matter of law, say that

 6      the terms "natural" and then, also -- I guess the

 7      word "natural," that I guess I had problems with the

 8      first alleged misrepresentation and the third

 9      misrepresentation.

10                They seemed to say that if they have enough

11      studies, they can -- that's enough to get them past

12      the motion to dismiss.  If they found that many

13      people that are confused through studies with the

14      word "natural," that I would be in error to find that

15      I don't think a reasonable consumer would be misled

16      by that phrase.

17                Is there anything further you want to say

18      on that, Mr. Schultz?

19                MR. SCHULTZ:  Your Honor, we think we

20      refuted the idea that they can outsource their

21      requirement.  But if the Court wants me to go into

22      further about the Court's ability, and in fact, duty

23      on a 12(b)(6) motion to make this determination as a

24      matter of law at this stage, I'll be glad to.

25                THE COURT:  Well, talk to me, what you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

68

1    really mean by outsourcing.  If they've got studies,

2    that's called evidence.  Why isn't that -- I mean, if

3    they've got one judge in New Mexico looking at the

4    word "natural," going, I don't see how anybody can be

5    confused by that," but they've got 500 consumers that

6    are saying that they are confused by it, is that not

7    some evidence that the Court shouldn't rule as matter

8    of law?

9             MR. SCHULTZ:  Well, your Honor, first of

10   all, I think -- let's distinguish two things.  The

11   issue here is the plausibility of their allegations.

12   It's not quality of the evidence.

13            And in our footnote, Your Honor, in going

14   through some of these studies that the plaintiffs

15   relied on, I think the footnotes in our supplemental

16   briefing were very clear to show why those studies,

17   number one, don't say what was alleged.  And number

18   two, the questions that were being asked in those

19   studies weren't even the pertinent ones.

20            But, again, Your Honor, that's not the

21   issue.  Just to go back one step, when we were at the

22   last hearing, Your Honor, you asked the question,

23   don't you have the ability to determine as a matter

24   of law whether a reasonable consumer could be

25   confused.  You asked that question directly to me.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  And I said I believe you do.  And your response was:

2  I think that's right.  It was the plaintiffs, then,

3  that wanted to have supplemental briefing on this

4  issue as to whether the Court, in fact, had that

5  power, at a 12(b)(6) issue.  And they provided no

6  additional information and no legal authority that

7  should dissuade the Court from that.

8       I mean, as an initial matter, Your Honor,

9  throughout the briefing, in both our initial motion,

10 in our reply brief, and at the supplemental brief --

11 and I can give you the precise pages and footnotes,

12 if the Court wants to be directed -- we provided the

13 Court with numerous examples where federal courts do

14 precisely that; that, in ruling on a 12(b)(6) issue

15 in a consumer deception claim, courts rule as a

16 matter of law whether, in fact, the alleged

17 misrepresentation would deceive the reasonable

18 consumer.

19       The only case that the plaintiffs really

20 came back with was the Williams versus Gerber

21 Products case, a 2008 case from the Ninth Circuit.

22 And, Your Honor, the case is very short.  It's very

23 clear what the Ninth Circuit did there.  The Ninth

24 Circuit reversed the district court holding with

25 regard to whether the alleged misrepresentation would

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    deceive the reasonable consumer.  That much is true.

2    The Ninth Circuit reversed the district court's

3    finding.  But the Ninth Circuit did not reverse the

4    district court, because it held the district court

5    improperly, on a motion to dismiss, ruled on this

6    question.

7              In fact, Your Honor, in the second to the

8    last page of the opinion, the Ninth Circuit flatly

9    says:  We just disagree.  So it wasn't as a matter of

10   law that they disagreed on whether the district court

11   has the power to do so.  They just came to a

12   different conclusion.

13             And in our supplemental brief, Your Honor,

14   we provided the Court with numerous cases within the

15   Ninth Circuit, both at the circuit court level and

16   the district court level that, since 2008, since the

17   Williams case, where the courts have continued to

18   grant motions to dismiss on reasonable consumer

19   claims, and the Ninth Circuit has repeatedly affirmed

20   those rulings.

