```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF NEW MEXICO

 3    _____
                                    )
 4    In re:  Santa Fe Natural      )     No. 16-MD-02695 JB/LF
      Tobacco Company Marketing     )
 5    and Sales Practices           )
      Litigation.                   )     June 13, 2018
 6    _____)     1:18 p.m.

 7

 8                      TRANSCRIPT OF PROCEEDINGS
                      TELEPHONIC STATUS CONFERENCE
 9              BEFORE THE HONORABLE JAMES O. BROWNING
                   UNITED STATES DISTRICT COURT JUDGE

10    TELEPHONIC APPEARANCES:

11    For the Plaintiffs: JEFFREY L. HABERMAN, ESQ.
                          Schlesinger Law Firm
12                        1212 SE 3rd Avenue
                          Fort Lauderdale, FL  33316
13
                          MATTHEW D. SCHULTZ, ESQ.
14                        Levin Papantonio Thomas, P.A.
                          316 S. Baylen Street, Suite 600
15                        Pensacola, FL  32502

16                        RANDI McGINN, ESQ.
                          McGinn, Montoya, Love & Curry, P.A.
17                        201 Broadway, Blvd., SE
                          Albuquerque, NM  87102
18

19    For the Defendants: DAVID M. MONDE, ESQ.
                          Jones Day
20                        1420 Peachtree Street, Suite 800
                          Atlanta, GA  30309
21
                          SHARYL REISMAN, ESQ.
22                        Jones Day
                          250 Vesey Street
23                        New York, NY  10281-1047

24                        DEBRA R. BELOTT
                          Jones Day
25                        51 Louisiana Avenue, NW
                          Washington, DC  20001-2113
```

```
 1                        MELANIE B. STAMBAUGH, ESQ.
 2                        Rodey Law Firm
                         P.O. Box 1888
 3                        Albuquerque, NM  87103

 4

 5   REPORTED BY:         CARMELA V. McALISTER, CRR, RPR, NM CCR 308
                         United States Court Reporter
 6                        106 S. Federal Place
                         Santa Fe, New Mexico  87501
 7                        Phone:  505-992-3829
                         Email:  Carmela_McAlister@nmd.uscourts.gov
 8
          Proceedings recorded by mechanical stenography; transcript
 9   produced by computer.

10

11

12

13                                INDEX

14   Court on the Record                                    3

15   Statement by Mr. Schultz                               6

16   Statement by Mr. Monde                                 12

17   Court's Comments                                       20

18   Certificate of Official Court Reporter                 23

19

20

21

22

23

24

25
```

In Re:  Santa Fe Natural Tobacco Company
16-MD-02695 JB/LF
June 13, 2018

1          THE COURT:  All right.  So let's go ahead and get

2     started.

3          Let me, first of all, thank everybody for allowing me to do

4     this out-of-district and by phone.  As some of your local counsel

5     may know, I've been in two seven-week trials.  I'm about to start

6     another eight-week trial on July 9th.  So if I was going to get

7     any time with my family, it had to be about now.  So I'm going to,

8     as soon as this call is over, head to the airport and fly in and

9     start five days of hearings on the eight-week trial that's about

10     to take place.

11          But this allowed me to be in the Dallas area.  I've got

12     grandchildren here and a second home.  And my middle son from New

13     York flew in.  He's a professor in the New York area, and it

14     allowed me to visit with him in between his semesters.  So I

15     appreciate everybody being very courteous and allowing me to do

16     this by phone, and I hope it works out for everybody.

17          All right.  The Court will call In Re: Santa Fe Natural

18     Tobacco Company Marketing, Sales Practices and Products Liability

19     Litigation, case No. 1:16-MD-02695 JB/LF.

20          Will counsel enter their appearances?  And probably each time

21     anyone speaks today, we're probably going to have to identify

22     ourselves, so our court reporter can get a clean record.  But

23     let's start with the Plaintiff.

