# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| IN RE: SANTA FE NATURAL TOBACCO COMPANY MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Lead Case No. 1:16-md-02695 JB/LF |

*This Document Relates To All Actions*

### PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT R.J. REYNOLDS TOBACCO COMPANY[1]

PLAINTIFFS, pursuant to Fed. R. Civ. P. 34, hereby request that Defendant R.J. Reynolds Tobacco Company, produce the following documents within its custody, possession, or control, in accordance with the requirements and procedures set forth in the rule.

As used in these requests, the following terms have the following meanings.

### DEFINITIONS

1. "You" and "your" and "RJRT" refer to Defendant R.J. Reynolds Tobacco Company, including (as may apply depending upon the time frame of a given request), its parent companies (specifically including Reynolds American Inc. ("RAI") ), its predecessors-in-interest, its executives, officers, agents, and employees and any other person acting on its behalf, including attorneys.

2. "Documents" has the meaning set for the Fed. R. Civ. P. 34(a)(1) and includes ESI.

---

[1] As stated in correspondence to Peter Biersteker dated October 29, 2010, Plaintiffs still maintain that RJRT had an obligation to respond to discovery on or before November 15, 2016, the date on which RAI responded to Plaintiffs' discovery. These requests merely serve as duplicate requests.

1

3. "American Spirits" or "product" refers to American Spirit brand cigarettes placed in the stream of commerce within the United States at any time, including all packings and line extensions.

4. Unless otherwise specified, all requests are limited to documents and things pertaining to the sale and marketing of American Spirits within the United States.

5. Unless a request contains a specific time limitation, it seeks all documents created, generated or obtained at any point in time through the date of your response.

6. "To," "relating to" or "refer or relate to" shall mean, without limitation, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, concerning, mentioning, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part the subject matter of the request.

**INSTRUCTIONS**

1. The use of the singular herein shall be deemed to include the plural. The use of one gender shall be deemed to include all other genders. The use of the conjunction "or" shall be deemed to include the conjunction "and," and vice versa.

2. In producing the documents and things requested herein, you shall furnish all documents in your actual or constructive possession, custody, or control, or in the actual or constructive possession, custody, or control of your officers, employees, agents, representatives, corporate affiliates, or attorneys.

3. If any requested document or thing cannot be produced in full, it shall be produced to the extent possible, indicating what document or portion of documents are being withheld and the reasons why such documents are being withheld.

4.      If any document covered by these requests is withheld by reason of a claim of attorney-client privilege, attorney work product protection, or any other privilege or protection, please furnish a log providing the following information with respect to each such withheld document: date, author, recipients, general subject matter sufficient to make a prima facie determination whether the asserted privilege has been properly invoked, and legal basis upon which the document has been withheld.

5.      Notwithstanding the assertion of any privilege or objection, any document which contains both privileged or objectionable and non-privileged or non-objectionable information which is responsive to these requests must be produced with the privileged or objectionable information redacted from the document.

6.      Copies of the file tab or label of the file within which a requested document is located shall be produced along with the document found in the file.

7.      If you are aware that a document or thing once existed but has been destroyed, please state when the document or thing was destroyed, why it was destroyed, and the circumstances under which it was destroyed.

8.      If you object to or are unable to answer any of these requests, please state your objection or reason for your inability to answer separately in detail for each such request. Any ground not stated shall be deemed waived.

9.      Failure to provide information in response to these requests will be deemed a waiver of your right to produce such evidence at trial. Plaintiffs reserve the right to move to preclude the introduction of any evidence not produced in response to these requests.

**PLEASE PRODUCE LEGIBLE/AUDIBLE COPIES OF THE FOLLOWING DOCUMENTS:**

1. A legible/audible copy of each transcript or audio recording of any oral statement made at any time by any named class representative in any related action, excluding any deposition taken in this action.

2. Every written document that you believe was authored by or that you believe otherwise memorializes the beliefs, opinions, or knowledge of any named class representative in any related action, excluding pleadings and discovery responses in this action.

3. Every document created, generated, or obtained before this action was filed which document bears the name or other personal identifying information for any named class representative in any related action, specifically including, but not limited to, customer lists, responses to promotional or other participatory marketing campaigns, correspondence, phone logs, and the like.

4. Every document indicating or tending to indicate that any named class representative in any related action purchased or otherwise obtained American Spirits.

5. All manufacturing specifications and each modification thereto for all American Spirits. If specifications (other than the container) differed between soft pack and box, please provide separate specifications for both identifiable as such.

6. If not encompassed within the manufacturing specifications produced in response to the preceding request, any other product specification or profile or other document that identifies the ingredients, additives, and processing aids for all American Spirits, including, but not limited to: the types of paper used for tobacco column and filter, porosity of paper, tobacco blend formulation (including reconstituted and expanded tobacco, and alternate fillers), filter configuration, rod length, filter length, circumference of rod, filtration efficiency, filter ventilation, pressure drop, burn additives, burn rate, tar yield, nicotine yield, smoke yield,

percentage of nicotine in the column/rod, casing materials, top dressings/flavors, weight of tobacco, weight of filter, nicotine transfer ratio, pH levels of tobacco or smoke, ammonia compounds, and every other additive and processing aid of any description.

