# EXHIBIT A

Law Offices
**Pearson, Simon & Warshaw, LLP**
800 LASALLE AVENUE, SUITE 2150
MINNEAPOLIS, MINNESOTA 55402
(612) 389-0600
FAX (612) 389-0610
WWW.PSWLAW.COM

WRITER'S DIRECT CONTACT
(612) 389-0601
MWEINER@PSWLAW.COM

September 21, 2018

**VIA EMAIL**

David M. Monde
Peter J. Biersteker
JONES DAY
1420 Peachtree Street, N.E.
Atlanta, GA 30309
E-Mail: dmmonde@jonesday.com
pbiersteker@jonesday.com

Re:  Shannon White v. Santa Fe Natural Tobacco Company, Inc.
     Case No.:              1:16-md-02695-JB-LF
     Our File No.:           5476-00001

Dear Counsel:

This correspondence serves as a meet and confer regarding Defendants' failure to produce all relevant documents in response to Plaintiffs' discovery requests. Following Defendants' admission of the failure to produce relevant materials, Plaintiffs noticed the deposition of the witness most knowledgeable on Defendants' document collection and production procedures and use of technology assisted review ("TAR"). As a preliminary matter, while Defendants offered Howell Burkhalter to testify, it is clear from the testimony that Mike Leonard was the head of the discovery group supervising the discovery production. Why Mr. Leonard was not offered to testify is unknown. The following is clear from Mr. Burkhalter's testimony:

1) Defendants used TAR for three sets of materials: trade marketing files; emails; attachments to emails that were not readily searchable by platform and OCR'd;
2) Defendants admit they failed to meet and confer with Plaintiffs regarding the use of TAR for electronically stored information pursuant to the ESI protocol;
3) Defendants admit there was a significant underproduction of documents due to the use of TAR;
4) The "re-review" of the underproduced documents was performed by 300 lawyers at a cost of $2.5 million;
5) Defendants cannot state with certainty that all email threads have been produced together with their associated attachments;

LOS ANGELES        SAN FRANCISCO        MINNEAPOLIS

Law Offices
**Pearson, Simon & Warshaw, LLP**

David M. Monde
Peter J. Biersteker
September 21, 2018
Page 2

6) Defendants did not conduct a review of emails for R.J. Reynolds.

Plaintiffs will address each point below.

*Use of TAR and Resulting Prejudice to Plaintiffs*

Plaintiffs need not spend any time on the issue of *whether* Defendants failure to produce all relevant materials—Defendants have admitted as much.

> When we initially discovered that we had underproduced the -- from those three subsets, the initial indications and then our confirmation that that had, in fact, happened was related to the e-mail set. Out of an abundance of caution because of the – the underproduction that we identified with the e-mail set, we went back and looked at the other two instances where we had used the -- the TAR utilities for production purposes and determined that those -- we'd also underproduced from those two subsets.

(Buckhalter; pp. 30:18-25; 31:1-3.) What is also clear is that the cost and time for Defendants to re-review the underproduced documents was significant. (*See* Buckhalter, p. 46:17-24.) The re-review required the retention of outside discovery counsel from Lumen Legal and from a company called DiscoverReady, the hiring of more than 300 additional personnel to complete the review over "about three months at an expense of about two and a half million dollars." (*Id.* at p. 74:16-17.)

The result of the underproduction is significant. Defendants have now produced over 300,000 documents over five months. Furthermore, Plaintiffs are expected to trust that Defendants' re-review of the documents was without error. For the following reasons, Plaintiffs still have grave concern that the documents produced are still not inclusive of all relevant information[1].

Plaintiffs learned from the deposition of Mr. Burkhalter that no workstations, mobile devices or other repositories under various custodians' control or possession had been searched

---

[1] Additionally, Defendants have failed to respond to the discovery served upon them on July 27, 2018. Defendants never sought a meet and confer nor requested an extension. Plaintiffs expect a prompt response to the discovery, including production of all relevant documents, upon receipt of this letter.

Law Offices
**Pearson, Simon & Warshaw, LLP**

David M. Monde
Peter J. Biersteker
September 21, 2018
Page 3

in connection with Defendants' initial ESI identification, collection and search (Tr. pp. 36:25-37:6) and instead limited such activities only to custodians' "Home" (presumably network shared) drives. (Tr. p. 37:7-37:16). Nor is it clear whether Defendants conducted a meaningful inquiry (if any) into whether discoverable information was stored in any workstation, mobile phone, tablet, or laptop device during the relevant time period. (Tr. pp. 42:10-43:6). Moreover, it is clear that Defendants made no meaningful inquiry into the existence of relevant information on custodians' mobile devices, remote or cloud storage, or email hosted by other third-party email systems. For example, Defendants could not explain whether Ms. Lozano's phone was searched. (Tr. pp. 34:19-37:6). Indeed, Defendants' response to questions related to the search of outside email systems underscores the lack of due diligence undertaken to comply with the most basic of Defendants' discovery obligations. (Tr. p. 38:6-38:18).

