## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**In re:  Santa Fe Natural Tobacco Company Marketing, Sales Practices, and Products Liability Litigation**

No. 1:16-md-2695-JB-LF

*This Motion Relates To All Actions, And Is Brought By All Defendants.*

## DEFENDANTS' ANSWER TO THE SECOND CONSOLIDATED AMENDED COMPLAINT

Santa Fe Natural Tobacco Company ("Santa Fe"), R.J. Reynolds Tobacco Company ("RJR Tobacco"), and Reynolds American Inc. ("RAI"; collectively, "Defendants") hereby respond to Plaintiffs' Consolidated Complaint, filed January 12, 2017 (the "Consolidated Complaint").  All allegations are denied unless specifically admitted, and any factual averment admitted is admitted only as to the specific facts and not to any conclusions, characterizations, implications, or speculations which are in the averment or in the Complaint as a whole.

### "NATURE OF THE CASE"[*]

1.       Santa Fe admits that it markets Natural American Spirit ("NAS") brand cigarettes. RAI has been dismissed by the Court's Memorandum Opinion and Order dated December 21, 2017 (Doc. 146) (the "MTD Order"), for lack of personal jurisdiction from all but the North Carolina actions.  The remainder of Paragraph 1 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a further response is required, Defendants deny the remaining allegations in Paragraph 1.

---

[*] This Answer employs certain defined terms and structural headings that Plaintiffs used in the Consolidated Complaint.  This is done purely for convenience and clarity, and should not create an inference that Defendants have admitted any facts that might be inferred from Plaintiffs' word choice.

**2.**     Defendants deny the allegations in Paragraph 2.

**3.**     Defendants deny the allegations in Paragraph 3.

**4.**     Defendants admit that there is no safe cigarette.  Moreover, Santa Fe has discontinued use of the words "Natural" and "Additive-Free" in connection with NAS cigarettes except to retain the word "natural" in the brand name ("Natural American Spirit") and the company name ("Santa Fe Natural Tobacco Company").  Defendants deny the remaining allegations in Paragraph 4.

**5.**     Defendants deny the allegations in Paragraph 5.

**6.**     Defendants admit that certain NAS brand styles are truthfully and lawfully labeled as "organic" and that the Santa Fe brand logo uses an artistic drawing of a Native American and a Thunderbird.  The remainder of Paragraph 6 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations in Paragraph 6.

**7.**     Defendants admit that the back of certain NAS packages lawfully included the statement "RESPECT FOR THE EARTH™" next to an image of three leaves resembling the triple-arrow recycling symbol, and that certain packages included the statements "Pack Recycling," "Earth-Friendly Tobacco," "Supporting Farmers," "U.S. Grown Tobacco," or "Reducing Butt Litter."  The remainder of Paragraph 7 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants deny the remaining allegations in Paragraph 7.

**8.**     Defendants admit the allegations in Paragraph 8.

**9.**     Defendants deny the allegations in Paragraph 9.

**10.**     Defendants admit that menthol is volatile, that the tobacco used to manufacture NAS cigarettes does not include additives, and that some of the organic menthol placed in the filter of NAS menthol cigarettes can migrate to the tobacco after manufacture.  Defendants deny the remaining allegations in Paragraph 10.

**11.**     Paragraph 11 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants admit that Plaintiffs' Consolidated Complaint alleges claims under the consumer-protection statutes of California, Colorado, Florida, Illinois, Massachusetts, Michigan, North Carolina, New Jersey, New Mexico, New York, Ohio and Washington, and under the common law.  Defendants admit that Plaintiffs purport to bring suit on behalf of various classes of consumers who allegedly purchased NAS cigarettes and that the Consolidated Complaint includes requests for actual damages and refunds, statutory and punitive damages, injunctive relief, restitution, attorneys' fees, and the costs of this suit.  Defendants deny the remaining allegations in Paragraph 11, deny that certification of a class is proper and deny any liability to Plaintiffs.  Moreover, RAI has been dismissed by the MTD Order for lack of personal jurisdiction from all but the North Carolina actions.

## "PARTIES"

**12.**     Defendants admit that Plaintiff Jacques-Rene Hebert was named as a plaintiff in the complaint filed in *Hebert, et al. v. Santa Fe Natural Tobacco Co. Inc.*, No. 16-1390 (M.D.N.C.), and that his case was transferred to the United States District Court of New Mexico in connection with this Multidistrict Litigation.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12, and deny them on that basis.

13.     Defendants admit that Plaintiff Sara Benson was named as a plaintiff in the complaint filed in *Hebert v. Santa Fe Natural Tobacco Co. Inc.*, No. 16-1390 (M.D.N.C.), and that her case was transferred to the United States District Court of New Mexico in connection with this Multidistrict Litigation.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 13, and deny them on that basis.

14.     Defendants admit that Plaintiff Justin Sproule was named as a plaintiff in the complaint filed in *Sproule v. Santa Fe Natural Tobacco Co. Inc.*, No. 15-62064 (S.D. Fla.), and that his case was transferred to the United States District Court of New Mexico in connection with this Multidistrict Litigation.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14, and deny them on that basis.

15.     Defendants admit that Plaintiff Abigail Emmons was named as a plaintiff in the complaint filed in *Hebert v. Santa Fe Natural Tobacco Co. Inc.*, No. 16-1390 (M.D.N.C.), and that her case was transferred to the United States District Court of New Mexico in connection with this Multidistrict Litigation.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 15, and deny them on that basis.

16.     Defendants admit that Plaintiff Rudolph Miller was named as a plaintiff in the complaint filed in *Okstad v. Santa Fe Natural Tobacco Co. Inc.*, No. 16-84 (M.D. Fla.), and that his case was transferred to the United States District Court of New Mexico in connection with this Multidistrict Litigation.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16, and deny them on that basis.

17.     Defendants admit that Plaintiff Ceyhan Haksal was named as a plaintiff in the complaint filed in *Haksal v. Santa Fe Natural Tobacco Co. Inc.*, No. 15-1163 (D.N.M.).  Defendants lack

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17, and deny them on that basis.

18.     Defendants admit that Plaintiff Carol Murphy was named as a plaintiff in the complaint filed in *Hebert v. Santa Fe Natural Tobacco Co. Inc.*, No. 16-1390 (M.D.N.C.), and that her case was transferred to the United States District Court of New Mexico in connection with this Multidistrict Litigation.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18, and deny them on that basis.

19.     Defendants admit that Plaintiff Clive Pontusson was named as a plaintiff in the complaint filed in *Pontusson v. Santa Fe Natural Tobacco Co., Inc.*, No. 18-594 (M.D.N.C.), and that his case was transferred to the United States District Court of New Mexico in connection with this Multidistrict Litigation.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 19, and deny them on that basis.

20.     Defendants admit that Plaintiff Robert Litwin was named as a plaintiff in the complaint filed in *Okstad v. Santa Fe Natural Tobacco Co. Inc.*, No. 16-84 (M.D. Fla.), and that his case was transferred to the United States District Court of New Mexico in connection with this Multidistrict Litigation.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 20, and deny them on that basis.

21.     Defendants admit that Plaintiff Francisco Chavez was named as a plaintiff in the complaint filed in *Hebert v. Santa Fe Natural Tobacco Co. Inc.*, No. 16-1390 (M.D.N.C.), and that his case was transferred to the United States District Court of New Mexico in connection with this Multidistrict Litigation.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21, and deny them on that basis.

22.     Defendants admit that Plaintiff Joshua Horne was named as a plaintiff in the complaint filed in *Hebert v. Santa Fe Natural Tobacco Co. Inc.*, No. 16-1390 (M.D.N.C.), and that his case was transferred to the United States District Court of New Mexico in connection with this Multidistrict Litigation.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22, and deny them on that basis.

23.     Defendants admit that Plaintiff Albert Lopez was named as a plaintiff in the complaint filed in *Hebert v. Santa Fe Natural Tobacco Co. Inc.*, No. 16-1390 (M.D.N.C.), and that his case was transferred to the United States District Court of New Mexico in connection with this Multidistrict Litigation.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 23, and deny them on that basis.

24.     Defendants admit that Plaintiff Charlene Blevins was named as a plaintiff in the complaint filed in *Okstad v. Santa Fe Natural Tobacco Co. Inc.*, No. 16-84 (M.D. Fla.), and that her case was transferred to the United States District Court of New Mexico in connection with this Multidistrict Litigation.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 24, and deny them on that basis.

25.     Defendants admit the allegations in Paragraph 25.

26.     Defendants admit the allegations in Paragraph 26.  By its MTD Order, the Court held that there is no personal jurisdiction over RAI as to the claims asserted by Plaintiffs Sproule, Miller, Haksal, Litwin, and Blevins unless and until those claims are transferred to a North Carolina federal court.

27.     Defendants admit the allegations in Paragraph 27.

28.     Defendants deny the allegations in Paragraph 28 and further state that the Court, in its MTD Order, has rejected Plaintiffs' claim that any alleged involvement by RAI in the operations

of Santa Fe is sufficient to give rise to personal jurisdiction over RAI except as to claims brought in or transferred to a North Carolina federal court.

29.     Defendants admit that Paragraph 29 partially quotes an article from Convenience Store News.  Defendants deny that the quoted statements are fairly or accurately characterized and deny the remaining allegations in Paragraph 29.  Defendants further state that the Court, in its MTD Order, has rejected Plaintiffs' claim that any alleged involvement by RAI in the operations of Santa Fe is sufficient to give rise to personal jurisdiction over RAI.

30.     Defendants admit that Paragraph 30 partially quotes the Supplier Guide cited in note 2, which document speaks for itself.  Defendants deny that the quoted statements are fairly or accurately characterized.  Defendants admit that Santa Fe and RJR Tobacco, and RAI Services Company ("RAI Services") have entered into contracts by which those entities may perform various services for Santa Fe and state that those contracts speak for themselves.  Defendants deny the remaining allegations in Paragraph 30.

31.     Defendants admit that Santa Fe and RJR Tobacco and RAI Services have entered into contracts by which those entities may perform various services for Santa Fe and state that those contracts speak for themselves.  Defendants deny the remaining allegations in Paragraph 31.

32.     Defendants incorporate the answer to Paragraph 31 in response to the allegations in Paragraph 32.

33.     Defendants admit that Santa Fe was provided with a version of RJR Tobacco's Standard Operating Procedures related to consumer engagement, that Santa Fe and RJR Tobacco have entered into contracts by which RJR Tobacco may perform various services for Santa Fe, and state that those contracts speak for themselves.  Defendants deny the remaining allegations in Paragraph 33.

34.     Defendants admit that Santa Fe and RJR Tobacco have entered into contracts by which RJR Tobacco may perform various services for Santa Fe, including regarding its direct marketing database, and state that those contracts speak for themselves.  Defendants deny the remaining allegations in Paragraph 34.

35.     Defendants admit that because Santa Fe is an operating subsidiary of RAI, the financial performance of Santa Fe may impact the financial performance of RAI.  Defendants deny the remaining allegations in Paragraph 35, and further state that the Court, in its MTD Order, has rejected Plaintiffs' claim that their allegations of RAI's "control" over Santa Fe are sufficient to give rise to personal jurisdiction over RAI.

36.     Defendants admit that Santa Fe is an operating subsidiary of RAI and that, during certain years, RAI did report certain financial information regarding Santa Fe in RAI filings with the Securities and Exchange Commission.  Defendants deny the remaining allegations in Paragraph 36 and further state that the Court, in its MTD Order, has rejected Plaintiffs' claim that their allegations of RAI's "control" over Santa Fe are sufficient to give rise to personal jurisdiction over RAI.

37.     Defendants admit that Mr. Mitchell A. Neuhauser is a Vice President and Assistant General Counsel (of RAI Services).  Defendants further admit that Mr. Neuhauser corresponded with the U.S. Food and Drug Administration regarding the August 27, 2015 letter (the "Warning Letter") from FDA.  Defendants admit that employees of RAI Services, RJR Tobacco, and Santa Fe were involved in discussions with the FDA, and that a meeting with personnel from FDA occurred in mid-November 2015 concerning issues raised in the Warning Letter.  Defendants deny the remaining allegations in Paragraph 37.

## "JURISDICTION AND VENUE"

**38.** Paragraph 38 contains characterizations and conclusions (including legal conclusions), to which no response is required. To the extent that a response is required, Defendants admit that the Court has subject matter jurisdiction but deny the remaining allegations in Paragraph 38.

**39.** Defendants admit that this Court has personal jurisdiction over Santa Fe and RJR Tobacco. By its MTD Order, the Court held that there is no personal jurisdiction over RAI as to the claims asserted by Plaintiffs Sproule, Miller, Haksal, Litwin, and Blevins unless and until those claims are transferred to a North Carolina federal court. Defendants deny the remaining allegations in Paragraph 39.

**40.** Defendants admit that venue is proper in the District of New Mexico and that Santa Fe maintains an office in Santa Fe, New Mexico. Defendants deny the remaining allegations in Paragraph 40.

## "FACTUAL ALLEGATIONS"

**A.** **"Defendants Prominently Label Natural American Spirit Cigarettes with "Natural" and "Additive-Free" Representations."**

**41.** Defendants admit that Santa Fe sells various styles of NAS cigarettes and that the packaging for each style utilizes colors that are different from other styles, and some colors that are the same as other styles, and that during the relevant time period those packages have included the words "Natural" and "100% Additive-Free," among others (e.g., "100% Additive-Free Natural Tobacco" and "No additives in our tobacco does **NOT** mean a safer cigarette."). On January 23, 2017, Santa Fe and the FDA reached an agreement by which Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word

"Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017 (the "FDA Agreement"). Santa Fe is and has been in compliance with the FDA Agreement. Moreover, Defendants state that the FDA Agreement permits Santa Fe to use the statements "Tobacco Ingredients: Tobacco and Water" and "Tobacco Filler Ingredients: Tobacco and Water" on NAS labeling, advertising, and promotional materials. The FDA Agreement further provides that if such statements are used, FDA will not object to use of the following disclaimer: "Natural American Spirit cigarettes are not safer than other cigarettes."