21             And, specifically, Your Honor, if you look

22   at our supplemental brief in Footnote --

23             THE COURT:  I don't want to rush you, but

24   I've got to give Ms. Bean a break.

25             MR. SCHULTZ:  Anytime, Your Honor.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1             THE COURT:  Why don't we take a break here,
2    and then come back and let you finish your remarks.
3             All right.  We'll be in recess for about 15
4    minutes.
5             (The Court stood in recess.)
6             THE COURT:  All right.  Mr. Schultz, if you
7    wish to continue your argument on the
8    misrepresentations.
9             MR. SCHULTZ:  Well, Your Honor, I won't
10   belabor the point that we made in our supplemental
11   briefing in response to -- the whole reason why the
12   plaintiffs asked to have supplemental briefing was
13   challenging this Court's authority to make that
14   determination.  It's clear that the Court does have
15   this authority.  We provided the Court with any
16   number of examples from district courts and appellate
17   courts from around the country that all have found --
18   to use the words you used right before the break,
19   Your Honor, that one judge has the ability to look at
20   the allegations and make a determination as to what a
21   reasonable consumer would find to be misleading.
22             The other issue, Your Honor, that we raised
23   with the Court that I'm sure I don't have to remind
24   you about, was your ruling in the SEC versus
25   Goldstone case.  You raised that at the last hearing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   about:  Why is this any different than what you do in

 2   a securities case?  Plaintiffs said, Well, it's

 3   different, Your Honor, because there is a higher

 4   pleading level, it's a Rule 9 fraud level.  Well, the

 5   SEC versus Goldstone case, that you decided in 2013,

 6   that was not based on a fraud level of pleading.

 7   That was based on Rule 8.  And in your opinion, Your

 8   Honor, your 300-some-odd page opinion, you found no

 9   problem in dismissing four of the SEC's claims based

10   on what a reasonable investor or a reasonable

11   consumer, a reasonable person, would find to be

12   misleading.

13            That's precisely what the Court has the

14   ability to do here.  Your Honor, you have the

15   authority.  And simply because there is a study that

16   is cited, or even if there were multiple studies, the

17   fact of the matter is, Your Honor, if that's all it

18   took for a plaintiff to do, to avoid a motion to

19   dismiss, then no court would ever be able to grant a

20   motion to dismiss on a reasonable consumer deception

21   claim.  But we know that that's not what courts have

22   done.  We know that courts are willing to look

23   directly to the alleged misrepresentation.  They look

24   directly to the product.  They look directly to the

25   label.  And they make that determination.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1            And as we pointed out in our supplemental

2      brief, Your Honor, on page 7, in Footnote 5, one of

3      the problems with the studies that they're citing,

4      these are studies that do not even look to or ask the

5      question about what consumers think about the

6      disclaimer that's at issue here.

7            So simply for a plaintiff to be able to

8      say, Oh, we have a study, does not preclude this

9      Court from exercising its ability under Rule 12

10     (b)(6) to look directly to the alleged

11     misrepresentation, not a study about that

12     misrepresentation, but to look directly to the

13     product itself and make a determination, as you did

14     at the hearing in June, as to what a reasonable

15     consumer would find to be misleading.

16            THE COURT:  All right.  Thank you,

17     Mr. Schultz.

18            Ms. Wolchansky, do you want to respond?

19            MS. WOLCHANSKY:  Yes, Your Honor.  Ms.

20     McGinn and I will actually both be responding on this

21     point, but I will open.

22            Judge, Mr. Schultz is grossly

23     mischaracterizing our position with respect to the

24     Court's ability to assess the claims at the motion to

25     dismiss phase.  We explicitly acknowledge, on page 4

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of our brief, that the Court has inherent authority

2    to assess the legal sufficiency of the claims.  We do

3    argue that -- and this is an important nuance -- it's

4    not that the Court can't, as a matter of law, make a

5    determination.  What the Court can't do at this stage

6    is weigh the evidence.

7            And, as the Court pointed out this

8    morning -- and frankly, it's not one study; it's not,

9    oh, we put one study in our complaint, and the Court

10   has to take that as true.  We would submit that

11   that's enough.  But there is so much evidence, Your

12   Honor.  And I went through that evidence in great

13   detail at the last hearing.  It's in the PowerPoint

14   that I didn't go through this morning, but that Your

15   Honor has, and I can file on the docket.  There are

16   warning letters from the FDA that, you know --

17           THE COURT:  Before I forget, let's make

18   sure we do file it, so I can cite it when I write the

19   opinion.

20           MS. WOLCHANSKY:  I will file it, Your

21   Honor, this afternoon.

22           We have the warning letter.  We have

23   multiple studies:  The 2016 study, the prevalence of

24   reduced harm perceptions clearly demonstrates that a

25   disclaimer is not an effective means to correct the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    inappropriate harm perception.  We have Judge

2    Kessler.  We have all of the plaintiffs in this case.

3    That is not insignificant.  They have all alleged

4    that they were misled by the misrepresentations on

5    the packaging.  We have Santa Fe's own internal

6    documents.  We have a 2007 study.  We have 63.9

7    percent of smokers -- Natural American cigarette

8    smokers believe their brand was less harmful.  As

9    Your Honor pointed out, we have thousands of

10   consumers who have believed and been misled by the

11   representation.