24          MR. HABERMAN:  Good afternoon, Your Honor.  This is

25     Jeffrey Haberman from Schlesinger Law Offices.

```
 1              THE COURT:  Mr. Haberman, good afternoon to you.
 2         Who else?
 3              MR. SCHULTZ:  Good afternoon, Matt Schultz from Levin
 4    Papantonio, Pensacola, Florida, for the Plaintiffs.
 5              THE COURT:  All right.  Mr. Schultz, good afternoon to
 6    you.
 7         Who else?  Anybody else on the Plaintiffs' side?
 8              MS. McGINN:  Judge, Randi McGinn.  I'm local counsel on
 9    the Plaintiffs' side with McGinn, Montoya, Love and Curry.
10              THE COURT:  All right.  Ms. McGinn, good afternoon to
11    you.
12         Anyone else on the Plaintiffs' side?  Everybody got their
13    mute button off?
14         All right.  How about for the Defendants?
15              MR. MONDE:  Good afternoon, Judge.  David Monde from
16    Jones Day on behalf of the defense.
17              THE COURT:  Good afternoon to you.
18              MS. REISMAN:  Good afternoon, Your Honor.  This is
19    Sharyl Reisman, also from Jones Day, on behalf of the Defendants.
20              THE COURT:  All right.  Ms. Reisman, good afternoon to
21    you.
22         Anyone else on the phone?  Somebody else sounds like they
23    came up.
24              MS. BELOTT:  Debra Belott with Jones Day on behalf of
25    the Defendants.
```

1       THE COURT:  Give me that again because you got cut off
2  here.
3       MS. BELOTT:  Debra Belott with Jones Day.
4       THE COURT:  Ms. Belott, good afternoon to you.
5  Who else is on the phone?
6       MS. STAMBAUGH:  Your Honor, good afternoon.  This is
7  Melanie Stambaugh.  I am stepping in for Andy Schultz, who is on a
8  well-deserved vacation, on behalf of the Defendants.
9       THE COURT:  Ms. Stambaugh, good afternoon to you.
10  Anyone else on the phone?
11  All right.  Well, I do think I've received all the materials.
12  I know you had a little difficulty getting those to go through,
13  but I think I've gotten all the letters and everything that Mr.
14  Monde listed out in his letter or email to Ms. Bevel.
15  Shall we start?  I believe the agenda item was Defendants'
16  discovery production problem that was outlined in Mr. Gdanski's
17  February 23rd, 2018, correspondence.
18  Who should start there?  I guess the Plaintiff.  So,
19  Mr. Haberman, are you going to take the lead here?
20       MR. HABERMAN:  Your Honor, actually, Mr. Schultz is
21  going to take the lead on that.  I just wanted to tell the Court
22  that Mr. Schlesinger regrets not being able to be on the phone.
23  He's giving -- about to give an opening statement right now in
24  another trial, so I'm filling in for him.
25  But Mr. Schultz is going to handle that situation, Your

1    Honor.

2             THE COURT:  All right.  Mr. Schultz?

3             MR. SCHULTZ:  Thank you, Your Honor.  Matt Schultz for

4    the Plaintiffs.

5         Having read the letters, Your Honor, and given that everybody

6    has time demands and you have a plane to catch, I'm not going to

7    belabor what has already been set out in that correspondence.  I

8    would just summarily point out, given this is a status conference,

9    that as early as last October, we pointed out what we perceived to

10   be deficiencies in the Defendants' production.  I think we've

11   gotten something on the order of 350,000 documents over the course

12   of roughly a year.

13        Several months later -- well, specifically, in late December,

14   we were told document production was complete.  At some point,

15   roughly 90 days later, for whatever reason, the Defendants were

16   still looking at document production issues and apparently

17   discovered a coding error and -- or a predictive coding error,

18   specifically.  And as you know, we've since had a number of

19   documents.  I don't know the latest count.  I think before the

20   last production last week, it was something on the order of

21   400,000 or more documents, many of which have been produced just

22   days or a week or two before depositions of witnesses.

23        The bottom line, Your Honor, where we stand is, as we see it

24   on the Plaintiffs' side, the Defendants engaged in predictive

25   coding without consultation of the Plaintiffs, which is a

1    violation of the Court's EFI order.  It was fouled up.  We don't

2    know exactly how, and even in light of Mr. Monde's letter of just

3    the last couple of days, we don't know how or why.  We essentially

4    had our request to meet and confer ignored until David Monde and I

5    had a brief discussion before a deposition on June 6th in Santa

6    Fe, and then we received the letter this Court has now received,

7    which I believe was dated on the 11th.  And that is the first

8    explanation, other than what has been described in the April phone

9    call, that we've had of what's happened.

10        And I think the real point as to where we stand right now,

11   Your Honor, is Mr. Monde's letter, while it was lengthy,

12   repeatedly refers to the issue with predictive coding, but never

13   identifies the issue, and -- nor does it explain why predictive

14   coding was used and used without any consultation on Plaintiffs'

15   part, the requirement of which is precisely to avoid this sort of

16   situation that we find ourselves in now.