7. Any and all documents necessary to interpret the documents produced in response to the two preceding requests, including, for example, internal indexes or glossaries revealing the significance of manufacturing or ingredient codes.

8. All documents constituting or reflecting analytical testing of American Spirits by RJRT or performed at RJRT's request or on its behalf by anyone outside RJRT, specifically including any testing performed by Reynolds American Inc., Santa Fe Natural Tobacco Company or any other Reynolds entity.

9. Every document not produced in response to any preceding request which discusses, refers to, or otherwise reflects the presence or absence of any ingredient or additive in any American Spirits cigarette.

10. A <u>color</u> reproduction of every print, email, or online advertisement and marketing/promotional piece for American Spirits from their inception to date.

11. A <u>color</u> reproduction of a representative sample of each email and direct-mail advertisement and marketing/promotional campaign for American Spirits from their inception to date.

12. A <u>color</u> reproduction of every outdoor advertisement and marketing/promotional piece, including transit advertisements, for American Spirits from their inception to date.

13. A <u>color</u> reproduction of every point-of-sale/point-of-purchase advertisement and marketing/promotional piece for American Spirits from their inception to date.

14. A <u>color</u> reproduction of every other advertisement for American Spirits shared via electronic transmission, including all advertisements in all social media platforms from inception to date.

15. A <u>color</u> reproduction of every writing (including brochures, pamphlets, leaflets, flyers, and the like) bearing any American Spirits brand name or logo, which writing was distributed free of charge at any time.

16. A sample or <u>color</u> reproduction/depiction of every American Spirits specialty item sold or given to any member of the public from inception to date.

17. A <u>color</u> reproduction of a representative sample of every packaging for every line or line extension of American Spirits.

18. Every document identifying or otherwise reflecting any print publications (newspapers, magazines, etc) in which American Spirits advertising appeared at any time.

19. All scripts for consumer call centers or otherwise used for interaction with American Spirits consumers.

20. All responses to consumer letters, emails, messages, or other communications which responses directly or indirectly refer to the design and manufacture of American Spirits, including chemicals, ingredients, or additives contained or not contained in American Spirits.

21. All responses to consumer letters, emails, messages, or other communications which responses directly or indirectly refer to the content of American Spirits advertisements or other marketing materials.

22. Every document containing or reflecting internal company communications regarding the proposed or actual content of American Spirits advertising or other marketing

materials, specifically including all marketing plans and any documents discussing or referring to their potential or intended impact upon consumer perceptions of American Spirits.

23. Every document containing or reflecting communications between you and someone outside RJRT regarding the proposed or draft or actual content of American Spirits advertising or other marketing materials and any documents discussing or referring to their potential or intended impact upon consumer perceptions of American Spirits.

24. Every document containing or reflecting internal company communications regarding proposed or actual packaging or labeling for American Spirits, specifically including any documents discussing or referring to its potential or intended impact upon consumer perceptions of American Spirits.

25. Every document containing or reflecting communications between you and someone outside RJRT regarding proposed or actual packaging or labeling for American Spirits, specifically including any documents discussing or referring to its potential or intended impact upon consumer perceptions of American Spirits.

26. Every document not produced in response to a preceding response, which document discusses, refers to, or otherwise reflects marketing strategy for American Spirits.

27. Every document that constitutes or reflects a communication by you to any member of the public which refers in any way to the nicotine, tar or the presence or absence of any additive, or additives generally content of American Spirits.

28. Every document that constitutes or reflects a communication by you to any member of the public which refers in any way to the health effects of smoking generally or smoking American Spirits, specifically.

29. Every marketing agreement, marketing proposal, or other contract entered between you and someone outside or not affiliated with RJRT with respect to the advertising or marketing of American Spirits.

30. Every document that discusses, refers to, or otherwise reflects the ideal, potential, desired, or actual demographic(s) for American Spirits consumers.

31. Every document that discusses, refers to, or otherwise reflects the rationale(s) for pricing American Spirits at their given price point at any time.

32. Every document that constitutes, discusses, refers to, or otherwise reflects the existence of any consumer survey performed by you or on your behalf.

33. Every document that constitutes, discusses, refers to, or otherwise reflects the existence of any focus group regarding American Spirits potential or actual marketing claims and packaging and labelling.

34. Every document that constitutes, discusses, refers to, or otherwise reflects the existence of any focus group regarding American Spirits potential or actual advertising slogans or brand name.

35. All responses by you to the Federal Trade Commission in connection with its annual reports on cigarette advertising and sales.

36. All documents reflecting the cost to produce American Spirits, including cost of materials and production, over the past six years.

37. All communications between SFNTC and RJRT, or any other Reynolds entity, discussing or referring in any way to the advertising or marketing of American Spirits.