Defendants' responses to questions involving email threading were equally opaque. To date, Defendants still cannot state with any confidence that email threads (parents/children and attachments) are complete, in part because it may be that Defendants' ECA (presumably Early Case Assessment) "portion" failed to collect or identify any email inconsistencies. (Tr. pp. 26:4-26:11; 80:9-82:11). Of additional and significant concern to Plaintiffs was Defendants' representation that no searches were made for text or other instant messaging communications. (Tr. p. 38:2-38:5). As a result, Plaintiffs have been saddled with emails and documents whose chronological position in a time spectrum is unknown and logically inconsistent without the universe of corresponding antecedent and subsequent emails and attachments.

Accordingly, it is no surprise that Plaintiffs have been severely prejudiced by Defendants' underproduction of documents as relevant information has been withheld at a critical stage in the litigation as Plaintiffs prepare for depositions and expert discovery. A further extension of the schedule to accommodate Defendants' significant error would cause irreparable harm to Plaintiffs' case. Accordingly, Plaintiffs must undertake a thorough and expedited review of the late-produced information. First, Plaintiffs need to ensure that the re-review was conducted thoroughly and captured all relevant information. Second, Plaintiffs will need to review the large volume of documents that it took Defendants three months, 300 personnel and $2.5 million to complete. To do so, Plaintiffs seek the following from Defendants:

1) Reimbursement for forensic analytics to determine whether the re-review was soundly conducted and contains all relevant, discoverable information. The cost will not exceed $4,000.00;
2) Relativity analytics to assist Plaintiffs in expeditiously reviewing the data received since Defendants realized the error at the cost of $13,350.00;

Law Offices
**Pearson, Simon & Warshaw, LLP**

David M. Monde
Peter J. Biersteker
September 21, 2018
Page 4

3) Cost sanction of $31,614.00 to account for the additional hosting cost that will now be incurred by Plaintiffs to maintain the database of documents for an additional three months due to the underproduction.

*Defendants' Failure to Respond to Discovery on Behalf of R.J. Reynolds Tobacco Company*

Plaintiffs learned for the first time, on August 20, 2018, that Defendant R.J. Reynolds Tobacco Company ("RJRT") failed to comply with its obligation under the Federal to produce responsive documents. Specifically, Mr. Buckhalter testified that RJRT did not search 1) the universe of RJRT's email databases and 2) the universe of RJRT "H" drives of individual RJRT employees. It is unclear what additional databases RJRT failed to search as it appears the only responsive documents produced were those embedded within the SFNTC system and a small subset of "H" drives for RJRT employees.

Under the Federal Rules of Civil Procedure and relevant case law, RAI was required to search and produce all responsive documents of its subsidiary RJRT, especially since RJRT was included by name in the document requests. (*See* Ex. 1.)  Furthermore, RAI specifically indicated in Reynolds American Inc.'s Responses and Objections to Plaintiffs' First Request for Production of Documents that while RJRT "needs some additional time to identify those documents in its files that are potentially responsive to these Requests, Reynolds will produce responsive materials, whether in response to **these Requests** or duplicative requests directed to Reynolds." (*Id.*)

The case law is clear that RAI cannot ignore its responsibility to produce relevant documents for RJRT, and RJRT failed to meet and confer on this issue. First, RAI specifically stated that it would be responding to the discovery requests on behalf of RJRT, which is never did. Second, even if there was no agreement regarding the response, RAI had a duty to respond on behalf of RJRT as it is within the custody and control of RAI.

In *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655 (D. Kan. 1999), defendant objected to a document request "to the extent that it requests documents in the possession of entities that are not parties to this action," including a wholly-owned subsidiary. *Id.* at 660. The court agreed with plaintiffs that documents in the custody of a wholly-owned subsidiary are within the parent's custody, possession or control under the federal rules: "[P]laintiffs assert that '[i]t is well established that a parent must produce all the documents of its wholly-owned subsidiary.' The court agrees with this principle…. [T]he court would consider documents within the possession, custody, or control of a wholly-owned subsidiary to be within the control of the parent corporation." *Id.* at 663 (citations omitted).

Law Offices
**PEARSON, SIMON & WARSHAW, LLP**

David M. Monde
Peter J. Biersteker
September 21, 2018
Page 5

Other courts agree:

- "A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls." *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989).

- "Documents of a wholly owned subsidiary have been held to be subject to Rule 34 document requests served upon a corporate parent which is a party to the litigation." *Am. Rock Salt Co. v. Norfolk S. Corp.*, 228 F.R.D. 426, 457 (W.D.N.Y. 2004) (citing *Novartis Pharm. Corp. v. Eon Labs Mfg.*, 206 F.R.D. 392, 395 (D. Del. 2002); *Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 257, 263 (D. Del. 1979)).