Regarding the remaining allegations in Paragraph 41, which include images of NAS packages, Defendants deny that those images fully and accurately represent the packaging that Santa Fe used prior to December 9, 2017, aver that complete and accurate renderings of those packages are set forth as Exhibits 9 through 15 to Defendants' First Request for Judicial Notice in Support of Motion to Dismiss (Doc. 71), which the Court granted in relevant part in its MTD Order, and deny the remaining allegations in Paragraph 41.

**42.** Defendants deny the allegations in Paragraph 42. Moreover, to the extent that Paragraph 42 addresses the use of the words "Additive-Free" to describe the tobacco in NAS in print advertisements, the Court, by its MTD Order, dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising. Thus, to the extent that Paragraph 42 relies on either of those theories, no further

response is required because, based on the Court's ruling, Plaintiffs' claims based on either of these theories are barred.

**B.    "Defendants Reinforce the "Natural" and "Additive-Free" Label Claims with a Uniform and Pervasive Marketing Campaign."**

43.    Defendants deny the allegations in Paragraph 43.  Moreover, to the extent that Paragraph 43 addresses the use of the words "Additive-Free" in NAS print advertisements, the Court, by its MTD Order, dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the words "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 43 relies on either of those theories, no further response is required because, based on the Court's ruling, Plaintiffs' claims based on either of these theories are barred.

44.    Defendants admit that the five images in Paragraph 44 depict print advertisements for NAS cigarettes that may or may not have actually been used prior to the FDA Agreement, but Defendants deny that the images accurately represent the NAS advertisements published since at least December 9, 2017, deny that the fourth image is a full and accurate representation of the advertisement in question, and aver that a complete and accurate rendering of that advertisement is set forth in Exhibit 16 to Defendants' First Request for Judicial Notice in Support of Motion to Dismiss (Doc. 71), which the Court granted in relevant part in its MTD Order.  Under the FDA Agreement, Santa Fe removed by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or

promotional materials utilizing the words "Additive Free" or "Natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has been in compliance with the FDA Agreement.

Further, to the extent that Paragraph 44 addresses the use of the words "Additive-Free" to describe the tobacco in NAS cigarettes in print advertisements, the Court, by its MTD Order, dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the words "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 44 relies on either of those theories, no further response is required because, based on the Court's ruling, Plaintiffs' claims based on either of these theories are barred.  To the extent further response is required, Defendants deny the remaining allegations in Paragraph 44.

**45.**    Defendants admit that from time to time prior to December 9, 2017, Santa Fe advertised NAS cigarettes as manufactured with the words "Natural" and "Additive-Free" tobacco, among others (e.g., "100% Additive-Free Natural Tobacco" and "No additives in our tobacco does **NOT** mean a safer cigarette.").  Defendants admit that Santa Fe placed print advertisements in the listed magazines in 2015, that Paragraph 45 partially quotes the comments of a spokesperson for Santa Fe concerning its 2015 print advertising, and states that the document from which the quote was taken speaks for itself.  To the extent that Paragraph 45 addresses the use of the words "Additive-Free" in NAS print advertisements, the Court, by its MTD Order, dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the

tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 45 relies on either of those theories, no further response is required because, based on the Court's ruling, Plaintiffs' claims based on either of these theories are barred.  Defendants deny the remaining allegations in Paragraph 45.

46.    With respect to the allegations in Subparagraph 46(a), Defendants admit that NAS sales increased by in excess of 86% between 2009 and 2014, and that during this period overall industry sales volume declined by approximately 16%.  Defendants admit the allegations contained in Subparagraphs 46(b) and 46(c) and admit, further, that certain international rights to the NAS brand name and associated trademarks were sold for approximately $5 billion in January 2016.  The remainder of Paragraph 46 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a further response is required, Defendants deny the remaining allegations in Paragraph 46.

47.    Defendants admit that NAS cigarettes are marketed and advertised, and that the words "Natural" and "Additive-Free" tobacco appear on NAS packaging.  Moreover, to the extent that Paragraph 47 addresses the use of the words "Additive-Free" in NAS print advertisements, the Court, by its MTD Order, dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 47 relies on either of those theories, no further response is required because, based on the Court's ruling, Plaintiffs' claims based on either of these theories are barred. Defendants deny the remaining allegations in Paragraph 47.

C.      **"Defendants Mislead Reasonable Consumers into Believing that Natural American Spirit Cigarettes Are Less Harmful than Other Cigarettes."**

**48.**     Defendants deny the allegations in Paragraph 48.

**49.**     Defendants deny the allegations in Paragraph 49.

**50.**     Defendants deny the allegations in Paragraph 50, and state further that Plaintiffs' allegation that the use of "Additive-Free" in advertising to describe the tobacco used to manufacture NAS cigarettes causes consumers to believe that NAS cigarettes are "safer, healthier, and less harmful" has been dismissed as a matter of law by the Court's MTD Order because the allegation is implausible.

**51.**     Defendants admit that Paragraph 51 partially and incompletely quotes from the Tobacco Control article cited in note 3 and without conceding the accuracy of its contents that the article speaks for itself.  Defendants deny the remaining allegations in Paragraph 51.

**52.**     Defendants admit that Paragraph 52 partially and incompletely quotes from the Tobacco Control article cited in notes 3 and 4 and without conceding the accuracy of its contents that the article speaks for itself.  Defendants deny the remaining allegations in Paragraph 52.

**53.**     Defendants admit that Paragraph 53 partially and incompletely quotes from the *Tobacco Control* article cited in notes 5 through 8 and without conceding the accuracy of its contents that the article speaks for itself.  Defendants deny the remaining allegations in Paragraph 53.

**54.**     Defendants admit that Paragraph 54 partially and incompletely describes the article from the *Nicotine & Tobacco Research* cited in note 9, without conceding the accuracy of its contents, and Defendants state that the article speaks for itself.  Defendants deny the remaining allegations in Paragraph 54.

55.     Defendants admit that Paragraph 55 quotes partially and incompletely from the *Nicotine & Tobacco Research* article cited in notes 10 and 11 and without conceding the accuracy of its contents that the article speaks for itself.  Defendants deny the remaining allegations in Paragraph 55.

56.     Defendants admit that in the late 1990s RJR Tobacco sold Winston cigarettes that were manufactured with additive-free tobacco.  Defendants further admit that Paragraph 56 quotes partially and incompletely from the memoranda cited in notes 13 and 14.  Defendants deny the remaining allegations in Paragraph 56.

57.     Paragraph 57 contains characterizations and conclusions (including legal conclusions), to which no response is required, including characterizations of the *Nicotine & Tobacco Research* article cited in note 9.  To the extent a further response is required, Defendants deny the remaining allegations in Paragraph 57.

58.     Paragraph 58 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, to the extent that Paragraph 58 purports to quote partially from and describe the decisions in *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006), and *United States v. Philip Morris USA Inc.*, 556 F.3d 1095 (D.C. Cir. 2009), those decisions speak for themselves.  To the extent that a further response to the allegations in Paragraph 58 is required, Defendants deny those allegations.

59.     Defendants admit that the FDA staff sent the Warning Letter to Santa Fe. Defendants further admit that Paragraph 59 partially and incompletely quotes from the Warning Letter and without conceding the accuracy of its contents that the Warning Letter speaks for itself. Defendants further admit that until December 9, 2017, Santa Fe included the words "Natural" and "100% Additive-Free" in NAS advertising and packaging to describe the tobacco in NAS cigarettes.

Under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017 the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9. Santa Fe is and has been in compliance with the FDA Agreement. Defendants deny the remaining allegations in Paragraph 59.

**D.    "Natural American Spirit Cigarettes Are Not Safer or Less Harmful than Other Cigarettes."**

60.    Defendants admit that NAS cigarettes are not safer or healthier than other cigarettes and Santa Fe has so advised consumers, including through the disclosures on packages and in advertisements for NAS cigarettes for many years. The remainder of Paragraph 60 is argument to which no response is required. To the extent further response is required, Defendants deny the remaining allegations in Paragraph 60.

61.    To the extent that Paragraph 61 alleges that Defendants claim NAS cigarettes are safer or healthier relative to other cigarettes, Defendants deny that allegation. Defendants admit that NAS cigarettes are not safer or healthier than other cigarettes and Santa Fe has so advised consumers, including through the disclosures on packages and in advertisements for NAS cigarettes for many years. The remainder of Paragraph 61 contains characterizations and conclusions (including legal conclusions), to which no response is required and characterizes the FDA Warning Letter, which speaks for itself. To the extent further response is required, Defendants deny the remaining allegations in Paragraph 61.

**62.**     Defendants admit that polycyclic aromatic hydrocarbons do not occur naturally in the tobacco plant, but from its combustion.  Defendants further admit that Paragraph 62 contains characterizations and conclusions (including legal conclusions) regarding the research article by An T. Vu cited in note 17, and without conceding the accuracy of its contents, Defendants state that the article speaks for itself.  Defendants deny the remaining allegations in Paragraph 62.

**63.**     Defendants admit that Paragraph 63 partially quotes and characterizes an article from the *Journal of Analytical Toxicology* cited in note 18, and without conceding the accuracy of its contents that the article speaks for itself.  Defendants further admit that cadmium is a carcinogen and that the potential adverse health effects of cadmium and mercury have been studied.  Defendants deny the remaining allegations in Paragraph 63.

**64.**     Defendants admit that the risk of smoking-related disease has been reported to be impacted by the extent of cigarette consumption.  Defendants further admit that the tobacco used in NAS cigarettes contains nicotine, which is addictive.  Defendants deny the remaining allegations in Paragraph 64.

**65.**     Defendants admit that nicotine occurs naturally in tobacco plants as a weak organic base or as neutral salts.  Defendants also admit that, when heated, nicotine is volatile, and that cigarette smoke contains nicotine in its volatile state.  Further, Defendants admit that nicotine is soluble, that the pH of the solution affects the ionization of the nicotine compound, and that un-ionized/un-protonated nicotine can be absorbed by the body and transmitted to the brain.  The remainder of Paragraph 65 contains characterizations and conclusions (including legal conclusions) to which no response is required.  To the extent that a further response is required, Defendants deny the remaining allegations in Paragraph 65.

**66.**     Defendants deny the allegations in Paragraph 66.

67.     Defendants admit that Paragraph 67 partially refers to and characterizes an article from *Chemical Research in Toxicology* cited in note 20, and without conceding the accuracy of its contents that the article speaks for itself.  Defendants deny the remaining allegations in Paragraph 67.

E.     **"Natural American Spirit Menthol Cigarettes Contain Additives."**

68.     Defendants admit that organic menthol is placed in the filters of menthol styles of NAS cigarettes.  Defendants deny the remaining allegations in Paragraph 68.

69.     Defendants admit that organic menthol is placed in the filters of menthol styles of NAS cigarettes.  Defendants admit that menthol is volatile and that after manufacture, some of the organic menthol placed in the filter over time migrates to the additive-free tobacco used to manufacture those cigarettes.  Defendants further admit that Paragraph 69 partially quotes and characterizes the Draft Paper cited in note 21, and without conceding the accuracy of its contents that the draft article speaks for itself.  Defendants deny the remaining allegations in Paragraph 69.

70.     Defendants admit that Paragraph 70 partially quotes and characterizes a 1978 document authored by an employee of a different tobacco company, Philip Morris, that is cited in note 22, and without conceding the accuracy of its contents that the document speaks for itself. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 70, and deny them on that basis.

F.     **"Defendants Use of the Term 'Natural' Is Deceptive."**

71.     To the extent that Paragraph 71 asserts the claim that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production, the Court dismissed Plaintiffs' claim by its MTD Order and no further response by

Defendants is required.  Moreover, under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has been in compliance with the FDA Agreement.  To the extent that a further response is required, Defendants deny the remaining allegations in Paragraph 71.

72.     To the extent that Paragraph 72 asserts the claim that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production, the Court dismissed Plaintiffs' claim by its MTD Order and no further response by Defendants is required.  Moreover, under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has been in compliance with the FDA Agreement.  To the extent that a further response is required, Defendants deny the remaining allegations in Paragraph 72.

73.     Defendants admit that NAS cigarettes contain blends of flue-cured and other tobaccos, depending on the style.  Defendants admit that Paragraph 73 contains characterizations

and conclusions (including legal conclusions), regarding the article by Robert Proctor cited in note 23, and without conceding the accuracy of its contents that the article speaks for itself.  To the extent that Paragraph 73 asserts the claim that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production, the Court dismissed Plaintiffs' claim by its MTD Order and no further response by Defendants is required.  Moreover, under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has been in compliance with the FDA Agreement.  To the extent that a further response is required, Defendants deny the remaining allegations in Paragraph 73.

74.      Defendants admit that NAS cigarettes contain blends of flue-cured and other tobaccos, depending on the style.  To the extent that Paragraph 74 asserts the claim that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production, the Court dismissed Plaintiffs' claim by its MTD Order and no further response by Defendants is required.  Moreover, under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials

utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017. Santa Fe is and has been in compliance with the FDA Agreement. To the extent that a further response is required, Defendants deny the remaining allegations in Paragraph 74.

75. To the extent that Paragraph 75 asserts the claim that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production, the Court dismissed Plaintiffs' claim by its MTD Order and no further response by Defendants is required. Moreover, under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017. Santa Fe is and has been in compliance with the FDA Agreement. To the extent that a further response is required, Defendants deny the remaining allegations in Paragraph 75.

76. Defendants admit that adult tobacco consumers choose NAS cigarettes for a number of reasons. Defendants deny for many reasons, including the disclosures on packages and in advertisements for NAS cigarettes for many years, that "[r]easonable consumers" would believe that NAS cigarettes are safer or healthier because they are manufactured with natural, additive-free tobacco.