12          So it's not that the Court can't, as a

13   matter of law, ever make a determination at a motion

14   to dismiss.  We would not submit that that is the

15   law.  But the Court can't weigh the evidence.  And

16   here, viewed in the light most favorable to the

17   plaintiffs, taken as true, the allegations in the

18   complaint, there is more than enough here for this

19   case to proceed.

20          The reason why we cite the Williams versus

21   Gerber case, and that the defendants cite all over

22   their briefing regarding the reasonable consumer

23   standard, in that case it's not that the Court found

24   that it was or wasn't misleading.  The Court found it

25   couldn't weigh the evidence; it was a question of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    fact for a jury.  And there was laughably less
 2    evidence in that case than there is here in the
 3    complaint.
 4              So, again, it's not that the Court can't,
 5    as a matter of law, make determinations.  It's that
 6    here, when there is plentiful evidence in the
 7    complaint, not weighing that evidence, but rather,
 8    viewing that evidence in the light most favorable to
 9    the plaintiff, we have more than plausibly alleged
10    that there is deception, despite the existence of a
11    disclaimer.
12              And, again, we aren't trying to --
13    Mr. Schultz has stated multiple times that we have
14    failed to cite any cases where the Court -- you know,
15    that say that the Court can't make a determination.
16    That's just simply not what we're saying.  We're
17    saying that an issue like this is a jury question
18    that the Court should find is a question of fact.
19    And to that point, I will turn it over to Ms. McGinn.
20              THE COURT:  All right.  Thank you, Ms.
21    Wolcansky.
22              Ms. McGinn.
23              MS. McGINN:  Judge, first I want to
24    apologize for missing the last hearing June 9.
25              THE COURT:  We had a lot of fun.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. McGINN:  Well, June 9 was my dad's 90th

2    birthday.

3          So I think our supplemental brief talks

4    about more than the Williams versus Gerber case as to

5    why this is a question of fact, not a question of

6    law.

7          But we missed a case that was just brought

8    to my attention by the brilliant Mr. Bienvenu this

9    week.  That is a New Mexico case that I think

10   addresses this issue probably more powerfully than

11   does Williams versus Gerber.  And that is your case,

12   Judge:  Martin versus City of Albuquerque, at 147

13   F.Supp. 3d 1298, that you wrote in 2015.  And I am

14   embarrassed to say I was unaware of this decision

15   before Mr. Bienvenu found it, but it is what I

16   describe, and I would commend to your clerks and your

17   externs to read, what I can only describe as a love

18   letter to the power of the jury trial that you wrote.

19   And I think it could only have been written by

20   somebody who has actually been in the arena down here

21   in the well of the courthouse and argued to a jury,

22   and seen the magic that happens when people come

23   together.  It is really remarkable -- that piece of

24   your opinion is really remarkable, Judge.  It talks

25   about why we let juries decide what is reasonable and

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                                        Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                          FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    what is excessive.

2           And even though your discussion in that

3    case is about the Sixth Amendment right to a criminal

4    jury trial, all of the amendments have equal

5    importance.  And the Seventh Amendment, the right to

6    civil jury trial is as important as the Sixth

7    Amendment right.  And all the things you say in that

8    case, I think, are applicable here, Judge.  You said

9    in that case "jury trials send a louder and more

10   definitive message to society than judges' opinions."

11   You said "the process is as important to how this

12   story ends to how the public accepts the end of the

13   story, and how the nation or the community decides

14   that the appearance of justice has been satisfied."

15   You said, "In a democratic society, it should not be

16   as important what a district judge believes, as what

17   the citizens in their jury verdicts decide."

18           But probably the thing that was most

19   touching in the opinion, Judge, was you describing

20   how the process works in New Mexico.  The

21   transcendent process that you talked about when, in

22   this fifth largest state, people from all walks of

23   life, from our 21 pueblos, from our four

24   reservations, and people of every race and every

25   creed come together in the courtroom here, and gay,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    straight, you list all the different kinds of people

2    that come here, religious, nonreligious, agnostics,

3    all come to this courtroom, and in this sacred space

4    here in the courtroom, make a decision for the whole

5    community, and how powerful that is.