17        We have gone ahead with depositions.  I've taken quite a few.

18   Mr. Haberman has taken a couple.  We have some Plaintiffs'

19   depositions done as well.  We did that with, at least, a sort of

20   handshake agreement that if we found something incendiary in some

21   later production, we might come back and ask limited questions of

22   witnesses.  But we didn't want to derail the schedule that we had

23   just gotten into place within weeks of learning of this issue on

24   the Defendants' side.

25        And where we stand now, Your Honor, is we have a motion to

 1   compel, a draft of which has been shared with Defendants, I

 2   believe, over the weekend, maybe last Friday -- and Mr. Monde can

 3   correct me if I'm wrong about that.  So in terms of status, that's

 4   where we are.  We're concerned that it's going to derail the

 5   schedule, at least as to Plaintiffs' expert reports or, at least,

 6   some temporary delay.  But there is other prejudice that will be

 7   laid out in the motion, particularly the accelerated review we've

 8   had to do of a document production that we've warned Defendants

 9   seemed deficient.  They shrugged off our concerns.  And then we've

10   now gotten more documents in the last couple of months as we're

11   taking depositions of corporate witnesses than we got in the

12   course of the entire year before.

13        So it's a big deal, Judge.  But in all candor, we don't know,

14   at this point, what went wrong, why it went wrong, whether it's

15   been corrected, because we've not been privy to what they've done

16   to correct it either, other than the brief discussion Mr. Monde

17   and I had about some hand-review of documents.  So we just want to

18   get to the bottom of it, Judge, and know whether there is an

19   issue, and, if so, how to address it.  The last thing we want is

20   more delay in the case.

21        But that motion will be forthcoming, and given everyone's

22   schedules, we recognize that it may not make it to the front

23   burner given your trial schedule or whatnot.  But we're going to

24   get it on file, and then we'll proceed from there, Judge, unless

25   the Court has some other idea.

1         THE COURT:  Well, tell me -- I don't want to make you

2    argue your motion to compel.  But tell me what you're going to

3    want the Court to do.  What is it that -- I mean, I guess my, sort

4    of, gut assessment is we've got to -- we had problems.  Defendants

5    acknowledge they have problems.  What is it that -- what is it

6    that you're going to want the Court to do?

7         MR. SCHULTZ:  Well, what we proposed, Your Honor, in our

8    initial response, after Mr. Monde called us in April, was that we

9    take a short corporate rep deposition and find out what happened

10   and have someone there on our side who's knowledgeable in EFI, who

11   can either tell us, look, this makes sense.  It sounds like they

12   did X, Y and Z and that that would result from it.  And it sounds

13   like what they did to fix it would fix the problem.  So let's live

14   with it and move on.  Or we will find that there are other

15   problems because the Defendants have been, you know, obscure about

16   what was wrong and what's been done to fix this, which, of course,

17   raises questions on our side.  That request went ignored and has

18   gone ignored.  I mean, we've not gotten a response on it at all.

19        There is also the question of expense on the Plaintiffs'

20   side.  Twofold, one the accelerated review required by the, you

21   know, production of 400 some odd thousand documents over the

22   course of a few months, as well as the fact -- and I've

23   experienced this myself preparing for depositions, including the

24   one I'm taking tomorrow -- that we have a database that we are

25   told is complete or has the complete production in it, and we

1  conduct our searches.  And then we're told, Oh, no, you only had

2  40 percent of the responsive documents.  So all of that searching

3  or at least much of that searching that went on now has to be done

4  again in light of the production that's been made more recently,

5  which we have just gotten, I believe, the last of -- within the

6  last seven to ten days.  That may be fewer than that.

7          THE COURT:  Are you doing manual review, or are you

8  doing predictive coding review yourself?  How are you going about

9  it?

10          MR. SCHULTZ:  Well, we've loaded the documents, Your

11  Honor, into a database, and we have Boolean search capability.  So

12  we can do word searches, we can do custodian searches, things of

13  that nature.  But the searches, of course, you know, the way you

14  build these searches out and build a cross-exam, or what have you,

15  off of them presumes that you have total knowledge.  And, of

16  course, it turns out we did not as we're doing this.