38. All communications between SFNTC and RJRT, or any other Reynolds entity, discussing or referring in any way to the design or manufacture of American Spirits.

39. All communications between SFNTC and RJRT, or any other Reynolds entity, discussing or referring in any way to the testing of American Spirits.

40. All customer lists and other documents that identify consumers of American Spirits, over the past six years.

41. Organizational charts reflecting the composition of RJRT (including the composition of SFNTC), including its marketing department, from its inception to the present.

42. All current and past document retention/destruction policies at RJRT.

43. All documents reflecting the allocation between RJRT and SFNTC of responsibilities for American Spirits, including cigarette design, manufacture, advertising, marketing, and sales upon RJRT's acquisition of SFNTC.

44. All documents reflecting the transfer of documents, if any, from SFNTC to RJRT, or vice versa, upon RJRT's acquisition of SFNTC.

45. All documents that discuss or refer in any way to the loss or destruction of any documents relating in any way to American Spirits.

46. All documents relating to communications between you and any governmental agency, including but not limited to any State or Territorial Attorney General's office, any State or Territorial Department of Health, the Federal Trade Commission, or the U.S. Food and Drug Administration, relating to the design, advertising or marketing of the products.

47. All documents relating to communications between you and any consumer relating to the design, advertising or marketing of the products.

48. All documents relating to the prices charged by your competitors for cigarettes.

49. All documents relating to any advertising or marketing done by your competitors for cigarettes.

9

50. All documents relating to any study or analysis performed by you, on your behalf, or by third parties relating to the advertising or marketing of the products.

51. All documents, including but not limited to communications, studies, or analyses, relating to any price increase, price premium, or amount of money consumers are willing to pay for the products.

52. Documents sufficient to identify each and every distributor, retailer, or other entity to whom you sold the products during the past six years, including the time period(s) during which you did so.

53. Documents sufficient to identify, with respect to each brand/flavor of the products, during the past six years: (i) monthly unit sales; (ii) average wholesale price per unit; (iii) monthly gross sales; (iv) monthly net sales; (v) average retail price per unit; and (vi) monthly profits.

54. All documents relating to communications about, regarding or concerning the American Spirits customer loyalty program, including but not limited to lists or databases of known customers, etc,. and all communications between you and SFNTC, including (as may apply depending upon the time frame of a given request), parent company (specifically including Reynolds American Inc.("RAI")) or between you and any third party relating to same.

55. All documents relating to any form of communication by or with any supplier or other third party who provides, sells or in any way furnishes you or the co-defendant with anything used in the preparation, manufacture or sale of American Spirits, including, but not limited to, all ingredients, tobacco, filters, chemicals, menthol, etc.

56. All documents relating to, pertaining to, produced in discovery, or otherwise concerning any communications regarding *Juanell Davis and Wilson Eddie Davis v. Santa Fe*

*Natural Tobacco Company, Inc. and RJ Reynolds Tobacco Company*, 99 –CV-00959 PJK-LCS (D.N.M. 1999).

57. Identify and produce all documents concerning or relating to any advertising, marketing, or promotional materials which were or are drafted, created, edited, or disseminated in the District of New Mexico and identify each employee, subsidiary, parent company, affiliate, or otherwise related corporate entity of Defendant RJRT which has or had any role or participation in said advertising and marketing.

58. Identify and produce any documents concerning or relating to each and every subsidiary, parent company, affiliate, or otherwise related corporate entity of Defendant RJRT whose products, goods or services are, directly or indirectly, provided to, marketed or sold in the District of New Mexico.

59. Identify and produce all documents related to or concerning communications by and between each and every employee, subsidiary, parent company, affiliate, or otherwise related corporate entity in New Mexico and outside of New Mexico.

60. Identify each document or other tangible thing that was once in your possession as of the date of the first filed action in this consolidated litigation which is/are no longer in your possession, custody, or control or cannot otherwise be produced regardless of the printed date. Identify the date said document or tangible thing went out of your possession, custody, or control and its current location.

61. Identify all communications concerning any alleged "litigation hold" and/or "preservation order" you possess or possessed instructing persons to preserve documents or tangible things concerning the allegations in the first filed action in this consolidated litigation (upon receiving service in that action). Identify the exact date the alleged litigation hold was

11

issued, identify the persons to whom you allege it was furnished, and produce all documents related thereto.

| | |
|---|---|
| Dated: October 29, 2018 | */s/Melissa S. Weiner* |

                                        Melissa S. Weiner
                                        **Pearson, Simon & Warshaw, LLP**
                                        800 LaSalle Avenue, Suite 2150
                                        Minneapolis, MN 55402
                                        Telephone: (612) 389-0600
                                        Facsimile: (612) 389-0610
                                        mweiner@pswlaw.com

                                        Scott P. Schlesinger
                                        **Schlesinger Law Offices, P.A.**
                                        1212 SE 3rd Avenue
                                        Fort Lauderdale, FL 33316
                                        Telephone: (954) 467-8800
                                        scott@schlesingerlaw.com

                                        *Counsel for Plaintiffs*