- "[A] litigating parent corporation has control over documents in the physical possession of its subsidiary corporation where the subsidiary is wholly owned or controlled by the parent." *American Angus Ass'n v. Sysco Corp.*, 158 F.R.D. 372, 375 (W.D.N.C. 1994) (quoting *Camden Iron & Metal v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991)).

- "Defendant suggests that the Court can only issue an order to compel if it finds that the party corporation has a legal right to demand the other corporation's documents, such as when a parent seeks documents from its wholly owned subsidiary, but not its sister corporations…. The Court finds that the definition of 'control' under Rule 34 has not been so limited as suggested by defendant." *Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 305 (M.D.N.C. 1998).

- "The defendant's arguments against production merit little discussion. The fact that we are dealing with separate corporate entities here is irrelevant…. Furthermore, the nonparty status of the wholly owned subsidiaries does not shield their documents from production." *Hubbard v. Rubbermaid, Inc.*, 78 F.R.D. 631, 637 (D. Md. 1978).

In a related matter, Judge Browning, in the context of Rule 45 found that "[n]either legal ownership nor physical possession of the documents, electronically stored information, or tangible things is required for a non-party to 'control' it under Rule 45" and further observed, "There is no hint in the history of these rules [34 and 45] that the meaning of the phrase differs depending upon which rule is in question." *Simon v. Taylor*, 2014 WL 6633917, at *34-35 (D.N.M. Nov. 18, 2014). Judge Browning further noted, "These principles have been applied in a wide variety of situations. Parent corporations have been compelled to produce documents in the hands of subsidiaries…."). *See also Begay v. United States*, CIV 15-0358 JB/SCY, 2018 WL 557853 at *11 (D.N.M. Jan. 23, 2018) ("Applying this [Rule 34] standard, courts have found that

Law Offices
**Pearson, Simon & Warshaw, LLP**

David M. Monde
Peter J. Biersteker
September 21, 2018
Page 6

corporations control documents in their subsidiaries' hands, clients control case files in their attorneys' hands, and patients control health records in their healthcare providers' hands.") (Browning, J.); *Landry v. Swire Oilfield Servs.*, 323 F.R.D. 360, 396 (D.N.M. 2018) (deeming within a party's "control" those documents in the possession of its third-party payroll vendor) (Browning, J.); *Id.* at 397 ("[C]ourts have broadly construed control as 'the legal right, authority, or practical ability to obtain the materials sought upon demand' ... [I]f a person, corporation, or a person's attorney or agent can pick up a telephone and secure the document, that individual or entity controls it.") (quoting *U.S. v. 2121 Celeste Road SQ, Albuquerque, N.M.*, 307 F.R.D. 572 (D.N.M. 2015)) (Browning, J.).

### *The Information Requested Is Proportional to the Needs of the Case*

Discovery's proper scope is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . .." Fed. R. Civ. P. 26(b)(1). Courts will look at the following factors when analyzing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). However, Fed. R. Civ. P. 26 is intended to be broadly construed. *See Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1520 (10th Cir. 1995); *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004) (Browning, J.) ("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information."). "The federal discovery rules reflect the courts' and Congress' recognition that 'mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.'" *Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 375 (D.N.M. 2018) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

No plausible argument can made that RJRT's documents and emails are not relevant or proportional This case relates entirely to the labeling and marketing of Natural American Spirit Tobacco as "natural," "organic," and "additive free." The documents produced to date prove that RJRT is very much involved in those activities.

Accordingly, due to Defendants' failure to produce all relevant information in a timely fashion and the resulting prejudice to Plaintiffs, Plaintiffs request Defendants agree to the following within seven (7) days:

1) Reimbursement for forensic analytics to determine whether the re-review was soundly conducted and contains all relevant, discoverable information. The cost will not exceed $4,000.00;

Law Offices
**Pearson, Simon & Warshaw, LLP**

David M. Monde
Peter J. Biersteker
September 21, 2018
Page 7

2) Relativity analytics to assist Plaintiffs in expeditiously reviewing the data received since Defendants realized the error at the cost of $13,350.00;
3) Cost sanction of $31,614.00 to account for the additional hosting cost that will now be incurred by Plaintiffs to maintain the database of documents for an additional three months due to the underproduction.

Short of agreement to the foregoing, Plaintiffs' will file a Motion to Compel the same.

Very truly yours,

PEARSON, SIMON & WARSHAW, LLP

*/s/Melissa S. Weiner*

MELISSA S. WEINER

msw/JKH

cc:   Scott Schlesinger
      Michael Reese
      Jeffrey Haberman
      Steven Teppler
      Daniel Warshaw