To the extent that Paragraph 76 asserts the claim that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during

production, the Court, by its MTD Order, dismissed Plaintiffs' claims to the extent that they are

premised on the theory that consumers are misled by the word "Natural" into believing that NAS

cigarettes are not subjected to engineering processes during production or that consumers are misled

by the use of the words "Additive-Free" to describe the tobacco in NAS cigarettes in print

advertising.  Thus, to the extent that Paragraph 76 relies on either of those theories, no further

response is required because, based on the Court's ruling, Plaintiffs' claims based on either of these

theories are barred.  Moreover, under the FDA Agreement, Santa Fe agreed to remove by

December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels,

labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word

"Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS

products or product labels, labeling, advertising, or promotional materials utilizing the words

"additive free" or "natural" that were introduced into the market (e.g., through distribution to

wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has

been in compliance with the FDA Agreement.  To the extent that a further response is required,

Defendants deny the remaining allegations in Paragraph 76.

   **77.**  Paragraph 77 contains characterizations and conclusions (including legal conclusions)

to which no response is required.  To the extent that Paragraph 77 asserts the claim that consumers

are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering

processes during production, the Court, by its MTD Order, dismissed Plaintiffs' claims to the extent

that they are premised on the theory that consumers are misled by the word "Natural" into believing

that NAS cigarettes are not subjected to engineering processes during production or that consumers

are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print

advertising.  Thus, to the extent that Paragraph 77 relies on either of those theories, no further

response is required because, based on the Court's ruling, Plaintiffs' claims based on either of these theories are barred.  Moreover, under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has been in compliance with the FDA Agreement.  To the extent that a further response is required, Defendants deny the remaining allegations in Paragraph 77.

78.     The allegations in Paragraph 78 are so broad, generalized, and conclusory that no response is required.  To the extent further response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 78, and deny them on that basis.

79.     To the extent that Paragraph 79 asserts the claim that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production, the Court, by its MTD Order, dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the words "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 79 relies on either of those theories, no further response is required because, based on the Court's ruling, Plaintiffs' claims based on either of these theories are barred.  Moreover, under the FDA Agreement, Santa Fe agreed to remove by

December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has been in compliance with the FDA Agreement.  To the extent that a further response is required, Defendants deny the remaining allegations in Paragraph 79.

      **80.**      To the extent that Paragraph 80 asserts the claim that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production, the Court, by its MTD Order, dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the words "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 80 relies on either of those theories, no further response is required because, based on the Court's ruling, Plaintiffs' claims based on either of these theories are barred.  Moreover, under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has

been in compliance with the FDA Agreement. To the extent that a further response is required, Defendants deny the remaining allegations in Paragraph 80.

81. Paragraph 81 contains characterizations and conclusions (including legal conclusions), to which no response is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 81.

82. Paragraph 82 contains characterizations and conclusions (including legal conclusions), to which no response is required. Moreover, under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017. Santa Fe is and has been in compliance with the FDA Agreement. To the extent that a response is required, Defendants deny the allegations in Paragraph 82.

83. Paragraph 83 contains characterizations and conclusions (including legal conclusions), to which no response is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 83, including subparagraphs (a) through (f).

84. Paragraph 84 contains characterizations and conclusions (including legal conclusions), to which no response is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 84.

**85.**     Paragraph 85 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 85.

**86.**     Paragraph 86 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 86.

**87.**     Paragraph 87 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 87.

**88.**     Paragraph 88 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants admit that Plaintiffs' proposed class is defined to include putative class members who paid money for NAS cigarettes.  Defendants deny that this action may be maintained properly as a class action, and deny the remaining allegations in Paragraph 88.

**G.**     **"Defendants Are Able To And Do Charge A Price Premium For Natural American Spirit Cigarettes Because Consumers Believe That They Are Less Harmful Than Other Cigarettes."**

**89.**     Defendants admit that NAS is a super-premium brand.  Defendants deny the remaining allegations in Paragraph 89.

**90.**     Defendants admit that Paragraph 90 partially quotes the referenced SEC Form 10-Q cited in note 24, which speaks for itself.  The remainder of Paragraph 90 contains argument and conclusory allegations to which no response is required.  To the extent that further response is required, Defendants deny the remaining allegations in Paragraph 90.

**91.**     Paragraph 91 consists of arguments and conclusory allegations to which no response is required.  To the extent further response is required, Defendants incorporate their response to Paragraph 46 and otherwise deny the allegations in Paragraph 91.

**H.     "Defendants' Deceptive Claims Are Intentional and Willful."**

**92.**     Defendants deny the allegations in Paragraph 92. Moreover, under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has been in compliance with the FDA Agreement.

**93.**     Defendants admit that NAS cigarettes are not safer or healthier than other cigarettes and Santa Fe has so advised consumers, including through the disclosures on packages and in advertisements for NAS cigarettes for many years.  The remainder of Paragraph 93 is argument to which no response is required.  To the extent further response is required, Defendants deny the remaining allegations in Paragraph 93.

**94.**     Paragraph 94 consists of arguments and conclusory allegations to which no response is required.  To the extent further response is required, Defendants deny the allegations in Paragraph 94.

**95.**     Paragraph 95 contains arguments and conclusory allegations to which no response is required.  To the extent further response is required, Defendants deny the allegations in Paragraph

95.  Under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has been in compliance with the FDA Agreement.

96.  Defendants admit that Plaintiffs, on behalf of themselves and the putative Classes, seek punitive damages.  Defendants deny the remaining allegations in Paragraph 96.

## "TOLLING"

### I.  "Plaintiffs Are Entitled to Equitable Tolling Under the Discovery Rule."

97.  Paragraph 97 contains arguments and conclusory allegations to which no response is required.  To the extent further response is required, Defendants deny the allegations in Paragraph 97.  Defendants further state that to the extent Plaintiffs' claims are not foreclosed by the Court's MTD Order, the disclosures on, e.g., the advertisements and packages of NAS cigarettes put the putative Class members on inquiry notice that the use of "Additive-Free" and "Natural" tobacco in NAS cigarettes did not make them safer.

98.  Paragraph 98 contains arguments and conclusory allegations to which no response is required.  To the extent further response is required, Defendants deny the allegations in Paragraph 98.

**99.**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 99 regarding the named Plaintiffs, and deny them on that basis. Defendants deny the remaining allegations in Paragraph 99.

**100.**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100 regarding the named Plaintiffs, and deny them on that basis. Defendants deny the remaining allegations in Paragraph 100.

**101.**     Paragraph 101 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 101.

**J.**     **"Plaintiffs Are Entitled to Equitable Tolling Because of Defendants' Fraudulent Concealment."**

**102.**     Paragraph 102 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 102.

**103.**     Defendants deny the allegations in Paragraph 103.

**K.**     **"Defendants Are Estopped From Relying on Any Statutes of Limitations Defense."**

**104.**     Paragraph 104 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 104.

**105.**     Defendants deny the allegations in Paragraph 105.

**106.**     Paragraph 106 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 106.

## "CLASS ACTION ALLEGATIONS"

**107.**      Defendants admit that Paragraph 107 purports to define the putative "California Class."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 107.

**108.**      Defendants admit that Paragraph 108 purports to define the putative "Colorado Class."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 108.

**109.**      Defendants admit that Paragraph 109 purports to define the putative "Florida Class."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 109.

**110.**      Defendants admit that Paragraph 110 purports to define the putative "Illinois Class." Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 110.

**111.**      Defendants admit that Paragraph 111 purports to define the putative "Massachusetts Class."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 111.

**112.**      Defendants admit that Paragraph 112 purports to define the putative "Michigan Class."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 112.

**113.**      Defendants admit that Paragraph 113 purports to define the putative "New Jersey Class."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 113.

**114.**     Defendants admit that Paragraph 114 purports to define the putative "New Mexico Class."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 114.

**115.**     Defendants admit that Paragraph 115 purports to define the putative "New York Class."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 115.

**116.**     Defendants admit that Paragraph 116 purports to define the putative "North Carolina Class."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 116.

**117.**     Defendants admit that Paragraph 117 purports to define the putative "Ohio Class." Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 117.

**118.**     Defendants admit that Paragraph 118 purports to define the putative "Washington Class."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 118.

**119.**     Defendants admit that Paragraph 119 purports to define the putative "California Menthol Subclass."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 119.

**120.**     Defendants admit that Paragraph 120 purports to define the putative "Colorado Menthol Subclass."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 120.

**121.**     Defendants admit that Paragraph 121 purports to define the putative "Florida Menthol Subclass."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 121.

**122.**     Defendants admit that Paragraph 122 purports to define the putative "Illinois Menthol Subclass."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 122.

**123.**     Defendants admit that Paragraph 123 purports to define the putative "New Jersey Menthol Subclass."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 123.

**124.**     Defendants admit that Paragraph 124 purports to define the putative "New Mexico Menthol Subclass."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 124.

**125.**     Defendants admit that Paragraph 125 purports to define the putative "New York Menthol Subclass."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 125.

**126.**     Defendants admit that Paragraph 126 purports to define the putative "North Carolina Menthol Subclass."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 126.

**127.**     Defendants admit that Paragraph 127 purports to define the putative "Nationwide Menthol Class."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 127.

128.     Defendants admit that Paragraph 128 purports to exclude certain individuals and entities from the various putative "Classes" and "Subclasses."  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 128.

129.     Defendants admit that the putative Classes, as defined, each include at least hundreds of individuals.  Defendants deny that the members of the putative classes are ascertainable, deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 129.

130.     Defendants admit that Paragraph 130 purports to identify common questions of law or fact.  Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 130, including subparagraphs (i) through (viii).

131.     Defendants admit that Paragraph 131 alleges that the named Plaintiffs' claims are typical of the claims of the various putative Classes.  Defendants deny that this action may be properly maintained as a class action.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 131, and deny them on that basis.

132.     Defendants admit that Plaintiffs have retained competent counsel.  Defendants deny that this action may be properly maintained as a class action.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 132, and deny them on that basis.

133.     Defendants deny that this action may be properly maintained as a class action and deny the remaining allegations in Paragraph 133.

134.     Defendants deny that this action may be properly maintained as a class action and deny the remaining the allegations in Paragraph 134, including subparagraphs (i) through (vi).

**135.**     Defendants deny that this action may be properly maintained as a class action, deny that injunctive or declaratory relief is appropriate, and deny the remaining allegations in Paragraph 135.

## "CAUSES OF ACTION"

### "CALIFORNIA COUNT I
(Violation Of The Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*
On Behalf Of The California Class And The California Menthol Subclass)"

**136.**     Defendants incorporate by reference each response set forth above.

**137.**     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 137 and, on that basis, deny them.

**138.**     Defendants admit the allegations in Paragraph 138 but deny liability under the cited statute.

**139.**     Defendants admit the allegations in Paragraph 139 but deny liability under the cited statute.

**140.**     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 140 and, on that basis, deny them.

**141.**     Paragraph 141 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants lack sufficient information to admit or deny the allegations in Paragraph 141 and, on that basis, deny them.

**142.**     Paragraph 142 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 142.

**143.** Paragraph 143 contains characterizations and conclusions (including legal conclusions), to which no response is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 143, including subparagraphs (a) through (c).

**144.** The Court, by its MTD Order, dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising. Thus, to the extent that Paragraph 144 relies on either of those theories, no response is required because, based on the Court's ruling, Plaintiffs' claims based on either of these theories are barred. To the extent that a response to the remaining allegations in Paragraph 144 is required, Defendants deny those allegations.

**145.** Paragraph 145 contains characterizations and conclusions (including legal conclusions), to which no response is required. Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising. Thus, to the extent that Paragraph 145 relies on either of those theories, no response is required. Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named California Plaintiff, the named California Menthol Plaintiff, or the members of either the putative California Class or putative California Menthol Subclass and, on that basis, deny the allegations relating to them. Defendants deny any remaining allegations in Paragraph 145, including that Santa Fe's conduct misled a reasonable consumer.

146. Paragraph 146 contains characterizations and conclusions (including legal conclusions), to which no response is required. To the extent that a response is required, Defendants deny the allegations in Paragraph 146.

147. Defendants admit that Plaintiffs seek the relief requested in Paragraph 147. Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 147.

148. Paragraph 148 contains characterizations and conclusions (including legal conclusions), to which no response is required. To the extent that a response is required, Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs are entitled to injunctive or declaratory relief, and deny the remaining allegations in Paragraph 148.

149. Defendants deny that they received written notice of California Plaintiff Hebert's or California Menthol Plaintiff Chavez's intention to pursue claims under the Consumers Legal Remedies Act at least thirty days prior to the filing of the Consolidated Complaint. Defendants deny the remaining allegations in Paragraph 149.

150. Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 150.

### "CALIFORNIA COUNT II
### (Violation Of False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* On Behalf Of The California Class And The California Menthol Subclass)"

151. Defendants incorporate by reference each response set forth above.

152. Defendants deny the allegations in Paragraph 152.

153.     Defendants admit that until December 9, 2017, Santa Fe included the words

"Natural" and "100% Additive-Free" in NAS advertising and packaging to describe the tobacco in

NAS cigarettes.  Under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the

words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising,

and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS

brand name and trademarks and that Santa Fe need not remove or recall NAS products or product

labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural"

that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers,

or consumers) prior to December 9, 2017.  Santa Fe is and has been in compliance with the FDA

Agreement.  Defendants deny the remaining allegations in Paragraph 153.

154.     Defendants deny the allegations in Paragraph 154.

155.     Defendants deny the allegations in Paragraph 155.

156.     Defendants deny the allegations in Paragraph 156.

157.     Paragraph 157 contains characterizations and conclusions (including legal

conclusions), to which no response is required.  To the extent that a response is required,

Defendants deny the allegations in Paragraph 157.