6            And in this case, Judge, even though you

7    have the power to make a decision about a motion to

8    dismiss at this level -- although we think the case

9    law says where there is a factual dispute, you can't

10   weigh the evidence -- in this case, it is a group of

11   people that should include people who are still

12   smokers, people who have never smoked, people who

13   have smoked and quit smoking, that should decide

14   whether this is appropriate and whether reasonable

15   people could be fooled.

16           I read the transcript of the four-hour

17   hearing at the last thing, and it made me sorry I

18   missed it, because there was a lively discussion

19   about a lot of these very interesting issues.  But I

20   will say, Judge, that the questions you were asking

21   at that hearing are the same kinds of questions that

22   I expect a jury will ask, and will debate in the jury

23   room.  Is the word "natural" true, or is that

24   misleading?  Can something be technically true, but

25   mislead people anyway?  For example, if I sell

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   strychnine and I label it on the front as "natural

2   and organic," that's true, strychnine is natural and

3   organic.  But if I place the thing that it's poison

4   on the side of that, I'm not really telling the whole

5   story when I'm selling that particular product.

6           Does misrepresentation -- is it based on

7   just one word?  Can you pull out the word "natural"

8   and say, Well, just look at the rest of it about is

9   it a misrepresentation?  We've cited a case Pernod

10  Ricard USA versus Bacardi, at 653 F.3d 241, a Fourth

11  Circuit case.  And it says it's not just one word.

12  It's the whole gestalt, the whole marketing process

13  that they do with the green package, and the Native

14  American smoking, and all of this; the use of the

15  word "natural" several places, both in the branding

16  name and also on the packaging, all of that is what

17  the jury has to assess whether a reasonable person

18  could be fooled.

19          And it's not just even the whole gestalt of

20  it, Judge.  It's even the order that you place it in.

21  I know the Court is familiar with Daniel Kahneman's

22  book, "Thinking Fast and Slow."  No matter how smart

23  we think we are, just the order in which you list

24  things can affect you on a subtle level so you

25  disregard the rest.  It's why where they're placing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    this information on the package is so important.  If
 2    I tell you:  I want you to go out with somebody
 3    because they're smart, funny, hard-working, loud,
 4    aggressive, and a spendthrift, according to Kahneman,
 5    you're likely to go out with that person.  But if I
 6    just reverse the words:  If I say they're loud,
 7    aggressive, a spendthrift, smart, funny, and
 8    hard-working, you're not going to go out with that
 9    person.  So even just the order can affect -- and of
10    course, these marketers -- and the tobacco companies
11    know this better than anybody else -- they have all
12    kind of research themselves that show what works on
13    consumers.
14            If there is anything about your opinion,
15    Judge, that I would find fault with, there is one
16    thing that I think you left out in that opinion.  And
17    that is the differences in education between people.
18    And I think that's particularly important when you're
19    trying to determine reasonableness.  And it says why
20    it should be a group decision, rather than a decision
21    by an individual person or an individual judge.
22            You and I have very similar backgrounds.
23    I've come a long way from Alamogordo, and you've come
24    a long way from Hobbs.  And we have been incredibly
25    blessed by the educations that we've had.  And we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    like to I think -- I like to think that I still am in

 2    touch with my roots from back there, and I understand

 3    what common people and reasonable people think.  But,

 4    in fact, whenever I do focus groups, I realize that

 5    there are people who don't have the benefits that I

 6    have, that think differently than I do, and are more

 7    easily fooled than I am.  And that's why people with

 8    advanced degrees should step back and not exercise

 9    their authority to make decisions on what's

10    reasonable, and let a jury decide the factual basis

11    for what's reasonable and how people can be fooled.

12              I want to end with a quote from your case,

13    that you say:  "There are times to write opinions and

14    there are times to try cases."  And this particular

15    case about whether this fools people or not, this is

16    a case that should be tried to the jury.  And I want

17    to thank you for that great opinion, by the way.

18              Thanks, Judge.

19              THE COURT:  All right.  Thank you, Ms.

20    McGinn.

21              Mr. Schultz, anything further you want to

22    say on the misrepresentations, supplemental briefing?

23              MR. SCHULTZ:  Just very briefly, Your

24    Honor.  I'm not one to stand up and be more eloquent

25    than Ms. McGinn.  And I hate to follow her in the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1   courtroom.

 2             There is a reason that case was not cited

 3   in any of the parties' briefing.  That case dealt

 4   with a motion for summary judgment.  That case dealt

 5   with this Court's determination that there was a

 6   triable issue because there were disputed issues of

 7   fact and issues that a jury should decide rather than

 8   being resolved at a summary judgment stage.