17      So, you know, I can't lay out, Your Honor, the specific

18  relief we would ask were we to take a two-hour, three-hour

19  corporate rep depo and find out what happened and whether the fix

20  is good enough, quote/unquote, there might be other relief

21  requested at that point.  Maybe we would find out we don't need

22  any relief, which is what we're being told by the Defendants.

23  But, of course, we would like to find out for ourselves.

24          THE COURT:  When you talk about a corporate rep, who are

25  you thinking of?

1     MR. SCHULTZ:  Well, it would be a corporate rep.

2   Essentially, you know, the topics would be why you were using

3   predictive coding without consultation?  What predictive coding

4   did you use?  What use did you make of the search terms that

5   Plaintiffs have provided to you?  And I don't profess to

6   understand all the intricacies of technology-assisted review.  We

7   have lawyers --

8     THE COURT:  So you're wanting a 30(b)(6), and you don't

9   care about who it is.  You just want a body there that's going to

10   provide you with this information?

11     MR. SCHULTZ:  Correct, Your Honor.

12     THE COURT:  Okay.  All right.  Let me come back.  I've

13   got a thought, but let me come back to it.  Anything else you want

14   to say, Mr. Haberman, before I hear from Mr. Monde?

15     MR. HABERMAN:  No, sir.

16     THE COURT:  All right.  I mean, Mr. Schultz.  I'm sorry.

17     Anything else you want to say before I turn it over to

18   Mr. Monde?

19     MR. SCHULTZ:  No.  Thank you, Your Honor.

20     THE COURT:  Mr. Monde, I guess my thoughts are that,

21   given your letter, your June 11th letter, it seems like a two-hour

22   30(b)(6) deposition is a fairly reasonable proposition to try to

23   get some information, and then y'all have been pretty good, as I

24   think you point out in the letter, avoiding discovery disputes.

25   But it seems like a 30(b)(6) might be a good way to see whether a

 1    motion to compel is even necessary.

 2        What's your thought?

 3        MR. MONDE:  I agree with that, Judge.  And the purpose

 4    of the letter was to try to set out in writing and explain that

 5    the fix is this:  We acknowledge that we used predictive coding

 6    without conferring with the Plaintiffs.  We certainly, as the EFI

 7    order was being negotiated and early on in the process, had

 8    discussed with Plaintiffs the fact that predictive coding might be

 9    used.  But there was a communication failure when it came time to

10    use it, when we realized the scope of documents that the EFI

11    search terms hit.  Those search terms included some very common

12    words such as "Natural" or "American Spirit."  And so, obviously,

13    further steps needed to be taken to separate responsive from not.

14        And in terms of what went wrong with the predictive coding,

15    we're happy to be transparent and to share that, Judge.  But the

16    important point is this:  It was wrong.  We recognized it when it

17    came to our attention.  We promptly notified the Plaintiffs, and

18    then we took steps to fix it, not by trying to redo the predictive

19    coding.  Because if we had done that, we obviously would have

20    first coordinated with the Plaintiffs to work out a protocol for

21    doing that, and then to execute on it.

22        We rejected that approach, Judge, because that approach was

23    going to materially impact and delay the schedule.  Instead, what

24    we did is we took all of the documents that had been set aside by

25    the faulty predictive coding, and we did it the old-fashioned way.

1   We used human reviewers to do a manual review, to separate the
2   responsive documents that we had committed to produce and those
3   that we had not and that were not responsive.  And that is what we
4   did.

5       And we assembled a significant number of people, spent
6   significant resources doing it.  But that was the only practical
7   way to do two things:  Resolve the issue once and for all with
8   predictive coding, to, in effect, produce to the Plaintiffs all
9   the documents that would have been produced had we never used
10  predictive coding, and to do it in a way that was timely so that
11  the schedule would not be materially impacted.

12      While it is true that we have not responded in writing until
13  our June 11 letter, Matt Schultz and I have had any number of
14  discussions as professionals, rolling up our sleeves, trying to
15  figure out how to get through this issue.

16      And what I'm talking about specifically is that no
17  depositions had been taken when this issue arose, but three were
18  on the schedule.  And Matt and I e-mailed and spoke, and we
19  discussed possibilities either going forward as scheduled or
20  postponing the depositions.  He elected to go forward with two of
21  them and to do a short postponement of one.  I then, in turn, told
22  him that what we would do is we would prioritize -- triage, if you
23  will -- our manual review of the documents, so that he would get,
24  first, the documents related to the depositions he wanted to take.
25  And that's what we did.