158.     Paragraph 158 contains characterizations and conclusions (including legal

conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed

Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the

word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during

production or that consumers are misled by the use of the word "Additive-Free" to describe the

tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 158 relies on

either of those theories, no response is required.   Defendants lack sufficient information to form a

belief as to the truth or falsity of the remaining allegations by the named California Plaintiff, the named California Menthol Plaintiff, or the members of either the putative California Class or putative California Menthol Subclass and, on that basis, deny the allegations relating to them. Defendants deny any remaining allegations in Paragraph 158, including that Santa Fe's conduct misled a reasonable consumer.

159.    Defendants admit that the California Plaintiff, the putative California Class, the California Menthol Plaintiff, and the California Menthol Subclass seek injunctive relief, restitution, and disgorgement of alleged ill-gotten gains under Cal. Bus. & Prof. Code Section 17535. Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 159.

160.    Paragraph 160 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 160.  Defendants further state that under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has been in compliance with the FDA Agreement.

**"CALIFORNIA COUNT III**
**(Violation Of The Unfair Competition Act, Cal. Bus. & Prof. Code § 17200, *et seq.***
**On Behalf Of The California Class And The California Menthol Subclass)"**

**161.**    Defendants incorporate by reference each response set forth above.

**162.**    Paragraph 162 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 162.

**163.**    By its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent Paragraph 163 relies on either of those theories, no answer is required.  Defendants deny the remaining allegations in Paragraph 163.

**164.**    Paragraph 164 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 164.

**165.**    Paragraph 165 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 165.

**166.**    Paragraph 166 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 166.

**167.**    Paragraph 167 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed

Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 167 relies on either of those theories, no response is required.  Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named California Plaintiff, the named California Menthol Plaintiff, or the members of either the putative California Class or putative California Menthol Subclass and, on that basis, deny the allegations relating to them. Defendants deny any remaining allegations in Paragraph 167, including that Santa Fe's conduct misled a reasonable consumer.

     **168.**     Paragraph 168 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants deny the allegations in Paragraph 168.  Defendants further state that under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has been in compliance with the FDA Agreement.

     **169.**     Paragraph 169 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required,

Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 169.

170.    Paragraph 170 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 170.

### "CALIFORNIA COUNT IV
### (Unjust Enrichment On Behalf Of The California Class
### And The California Menthol Subclass)"

171.    Defendants incorporate by reference each response set forth above.

172.    Defendants deny the allegations in Paragraph 172.

173.    Defendants lack sufficient information to admit or deny the allegations in Paragraph 173 and, on that basis, deny them.

174.    Defendants lack sufficient information to admit or deny the allegations in Paragraph 174 and, on that basis, deny them.

175.    Defendants deny the allegations in Paragraph 175.

176.    Defendants admit that the California Plaintiff, the putative California Class, the California Menthol Plaintiff, and the putative California Menthol Subclass seek restitution. Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 176.

**"COLORADO COUNT I**
**(Violation Of The Colorado Consumer Protection Act, Col. Rev. Stat. § 6-1-101, *et seq.***
**On Behalf Of The Colorado Class And The Colorado Menthol Subclass)"**

177.     Defendants incorporate by reference each response set forth above to each preceding paragraph as if fully set forth herein.

178.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 178 and, on that basis, deny them.

179.     Defendants admit the allegations in Paragraph 179 but deny liability under the cited statute.

180.     Paragraph 180 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 180, including subparagraphs (a) through (d).

181.     Defendants deny the allegations in Paragraph 181.

182.     Defendants admit that Colorado consumers have purchased NAS cigarettes. Defendants lack sufficient information to admit or deny the allegations in Paragraph 182 regarding purchases by the named Plaintiffs and alleged members of the putative Classes, and on that basis, deny them.  Defendants deny the remaining allegations in Paragraph 182.

183.     Defendants lack sufficient information to admit or deny the allegations in Paragraph 183 regarding purchases by the named Plaintiffs and alleged members of the putative Classes, and on that basis, deny them.  Defendants deny the remaining allegations in Paragraph 183.

184.     Defendants deny the allegations in Paragraph 184.

185.     Defendants deny the allegations in Paragraph 185.

186.     Defendants deny the allegations in Paragraph 186.

187.    Defendants deny the allegations in Paragraph 187.   Regarding the allegations of ongoing activity, Defendants further state that under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has been in compliance with the FDA Agreement.

### "COLORADO COUNT II
### (Unjust Enrichment
### On Behalf Of The Colorado Class And The Colorado Menthol Subclass)"

188.    Defendants incorporate by reference each response set forth above.

189.    Defendants deny the allegations in Paragraph 189.

190.    Defendants lack sufficient information to admit or deny the allegations in Paragraph 190 and, on that basis, deny them.

191.    Defendants lack sufficient information to admit or deny the allegations in Paragraph 191 and, on that basis, deny them.

192.    Defendants deny the allegations in Paragraph 192.

193.    Defendants deny the allegations in Paragraph 193.

194.    Defendants admit that the Colorado Plaintiff, the putative Colorado Class, the Colorado Menthol Plaintiff, and the putative Colorado Menthol Subclass seek restitution.  Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs

(or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 194.

## "FLORIDA COUNT I
### (Violation Of Florida's Unfair & Deceptive Trade Practices Act, Fla. Stat. § 501.201, *et seq.* On Behalf Of The Florida Class And The Florida Menthol Subclass)"

195.     Defendants incorporate by reference each response set forth above.

196.     Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 196 and, on that basis, deny them.

197.     Santa Fe admits the allegations in Paragraph 197 to the extent they relate to NAS cigarettes.  RAI and RJR Tobacco deny the allegations in Paragraph 197 to the extent they relate to NAS cigarettes.  Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations in Paragraph 197 and, on that basis, deny them.

198.     Paragraph 198 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants admit that Plaintiffs have partially quoted the cited statute and deny any liability to Plaintiffs under the statute.  Defendants deny the remaining allegations in Paragraph 198.

199.     Defendants deny the allegations in Paragraph 199.

200.     Defendants deny the allegations in Paragraph 200.

201.     Defendants deny the allegations in Paragraph 201.

202.     Defendants deny the allegations in Paragraph 202.

203.     Paragraph 203 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during

production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 203 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named Florida Plaintiff, the named Florida Menthol Plaintiff, or the members of either the putative Florida Class or putative Florida Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 203, including that Santa Fe's conduct misled a reasonable consumer.

204.    Paragraph 204 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 204 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named Florida Plaintiff, the named Florida Menthol Plaintiff, or the members of either the putative Florida Class or putative Florida Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 204, including that Santa Fe's conduct misled a reasonable consumer.

205.    Paragraph 205 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the

word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 205 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named Florida Plaintiff, the named Florida Menthol Plaintiff, or the members of either the putative Florida Class or putative Florida Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 205, including that Santa Fe's conduct misled a reasonable consumer.

206.     Defendants deny the allegations in Paragraph 206.   Regarding the allegations of "continuing risk," Defendants further state that under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has been in compliance with the FDA Agreement.

207.     Defendants deny the allegations in Paragraph 207.

208.     Defendants deny the allegations in Paragraph 208.

209.     Defendants admit that Plaintiffs seek the relief requested in Paragraph 209. Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs

(or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 209.

## "FLORIDA COUNT II
### (Unjust Enrichment On Behalf Of The Florida Class And The Florida Menthol Subclass)"

**210.**    Defendants incorporate by reference each response set forth above.

**211.**    Defendants deny the allegations in Paragraph 211.

**212.**    Paragraph 212 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 212 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named Florida Plaintiff, the named Florida Menthol Plaintiff, or the members of either the putative Florida Class or putative Florida Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 212, including that Santa Fe's conduct misled a reasonable consumer.

**213.**    Defendants lack sufficient information to admit or deny the allegations in Paragraph 213 and, on that basis, deny them.

**214.**    Defendants deny the allegations in Paragraph 214.

**215.**    Defendants deny the allegations in Paragraph 215.

**216.**    Defendants deny the allegations in Paragraph 216.

**"ILLINOIS COUNT I**
**(Violation Of Illinois Consumer Fraud and Deceptive Business Practices Act, 815**
**ILCS 505/1, *et seq.* On Behalf Of The Illinois Class And The Illinois Menthol Subclass)"**

217.    Defendants incorporate by reference each response set forth above.

218.    Defendants admit the allegations in Paragraph 218.

219.    Defendants lack sufficient information to admit or deny the allegations in Paragraph 219 and, on that basis, deny them.

220.    Paragraph 220 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants admit that Plaintiffs have partially quoted the cited statute and deny any liability to Plaintiffs under the statute.

221.    Defendants deny the allegations in Paragraph 221.

222.    Defendants deny the allegations in Paragraph 222.

223.    Paragraph 223 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 223 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named Illinois Plaintiff, the named Illinois Menthol Plaintiff, or the members of either the putative Illinois Class or putative Illinois Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any

remaining allegations in Paragraph 223, including that Santa Fe's conduct misled a reasonable consumer.

224.    Paragraph 224 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 224 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named Illinois Plaintiff, the named Illinois Menthol Plaintiff, or the members of either the putative Illinois Class or putative Illinois Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 224, including that Santa Fe's conduct misled a reasonable consumer.

225.    Paragraph 225 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 225 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named Illinois Plaintiff, the named Illinois Menthol Plaintiff, or the members of either the putative Illinois Class or putative Illinois

Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any

remaining allegations in Paragraph 225, including that Santa Fe's conduct misled a reasonable

consumer.

226.    Defendants deny the allegations in Paragraph 226.

227.    Defendants deny the allegations in Paragraph 227.

228.    Paragraph 228 contains characterizations and conclusions (including legal

conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed

Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the

word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during

production or that consumers are misled by the use of the word "Additive-Free" to describe the

tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 228 relies on

either of those theories, no response is required.   Defendants lack sufficient information to form a

belief as to the truth or falsity of the allegations of reliance by the named Illinois Plaintiff, the named

Illinois Menthol Plaintiff, or the members of either the putative Illinois Class or putative Illinois

Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any

remaining allegations in Paragraph 228, including that Santa Fe's conduct misled a reasonable

consumer.

229.    Defendants deny the allegations in Paragraph 229.   Regarding the allegations of

"continuing risk," Defendants further state that under the FDA Agreement, Santa Fe agreed to

remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette

product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain

use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not

remove or recall NAS products or product labels, labeling, advertising, or promotional materials

utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017. Santa Fe is and has been in compliance with the FDA Agreement.

230. Defendants deny the allegations in Paragraph 230.

231. Defendants admit that Plaintiffs seek the relief requested in Paragraph 231. Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 231.

232. Defendants admit that Plaintiffs seek the relief requested in Paragraph 232. Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 232.

## "ILLINOIS COUNT II
### (Violation Of The Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.* On Behalf Of The Illinois Class And The Illinois Menthol Subclass)"

233. Defendants incorporate by reference each response set forth above.

234. Paragraph 234 contains characterizations and conclusions (including legal conclusions), to which no response is required. To the extent that a response is required, Defendants admit that Plaintiffs have partially quoted the cited statute and deny any liability to Plaintiffs under the statute.

235. Defendants admit the allegations in Paragraph 235 but deny liability under the cited statute.

236. Defendants deny the allegations in Paragraph 236.

237. Defendants deny the allegations in Paragraph 237.

**238.**     Paragraph 238 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  The Court also dismissed Illinois Count II to the extent that it requests injunctive relief.  Thus, to the extent that Paragraph 238 relies on either of those theories or supports a request for injunctive relief, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named Illinois Plaintiff, the named Illinois Menthol Plaintiff, or the members of either the putative Illinois Class or putative Illinois Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 238, including that Santa Fe's conduct misled a reasonable consumer.

**239.**     Paragraph 239 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  The Court also dismissed Illinois Count II to the extent that it requests injunctive relief.  Thus, to the extent that Paragraph 239 relies on either of those theories or supports a request for injunctive relief, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named Illinois Plaintiff, the named Illinois Menthol Plaintiff, or the members of either the putative

Illinois Class or putative Illinois Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 239, including that Santa Fe's conduct misled a reasonable consumer.

240.    By its MTD Order, the Court dismissed Illinois Count II to the extent that it requests injunctive relief.  Thus, to the extent that Paragraph 240 seeks injunctive relief, no response is required.  Defendants deny the remaining allegations in Paragraph 240.   Regarding the allegations of "continuing risk," Defendants further state that under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has been in compliance with the FDA Agreement.

241.    By its MTD Order, the Court dismissed Illinois Count II to the extent that it requests injunctive relief.  Thus, to the extent that Paragraph 241 supports a request for injunctive relief, no response is required.  Defendants deny the remaining allegations in Paragraph 241.

242.    By its MTD Order, the Court dismissed Illinois Count II to the extent that it requests injunctive relief.  Thus, to the extent that Paragraph 242 supports a request for injunctive relief, no response is required.  Defendants deny the remaining allegations in Paragraph 242.

### "ILLINOIS COUNT III
(Unjust Enrichment On Behalf Of The Illinois Class And The Illinois Menthol Subclass)"

243.    Defendants incorporate by reference each response set forth above.

244.     Defendants lack sufficient information to admit or deny the allegations in Paragraph 244 regarding purchases of NAS cigarettes by the Illinois Plaintiff, Illinois Menthol Plaintiff and members of the putative Illinois Class and Menthol Subclass and, on that basis, deny them. Defendants deny the remaining allegations in Paragraph 244.

245.     Paragraph 245 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 245 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named Illinois Plaintiff, the named Illinois Menthol Plaintiff, or the members of either the putative Illinois Class or putative Illinois Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 245, including that Santa Fe's conduct misled a reasonable consumer.

246.     Defendants lack sufficient information to admit or deny the allegations in Paragraph 246 and, on that basis, deny them.