 9             This case, Your Honor, is not at that

10   stage.  This case is before you in your function as a

11   gatekeeper, in measuring the adequacy of the

12   pleadings.  There are many, many steps between now

13   and a jury trial.  And everything Ms. McGinn said

14   about the power of a jury and why we have jury trials

15   is certainly true.  But that is not to say that every

16   single case, simply because it is filed, goes to a

17   jury.  Why?  Because there are rules.  There are

18   requirements that must be met before we get to that

19   stage.  And I assume, Your Honor, that if we get to

20   the summary judgment stage, we will hear the precise

21   same argument that Ms. McGinn just gave, and probably

22   citing the Martin case back to this Court, as well it

23   should be cited at that stage.

24             But at this stage, Your Honor, the more

25   important opinion for this Court to look to is not
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   your opinions, Your Honor.  It's what the U.S.

2   Supreme Court has told you is your obligation as a

3   judge as to what must be satisfied by the plaintiffs

4   in their pleadings before the case goes forward.

5            And we would urge the Court to look at the

6   Supreme Court's rulings in Twombly and Ashcroft.

7   Look at the cases that we've cited to the Court with

8   regard to what other district courts and other courts

9   of appeals have done in looking at the alleged

10  misrepresentation, as set forth in the pleadings, and

11  measuring the adequacy of those allegations against

12  the actual misrepresentation, and that, in making the

13  decision, as a matter of law, whether those would

14  deceive a reasonable consumer.

15           THE COURT:  Thank you, Mr. Schultz.

16           Mr. Schultz, Mr. Biersteker, do y'all have

17  anything else on your motion to dismiss that you want

18  to argue or bring up?

19           MR. SCHULTZ:  I think we're done, Your

20  Honor.

21           THE COURT:  All right.  Ms. Wolchansky, is

22  there anything further you want on the motion?

23           MS. WOLCHANSKY:  Nothing further.

24           THE COURT:  All right.  So if I understand

25  it, it's now in my court.  And the way we've got it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    scheduled is that nothing happens until I issue
2    written opinions and orders on this.  Is that
3    everybody's memory?  My oral inclinations up here
4    don't get it done.  I have to put an order in place
5    before y'all start filing answers and things.  Is
6    that the way the plaintiffs understand it?
7               MR. SCHULTZ:  Your Honor, certainly as to
8    the answer, that's correct.
9               THE COURT:  Isn't that the next thing after
10   me?  After I get the opinion and order out, then the
11   answers take place on our case management order?
12              MR. SCHULTZ:  With regard to the pleading
13   stage, that's correct, Your Honor.
14              THE COURT:  Okay.
15              MS. WOLCHANSKY:  We are continuing to
16   conduct discovery and meet and confer.  We will come
17   to the Court if we have any issues in discovery that
18   we need Your Honor's assistance with.
19              THE COURT:  All right.  Well, I'll see what
20   we can do about me trying to finish this opinion up.
21   I'm a little bit concerned about -- I've got a trial
22   I'm doing for the judges up in the Northern District
23   of Oklahoma right at the beginning of September, and
24   it's beginning to overshadow a lot of stuff I'm
25   trying to do here.  So it may be a little bit after
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that before I can really devote full-time to getting

2    this opinion out.  So be a little bit patient with me

3    as I try to get that out.  We've got a New Mexico

4    judge in Tulsa, Oklahoma, with New York lawyers,

5    deciding Delaware law.

6                    MR. BIERSTEKER:  What could possibly go

7    wrong?

8                    THE COURT:  It's good ole America, right?

9    Be patient with me.  I'll try to get that thing put

10   to bed.

11                   All right.  I appreciate your

12   presentations.  Be safe on your trips back.  I'll try

13   to get this out to you as soon as possible.

14                   I'm going to get organized up here, so

15   don't pay any attention to me.  Y'all have a good

16   day.

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

                    C-E-R-T-I-F-I-C-A-T-E


 UNITED STATES OF AMERICA

 DISTRICT OF NEW MEXICO



      I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 Official Court Reporter for the State of New Mexico,

 do hereby certify that the foregoing pages constitute

 a true transcript of proceedings had before the said

 Court, held in the District of New Mexico, in the

 matter therein stated.

      In testimony whereof, I have hereunto set my

 hand on July 26, 2017.




                        _____
                        Jennifer Bean, FAPR, RMR-RDR-CCR
                        Certified Realtime Reporter
                        United States Court Reporter
                        NM CCR #94
                        333 Lomas, Northwest
                        Albuquerque, New Mexico 87102
                        Phone:  (505) 348-2283
                        Fax:    (505) 843-9492

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com