1    And then while this rolling production was continuing, the

2    Plaintiffs asked us to make available other witnesses and we

3    agreed to do that.  They worked with us to set the dates of those,

4    and we got those scheduled.  And we continued to prioritize the

5    production, so that they would get the documents that they needed

6    for the -- to complete those depositions.

7    And Matt's absolutely right.  He and I have worked together

8    for a long time on different cases, and we did have a gentleman's

9    agreement that if he finished the deposition and if he later found

10   documents that he didn't have at the time of the deposition that

11   he felt warranted a limited follow-up, we would do that.  And that

12   commitment remains, Judge.

13   The -- notwithstanding this issue, though, it's important for

14   the Court to understand just how much progress we've made in

15   discovery.  And to just give some brief context on that, let me

16   explain that after the issue of the Plaintiffs' leadership was

17   resolved, Plaintiffs and Defendants had a series of productive

18   meet-and-confer meetings to set out a new scheduling order.  Part

19   of that was to figure out how much time we would need for fact

20   discovery.

21   And what we did is we had a discussion with the Plaintiffs.

22   We asked them to project the approximate number of company witness

23   depositions they intended to take, and their projection was ten.

24   And, of course, that came with the usual caveat that professionals

25   would give in that situation, that it might rise or fall depending

1    on how depositions went.  And we, in turn, told them that we would

2    need time to depose each of the 12 named Plaintiffs.

3        With that information in hand -- and, again, before any of

4    the supplemental document issue arose -- we agreed that July 10th

5    would be a reasonable cutoff for fact discovery.  Since the issue

6    with the supplemental production has arose, we have taken six of

7    the -- the Plaintiffs have taken six company depositions, two more

8    will be taken this week, and the last two -- because their

9    projection of ten turned out to be spot on, at least so far.  The

10   last two are going to be taken in the week or two after the

11   discovery cutoff for reasons having nothing to do with the

12   supplemental document production, but purely availability and

13   convenience of witnesses and counsel, and we've agreed to do that.

14       And then on the other side, we have deposed three of the

15   named Plaintiffs.  We are on schedule to complete that by the

16   discovery cutoff.  As alluded to in the agenda item, we had served

17   written discovery requests -- they're limited in scope, but some

18   written discovery requests -- of the Plaintiffs in late March.  We

19   didn't get any responses to those until early June.  And even now,

20   we -- they're incomplete in material ways.  We've been getting the

21   Plaintiff materials just on the eve of the depositions.  We're

22   working through that.  I'm sure that if issues arose in terms of

23   our getting documents late, I'm sure that Matt and his team

24   members will work with us, as we pledge to do with them.

25       As I said in the letter, Judge, we're sorry this happened.

1    It was unintentional.  But we are sorry that it happened, and we

2    did what we need to do, which is to roll up our sleeves, work with

3    the Plaintiffs, and try to get them what they were entitled to,

4    and in a way that did not prejudice them, and in a way that

5    preserved the schedule as much as we can.

6        I can't respond to a motion that hasn't been filed.  I don't

7    know what prejudice that they incurred.  They would have needed to

8    review these documents anyway.  It's a little hard to quantify

9    what accelerated review means and what incremental costs were

10   incurred with that.  But before that issue gets put before the

11   Court, if it ever does, I assure you that Mr. Schultz and I will

12   confer about that, attempt to eliminate our differences, and, if

13   not, narrow them, so that we can take up as little of the Court's

14   time as needed to resolve this.

15       So bottom line, our focus is on the merits.  We encourage the

16   Plaintiffs to stay focused that way.  Their current deadlines for

17   expert disclosures is August 3rd.  I've already told the

18   Plaintiffs that if they need additional time, whether it's because

19   of the supplemental production or for other reasons, we'll work

20   with them on that.  That's why we haven't had the kinds of

21   discovery disputes that typically arise in these MDLs and often

22   take over the merits of the MDLs.  We've avoided that, and we're

23   going to take that same mindset and approach at trying to resolve

24   this issue.

25              THE COURT:  But you don't have any opposition for a

1   two-hour 30(b)(6) of one of your corporate reps to let them

2   explore what they need to do with the motion to compel?

3           MR. MONDE:  No, sir.

4           THE COURT:  Okay.

5      All right.  Mr. Schultz, is there anything else?  It sounds

6   like you got your deposition.  And I assume you'll probably take

7   the deposition before you file the motion to compel, and then

8   you'll -- after you take your deposition, you'll talk to Mr.