247.     Defendants deny the allegations in Paragraph 247.

248.     Defendants deny the allegations in Paragraph 248.

249.     Defendants deny the allegations in Paragraph 249.

## "MASSACHUSETTS COUNT I
### (Unfair And Deceptive Business Practices Mass. Gen. Laws c. 93A, §§ 2 And 9 On Behalf Of The Massachusetts Class)"

**250.**   Defendants incorporate by reference each response set forth above.

**251.**   Defendants admit that the Massachusetts Plaintiff purports to bring this claim on behalf of himself and each member of the putative Massachusetts Class.  Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 251.

**252.**   Santa Fe admits the allegations in Paragraph 252 to the extent they relate to NAS cigarettes.  RAI and RJR Tobacco deny the allegations in Paragraph 252 to the extent they relate to NAS cigarettes.  Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations in Paragraph 252 and, on that basis, deny them.

**253.**   Paragraph 253 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants admit that Plaintiffs have partially quoted the cited statute and deny any liability to Plaintiffs under the statute.

**254.**   Defendants deny the allegations in Paragraph 254.

**255.**   Defendants deny the allegations in Paragraph 255.

**256.**   Defendants lack sufficient information to admit or deny the allegations in Paragraph 256 regarding purchases by the named Plaintiffs and alleged members of the putative Classes, and on that basis, deny them.  Defendants deny the remaining allegations in Paragraph 256.

**257.**   Defendants deny the allegations in Paragraph 257.

**258.**     Defendants admit that Plaintiffs made a demand for relief by letter dated September 6, 2016, in response, Defendants exercised their lawful right to decline to tender an offer of relief in response to Plaintiffs' demand, and that Plaintiffs are not entitled to any relief.  Defendants deny the remaining allegations in Paragraph 258.

**259.**     Defendants deny the allegations in Paragraph 259.

### "MASSACHUSETTS COUNT II
### (Unjust Enrichment On Behalf Of The Massachusetts Class)"

**260.**     Defendants incorporate by reference each response set forth above.

**261.**     Defendants lack sufficient information to admit or deny the allegations in Paragraph 261 regarding purchases of NAS cigarettes by the Massachusetts Plaintiff and members of the putative Massachusetts Class and, on that basis, deny them.  Defendants deny the remaining allegations in Paragraph 261.

**262.**     Paragraph 262 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 262 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named Massachusetts Plaintiff or the members of the putative Massachusetts Class and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 262, including that Santa Fe's conduct misled a reasonable consumer.

**263.**     Defendants lack sufficient information to admit or deny the allegations in Paragraph 263 and, on that basis, deny them.

**264.**     Defendants deny the allegations in Paragraph 264.

**265.**     Defendants deny the allegations in Paragraph 265.

**266.**     Defendants deny the allegations in Paragraph 266.

**"MICHIGAN COUNT I**
**(Violation Of Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901, *et seq.* On Behalf Of The Michigan Class)"**

**267.**     Defendants incorporate by reference each response set forth above.

**268.**     Defendants admit that the Michigan Plaintiff purports to bring this claim on behalf of himself and each member of the putative Michigan Class.  Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 268.

**269.**     Defendants admit the allegations in Paragraph 269 and deny liability under the cited statute.

**270.**     Defendants deny that the cited section of the Michigan Consumer Protection Act defines the terms alleged in Paragraph 270 and deny liability under the cited statute.  Defendants lack sufficient information to admit or deny the remaining allegations in Paragraph 270 regarding purchases of NAS cigarettes by the Michigan Plaintiff and the members of the putative Michigan Class and, on that basis, deny them.

**271.**     Defendants deny the allegations in Paragraph 271.

**272.**     Paragraph 272 and its subparagraphs contain characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers

are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 272 and its subparagraphs rely on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named Michigan Plaintiff or the members of the putative Michigan Class and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 272, including that Santa Fe's conduct misled a reasonable consumer.

273.    Defendants admit that the Michigan Plaintiff purports to bring this claim on behalf of himself and each member of the putative Michigan Class, and that the Michigan Plaintiff and putative class seek declaratory relief.  Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 273.

274.    Defendants admit that the Michigan Plaintiff purports to bring this claim on behalf of himself and each member of the putative Michigan Class, and that the Michigan Plaintiff and putative class seek the injunctive relief alleged in Paragraph 274.  Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 274.

275.    Defendants admit that the Michigan Plaintiff purports to bring this claim on behalf of himself and each member of the putative Michigan Class, and that the Michigan Plaintiff and putative class seek the greater of actual damages or $250.00, along with attorneys' fees.  Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative

class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 275.

276.     Defendants admit that the Michigan Plaintiff purports to bring this claim on behalf of himself and each member of the putative Michigan Class, and that the Michigan Plaintiff and putative class seek actual damages.  Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 276.

277.     Defendants lack sufficient information to admit or deny the allegations in Paragraph 277 and, on that basis, deny them.

278.     Defendants deny the allegations in Paragraph 278.

**"MICHIGAN COUNT II**
**(Unjust Enrichment On Behalf Of The Michigan Class)"**

279.     Defendants incorporate by reference each response set forth above.

280.     Defendants admit that the Michigan Plaintiff purports to bring a claim for unjust enrichment on behalf of himself and each member of the putative Michigan Class.  Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 280.

281.     Paragraph 281 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants admit that Plaintiffs have stated the elements of unjust enrichment under Michigan law and deny any liability to Plaintiffs.

**282.**     Defendants lack sufficient information to admit or deny the allegations in Paragraph 282 and, on that basis, deny them.

**283.**     Defendants lack sufficient information to admit or deny the allegations in the first sentence in Paragraph 283 and, on that basis, deny them.  The second sentence in Paragraph 283 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that the second sentence in Paragraph 283 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named Michigan Plaintiff or the members of the putative Michigan Class and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 283, including that Santa Fe's conduct misled a reasonable consumer.

**284.**     Paragraph 284 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 284 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named Michigan Plaintiff or the

members of the putative Michigan Class and, on that basis, deny the allegations relating to them. Defendants deny any remaining allegations in Paragraph 284, including that Santa Fe's conduct misled a reasonable consumer.

285.   Paragraph 285 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 285 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named Michigan Plaintiff or the members of the putative Michigan Class and, on that basis, deny the allegations relating to them. Defendants deny any remaining allegations in Paragraph 285, including that Santa Fe's conduct misled a reasonable consumer.

286.   Defendants lack sufficient information to admit or deny the allegations in Paragraph 286 regarding purchases of NAS cigarettes by the Michigan Plaintiff and members of the putative Michigan Class and, on that basis, deny them.  Defendants deny the remaining allegations in Paragraph 286.

287.   Defendants lack sufficient information to admit or deny the allegations in Paragraph 287 regarding purchases of NAS cigarettes by the Michigan Plaintiff and members of the putative Michigan Class and, on that basis, deny them.  Defendants deny the remaining allegations in Paragraph 287.

288.   Defendants deny the allegations in Paragraph 288.

**289.**      Defendants deny the allegations in Paragraph 289.

**"NEW JERSEY COUNT I**
**(Violation Of The New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*
On Behalf Of The New Jersey Class And The New Jersey Menthol Subclass)"**

**290.**      Defendants incorporate by reference each response set forth above.

**291.**      Defendants admit that the New Jersey Plaintiff and New Jersey Menthol Plaintiff purport to bring a claim under the cited statute on behalf of themselves and each member of the putative New Jersey Class and New Jersey Menthol Subclass.  Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 291.

**292.**      Defendants deny the allegations in Paragraph 292.

**293.**      Defendants admit that NAS cigarettes constitute "merchandise" under the New Jersey Consumer Fraud Act and deny any liability to Plaintiffs under that statute.  The remainder of Paragraph 293 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 293 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named New Jersey Plaintiff, the New Jersey Menthol Subclass Plaintiff, or the members of either the putative New Jersey Class or putative New Jersey Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny

any remaining allegations in Paragraph 293, including that Santa Fe's conduct misled a reasonable consumer.

      **294.**     Defendants deny the allegations in Paragraph 294.

      **295.**     Defendants deny the allegations in Paragraph 295.

      **296.**     Defendants deny the allegations contained in the second sentence of Paragraph 296. The remainder of Paragraph 296 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 296 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named New Jersey Plaintiff, the New Jersey Menthol Subclass Plaintiff, or the members of either the putative New Jersey Class or putative New Jersey Menthol Subclass and, on that basis, deny the allegations relating to them. Defendants deny any remaining allegations in Paragraph 296, including that Santa Fe's conduct misled a reasonable consumer.

      **297.**     Paragraph 297 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 297 relies on

either of those theories, no response is required.   Defendants lack sufficient information to admit or deny the allegations in Paragraph 297 regarding purchases of NAS cigarettes by the named New Jersey Plaintiff, the New Jersey Menthol Subclass Plaintiff, or the members of either the putative New Jersey Class or putative New Jersey Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 297, including that Santa Fe's conduct misled a reasonable consumer.

298.    Defendants deny the allegations in Paragraph 298.

## "NEW JERSEY COUNT II
### (Violations Of The New Jersey Truth-In-Consumer Contract, Warranty And Notice Act "TCCWNA," New Jersey Stat. §§ 56:12-14 To 56:12-18 On Behalf Of The New Jersey Class And The New Jersey Menthol Subclass)"

299.    Defendants incorporate by reference each response set forth above.

300.    Paragraph 300 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants admit that Plaintiffs have partially quoted the cited statute and deny any liability to Plaintiffs under the statute.

301.    Paragraph 301 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 301 relies on either of those theories, no response is required.   Defendants lack sufficient information to admit or deny the allegations in Paragraph 301 regarding purchases of NAS cigarettes by the named New

Jersey Plaintiff, the New Jersey Menthol Subclass Plaintiff, or the members of either the putative

New Jersey Class or putative New Jersey Menthol Subclass and, on that basis, deny the allegations

relating to them.  Defendants deny any remaining allegations in Paragraph 301, including that Santa

Fe's conduct misled a reasonable consumer.

302.    Defendants lack sufficient information to admit or deny the allegations in Paragraph

302 and, on that basis, deny them.

303.    Santa Fe admits the allegations in Paragraph 303 to the extent they relate to NAS

cigarettes.  RAI and RJR Tobacco deny the allegations in Paragraph 303 to the extent they relate to

NAS cigarettes.  Defendants lack sufficient information to form a belief as to the truth or falsity of

the remaining allegations in Paragraph 303 and, on that basis, deny them.

304.    Paragraph 304 contains characterizations and conclusions (including legal

conclusions), to which no response is required.  To the extent that a response is required,

Defendants admit that Plaintiffs have partially quoted the cited statute and deny any liability to

Plaintiffs under the statute.

305.    Paragraph 305 contains characterizations and conclusions (including legal

conclusions), to which no response is required.  To the extent that a response is required,

Defendants admit that Plaintiffs have partially quoted the cited statute and deny any liability to

Plaintiffs under the statute.

306.    Paragraph 306 contains characterizations and conclusions (including legal

conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed

Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the

word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during

production or that consumers are misled by the use of the word "Additive-Free" to describe the

tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 306 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named New Jersey Plaintiff, the New Jersey Menthol Subclass Plaintiff, or the members of either the putative New Jersey Class or putative New Jersey Menthol Subclass and, on that basis, deny the allegations relating to them. Defendants deny any remaining allegations in Paragraph 306, including that Santa Fe's conduct misled a reasonable consumer.

307.     Defendants deny the allegations in Paragraph 307.

### "NEW JERSEY COUNT III
### (Unjust Enrichment
### On Behalf Of The New Jersey Class And The New Jersey Menthol Subclass)"

308.     Defendants incorporate by reference each response set forth above.

309.     The Court, by its MTD Order, dismissed New Jersey Count III.  Accordingly, no response to Paragraph 309 is required.

310.     The Court, by its MTD Order, dismissed New Jersey Count III.  Accordingly, no response to Paragraph 310 is required.

311.     The Court, by its MTD Order, dismissed New Jersey Count III.  Accordingly, no response to Paragraph 311 is required.

312.     The Court, by its MTD Order, dismissed New Jersey Count III.  Accordingly, no response to Paragraph 312 is required.

313.     The Court, by its MTD Order, dismissed New Jersey Count III.  Accordingly, no response to Paragraph 313 is required.

314.     The Court, by its MTD Order, dismissed New Jersey Count III.  Accordingly, no response to Paragraph 314 is required.

315.     The Court, by its MTD Order, dismissed New Jersey Count III.  Accordingly, no response to Paragraph 315 is required.

### "NEW MEXICO COUNT I
### (Violations Of The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1, *et seq.* On Behalf Of The New Mexico Class And The New Mexico Menthol Subclass)"

316.     Defendants incorporate by reference each response set forth above.

317.     Defendants admit that the New Mexico Plaintiff and New Mexico Menthol Plaintiff purport to bring this claim on behalf of themselves and each member of the putative New Mexico Class and New Mexico Menthol Subclass.  Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 317.

318.     Defendants admit the allegations in Paragraph 318 but deny liability under the cited statute.

319.     Santa Fe admits the allegations in Paragraph 319 to the extent they relate to NAS cigarettes.  RAI and RJR Tobacco deny the allegations of Paragraph 319 to the extent they relate to NAS cigarettes.  Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations in Paragraph 319 and, on that basis, deny them.

320.     The first sentence in Paragraph 320 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants admit that Plaintiffs have partially quoted the cited statute and deny any liability to Plaintiffs under the statute.  Defendants deny the allegations in the second sentence in Paragraph 320.

321.     Defendants deny the allegations in Paragraph 321.

322.     Defendants deny the allegations in Paragraph 322.

323.     Paragraph 323 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 323 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named New Mexico Plaintiff, the named New Mexico Menthol Plaintiff, or the members of either the putative New Mexico Class or putative New Mexico Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 323, including that Santa Fe's conduct misled a reasonable consumer.