9   Monde?  And if you can't work it out, then you'll file your motion

10  to compel?

11          MR. SCHULTZ:  Yes, Your Honor.  That's why we held off

12  on it precisely, because we thought this might come about this

13  way.  I would ask for three hours only because I don't know enough

14  about EFI.  And David, I think, will tell you, if I'm involved in

15  a deposition and you give me ten years, if I only need an

16  hour-and-a-half, that's what I'm going to do.  And I would like to

17  at least put on the record that we should probably have some

18  discussion with the Defendants about deferring the expense of that

19  deposition, which has been occasioned by, essentially, what you've

20  heard here today, through no fault of our own.  But that's

21  something I think would be better for us to talk about before we

22  try and ask the Court for anything.

23          THE COURT:  Do you agree to a three-hour deposition,

24  Mr. Monde?

25          MR. MONDE:  I do, Judge.  And I will tell you this:

1    While the Federal Rules and our scheduling order provide for

2    seven-hour limits, my experience with Matt and Mr. Haberman for

3    that matter, and vice versa, is if we need a bit more time, we've

4    each been giving the other that time, and we also have been

5    efficient such that some depositions have taken less than that.

6    If Matt's good faith estimate is about three hours, we'll work

7    with that.

8             THE COURT:  All right.  And if they incur some expenses

9    as a result of the deposition, I won't make any ruling on that

10   now.  But I can tell you, Mr. Monde, I'll probably be favorable to

11   Mr. Schultz asking for his expenses on this deposition to be

12   reimbursed.

13            MR. MONDE:  He won't need to ask for those, Judge.

14            THE COURT:  Okay.  All right.  Mr. Schultz, anything

15   else on agenda item 1?

16            MR. SCHULTZ:  No.  Thank you, Your Honor.

17            THE COURT:  All right.  Let's then go to the Defendants'

18   agenda items.

19            MR. MONDE:  Judge, I may have some good news for you.  I

20   feel that we have covered those in the course of our discussion.

21            THE COURT:  Okay.

22            MR. MONDE:  And I really don't think that there is

23   anything else to add.  I would simply ask Mr. Schultz's commitment

24   that we get the discovery materials from the Plaintiffs at least

25   72 hours in advance of their depositions.  I had previously

offered them the opportunity to produce those to us on a rolling

basis.  But we do need to get them sufficiently in advance to be

able to make meaningful use of them.  And that works to the

benefit of both sides, because it would eliminate any potential

need to reopen the deposition because of late-received materials.

THE COURT:  Can you live with that request, Mr. Schultz?

MR. SCHULTZ:  Well, I will say Mr. Haberman is in charge

of that, but it certainly sounds reasonable to me, Judge.  If

there are any practical limitations, I think Mr. Haberman could

address those.  I would not know of them.

THE COURT:  Do you agree, Mr. Haberman?

MR. HABERMAN:  I think so.  Mr. Monde's request seems

reasonable.  Let me just say, there was a bit of an oversight.

Once we realized that there was an oversight, we worked quickly

and are working quickly to rectify that.  And we will do our best

to get these materials over to Mr. Monde at least 72 hours before

each Plaintiffs' deposition.

THE COURT:  Does that work for you, Mr. Monde?

MR. MONDE:  It does.

THE COURT:  Anything else that the Defendants want to

raise or discuss, Mr. Monde?

MR. MONDE:  No, sir.  Thank you for your time.

THE COURT:  All right.  Let me go back to the motion to

compel.  Let me tell you where I am.  When I agreed to the MDL, it

has been my practice since I became a judge to do all my own

1  discovery, and that may have played into your agreeing to have me

2  hear this case.  With these three seven-week and eight-week trials

3  that I'm in, for the first time in my career, I turned over the

4  discovery of my civil cases to the magistrate judges.

5      So I say that just to give you a bit of a choice.  If you

6  need immediate relief during this period of time -- which will

7  probably come to an end at the end of August for me.  I think the

8  trial is supposed to end August 31st -- you'll have to go to the

9  magistrate.  You'll have to go to Laura Fashing, who is the

10  magistrate judge on this.  If you need -- if you don't need it

11  done before August 31st, then I'm not sure exactly what I'm going

12  to do when I come out of this trial.  I've got -- one of our

13  judges is taking senior status, and I'm picking up about a

14  two-week civil trial in an Indian case, and so I'm not exactly

15  sure if I'm going to pick it up immediately.