324.     Defendants deny the allegations in Paragraph 324.

325.     Paragraph 325 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 325 relies on either of those theories, no response is required.   Defendants lack sufficient information to admit or deny the allegations in Paragraph 325 regarding purchases of NAS cigarettes by the named New Mexico Plaintiff, the named New Mexico Menthol Plaintiff, or the members of either the putative New Mexico Class or putative New Mexico Menthol Subclass and, on that basis, deny the

allegations relating to them.  Defendants deny any remaining allegations in Paragraph 325, including that Santa Fe's conduct misled a reasonable consumer.

326.     Defendants deny the allegations in Paragraph 326.   Regarding the allegations of "continuing risk," Defendants further state that under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has been in compliance with the FDA Agreement.

327.     Defendants admit that Plaintiffs seek punitive damages and deny that Plaintiffs are entitled to them in this action.  The remainder of Paragraph 327 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 327 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named New Mexico Plaintiff, the named New Mexico Menthol Plaintiff, or the members of either the putative New Mexico Class or putative New Mexico Menthol Subclass and, on that basis, deny

the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 327, including that Santa Fe's conduct misled a reasonable consumer.

328.    Defendants admit that the New Mexico Plaintiff and New Mexico Menthol Plaintiff seek actual damages, treble damages, punitive damages, attorneys' fees and costs, and other relief under the cited statute on behalf of themselves and each member of the putative New Mexico Class and New Mexico Menthol Subclass.  Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 328.

### "NEW MEXICO COUNT II
### (Violations Of The New Mexico False Advertising Law, N.M. Stat. Ann. §§ 57-15-1, *et seq.* On Behalf Of The New Mexico Class And The New Mexico Menthol Subclass)"

329.    Defendants incorporate by reference each response set forth above.

330.    Defendants deny the allegations in Paragraph 330.

331.    Defendants deny the allegations in Paragraph 331.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 331 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named New Mexico Plaintiff, the named New Mexico Menthol Plaintiff, or the members of either the putative New Mexico Class or putative New Mexico Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 331, including that Santa Fe's conduct misled a reasonable consumer.

332.     Defendants deny the allegations in Paragraph 332.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 332 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named New Mexico Plaintiff, the named New Mexico Menthol Plaintiff, or the members of either the putative New Mexico Class or putative New Mexico Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 332, including that Santa Fe's conduct misled a reasonable consumer.

333.     Defendants admit that the New Mexico Plaintiff and New Mexico Menthol Plaintiff purport to bring this claim on behalf of themselves and each member of the putative New Mexico Class and New Mexico Menthol Subclass.  Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 333.

334.     Defendants deny the allegations in Paragraph 334.

## "NEW MEXICO COUNT III
### (Unjust Enrichment On Behalf Of The New Mexico Class And The New Mexico Menthol Subclass)"

335.     Defendants incorporate by reference each response set forth above.

336.     Defendants lack sufficient information to admit or deny the allegations in Paragraph 336 regarding purchases of NAS cigarettes by the named New Mexico Plaintiff, the named New Mexico Menthol Plaintiff, or the members of either the putative New Mexico Class or putative New

Mexico Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny the remaining allegations in Paragraph 336.

337.    Paragraph 337 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 337 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named New Mexico Plaintiff, the named New Mexico Menthol Plaintiff, or the members of either the putative New Mexico Class or putative New Mexico Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 337, including that Santa Fe's conduct misled a reasonable consumer.

338.    Defendants lack sufficient information to admit or deny the allegations in Paragraph 338 and, on that basis, deny them.

339.    Defendants deny the allegations in Paragraph 339.

340.    Defendants deny the allegations in Paragraph 340.

341.    Defendants deny the allegations in Paragraph 341.

342.    Defendants deny the allegations in Paragraph 342.

## "NEW YORK COUNT I
### (Violation Of N.Y. G.B.L. § 349 On Behalf Of The New York Class And The New York Menthol Subclass)"

343.    Defendants incorporate by reference each response set forth above.

**344.**     Defendants admit that the New York Plaintiff and New York Menthol Plaintiff purport to bring this claim on behalf of themselves and each member of the putative New York Class and New York Menthol Subclass.  Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 344.

**345.**     Paragraph 345 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants admit that Plaintiffs have partially quoted the cited statute and deny any liability to Plaintiffs under the statute.

**346.**     Defendants lack sufficient information to admit or deny the allegations in Paragraph 346 and, on that basis, deny them.

**347.**     Paragraph 347 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 347.

**348.**     Paragraph 348 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 348 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named New York Plaintiff, the named New York Menthol Plaintiff, or the members of either the putative New York Class or

putative New York Menthol Subclass and, on that basis, deny the allegations relating to them. Defendants deny any remaining allegations in Paragraph 348, including that Santa Fe's conduct misled a reasonable consumer.

349.    Defendants deny the allegations in Paragraph 349.

350.    Defendants deny the allegations in Paragraph 350.

351.    Defendants deny that they engaged in "wrongful actions."  The remainder of Paragraph 351 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 351 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named New York Plaintiff, the named New York Menthol Plaintiff, or the members of either the putative New York Class or putative New York Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 351, including that Santa Fe's conduct misled a reasonable consumer.

352.    Defendants deny the allegations in Paragraph 352.

353.    Defendants admit that Plaintiffs seek the relief requested in Paragraph 353. Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 353.

**354.**     Defendants deny the allegations in Paragraph 354.  Regarding the allegations of "continuing risk," Defendants further state that under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has been in compliance with the FDA Agreement.

**"NEW YORK COUNT II**
**(Violation Of N.Y. G.B.L. § 350 On Behalf Of The New York Class And The New York Menthol Subclass)"**

**355.**     Defendants incorporate by reference each response set forth above.

**356.**     Paragraph 356 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants admit that Plaintiffs have partially quoted the cited statute and deny any liability to Plaintiffs under the statute.

**357.**     Paragraph 357 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants admit that Plaintiffs have partially quoted the cited statute and deny any liability to Plaintiffs under the statute.

**358.**     Defendants lack sufficient information to admit or deny the allegations in Paragraph 358 and, on that basis, deny them.

**359.**     Paragraph 359 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 359.

**360.**     Paragraph 360 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 360 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named New York Plaintiff, the named New York Menthol Plaintiff, or the members of either the putative New York Class or putative New York Menthol Subclass and, on that basis, deny the allegations relating to them. Defendants deny any remaining allegations in Paragraph 360, including that Santa Fe's conduct misled a reasonable consumer.

**361.**     Defendants deny the allegations in Paragraph 361.

**362.**     Defendants deny the allegations in Paragraph 362.

**363.**     Paragraph 363 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 363 relies on

either of those theories, no response is required.   Defendants lack sufficient information to admit or

deny the allegations in Paragraph 363 regarding purchases of NAS cigarettes by the named New

York Plaintiff, the named New York Menthol Plaintiff, or the members of either the putative New

York Class or putative New York Menthol Subclass and, on that basis, deny the allegations relating

to them.  Defendants deny any remaining allegations in Paragraph 363, including that Santa Fe's

conduct misled a reasonable consumer.

     **364.**     Defendants deny the allegations in Paragraph 364.

     **365.**     Defendants admit that Plaintiffs seek the relief requested in Paragraph 365.

Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs

(or putative class members) are entitled to the relief claimed or to any other relief, and deny the

remaining allegations in Paragraph 365.

     **366.**     Defendants deny the allegations in Paragraph 366.  Regarding the allegations of

"continuing risk," Defendants further state that under the FDA Agreement, Santa Fe agreed to

remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette

product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain

use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not

remove or recall NAS products or product labels, labeling, advertising, or promotional materials

utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through

distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa

Fe is and has been in compliance with the FDA Agreement.

**"NEW YORK COUNT III**
**(Unjust Enrichment On Behalf Of The New York Class And The New York Menthol**
**Subclass)"**

     **367.**     Defendants incorporate by reference each response set forth above.

**368.**     Defendants lack sufficient information to admit or deny the allegations in Paragraph 368 regarding purchases of NAS cigarettes by the named New Mexico Plaintiff, the named New Mexico Menthol Plaintiff, or the members of either the putative New Mexico Class or putative New Mexico Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny the remaining allegations in Paragraph 368.

**369.**     Paragraph 369 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 369 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named New York Plaintiff, the named New York Menthol Plaintiff, or the members of either the putative New York Class or putative New York Menthol Subclass and, on that basis, deny the allegations relating to them. Defendants deny any remaining allegations, including that Santa Fe's conduct misled a reasonable consumer.

**370.**     Defendants lack sufficient information to admit or deny the allegations in Paragraph 370 and, on that basis, deny them.

**371.**     Defendants deny the allegations in Paragraph 371.

**372.**     Defendants deny the allegations in Paragraph 372.

**373.**     Defendants deny the allegations in Paragraph 373.

**374.**     Defendants deny the allegations in Paragraph 374.

**"NORTH CAROLINA COUNT I**
**(Violation Of N.C. Gen. Stat. § 75-1.1(a) On Behalf Of The North Carolina Class And The**
**North Carolina Menthol Subclass)"**

375.     Defendants incorporate by reference each response set forth above.

376.     Defendants admit that the North Carolina Plaintiff and North Carolina Menthol

Plaintiff purport to bring this claim on behalf of themselves and each member of the putative North

Carolina Class and North Carolina Menthol Subclass.  Defendants deny that this action may be

properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to

the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 376.

377.     Paragraph 377 contains characterizations and conclusions (including legal

conclusions), to which no response is required.  To the extent that a response is required,

Defendants admit that Plaintiffs have partially quoted the cited statute and deny any liability to

Plaintiffs under the statute.

378.     Paragraph 378 contains characterizations and conclusions (including legal

conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed

Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the

word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during

production or that consumers are misled by the use of the word "Additive-Free" to describe the

tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 378 relies on

either of those theories, no response is required.   Defendants lack sufficient information to form a

belief as to the truth or falsity of the allegations of reliance by the named North Carolina Plaintiff,

the named North Carolina Menthol Plaintiff, or the members of either the putative North Carolina

Class or putative North Carolina Menthol Subclass and, on that basis, deny the allegations relating to

them.  Defendants deny any remaining allegations in Paragraph 378, including that Santa Fe's

conduct misled a reasonable consumer.

      **379.**    Defendants deny the allegations in Paragraph 379.

      **380.**    Paragraph 380 contains characterizations and conclusions (including legal

conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed

Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the

word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during

production or that consumers are misled by the use of the word "Additive-Free" to describe the

tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 380 relies on

either of those theories, no response is required.   Defendants lack sufficient information to form a

belief as to the truth or falsity of the allegations of reliance by the named North Carolina Plaintiff,

the named North Carolina Menthol Plaintiff, or the members of either the putative North Carolina

Class or putative North Carolina Menthol Subclass and, on that basis, deny the allegations relating to

them.  Defendants deny any remaining allegations in Paragraph 380, including that Santa Fe's

conduct misled a reasonable consumer.

      **381.**    Defendants deny the allegations in Paragraph 381.

      **382.**    Paragraph 382 contains characterizations and conclusions (including legal

conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed

Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the

word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during

production or that consumers are misled by the use of the word "Additive-Free" to describe the

tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 382 relies on

either of those theories, no response is required.   Defendants lack sufficient information to admit or

deny the allegations in Paragraph 382 regarding purchases of NAS cigarettes by the named North Carolina Plaintiff, the named North Carolina Menthol Plaintiff, or the members of either the putative North Carolina Class or putative North Carolina Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 382, including that Santa Fe's conduct misled a reasonable consumer.

383.    Paragraph 383 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 383 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named North Carolina Plaintiff, the named North Carolina Menthol Plaintiff, or the members of either the putative North Carolina Class or putative North Carolina Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 383, including that Santa Fe's conduct misled a reasonable consumer.

384.    Defendants deny the allegations in Paragraph 384.

385.    Defendants deny the allegations in Paragraph 385.

386.    Defendants admit that Plaintiffs seek the relief requested in Paragraph 386. Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 386.

**387.**     Defendants deny the allegations in Paragraph 387.

### "NORTH CAROLINA COUNT II
### (Unjust Enrichment On Behalf Of The North Carolina Class And The North Carolina Menthol Subclass)"

**388.**     Defendants incorporate by reference each response set forth above.

**389.**     Defendants lack sufficient information to admit or deny the allegations in Paragraph 389 regarding purchases of NAS cigarettes by the named North Carolina Plaintiff, the named North Carolina Menthol Plaintiff, or the members of either the putative North Carolina Class or putative North Carolina Menthol Subclass and, on that basis, deny the allegations relating to them. Defendants deny the remaining allegations in Paragraph 389.

**390.**     Paragraph 390 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 390 relies on either of those theories, no response is required.   Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named North Carolina Plaintiff, the named North Carolina Menthol Plaintiff, or the members of either the putative North Carolina Class or putative North Carolina Menthol Subclass and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 390, including that Santa Fe's conduct misled a reasonable consumer.

**391.**     Defendants lack sufficient information to admit or deny the allegations in Paragraph 391 and, on that basis, deny them.

**392.**     Defendants deny the allegations in Paragraph 392.

**393.**     Defendants deny the allegations in Paragraph 393.

**394.**     Defendants deny the allegations in Paragraph 394.

**395.**     Defendants deny the allegations in Paragraph 395.

## "OHIO COUNT I
### (Ohio Consumers Sales Practice Act, Ohio Revised Code Chapter 1345 On Behalf Of The Ohio Class)"

**396.**     Defendants incorporate by reference each response set forth above.

**397.**     The Court, by its MTD Order, dismissed Ohio Count I.  Accordingly, no response to Paragraph 397 is required.

**398.**     The Court, by its MTD Order, dismissed Ohio Count I.  Accordingly, no response to Paragraph 398 is required.

**399.**     The Court, by its MTD Order, dismissed Ohio Count I.  Accordingly, no response to Paragraph 399 is required.

**400.**     The Court, by its MTD Order, dismissed Ohio Count I.  Accordingly, no response to Paragraph 400 is required.