16      But I'll give you a choice.  If you want to bump it over past

17  August 31st, if you want me to do it, I'll try to do it.  If

18  you're comfortable with Judge Fashing doing it, she can do it.

19  But up till August 31st, I'm not giving you a choice.  After

20  August 31st, if you want me to do it, I'll just work it in and

21  I'll be available.  So I'll give you a little guidance on that.

22          MR. MONDE:  Judge, I will say, on behalf of the defense,

23  that obviously we think that the Court's familiarity with this

24  case and the parties and the lawyers and the issues is critical

25  context.  And sitting here today, I don't know of any issue that

1    would be so time sensitive that it could not wait until after the

2    Court returns to Albuquerque from the trial.

3        But we will take the Court's comments into consideration as

4    we continue to work with Matt and Plaintiffs to resolve or at

5    least narrow the issues.

6            THE COURT:  Okay.  And it's kind of the Plaintiffs'

7    choice, since it's your motion.  If you want it quick, Ms. Fashing

8    will jump on it, and if you want to wait until I get back on,

9    because so far I think I've handled everything in this case, then

10   that's your call.  And I'll -- like I said, I'll make myself

11   available.  Even if I haven't changed my policy across the board

12   on civil cases, I will pick yours up if you want to wait until

13   after August 31st.

14           MR. MONDE:  Well, Judge, just to be clear, this is David

15   Monde talking back on behalf of Defendants.  Obviously, it would

16   be Matt Schultz's motion.  So he would be the one, I guess,

17   ultimately making that decision.

18           MR. SCHULTZ:  Matt Schultz, Your Honor.  We will know

19   after we take the 30(b)(6), which I presume will happen in short

20   order, and I'll be back in trial myself starting in September.  So

21   I guess what we learn in that deposition will dictate the relief

22   we seek, if any.  And I appreciate that.

23           THE COURT:  Well, I'm sorry that I'm a little bit

24   unavailable, but I do have to be mindful not only of what I can

25   physically do whenever I'm in a seven- or eight-week trial, but

1   also I'm having to work with colleagues who are having to pick up

2   my work, and it's a little tricky for me to give stuff to the

3   magistrate judges and then take it back.  So I'll have to be a

4   little careful in how I work with my colleagues, too.

5         Is there anything else we need to discuss while we're

6   together?  Anything else I can do for you?  Mr. Schultz?

7   Mr. Haberman?

8              MR. SCHULTZ:  I think we're good.

9              MR. HABERMAN:  No, Your Honor.  Nothing from us.  I

10  think we're good.

11             THE COURT:  How about you, Mr. Monde?

12             MR. MONDE:  Nothing here.  Thank you very much.

13             THE COURT:  All right.  Well, again, thank you very much

14  for your courtesy in letting me do this out-of-district and on the

15  phone.  I hope it worked for y'all, and I appreciate y'all letting

16  me have this one extra day with my son.  So I hope y'all have a

17  good afternoon.  Call us if you need anything.

18             MR. MONDE:  Good luck with your trial, Judge.  Thank

19  you.

20             THE COURT:  Bye-bye.

21  **(Court in recess at 1:51 p.m.)**

22

23

24

25

```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF NEW MEXICO

 3   _____
                                    )
 4   In re:  Santa Fe Natural       )     No. 16-MD-02695 JB/LF
     Tobacco Company Marketing      )
 5   and Sales Practices            )
     Litigation.                    )
 6   _____)

 7              CERTIFICATE OF OFFICIAL COURT REPORTER

 8         I, Carmela V. McAlister, CRR, RPR, New Mexico CCR #306,

 9   Federal Official Realtime Court Reporter, in and for the United

10   States District Court for the District of New Mexico, do hereby

11   certify that pursuant to Section 753, Title 28, United States

12   Code, that the foregoing is a true and correct transcript of the

13   stenographically reported proceedings held in the above-entitled

14   matter on June 13, 2018, and that the transcript page format is in

15   conformance with the regulations of the Judicial Conference of the

16   United States.

17         Dated this 18th day of June 2018.

18

19            /s/
     _____
20   CARMELA V. McALISTER, CRR, RPR, NM CCR #306
     United States Court Reporter
21   106 S. Federal Place
     Santa Fe, New Mexico  87501
22   Phone:  505-992-3829
     Email:  Carmela_McAlister@nmd.uscourts.gov
23

24

25
```