**401.**     The Court, by its MTD Order, dismissed Ohio Count I.  Accordingly, no response to Paragraph 401 is required.

**402.**     The Court, by its MTD Order, dismissed Ohio Count I.  Accordingly, no response to Paragraph 402 is required.

**403.**     The Court, by its MTD Order, dismissed Ohio Count I.  Accordingly, no response to Paragraph 403 is required.

**404.**     The Court, by its MTD Order, dismissed Ohio Count I.  Accordingly, no response to Paragraph 404 is required.

405.     The Court, by its MTD Order, dismissed Ohio Count I.  Accordingly, no response to Paragraph 405 is required.

406.     The Court, by its MTD Order, dismissed Ohio Count I.  Accordingly, no response to Paragraph 406 is required.

407.     The Court, by its MTD Order, dismissed Ohio Count I.  Accordingly, no response to Paragraph 407 is required.

408.     The Court, by its MTD Order, dismissed Ohio Count I.  Accordingly, no response to Paragraph 408 is required.

409.     The Court, by its MTD Order, dismissed Ohio Count I.  Accordingly, no response to Paragraph 409 is required.

410.     The Court, by its MTD Order, dismissed Ohio Count I.  Accordingly, no response to Paragraph 410 is required.

411.     The Court, by its MTD Order, dismissed Ohio Count I.  Accordingly, no response to Paragraph 411 is required.

412.     The Court, by its MTD Order, dismissed Ohio Count I.  Accordingly, no response to Paragraph 412 is required.

### "OHIO COUNT II
### (Ohio's Deceptive Trade Practices Act, Ohio Revised Code Section 4165, *et seq.* On Behalf Of The Ohio Class)"

413.     Defendants incorporate by reference each response set forth above.

414.     The Court, by its MTD Order, dismissed Ohio Count II.  Accordingly, no response to Paragraph 414 is required.

415.     The Court, by its MTD Order, dismissed Ohio Count II.  Accordingly, no response to Paragraph 415 is required.

416.     The Court, by its MTD Order, dismissed Ohio Count II.  Accordingly, no response to Paragraph 416 is required.

417.     The Court, by its MTD Order, dismissed Ohio Count II.  Accordingly, no response to Paragraph 417 is required.

418.     The Court, by its MTD Order, dismissed Ohio Count II.  Accordingly, no response to Paragraph 418 is required.

## "OHIO COUNT III
### (Unjust Enrichment On Behalf Of The Ohio Class)"

419.     Defendants incorporate by reference each response set forth above.

420.     The Court, by its MTD Order, dismissed Ohio Count III.  Accordingly, no response to Paragraph 420 is required.

421.     The Court, by its MTD Order, dismissed Ohio Count III.  Accordingly, no response to Paragraph 421 is required.

422.     The Court, by its MTD Order, dismissed Ohio Count III.  Accordingly, no response to Paragraph 422 is required.

423.     The Court, by its MTD Order, dismissed Ohio Count III.  Accordingly, no response to Paragraph 423 is required.

424.     The Court, by its MTD Order, dismissed Ohio Count III.  Accordingly, no response to Paragraph 424 is required.

425.     The Court, by its MTD Order, dismissed Ohio Count III.  Accordingly, no response to Paragraph 425 is required.

426.     The Court, by its MTD Order, dismissed Ohio Count III.  Accordingly, no response to Paragraph 426 is required.

427.     The Court, by its MTD Order, dismissed Ohio Count III.  Accordingly, no response to Paragraph 427 is required.

## "WASHINGTON COUNT I
### (Violation Of The Washington Consumer Protection Act, Wash. Rev. Code Ann. §§ 19.86.010, *et seq.* On Behalf Of The Washington Class)"

428.     Defendants incorporate by reference each response set forth above.

429.     Defendants admit that the Washington Plaintiffs purport to bring this claim on behalf of themselves and each member of the putative Washington Class.  Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 429.

430.     Paragraph 430 contains characterizations and conclusions (including legal conclusions), to which no response is required.  To the extent that a response is required, Defendants admit that Plaintiffs have partially quoted the cited statute and deny any liability to Plaintiffs under the statute.

431.     Defendants admit the allegations in the first sentence in Paragraph 431 but deny liability under the cited statute.  Defendants lack sufficient information to admit or deny the allegations in the second sentence in Paragraph 431 regarding purchases of NAS cigarettes by the named Washington Plaintiffs or the members of the putative Washington Class and, on that basis, deny the allegations relating to them.

432.     Defendants admit the allegations in Paragraph 432 but deny liability under the cited statute.

433.     Defendants deny the allegations in Paragraph 433.

434.     Defendants deny the allegations in Paragraph 434.

**435.**     Defendants deny the allegations in Paragraph 435.

**436.**     Defendants deny the allegations in Paragraph 436.

**437.**     Paragraph 437 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 437 relies on either of those theories, no response is required.  Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named Washington Plaintiffs or the members of the putative Washington Class and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 437, including that Santa Fe's conduct misled a reasonable consumer.

**438.**     Paragraph 438 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 438 relies on either of those theories, no response is required.  Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations of reliance by the named Washington Plaintiffs or the members of the putative Washington Class and, on that basis, deny the allegations relating to

them.  Defendants deny any remaining allegations in Paragraph 438, including that Santa Fe's conduct misled a reasonable consumer.

439.     Defendants deny the allegations in Paragraph 439.  Regarding the allegations of "continuing risk," Defendants further state that under the FDA Agreement, Santa Fe agreed to remove by December 9, 2017, the words "Additive Free" and "Natural" from all NAS cigarette product labels, labeling, advertising, and promotional materials, provided that Santa Fe may retain use of the word "Natural" in the NAS brand name and trademarks and that Santa Fe need not remove or recall NAS products or product labels, labeling, advertising, or promotional materials utilizing the words "additive free" or "natural" that were introduced into the market (e.g., through distribution to wholesalers, distributers, retailers, or consumers) prior to December 9, 2017.  Santa Fe is and has been in compliance with the FDA Agreement.

440.     Paragraph 440 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 440 relies on either of those theories, no response is required.   Defendants lack sufficient information to admit or deny the allegations in Paragraph 440 regarding purchases of NAS cigarettes by the named Washington Plaintiffs or the members of the putative Washington Class and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 440, including that Santa Fe's conduct misled a reasonable consumer.

441.     Defendants deny the allegations in Paragraph 441.

**442.**    Defendants deny the allegations in Paragraph 442.

**443.**    Defendants admit that Plaintiffs seek the relief requested in Paragraph 443. Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 443.

## "WASHINGTON COUNT II
## (Unjust Enrichment On Behalf Of The Washington Class)"

**444.**    Defendants incorporate by reference each response set forth above.

**445.**    Defendants lack sufficient information to admit or deny the allegations in Paragraph 445 regarding purchases of NAS cigarettes by the named Washington Plaintiffs or the members of the putative Washington Class and, on that basis, deny the allegations relating to them.  Defendants deny the remaining allegations in Paragraph 445.

**446.**    Paragraph 446 contains characterizations and conclusions (including legal conclusions), to which no response is required.  Moreover, by its MTD Order, the Court dismissed Plaintiffs' claims to the extent that they are premised on the theory that consumers are misled by the word "Natural" into believing that NAS cigarettes are not subjected to engineering processes during production or that consumers are misled by the use of the word "Additive-Free" to describe the tobacco in NAS cigarettes in print advertising.  Thus, to the extent that Paragraph 446 relies on either of those theories, no response is required.   Defendants lack sufficient information to admit or deny the allegations in Paragraph 446 regarding purchases of NAS cigarettes by the named Washington Plaintiffs or the members of the putative Washington Class and, on that basis, deny the allegations relating to them.  Defendants deny any remaining allegations in Paragraph 446, including that Santa Fe's conduct misled a reasonable consumer.

**447.** Defendants lack sufficient information to admit or deny the allegations in Paragraph 447 and, on that basis, deny them.

**448.** Defendants deny the allegations in Paragraph 448.

**449.** Defendants deny the allegations in Paragraph 449.

**450.** Defendants deny the allegations in Paragraph 450.

## "NATIONWIDE COUNT I
### (Express Warranty On Behalf Of The Nationwide Menthol Subclass)"

**451.** Defendants incorporate by reference each response set forth above.

**452.** Defendants admit that the Nationwide Menthol Plaintiffs purport to bring this claim on behalf of themselves and each member of the putative Nationwide Menthol Subclass. Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 452.

**453.** Paragraph 453 contains characterizations and conclusions (including legal conclusions), to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 453.

**454.** Paragraph 454 contains characterizations and conclusions (including legal conclusions), to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 454.

**455.** Defendants deny the allegations in the first sentence in Paragraph 455. Santa Fe admits that it adds menthol to the filters of menthol styles of NAS cigarettes and denies the remaining allegations in the second sentence in Paragraph 455. RAI and RJR Tobacco deny the allegations in Paragraph 455.

456.     Santa Fe admits that it represented through its labeling on packages of NAS cigarettes that they were manufactured using "100% Additive-Free tobacco."  RAI and RJR Tobacco deny that they made any representations through the labeling of NAS cigarettes. Defendants lack sufficient information to admit or deny the remaining allegations in Paragraph 456 and, on that basis, deny them.

457.     Defendants lack sufficient information to admit or deny the allegations in Paragraph 457 regarding purchases of NAS cigarettes by the Nationwide Menthol Plaintiffs or the members of the putative Nationwide Menthol Subclass and, on that basis, deny the allegations relating to them. Defendants deny the remaining allegations in Paragraph 457.

458.     Defendants deny the allegations in Paragraph 458.

459.     Defendants admit that Plaintiffs seek the relief requested in Paragraph 459. Defendants deny that this action may be properly maintained as a class action, deny that Plaintiffs (or putative class members) are entitled to the relief claimed or to any other relief, and deny the remaining allegations in Paragraph 459.

## "PRAYER FOR RELIEF"

Defendants admit that Plaintiffs seek an Order certifying this matter as a class action, but Defendants deny that this action may be properly maintained as a class action or that the Complaint adequately defines any proposed class or sub-class.  Moreover, Defendants admits that Plaintiffs seek relief against Defendants but deny that Plaintiffs are entitled to judgment against or any relief whatsoever from Defendants.

## "DEMAND FOR JURY TRIAL"

Defendants admit that Plaintiffs demand a jury trial and deny that Plaintiffs are entitled to a jury trial on any of their claims seeking equitable relief or that are otherwise not triable by jury.

## AFFIRMATIVE DEFENSES

Defendants assert the following defenses with respect to the causes of action alleged in the Consolidated Complaint, without assuming the burden of proof or persuasion where such burden rests on Plaintiffs.

## FIRST AFFIRMATIVE DEFENSE
### (Failure To State Facts Sufficient To Constitute A Cause of Action)

Portions of the Consolidated Complaint fails to state a claim against Defendants upon which relief can be granted, as reflected in the Court's ruling granting in part Defendants' motion to dismiss.  As to those portions of the Consolidated Complaint not dismissed by the Court's ruling, to the extent necessary to preserve the issue, Defendants assert that Consolidated Complaint fails to state a claim upon which relief can be granted as to all issues on which the Court overruled Defendants' motion.

## SECOND AFFIRMATIVE DEFENSE
### (Venue)

Defendants reserve the right to assert, if the facts and circumstances dictate, that Plaintiffs' action should be transferred for the convenience of the parties and witnesses and to promote the ends of justice.

## THIRD AFFIRMATIVE DEFENSE
### (Statutes of Limitations)

Plaintiffs' (and the putative class members') claims are barred, in whole or in part, by the applicable statutes of limitation.

## FOURTH AFFIRMATIVE DEFENSE
### (Laches)

Plaintiffs' (and the putative class members') claims are barred, in whole or in part, or alternatively Plaintiffs' recovery should be reduced, by the doctrine of laches.

## FIFTH AFFIRMATIVE DEFENSE
### (Equitable Estoppel, Quasi Estoppel)

Plaintiffs' (and the putative class members') claims are barred, in whole or in part, or alternatively Plaintiffs' recovery should be reduced, by the doctrines of equitable estoppel and/or quasi-estoppel.

## SIXTH AFFIRMATIVE DEFENSE
### (Waiver, Abandonment)

Plaintiffs' (and the putative class members') claims are barred, in whole or in part, or alternatively Plaintiffs' recovery should be reduced, by the doctrines of waiver and/or abandonment.

## SEVENTH AFFIRMATIVE DEFENSE
### (Standing)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs and the putative class lack standing to assert their claims.

## EIGHTH AFFIRMATIVE DEFENSE
### (Preemption)

By its MTD Order, the Court rejected Defendants' Motion to Dismiss based on preemption. To preserve the issue, Defendants assert that Plaintiffs' (and the putative class members') claims are barred, in whole or in part, because they are preempted.

## NINTH AFFIRMATIVE DEFENSE
### (First Amendment)

By its MTD Order, the Court rejected Defendants' Motion to Dismiss based on the First Amendment. To preserve the issue, Defendants assert that Plaintiffs' (and the putative class members') claims are barred, in whole or in part by the protection that commercial speech receives under the First Amendment.

## TENTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

Plaintiffs' (and the putative class members') claims are barred, in whole or in part, by the equitable doctrine of unclean hands, the legal doctrine of in pari delicto, and the maxim that "one who seeks equity must do equity."

## ELEVENTH AFFIRMATIVE DEFENSE
### (Impossibility or Impracticality)

To the extent a contract existed between Defendants and Plaintiffs—which Defendants expressly deny—the contract cannot be enforced because of the doctrines of impossibility or impracticability.

## TWELFTH AFFIRMATIVE DEFENSE
### (No "Clear and Definite Promise")

Plaintiffs (and the putative class members) cannot state a claim for promissory estoppel because Reynolds never made a "clear and definite" promise that Plaintiffs could have reasonably relied upon.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Ratification)

Plaintiffs' (and the putative class members') claims are barred, in whole or in part, by the doctrine of ratification.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Improper Class Action)

The causes of action and claims alleged in the Consolidated Complaint may not properly be maintained or certified as a class action.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Seventh Amendment)

The certification and maintenance of this action as a class action would violate Reynolds'

Seventh Amendment right to due process and its right to a single jury trial as provided in the United

States Constitution, Amendment VII.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

Plaintiffs' (and the putative class members') claims are barred, in whole or in part, or

alternatively Plaintiffs' recovery should be reduced, because Plaintiffs and the putative class

members, and each of them, failed to make reasonable efforts to mitigate such purported injury or

damage, which reasonable efforts would have prevented their injury or damages, if any.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (Quantum Meruit)

Plaintiffs' (and the putative class members') claims are barred, in whole or in part, or

alternatively Plaintiffs' recovery should be reduced, to the extent of goods and services received by

Plaintiffs under the doctrine of quantum meruit.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (Speculative Damages)

Plaintiffs' (and the putative class members') claims are barred, in whole or in part, or

alternatively Plaintiffs' recovery should be reduced, because the alleged damages, if any, are

speculative.

## NINETEENTH AFFIRMATIVE DEFENSE
### (Attorneys' Fees)

Plaintiffs' claims for attorneys' fees are barred because there is no contractual, statutory, or

other basis for such claims.

### TWENTIETH AFFIRMATIVE DEFENSE
### (Defenses Available Under Other Law)

To the extent that the laws of other jurisdictions apply, Defendants invoke each and every constitutional, statutory, and common-law protection available to them under the laws of every State, the District of Columbia, the Commonwealth of Puerto Rico, and the territories and possessions with respect to each of the claims alleged in the Consolidated Complaint that is recognized in that jurisdiction.

### TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Lack of Personal Jurisdiction)

The Court lacks jurisdiction over RAI to the extent reflected in the Court's order dismissing claims against RAI for lack of personal jurisdiction.

### TWENTY-SECOND AFFIRMATIVE DEFENSE
### (Punitive Damages)

In the Consolidated Complaint, Plaintiffs asserts they are entitled to punitive damages and pray for such relief.  Defendants deny that Plaintiffs have satisfied the requirements of the applicable statutes to plead for or recover punitive damages.  In further response to Plaintiffs' prayers for punitive damages, Defendants raise the following affirmative defenses.

### TWENTY-THIRD AFFIRMATIVE DEFENSE
### (Punitive Damages)

Plaintiff's claim for punitive damages against Defendants cannot be maintained because any award of punitive damages under the applicable law would be by a jury that: (1) is not provided standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damages award, (2) is not adequately instructed on the limits on punitive damages imposed by the applicable principles of deterrence and punishment, (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole

or in part, on the basis of invidiously discriminatory characteristics, including the residence, wealth, and corporate status of Defendants, (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible, and (5) is not subject to adequate trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of objective standards.  Any such verdict would violate Defendants' due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and the applicable provisions of the various state constitutions at issue, and would be improper under the common law and public policies of those various states.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE
#### (Punitive Damages)

Plaintiff's claims for punitive damages are barred to the extent that they are based upon conduct unrelated to Plaintiff's alleged harm.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE
#### (Punitive Damages)

Plaintiff's claims for punitive damages are barred by due process under the federal and various applicable state constitutions to the extent Plaintiffs seek to impose punishment for harm allegedly caused to nonparties.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE
#### (Punitive Damages)

Defendants deny liability for any award of punitive damages not based solely on the specific allegations of Defendants' conduct made the subject of this action and that allegedly affected Plaintiffs, because consideration of other conduct would subject Defendants to impermissible multiple punishments for the same conduct, in violation of the Fifth and Fourteenth Amendments

to the United States Constitution and the comparable provisions of the various applicable state constitutions.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**
**(Punitive Damages)**

Plaintiffs' claims for punitive damages are barred to the extent that they are predicated upon lawful conduct by Defendants.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**
**(Punitive Damages)**

The monetary relief sought, which is intended in part to punish Defendants, is barred under the Eighth Amendment of the United States Constitution and the comparable provisions of the various applicable state constitutions as the imposition of an excessive fine.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**
**(Punitive Damages)**

Plaintiffs' claims for punitive damages are barred absent the safeguards guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the comparable provisions of the various applicable state constitutions in that these claims invoke or authorize proceedings and remedies which, though nominally civil, are in reality so punitive in purpose and effect that they transform the relief that Plaintiffs seeks into a criminal penalty.

**THIRTIETH AFFIRMATIVE DEFENSE**
**(Punitive Damages)**

Plaintiffs' claims for punitive damages cannot be sustained because an award of punitive damages exceeding the limits authorized by the criminal laws or other comparable laws of the various states at issue would violate Defendants' due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and the comparable

provisions of the various applicable state constitutions and would be improper under the law and public policies of those various states.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**
**(Punitive Damages)**

Plaintiffs' claims for punitive damages against Defendants cannot be sustained because an award of punitive damages in this case, combined with any prior, contemporaneous or subsequent judgments or settlements against Defendants that include punitive damages arising out of the same design, development, manufacture, distribution, marketing, sale or use of NAS cigarettes, would be impermissible multiple punishment in violation of the due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and the comparable provisions of the various applicable state constitutions.

**THIRTY-SECOND AFFIRMATIVE DEFENSE**
**(Punitive Damages)**

Any award of punitive damages that is disproportionate to the amount of actual damages, that does not bear a reasonable relationship to actual damages and that does not correlate to the actual cause of any injury, violates Defendants rights under the Due Process clause of the Fourteenth Amendment to the United States Constitution and the comparable provisions of the various applicable state constitutions.

**THIRTY-THIRD AFFIRMATIVE DEFENSE**
**(Punitive Damages)**

Each of Plaintiff's claims for punitive damages is barred to the extent that it is based upon conduct occurring outside the state put at issue in each such claim for which Plaintiffs seek punitive damages.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE
### (Punitive Damages)

To the extent that the laws of other jurisdictions apply, Defendants invokes each and every constitutional defense available to them under the Constitutions (or similar charters) of each of the other forty-nine states, the District of Columbia, the Commonwealth of Puerto Rico, and the territories and possessions of the United States.  This specifically includes, but is not limited to, provisions relating to due process, access to the courts, freedom of speech, freedom of association, freedom to petition the government for redress of grievances, and limitations on compensatory and punitive damages.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE
### (Safe Harbors)

By its MTD Order, the Court rejected Defendants' Motion to Dismiss based on safe harbors.  To preserve the issue, Defendants assert that Plaintiffs' (and the putative class members') claims are barred, in whole or in part, because Defendants' conduct falls within an applicable state-law safe harbor.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE
### (No False or Misleading Statement)

By its MTD Order, the Court partially rejected Defendants' Motion to Dismiss based on the lack of any statement that is false or that would mislead a reasonable consumer.  To preserve the issue, Defendants assert that Plaintiffs' (and the putative class members') claims are barred, in whole or in part, because Defendants have not made any statement that is false or that would mislead a reasonable consumer.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE
### (No Likelihood of Future Harm)

Plaintiffs' (and the putative class members') claims for prospective injunctive relief are barred because they cannot show any reasonable likelihood of future harm or deception.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE
### (No Predicate Statutory Violation)

By its MTD Order, the Court rejected Defendants' Motion to Dismiss based on a lack of a predicate statutory violation.  To preserve the issue, Defendants assert that Plaintiffs' (and the putative class members') claims, to the extent they are based on a predicate statutory violation, are barred, in whole or in part, because there is no such predicate violation.

### THIRTY-NINTH AFFIRMATIVE DEFENSE
### (No Adequate Pre-Suit Notice)

By its MTD Order, the Court partially rejected Defendants' Motion to Dismiss based on a lack of adequate pre-suit notice.  To preserve the issue, Defendants assert that Plaintiffs' (and the putative class members') claims are barred, in whole or in part, because Plaintiffs did not provide Defendants with adequate pre-suit notice of their claims.

### FORTIETH AFFIRMATIVE DEFENSE
### (No Cause of Action for Consumers)

Plaintiffs' (and the putative class members') claims are barred, in whole or in part, because the statutes under which Plaintiffs purport to bring suit do not provide a cause of action for consumers.

## FORTY-FIRST AFFIRMATIVE DEFENSE
### (Full Benefit of the Bargain)

By its MTD Order, the Court rejected Defendants' Motion to Dismiss based on the full

benefit of the bargain.  To preserve the issue, Defendants assert that Plaintiffs' (and the putative

class members') equitable claims are barred, in whole or in part, because Plaintiffs received the full

benefit of their bargain with Defendants, such that Defendants were not unjustly enriched.

## FORTY-SECOND AFFIRMATIVE DEFENSE
### (Adequate Remedy at Law)

By its MTD Order, the Court rejected Defendants' Motion to Dismiss based on an adequate

remedy at law.  To preserve the issue, Defendants assert that Plaintiffs' (and the putative class

members') equitable claims are barred, in whole or in part, because Plaintiffs have an adequate

remedy at law.

## FORTY-THIRD AFFIRMATIVE DEFENSE
### (No Direct Benefit)

By its MTD Order, the Court partially rejected Defendants' Motion to Dismiss based on a

lack of direct benefit.  To preserve the issue, Defendants assert that Plaintiffs' (and the putative class

members') equitable claims are barred, in whole or in part, because Plaintiffs did not confer a benefit

directly on Defendants.

## FORTY-FOURTH AFFIRMATIVE DEFENSE
### (Claims Sound in Tort)

By its MTD Order, the Court rejected Defendants' Motion to Dismiss based on Plaintiffs'

claims sounding in tort.  To preserve the issue, Defendants assert that Plaintiffs' (and the putative

class members') quasi-contact claims are barred, in whole or in part, because Plaintiffs' claims sound

in tort.

## FORTY-FIFTH AFFIRMATIVE DEFENSE
### (Duplicative Claims)

By its MTD Order, the Court rejected Defendants' Motion to Dismiss based on Plaintiffs' claims being duplicative.  To preserve the issue, Defendants assert that Plaintiffs' (and the putative class members') equitable claims are barred, in whole or in part, because they are duplicative of Plaintiffs' statutory claims.

## FORTY-SIXTH AFFIRMATIVE DEFENSE
### (No Express Warranty)

By its MTD Order, the Court rejected Defendants' Motion to Dismiss based on a lack of an express warranty.  To preserve the issue, Defendants assert that Plaintiffs' (and the putative class members') claims are barred, in whole or in part, because Defendants did not make any express warranty.

## FORTY-SEVENTH AFFIRMATIVE DEFENSE
### (Privity)

By its MTD Order, the Court partially rejected Defendants' Motion to Dismiss based on a lack of privity.  To preserve the issue, Defendants assert that Plaintiffs' (and the putative class members') equitable claims are barred, in whole or in part, because Plaintiffs were not in privity with Defendants.

## FORTY-EIGHTH AFFIRMATIVE DEFENSE
### (Mootness)

By its MTD Order, the Court rejected Defendants' Motion to Dismiss based on mootness. To preserve the issue, Defendants assert that Plaintiffs' (and the putative class members') claims for injunctive relief are barred, in whole or in part, because they are moot.

## FORTY-NINTH AFFIRMATIVE DEFENSE
### (Entitlement to Attorneys' Fees)

Plaintiffs' claims under the New Mexico Unfair Practices Act are groundless, and pursuant to NMSA 1978, § 57-12-10(C), Defendants are entitled to their attorneys' fees and costs.

## DEFENDANTS' JURY DEMAND

Defendants demand a trial by jury of all claims triable as of right by jury.

## RESERVATION OF RIGHTS

Defendants reserve the right to seek to assert additional affirmative defenses to the extent they become known following the date of this Answer.

## PRAYER

WHEREFORE, Defendants pray for entry of judgment in their favor and against Plaintiffs as follows:

1. That the Consolidated Complaint be dismissed in its entirety and with prejudice;

2. That Plaintiffs take nothing by way of the Consolidated Complaint;

3. That Defendants recover theirs costs and disbursements in this action; and

4. For such further relief as the Court deems just and proper.

Dated:  December 10, 2018

Respectfully submitted,

/s/ Peter J. Biersteker

Andrew G. Schultz
   aschultz@rodey.com
RODEY, DICKASON, SLOAN,
AKIN & ROBB, P.A.
201 3rd Street N.W., Suite 2200
Albuquerque, NM 87102
T: 505.765.5900
F: 505.768.7395

David M. Monde (*pro hac vice*)
   dmmonde@jonesday.com
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA 30309
T: 404.521.3939
F: 404.581.8330

Peter J. Biersteker (*pro hac vice*)
   pbiersteker@jonesday.com
William D. Coglianese (*pro hac vice*)
   wcoglianese@jonesday.com
Jon G. Heintz (*pro hac vice*)
   jheintz@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
T: 202.879.3939
F: 202.626.1700

Sharyl Reisman (*pro hac vice*)
   sareisman@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281
T: 212.326.3939
F: 212.755.7306

*Counsel for Defendants*
*Santa Fe Natural Tobacco Company, Inc.,*
*Reynolds American Inc., and*
*R.J. Reynolds Tobacco Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel or parties of record.


Dated:  December 10, 2018                    Respectfully submitted,


                                             /s/ Michael F. Stoer

                                             *Michael F. Stoer* (*pro hac vice*)
                                                 mstoer@jonesday.com
                                             JONES DAY
                                             1420 Peachtree Street, N.E.
                                             Suite 800
                                             Atlanta, GA 30309
                                             T: 404.581.3939
                                             F: 404.581.8330

                                             *Counsel for Defendants*
                                             *Santa Fe Natural Tobacco Company, Inc.,*
                                             *Reynolds American Inc., and R.J. Reynolds*
                                             *Tobacco Company*